1

2

3                                                    O

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  LOG CABIN REPUBLICANS, a)    Case No. CV 04-8425-VAP (Ex)
    non-profit corporation, )
12                           )   **[Motion filed on June 12,**
                 Plaintiff,  )   **2006]**
13                           )
        v.                   )   **ORDER DENYING IN PART AND**
14                           )   **GRANTING IN PART MOTION TO**
    UNITED STATES OF AMERICA )   **DISMISS**
15  and DONALD H. RUMSFELD,  )
    SECRETARY OF DEFENSE, in )
16  his official capacity,   )
                             )
17               Defendants. )
    _____)
18

19      Defendants United States of America and Donald

20  Rumsfeld's ("Defendants") Motion to Dismiss ("Motion")

21  came before the Court for hearing on March 9, 2009.

22  After reviewing and considering all papers filed in

23  support of, and in opposition to, the Motion, as well as

24  the arguments advanced by counsel at the hearing, the

25  Court grants the Motion in part and denies it in part.

26

27      Log Cabin Republicans, ("Plaintiff" or "Plaintiff

28  association"), a nonprofit corporation whose membership

includes current, retired, and former homosexual[1] members
of the U.S. armed forces, challenges as "restrictive,
punitive . . .discriminatory," and unconstitutional the
"Don't Ask Don't Tell" policy ("DADT") of Defendants,
including both the statute codified at 10 U.S.C. section
654 and the implementing regulations appearing at
Department of Defense Directives ("DoDD" or "implementing
regulations") 1332.14, 1332.30, and 1304.26.  (First
Amended Complaint ("FAC") ¶ 6.)  Defendants' Motion to
Dismiss ("Motion") Plaintiff's FAC is now before the
Court.[2]

## I. BACKGROUND

**A.   Facts**

   **1.   Plaintiff and its members**

   Assuming all the facts in Plaintiff's FAC are true,
as the Court must when considering a motion to dismiss
under Rule 12(b)(6), Plaintiff is a nonprofit corporation
dedicated to the interests of homosexuals and organized
under the laws of the District of Columbia.  (FAC ¶ 10.)
Plaintiff's members include current, retired, and former
members of the U.S. armed forces who seek to serve
"without fear of investigation, discharge, stigma,

---

[1]The Court uses the term "homosexual" for the sake of
consistency with the Ninth Circuit's opinion in <u>Witt v.
Dep't of the Air Force</u>, 527 F.3d 806 (9th Cir. 2008).

[2]The case was transferred to this Court's docket on
October 8, 2008, upon the resignation of the Honorable
George P. Schiavelli.

1 forfeiture of fundamental liberties, harassment and other
2 negative repercussions" imposed in connection with their
3 homosexuality.  (FAC ¶¶ 8, 12, 17.)

4

5      **a.   Current members of the armed forces**

6    Plaintiff association includes homosexual persons
7 currently in the armed forces, among them "John Doe,"
8 ("Doe") a homosexual man, who submitted a declaration in
9 support of the FAC.  (FAC ¶¶ 17-21.)  DADT prevents Doe
10 from "communicat[ing] the core of his emotions and
11 identity to others" and from exercising his
12 "constitutionally protected right to engage in private,
13 consensual homosexual conduct without intervention of the
14 government."  (FAC ¶ 20.)[3]

15

16    Doe fears that making his name public in connection
17 with this action will subject him to "investigation and
18 discharge" as well as "other possible harm."  (FAC ¶ 21.)

19

20      **b.   Retired members of the armed forces**

21    Plaintiff's members also include retired armed forces
22 personnel who are homosexuals.  They remain subject to
23 DADT and "fear exercising their constitutional rights. .
24 . or making public their own names" as they fear

25

26

27      [3]Plaintiff does not define "private, consensual
28 homosexual conduct."

1  Defendants might deny them retirement benefits.  (FAC ¶
2  22.)

3

4          **c.  Former members of the armed forces**
5          Those separated from the armed forces pursuant to
6  DADT, including John Alexander Nicholson ("Nicholson"),
7  are also members of Plaintiff association.  (FAC ¶¶ 6, 7,
8  12.)  Nicholson is homosexual, fluent in several
9  languages, including Arabic, and has a Bachelor's degree
10  in International Relations.  He enlisted in the U.S. Army
11  in 2001 and received training in human intelligence
12  collection.  (FAC ¶ 13.)  While in the Army, pursuant to
13  DADT, Defendants denied him the ability to communicate
14  his emotions and identity to others as well as the right
15  to engage in private, consensual sexual conduct with the
16  sex to whom he is attracted without the government's
17  intervention.  (FAC ¶ 14.)  Nicholson became subject to
18  separation proceedings pursuant to DADT in 2002 and was
19  discharged.  (FAC ¶¶ 14.)  His discharge caused Nicholson
20  emotional distress.  (FAC ¶ 14.)  DADT continues to
21  prevent Nicholson from returning to the Army.  (FAC ¶
22  16.)

23

24      **2.  DADT**
25      DADT includes both the statutory language appearing
26  at 10 U.S.C. section 654 and the implementing regulations
27  appearing as DoDDs 1332.14, 1332.30, and 1304.26.  (FAC ¶
28

4

28.)   DADT can be triggered by three kinds of "homosexual conduct:" (1) by "homosexual acts"; (2) statements that one "is a homosexual"; or (3) marriage or an attempt to marry a person of the same biological sex.   10 U.S.C. § 654 (b); DoDD 1332.14 at E3.A4.2.4; 1332.30 at 1-1.

### a.   "Homosexual acts"

First, Defendants may initiate separation proceedings if a service member engages in a "homosexual act," defined as "(A) any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and (B) any bodily contact which a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in subparagraph (A)."   10 U.S.C. §§ 654 (b)(1), (f)(3)(A)-(B).   Such acts include holding hands and kissing.   (FAC ¶ 31 citing DoDD 1332.14 at E3.A4.1.2.4.1.)

### b.   Statements one "is a homosexual"

Second, Defendants may initiate separation if a service member makes a statement "he or she is a homosexual . . . or words to that effect."   10 U.S.C. § 654(b)(2).   These words create a presumption the service member is a "person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts."   10 U.S.C. § 654(b).   A propensity

1  is "more than an abstract preference or desire to engage
2  in homosexual acts; it indicates a likelihood that a
3  person engages or will engage in homosexual acts."  DoDD
4  1332.14 at E3.A1.1.8.1.2.2.
5
6          c.   Marriage or attempted marriage to a person
7               of the same sex
8       The third route to separation under DADT, marriage or
9  attempted marriage to a person of the same sex, is self-
10 explanatory.
11
12         d.   Discharge
13      Once Defendants find a service member has engaged in
14 "homosexual conduct," as defined above, Defendants will
15 discharge him or her unless the service member can
16 demonstrate, by a preponderance of the evidence, that,
17 inter alia, such acts are not his or her usual or
18 customary behavior and that he or she has no propensity
19 to engage in "homosexual acts."  (FAC ¶¶ 30-33); 10
20 U.S.C. § 654(b)(1); DoDD 1332.14 at E3.A1.1.8.1.2.
21
22      3.   Congressional findings of fact
23      Congress made 15 factual findings in connection with
24 the statutory embodiment of DADT.  They state, in
25 relevant part:
26
27
28
                              6

- "There is no constitutional right to serve in the armed forces."  10 U.S.C. § 654 (a)(2).

- "Military life is fundamentally different from civilian life in that . . . the military society is characterized by its own laws, rules, customs, and traditions, including numerous restrictions on personal behavior, that would not be acceptable in civilian society."  10 U.S.C. § 654(a)(8)(B).

- "The standards of conduct for members of the armed forces regulate a member's life for 24 hours each day beginning at the moment the member enters military status and not ending until that person is discharged or otherwise separated from the armed forces."  10 U.S.C. § 654(a)(9).

- "The presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability."  10 U.S.C. § 654(a)(15).

**4.   Impact of DADT**

According to Plaintiff, pursuant to DADT Defendants have discharged nearly 10,000 members of the U.S. armed

forces, including those in non-combat positions. (FAC ¶ 34-36.) Nevertheless, Defendants have discharged 40% fewer persons pursuant to DADT since the outbreak of the wars in Afghanistan and Iraq. (FAC ¶ 36.)

## B.  Procedural History

Plaintiff filed its Complaint on October 12, 2004. On December 13, 2004, Defendants moved to dismiss the Complaint, alleging, <u>inter alia</u>, that Plaintiff lacked standing. The Honorable George P. Judge Schiavelli granted the motion to dismiss the Complaint with leave to amend on March 21, 2006.

On April 28, 2006, Plaintiff timely filed its FAC, attaching the declaration of Nicholson, a current member of Plaintiff organization and a former member of the U.S. Army. According to the FAC, DADT violates the First and Fifth Amendments to the U.S. Constitution by violating guarantees to: (1) substantive due process; (2) equal protection; and (3) freedom of speech. On June 11, 2007, Plaintiff filed the declaration of Doe, a current member of Plaintiff organization, a homosexual, and a current U.S. Army reservist on active duty.

On June 12, 2006, Defendants filed their Motion; Plaintiff opposed; Defendants replied. After conducting a hearing on the Motion and receiving supplemental

authorities from both sides, the Court entered an order staying this action on May 23, 2008 in light of the Ninth Circuit's May 21, 2008 decision in <u>Witt v. Dep't of the Air Force</u>, 527 F.3d 806.

After the case was transferred to this Court in late 2008, it held a status conference on January 28, 2009, lifted the stay, set a hearing date for the Motion, and permitted the parties to submit additional authority regarding the substantive due process challenge. Defendants filed their supplemental brief addressing the issue of substantive due process on February 17, 2009 ("Defs.' Supp'l Br.") and Plaintiff filed its submission on February 27, 2009 ("Pl.'s Supp'l Br.").

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007). In addition, the Court must accept all material allegations in the complaint - as well as any reasonable

inferences to be drawn from them – as true.  <u>See</u> <u>Doe v.</u>
<u>United States</u>, 419 F.3d 1058, 1062 (9th Cir. 2005); <u>ARC</u>
<u>Ecology v. U.S. Dep't of Air Force</u>, 411 F.3d 1092, 1096
(9th Cir. 2005).


     "While a complaint attacked by a Rule 12(b)(6)
motion to dismiss does not need detailed factual
allegations, a plaintiff's obligation to provide the
'grounds' of his 'entitlement to relief' requires more
than labels and conclusions, and a formulaic recitation
of the elements of a cause of action will not do."  <u>Bell</u>
<u>Atlantic</u>, 127 S. Ct. at 1964-65 (citations omitted).
Rather, the allegations in the complaint "must be enough
to raise a right to relief above the speculative level."
<u>Id</u>. at 1965.


     Although the scope of review is limited to the
contents of the complaint, the Court may also consider
exhibits submitted with the complaint, <u>Hal Roach Studios,</u>
<u>Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19
(9th Cir. 1990), and "take judicial notice of matters of
public record outside the pleadings," <u>Mir v. Little Co.</u>
<u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).


### III. DISCUSSION

     Defendants move for dismissal of Plaintiff's FAC on
four grounds: (1) Plaintiff lacks standing to bring suit

on behalf of current members of the armed forces; and
Plaintiff fails to state a claim for violation of the
constitutional guarantees to (2) substantive due process;
(3) equal protection; and (4) freedom of speech.

## A.   Standing

Plaintiff brings suit on behalf of its members who
are homosexuals and current or former members of the
armed forces.   Pursuant to Hunt v. Washington State Apple
Advertising Commission, 432 U.S. 333, 343 (1977),
Plaintiff, as an association that has not suffered any
injury itself, may assert associational standing to sue
in a representative capacity for injuries to its members
by showing: (1) at least one member would have standing,
in his or her own right, to present the claim asserted by
the association; (2) the interests sought to be protected
are germane to the association's purpose; and (3) neither
the claim asserted nor the relief requested requires that
the members participate individually in the suit.   See
Hunt, 432 U.S. at 343, 376-79.

### 1.   Standing asserted under Complaint

The Court dismissed the original Complaint for lack
of standing because Plaintiff failed to allege compliance
with the first prong of the Hunt test: Plaintiff
"fail[ed] to identify a single individual who is (1) an
active member of [Plaintiff]; (2) has served or currently

serves in the Armed Forces; and (3) has been injured by
the policy."  (March 2006 J. Schiavelli Order ("2006
Order") 15:11-14.)  The Court required Plaintiff "to
identify, by name, at least one of its members injured by
the subject policy if it wishes to proceed with this
action."  (2006 Order 17:9-10.)

The Court explicitly rejected Plaintiff's contention
it ought to be able to bring suit on behalf of current
members of the military without naming them because they
fear discharge pursuant to DADT.  (2006 Order 16.)

### 2.   Standing asserted under the FAC

Plaintiff's FAC properly alleges standing to bring
suit.  It submits the declarations of Nicholson and Doe,
current members of Plaintiff organization.  Defendants
assert Plaintiff nevertheless cannot assert the claims in
the FAC on behalf of current service members.[4]  (Mot.
7:8-9.)  Defendants argue the 2006 Order requires
Plaintiff to name a currently serving member of the armed
forces.  The plain text of the Order, however, requires
Plaintiff only to name a current member of Plaintiff
association, not a current member of the armed forces.
(Mot. 8; 2006 Order 17:8-10.)  Accordingly, the Court

---

[4]In its most recent briefing Defendants did not
reiterate their challenge to Plaintiff's standing to sue
on behalf of former service persons.  Plaintiff produced
the declaration of Nicholson, a former service member
discharged pursuant to DADT.

1  denies the Motion insofar as it is based on the claimed
2  failure to amend in compliance with the 2006 Order.
3
4      Defendants also contend Plaintiff cannot assert
5  claims on behalf of currently active service members
6  because the 2006 Order granting leave to amend did not
7  permit Plaintiff to bring suit on behalf of anonymous
8  members or former members of the armed forces, despite
9  their professed fear of investigation, discharge, and
10  loss of retirement benefits.  (2006 Order 16-17, Mot. 8-
11  9.)
12
13      The Court declines to find Plaintiff's new
14  allegations insufficient to justify standing.  First,
15  this is "the 'unusual case' where nondisclosure of the
16  party's identity 'is necessary . . . to protect a person
17  from harassment, injury, ridicule or personal
18  embarrassment."  (Contra Mot. 9.)  Does I Thru XXXIII v.
19  Advanced Textile Corp., 214 F.3d 1058, 1068 (9th Cir.
20  1981).
21
22      Even leaving aside the issue of the propriety of
23  pseudonyms, however, the allegations are sufficient.
24  Pursuant to Associated General Contractors of California,
25  Inc. v. Coalition for Economic Equity, 950 F.2d 1401,
26  1406-07 (9th Cir. 1991), the declaration of one member of
27  an association that he suffered a harm, coupled with
28

1  general assertions that other members would suffer
2  similar harm, suffices to confer standing on an
3  association.  <u>Associated Gen'l Contractors</u>, 950 F.2d at
4  1406-07 (declaration one member was discouraged from
5  bidding on contract enough to confer standing on
6  organization to challenge ordinance regulating
7  preferences in bidding).  (Opp'n 4.)  Here, as in
8  <u>Associated General Contractors</u>, Plaintiff furnishes the
9  declaration of a named member of the organization,
10  Nicholson, stating he has been harmed, and asserts other
11  members of the association will suffer similar fates.
12  This satisfies the first prong of the <u>Hunt</u> test.  <u>See</u>
13  <u>Associated Gen'l Contractors</u>, 950 F.2d at 1406-07; <u>Hunt</u>,
14  432 U.S. at 333, 341-43.  Accordingly, the Court finds
15  Plaintiff has standing to bring suit on behalf of current
16  and former homosexual members of the armed forces.
17
18  **B.   Substantive Due Process**
19      Plaintiff asserts DADT violates the substantive due
20  process rights of its members.  Defendant moves the Court
21  to dismiss this claim.  Plaintiff relies on <u>Witt</u>, where
22  the Ninth Circuit remanded the case for an as-applied
23  substantive due process review, and <u>Lawrence v. Texas</u>,
24  where the Supreme Court held a Texas criminal sodomy law
25  violated substantive due process.  <u>Witt</u>, 527 F.3d at 821;
26  <u>Lawrence</u>, 539 U.S. 558, 578-79 (2003).  In contrast,
27  Defendants cite older Ninth Circuit precedent,
28

14

particularly <u>Holmes v. California Army National Guard</u>,
124 F.3d 1126, 1132-36 (9th Cir. 1997) and <u>Philips v.
Perry</u>, 106 F.3d 1420, 1425-29 (9th Cir. 1997), in which
the Ninth Circuit upheld DADT.

### 1.   <u>Witt</u>'s heightened scrutiny

In its 2008 <u>Witt</u> decision, the Ninth Circuit adopted
a "heightened scrutiny" standard to assess whether DADT
comports with the substantive due process guarantee of
the U.S. Constitution.  <u>Witt</u>, 527 F.3d at 821.  The Ninth
Circuit adopted the following test:

> when the government attempts to intrude
> upon the personal and private lives of
> homosexuals, in a manner that implicates
> the rights identified in <u>Lawrence</u>, the
> government must advance an important
> governmental interest, the intrusion must
> significantly further that interest, and
> the intrusion must be necessary to
> further that interest.  In other words,
> for the third factor, a less intrusive
> means must be unlikely to achieve
> substantially the government's interest.

<u>Witt</u>, 527 F.3d at 819.

In the same discussion, the Ninth Circuit also
explicitly "h[e]ld that this heightened scrutiny analysis
is as-applied rather than facial, . . ." and the Ninth
Circuit emphasized "we must determine not whether DADT
has some hypothetical, posthoc rationalization in
general, but whether a justification exists for the
application of the policy as applied to Major Witt."  The

15

1   as-applied inquiry "is necessary to give meaning to the
2   Supreme Court's conclusion that 'liberty gives
3   substantial protection to adult persons in deciding how
4   to conduct their private lives in matters pertaining to
5   sex.'"  Witt, 527 F.3d at 819.

6

7       The parties dispute the effect and application of
8   Witt here.  Defendants claim it limits all substantive
9   due process challenges to DADT to as-applied rather than
10  facial attacks.  (Defs.' Supp'l Br. 7.)  Plaintiff argues
11  it has the right to choose its own litigation strategy,
12  including a facial challenge, and points out the
13  congruity between association standing and a facial
14  challenge.  (Pl.'s Supp'l Br. 5.)

15

16      Witt expresses a strong preference for as-applied
17  challenges and clearly limits the heightened scrutiny
18  standard it announces to such challenges.  For example,
19  the decision stresses consideration of "the facts of the
20  individual case," an inquiry impossible in a facial
21  challenge.  Witt, 527 F.3d at 819; (see Defs.' Supp'l Br.
22  8.)  Nevertheless, Defendants do not direct the Court to
23  language forbidding facial challenges or forbidding
24  associations from challenging DADT.

25

26      Accordingly, nothing in Witt bars Plaintiff from
27  asserting a facial challenge to DADT, although in doing
28

16

1   so it will not be able to rely upon <u>Witt</u>'s heightened

2   scrutiny standard as the Ninth Circuit limited this

3   standard to as-applied challenges.  (<u>Contra</u> Pl.'s Supp'l

4   Br. 3.)

5

6       **2.  <u>Lawrence</u>'s impact on <u>Holmes</u>**

7       As <u>Witt</u> does not compel the Court to deny the Motion,

8   we turn next to whether <u>Lawrence</u> or <u>Holmes</u>[5] provides

9   guidance here.

10

11      According to Defendants, <u>Lawrence</u> is not pertinent,

12  because it discusses application of a criminal statute in

13  a civilian setting, and is irrelevant to the validity of

14  <u>Holmes</u>.  (<u>See</u> Reply 5 citing <u>Galbraith v. County of Santa</u>

15  <u>Clara</u>, 307 F.3d 1119, 1123 (9th Cir. 2002) (discussing

16  the application of Supreme Court opinions to Ninth

17  Circuit precedent) and <u>Miller v. Gammie</u>, 335 F.3d 889,

18  900 (9th Cir. 2003) (en banc) (same).)

19

20      Defendants rely on <u>Holmes</u> in vain.  The <u>Holmes</u> Court

21  relied on <u>Bowers v. Hardwick</u>, 478 U.S. 186 (1986), which

22

23

24          [5]<u>Holmes</u> upheld DADT in the face of a substantive due
25  process challenge.  <u>See Holmes</u>, 124 F.3d at 1136. (Mot.
    19.)  Defendants also rely on <u>Philips</u> for the proposition
26  that DADT is not based on mere negative attitudes and
    that it responds to the unique needs of military life.
27  However, <u>Philips</u> discusses equal protection concerns, not
    substantive due process.  (<u>See</u> Mot. 19; Reply 5);
28  <u>Philips</u>, 106 F.3d at 1429.

                                17

1  Lawrence overturned.  Holmes, 124 F.3d at 1136;[6]

2  Lawrence, 539 U.S. at 578 ("Bowers was not correct when

3  it was decided, and it is not correct today.  It ought

4  not to remain binding precedent.  Bowers v. Hardwick

5  should be and now is overruled").  Lawrence unequivocally

6  overruled Bowers; therefore, it removed the foundation on

7  which Holmes rested.  (Opp'n 5 citing Lawrence, 539 U.S.

8  at 578.)

9

10      As the foundation on which Holmes rested was

11  dissolved by Lawrence, the Court cannot conclude

12  Plaintiff's substantive due process claim lacks merit.

13  The Court DENIES the Motion as to the substantive due

14  process claim.

15

16  **C.  Equal Protection**

17      Plaintiff claims DADT violates the Fifth Amendment's

18  equal protection clause because (1) it treats homosexual

19  service persons differently than similarly-situated

20  heterosexual persons based on impermissible

21  considerations and because (2) homosexuals either are

22  _____

23      [6] At page 1136, the Holmes court relies on

24  Schowengerdt v. United States, 944 F.2d 483, 490 (9th
    Cir. 1991) where the court found plaintiff's "substantive
    due process claim with respect to the old" pre-DADT

25  policy was "foreclosed by Bowers v. Hardwick, 478 U.S.
    186. . .".  Holmes also relies on High Tech Gays v.

26  Defense Industrial Security Clearance Office, 895 F.2d
    563 (9th Cir. 1990) which in turn relied on Bowers for

27  the proposition that persons do not have a fundamental
    right to engage in intimate homosexual conduct.  High

28  Tech Gays, 895 F.2d at 571.

1  part of a suspect class or exercise a fundamental right.

2  (Opp'n 16.)

3

4      Defendants assert Plaintiff does not state an equal

5  protection claim, as homosexuals are not a suspect or a

6  quasi-suspect class according to Ninth Circuit precedent

7  undisturbed by Lawrence, which was not decided on equal

8  protection grounds.  (See Mot. 20); Witt, 527 F.3d 806

9  (discussing Lawrence).  The Ninth Circuit upheld DADT

10 under rational basis review in Holmes, 124 F.3d at 1132

11 ("homosexuals do not constitute a suspect or quasi-

12 suspect class"), Philips, 106 F.3d at 1425-29, and High

13 Tech Gays v. Defense Industrial Security Clearance

14 Office, 895 F.2d 563, 571, 576-78 (9th Cir. 1990)

15 (relying on Bowers for proposition "homosexual activity

16 is not a fundamental right" and "homosexuals cannot

17 constitute a suspect or quasi-suspect class").

18

19     Plaintiff offers three reasons why the Court should

20 depart from this precedent.  Plaintiff first asserts

21 Lawrence "established a fundamental right to engage in

22 intimate, consensual physical acts and relationships with

23 persons of the same gender."  (Opp'n 17.)  Witt

24 foreclosed this interpretation, by finding Lawrence did

25 not discuss equal protection and did not disturb

26 Philips's holding that DADT complies with the

27

28

1    Constitution's guarantee of equal protection.  <u>See Witt</u>,
2    527 F.3d at 821.

3

4        Second, Plaintiff relies on <u>Karouni v. Gonzales</u>, 399
5    F.3d 1163 (9th Cir. 2005), in which the Ninth Circuit
6    considered the asylum claim of a homosexual Lebanese man.
7    <u>Karouni</u> is distinguishable on its facts as an asylum
8    case.

9

10       Third, Plaintiff asserts it should be permitted to
11   conduct discovery and present evidence at the appropriate
12   stage of the case on this issue.  As Plaintiff has not
13   succeeded in stating an equal protection claim under
14   existing law, however, it has not shown how discovery
15   would cure the legal infirmity.  Accordingly, the Court
16   GRANTS the Motion as to Plaintiff's equal protection
17   claim.

18

19   **D.   First Amendment**
20       Plaintiff claims DADT violates its members' First
21   Amendment rights because it is "likely to chill the
22   exercise of constitutionally protected speech" and is
23   "overbroad," applying to "every facet" of Plaintiff's
24   members' lives.  (Opp'n 19, 21, 22.)  Plaintiff
25   challenges two ways Defendants use speech to discharge
26   service members: (1) statements of sexual orientation as
27   admission of propensity to engage in "homosexual acts";

28

1  (2) statements of homosexual orientation not used as

2  admissions.

3

4      **1.    Statements of homosexual orientation as**

5          **admission of propensity to engage in**

6          **"homosexual acts"**

7      The Ninth Circuit has upheld Defendants' use of a

8  service member's statement he is homosexual as an

9  admission of his likelihood to engage in "homosexual

10  acts."  (Mot. 21-22 citing Holmes, 124 F.3d at 1136 and

11  Philips, 106 F.3d at 1430; Reply 14.)[7]  Holmes found this

12  use of homosexual persons' statements did not implicate

13  the First Amendment while the Philips court did not reach

14  the issue.  Holmes, 124 F.3d at 1136 ("because

15  [plaintiffs] were discharged for their conduct and not

16  for speech, the First Amendment is not implicated");

17  Philips 106 F.3d at 1430 (approving "the district court's

18  restraint in declining unnecessarily to reach" the First

19  Amendment issue).  While the Court cannot rely on Holmes

20  for its holding rested on Bowers, Lawrence did not

21  disturb Holmes' holdings about the use of speech as

22  admissions.  Instead, the proposition that it is

23  permissible to use protected speech as an admission in

24  criminal prosecutions remains good law; according to

25  Defendants, this principle extends to non-criminal

26  discharge proceedings.  (Mot. 22-23 citing Wisconsin v.

27  _____

28      [7] Witt did not address a First Amendment claim.

21

1  <u>Mitchell</u>, 508 U.S. 476, 489 (1993) and <u>Wayte v. United</u>

2  <u>States</u>, 470 U.S. 598 (1985).)

3

4       In <u>Wayte</u>, the Supreme Court upheld the government's

5  use of a young man's letters addressed to the government,

6  in which he stated he had not registered for military

7  service and had no intention to do so, to prosecute him

8  for nonregistration for military service.  470 U.S. at

9  598-601, 614.  The Court found his exercise of his First

10  Amendment rights did not confer immunity from

11  prosecution.  <u>Id.</u> at 614.

12

13       Accordingly, <u>Wayte</u> permits Defendants to use service

14  members' statements they are homosexual as admission of

15  their propensity to engage in "homosexual acts."

16

17       Plaintiff's contention DADT is overbroad and over-

18  inclusive, regulating even private speech, is unavailing:

19  private speech can be employed as an admission.  (<u>See</u>

20  Opp'n 21-22.)  So long it is constitutional for

21  Defendants to regulate "homosexual acts" that take place

22  anywhere through DADT, it is constitutional for

23  Defendants to use admission of homosexual orientation as

24  showing a likelihood to engage in "homosexual acts."  The

25  Court GRANTS the Motion to the extent Plaintiff's FAC

26  seeks to mount a First Amendment challenge to DADT's use

27  of certain statements as admissions.

28

1        **2.   Other uses of statements**

2        Plaintiff claims the First Amendment bars Defendants

3   from discharging service members for speech alone.  In

4   other words, Plaintiff asserts Defendants cannot lawfully

5   use service members' statements they are homosexual for

6   uses other than showing a tendency to engage in

7   "homosexual acts."  The Holmes and Philips courts did not

8   rule on this issue.  (Opp'n 21;) Holmes, 124 F.3d at 1136

9   ("because [plaintiffs] were discharged for their conduct

10  and not for speech, the First Amendment is not

11  implicated"); Philips, 106 F.3d at 1430 (plaintiff "was

12  discharged because . . . he had engaged in homosexual

13  acts. . . [his] statements were used as evidence, not the

14  reason for discharge"; approving "the district court's

15  restraint in declining unnecessarily to reach" the First

16  Amendment issue).  Discharge on the basis of statements

17  not used as admissions of a propensity to engage in

18  "homosexual acts" would appear to be discharge on the

19  basis of speech rather than conduct, an impermissible

20  basis.  (See Opp'n 25 citing Holmes, 124 F.3d at 1138

21  (Reinhardt, J., dissenting).)

22

23       This Court cannot determine from the face of the FAC

24  whether Nicholson was, or Doe could yet be, discharged

25  based on statements alone.  The FAC does not allege

26  Nicholson or Doe was discharged, or is subject to

27  discharge, merely for a self-identifying statement

28

1    regarding his homosexuality.  Nevertheless, construing

2    the facts in favor of the non-moving party, the Court

3    cannot conclude Plaintiff will not be able to show these

4    facts.  Accordingly, the Court DENIES the Motion insofar

5    as Plaintiff founds its FAC on service members'

6    statements alone.

7

8                         **IV.   CONCLUSION**

9         For the reasons above, the Court DENIES the Motion

10   insofar as it attacks Plaintiff's standing to bring suit;

11   DENIES the Motion as to Plaintiff's substantive due

12   process claim; GRANTS the Motion as to Plaintiff's equal

13   protection claim; and GRANTS IN PART and DENIES IN PART

14   the Motion as to Plaintiff's First Amendment claim.

15

16

17

18

19   Dated: June 9, 2009          _____
                                        VIRGINIA A. PHILLIPS
20                                  United States District Judge

21

22

23

24

25

26

27

28