# Appendix of Evidence in

# Support of Log Cabin Republican's

# Opposition to Defendants'

# Motion for Summary Judgment

# LCR Appendix Pages 1-200

# (Part 1 of 19)

Aaron Belkin, Ph.D.                                                    March 5, 2010

San Francisco, CA

Page 1

1                UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3                     EASTERN DIVISION

4    _____

5     LOG CABIN REPUBLICANS,                    )

6                                               )

7               Plaintiff,                       )

8                                               ) Case No.

9          vs.                                   )

10                                              ) CV04-8425

11   UNITED STATES OF AMERICA AND ROBERT        ) (VAP)(Ex)

12   GATES, Secretary of Defense,               )

13                                              )

14               Defendants.                     )

15                                              )

16   _____

17

18          DEPOSITION OF AARON BELKIN, Ph.D.

19                  March 5, 2010

20             San Francisco, California

21

22   Reported by:

23   EMI ALBRIGHT

24   RPR, CSR No. 13042

25   Job No. 19676

Aaron Belkin, Ph.D.                                                March 5, 2010

San Francisco, CA

Page 6

 1          San Francisco, California, March 5, 2010

 2               9:01 a.m. - 2:53 p.m.

 3

 4               AARON BELKIN, Ph.D.,

 5     having been first duly sworn, was examined and

 6     testified as follows:

 7                    EXAMINATION

 8     BY MR. FREEBORNE:

 9          Q    Dr. Belkin, for the record could you

10     state your name and your address, please?

11          A    Aaron Belkin, 2208 Derby Street,

12     Berkeley, California 94715.

13          Q    You understand you are under oath?

14          A    I do.

15          Q    Have you been deposed before?

16          A    No, this is my first time.

17          Q    You have never testified as a fact

18     witness?

19          A    I testified in a case but it wasn't

20     like this.  It is that I saw an instance of

21     harassment and I was called to say what I said.

22          Q    That was in an Equal Employment

23     Opportunity case?

24          A    No, I think it was criminal, actually.

25          Q    Did you testify at trial?

Aaron Belkin, Ph.D.                                                      March 5, 2010

San Francisco, CA

Page 27

1    there is a range of knowledge.  But on the polls,

2    at least Zogby and Military Times, there is a

3    distinction between people who, quote, unquote,

4    say they know for sure versus people who suspect.

5    So that is as fine grained an analysis as we can

6    do because that's what the questions ask.  But I

7    take your point that there are many different ways

8    of knowing something.  But we only know in this

9    case of the distinction between know -- sorry --

10   know for sure, suspect, and don't know.

11        Q    Let's take know for sure and suspect.

12        A    Uh-huh.

13        Q    And let's put aside the actual polling

14   data.  But why do you believe or do you believe

15   that if heterosexuals know or suspect that they

16   are serving with gay and lesbian service members,

17   that has an impact in evaluating the privacy

18   rationale?

19        A    The privacy rationale is premised on

20   the assumption that after the repeal of the ban

21   that conditions in living spaces will change.  And

22   if it is true that service members are serving

23   with people -- sorry -- that heterosexual service

24   members know that they are serving with gays and

25   lesbians now and if it is also the case that that

Aaron Belkin, Ph.D.                                      March 5, 2010

San Francisco, CA

Page 28

 1   is not likely to change or to change much

 2   postrepeal, then the privacy rationale by

 3   definition cannot be plausible because there would

 4   be no change in showers or barracks or intimate

 5   spaces.  So the baseline condition of whether

 6   people are serving with gays and lesbians now

 7   sustains that argument.  That is point 1.

 8           Point 2 is because the data to the

 9   extent that a significant portion of service

10   members, straight service members know they are

11   serving with gays and lesbians, that casts doubt

12   on the heat surrounding the privacy rationale.  If

13   you listen to the main proponents of the privacy

14   rationale and the way they express their claims,

15   their point is that there are no gays and lesbians

16   serving -- there are no -- straights are not aware

17   of any gays and lesbians in their units now.  And

18   if they were, we have a privacy disaster and the

19   sky would fall.

20           Well, the fact is to the extent that

21   the data show that they are serving with people

22   who they know to be gay, then the claim of the

23   privacy rationale proponents is wrong because

24   people are serving already.  And also the claims

25   about the sky falling down are at very least cast

Aaron Belkin, Ph.D.                                            March 5, 2010
San Francisco, CA

Page 29

1    into significant doubt because, obviously, the sky

2    hasn't fallen now.  So that's the reason why those

3    data are important.

4        Q    And in terms of the baseline that you

5    made reference to, why do you believe that the

6    baseline would not change postrepeal?

7        A    It is two factors -- well, possibly

8    more than two factors, but I will start with two

9    factors.

10            One is that the literature suggests

11   that what determines the level of outness, in

12   other words, what derives a decision to reveal

13   sexual orientation is not the presence or absence

14   of a ban but it is the safety of the unit.  And it

15   is the service member's assessment of the

16   climate -- the culture or the climate of the work

17   environment.  And not only is there scholarship on

18   that but to me that makes intuitive sense.  So

19   that's point 1.

20            And point 2 is that in analogous

21   institutions that I have studied, we have not seen

22   waves of mass disclosures postrepeal of a ban.

23   And so that is what informs my conclusion.

24       Q    And with respect to the first basis,

25   when you say it is the service member's perceived

Aaron Belkin, Ph.D.                                                    March 5, 2010
San Francisco, CA

Page 35

1        A    Under certain conditions?

2        Q    Yes?

3        A    Absolutely, under certain conditions

4   private showers are not possible.

5        Q    Do you believe that would be important

6   to take into consideration in evaluating the

7   privacy rationale?

8        A    I would say that if that were true --

9   and I have just acknowledged it is -- then the

10  privacy rationale could be valid in those

11  circumstances.

12       Q    Well, is it your opinion that a Don't

13  Ask, Don't Tell policy would be appropriate in,

14  say, combat conditions but not in noncombat

15  conditions where accommodations permit individual

16  showers or more private accommodations?

17       A    The research shows that, no, a Don't

18  Ask, Don't Tell situation would not further

19  heterosexual privacy in combat situations where

20  individual accommodations are not possible.

21       Q    What is that research that you are

22  referring to?

23       A    Well, my research, for one thing.

24       Q    What research?

25       A    The point -- well, it is many points.

Aaron Belkin, Ph.D.                                                    March 5, 2010
San Francisco, CA

Page 36

 1    I will go over all the points, yeah, I will

 2    because you asked me the question.

 3         Q    Yes.

 4         A    First of all, because there will be no

 5    change, no meaningful change among disclosure

 6    rates postrepeal.  So whether you have -- and in

 7    other words, even if you granted that every

 8    heterosexual person in the military is grossly

 9    discomfort in the nude around gays and lesbians,

10    there will be no change in the privacy conditions

11    even in combat postrepeal because again you won't

12    have any difference in the shower because

13    straights are already serving with people they

14    know to be gay, and the extent to which that is

15    true will not change in any meaningful way.  So

16    that is one.

17         Q    Can I just stop?  Can I stop you there

18    just -- you want to finish?

19         A    I actually would like to finish.

20         Q    That's fine.

21         A    Second of all, because actually in

22    combat situations what we find is that you have

23    men and women quartering together.  And so

24    actually in combat the military realizes and in

25    deployment situations when the bullets are flying,

Aaron Belkin, Ph.D.                                                          March 5, 2010

San Francisco, CA

Page 37

1    those are the moments when the troops are most

2    focused on the mission.  And to the extent they

3    are most focused on the mission, other concerns

4    recede to the background.

5             And, third of all, because my research

6    and others' research has shown that the level of

7    extreme discomfort around gays and lesbians has

8    diminished drastically, and so the percent of

9    people for whom even in theory this could be an

10   issue, which again would not change pre and

11   postrepeal, is very tiny.  So that is why I don't

12   believe that -- well, the research shows that

13   whether or not you have a gay ban is immaterial

14   for privacy in the shower.

15       Q    Okay.  And correct me if I'm wrong.

16   The baseline reasoning that you just set forth

17   that there would be no change in the percentage of

18   acknowledged gay and lesbian service members

19   between a prerepeal environment and a postrepeal

20   environment is based upon your research of foreign

21   militaries; correct?

22       A    I actually wouldn't say that.  I

23   wouldn't say that is totally the case.

24       Q    What would you say?

25       A    I would say that it is based on -- it

Aaron Belkin, Ph.D.                                    March 5, 2010
San Francisco, CA

Page 38

1    is based on a range of data analogous in the

2    institutions in the U.S.  We did not have reports

3    of mass disclosures in police or fire departments,

4    the CIA, basically any organization that changed

5    from a discriminatory to an inclusionary policy.

6    So we have never seen that.  So I guess that would

7    be Point 1.

8              Point 2, in the U.S. military itself

9    when the ban has been relaxed or softened, we did

10   not see any change in disclosure rates.  So we

11   have evidence from our militaries.  And then third

12   of all is the foreign militaries.

13             And then fourth of all is the

14   theoretical point -- it is not empirical but it is

15   theoretical, but consistent with all the empirics,

16   that what drives disclosure is not the presence or

17   absence of a ban but the service member's read of

18   the climate in the unit.

19        Q    And that finding applies across foreign

20   militaries that you studied, paramilitary

21   organizations such as police departments, federal

22   agencies such as the FBI, CIA, that permit the

23   disclosure of one's sexual orientation?

24        A    Yes, and the U.S. military.

25        Q    Right.  And describe for me the context

Aaron Belkin, Ph.D.                                          March 5, 2010

San Francisco, CA

Page 43

1          Q    Okay.  Anything else?

2          A    Yes, but I'm not recalling off the top

3     of my head.  But if I remember later, then I hope

4     I can say it later.

5          Q    You can absolutely say it later.

6          A    Okay.

7          Q    The third factor you set forth in

8     evaluating the privacy rationale was the

9     counterfactual.  And I have to admit you lost me

10    on that one.

11              What would be in the example of a

12    counterfactual of the complete ban that you were

13    referring to?

14         A    The counterfactual is a hypothetical.

15    It is a claim about something that never happened.

16    And so if you made a hypothetical or

17    counterfactual claim that God came in and told the

18    military who every gay person was, even if they

19    are closeted, have never -- they might not even

20    know themselves they are gay, but just identified

21    every person with a gay or possibly gay identity

22    and just got them out of the military so the

23    military was 100 percent straight, 100 percent

24    straight, no gays whatsoever, no closeted gays, no

25    future gays, what would happen in privacy

Aaron Belkin, Ph.D.                                                                          March 5, 2010
San Francisco, CA

Page 44

1    settings, in intimate settings in the shower in

2    the barracks.  So that's the hypothetical

3    experiment.

4              And my argument is that to the extent

5    you believe that the shower and barracks are

6    places where privacy violations take place because

7    of gays, then that hypothetical counterfactual

8    world with no gays would still have just as many

9    privacy violations involving just the same kinds

10   of things that people who articulate the privacy

11   rationale worry about now.

12             And the reason for that is because

13   straight service members have sex in the military

14   with each other.  And even if there were no gays,

15   they would just go right on having sex with each

16   other.  And so to the extent that that's what you

17   are concerned about, kind of looking and sexual

18   play and sex itself, that is actually not about

19   gay people being in the military.  That is a

20   phenomenon that is independent of whether or not

21   gays are in the military.  And there are three

22   reasons why I know that.

23        Q   What are those three reasons?

24        A   There is statistical evidence,

25   ethnographic evidence, and legal evidence.

Aaron Belkin, Ph.D.                                                    March 5, 2010
San Francisco, CA

Page 45

```
 1        Q    And take me through each of those
 2   pieces of evidence.
 3        A    Well, the legal evidence is the queen
 4   for a day exception, which has this lengthy
 5   history, that the military itself knows that this
 6   is going on which is why they need a queen for a
 7   day exception.  If it wasn't going on, then they
 8   would not need a queen for a day exception.  So
 9   the very fact that this regulation has lived in --
10   well, in regulation and in statute for most of the
11   last century is evidence that the military itself
12   knows quite well that this is going on.
13             The ethnographic evidence is just
14   descriptions from the literature.  I actually
15   wrote a whole study on this.  But, for example, a
16   marine chaplain who says something to the effect
17   of, oh, yeah, marines are always jacking off
18   together in the showers, that is very common from
19   what I have seen, so things like that.  A unit of
20   navy seals that I know of where the seals all in a
21   unit in a circle masturbate together, so things
22   like that -- straight seals.
23             And then the statistical evidence is
24   that the best available evidence we have is that
25   the percent of men -- gay men in the population
```

Aaron Belkin, Ph.D.                                      March 5, 2010

San Francisco, CA

Page 46

1   and the percent of gay men in the military is just

2   about the same, very close to each other.

3   However, if you look at statistical evidence about

4   the frequency of male/male sex among veterans, it

5   is much higher than in the general population.

6           And what that -- it does not prove that

7   the veterans are having the -- the straight

8   veterans are having gay sex in the military

9   because it is possible that veterans have more gay

10  sex than civilians because they have their gay sex

11  after their military service; that is absolutely

12  possible.  But I would say at the very least it is

13  not inconsistent with the notion supported by

14  ethnographic and legal evidence that straight

15  people are having gay sex in the military.  And

16  even if you could get rid of all gays, they would

17  just keep right on having that sex.  It is kind of

18  like a fraternity ritual, I mean, some of the

19  hazing rituals you hear about.

20          So I actually make this argument at

21  military academies when I go speak there.  And you

22  get a perplexed look from some people, but a lot

23  of people kind of nod and smirk and they know what

24  is going on.

25      Q   The fourth factor or fourth layer of

Aaron Belkin, Ph.D.                                                            March 5, 2010

San Francisco, CA

Page 74

1        Q    All right.  And what specific questions

2   did she say to anticipate in that regard?

3        A    I don't think she specified anything,

4   but she said that that was -- my memory is

5   correct, she said that was an area where your

6   side, the Government seems intent on trying to

7   make a point.

8        Q    Okay.  With respect to we talked

9   earlier about the privacy rationale, did the

10  Israeli defense forces make any special

11  accommodation for gays and lesbians or

12  heterosexuals postrepeal?

13       A    Are you talking about special

14  accommodations in terms of systematic policy law

15  or regulation or are you talking about special

16  accommodations in terms of micro-practices,

17  discretionary practices on the ground?

18       Q    Let's start with the latter.  What I am

19  thinking of is either in terms of facilities or

20  allowing heterosexuals, for example, to serve, to

21  live at home if they had a particular privacy

22  interest that they felt was being infringed upon

23  by allowing gays and lesbians to openly serve.

24       A    I believe we found one case where a

25  commander had allowed a straight service member to

Aaron Belkin, Ph.D.                                        March 5, 2010

San Francisco, CA

Page 75

1    shower at different times.  So I believe it was he

2    would not have to be in the shower with other

3    people.  And I believe we found one case where

4    someone was allowed to live off base.  And I am

5    sorry I don't remember if that was the same person

6    or not.

7           Q    So that was a heterosexual service

8    member?

9           A    If my memory is correct.

10          Q    And the special accommodation that was

11   provided for that heterosexual member or members

12   was based upon a privacy concern expressed by the

13   heterosexual member?

14          A    I don't know the details but my strong

15   suspicion would be yes.

16          Q    What is that suspicion based upon?

17          A    That they wouldn't have done the --

18   they wouldn't have made the accommodation if there

19   wasn't a concern.

20          Q    Did you find any other -- well, step

21   back.

22               You have looked at the Canadian,

23   Australian, Israeli, and Great Britain examples;

24   right?

25          A    Me personally or the center?

Aaron Belkin, Ph.D.                                        March 5, 2010
San Francisco, CA

Page 209

1   the pluralistic ignorance hypothesis.  And I could

2   get you references of that.  It is a well

3   established hypothesis in the psychological

4   literature.

5        Q    I only have one more question.  You

6   submitted your report -- or we submitted your

7   report to the Government on January 15th 2010.

8   Has anything happened since then that either

9   bolsters your expert opinion or is relevant to

10  your expert opinion in this case?

11       A    Well, the chairman of the Joint Chiefs

12  of Staff said that he thinks the policy

13  compromises the integrity of the forces by forcing

14  service members to lie.  And a currently serving

15  chairman of the Joint Chiefs of Staff has never

16  said that.  And he said that our troops are pretty

17  robust and professional and that they can make the

18  adjustment to an inclusive policy without

19  problems.  So I would say that that testimony

20  bolstered the research.

21            And I would say in terms of the

22  conviction, that people who express reservations

23  about unit cohesion and privacy and things like

24  that are not coming from a place based on evidence

25  but are coming from a place based on moral

Aaron Belkin, Ph.D.                                          March 5, 2010

San Francisco, CA

Page 210

1    intolerance.  I just found out that, in fact,

2    General Conway of the Service Chief of the Marines

3    is coordinating opposition to repeal efforts with

4    Peter Pace.  And Peter Pace is the former chairman

5    of the Joint Chiefs of Staff who was honest enough

6    to admit when asked by the Chicago Tribune

7    editorial board why we have a Don't Ask, Don't

8    Tell policy, he was honest enough to admit it is

9    because homosexual conduct is immoral.

10            Now, he was rowdly criticized for that,

11   but I was actually happy he said that because for

12   the first time we had a military person being

13   honest about the policy.  So the fact that he is

14   back in the quarterback seat tells me --

15   reinforces my conviction that this policy is not

16   and never has been about cohesion or privacy or

17   any other rational military ends but it is about

18   promoting the moral convictions of a particular

19   group of individuals.

20            MS. FELDMAN:  I have no other

21   questions.

22            MR. FREEBORNE:  Thank you, Doctor.  No

23   further questions.

24       (Deposition concluded at 2:53 p.m.)

25

Aaron Belkin, Ph.D.                                                    March 5, 2010

San Francisco, CA

Page 211

```
 1                    CERTIFICATE OF DEPONENT

 2

 3    I hereby certify that I have read and examined the

 4    foregoing transcript, and the same is a true and

 5    accurate record of the testimony given by me.

 6    Any additions or corrections that I feel are

 7    necessary, I will attach on a separate sheet of

 8    paper to the original transcript.

 9

10                          _____

11                                    Signature of Deponent

12

13    I hereby certify that the individual representing

14    himself/herself to be the above-named individual,

15    appeared before me this _____ day of _____,

16    2010, and executed the above certificate in my

17    presence.

18

19                          _____

20                                    NOTARY PUBLIC IN AND FOR

21

22                          _____

23                                    County Name

24

25    MY COMMISSION EXPIRES:
```

Aaron Belkin, Ph.D.                                                    March 5, 2010
                              San Francisco, CA

Page 212

1   STATE OF CALIFORNIA )

2   : ss                 )

3   County of Alameda    )

4          I, the undersigned, a Certified

5   Shorthand Reporter of the State of California, do

6   hereby certify:  That the foregoing proceedings

7   were taken before me at the time and place herein

8   set forth; that any witnesses in the foregoing

9   proceedings, prior to testifying, were placed

10  under oath; that a verbatim record of the

11  proceedings was made by me using machine shorthand

12  which was thereafter transcribed under my

13  direction; further, that the foregoing is an

14  accurate transcription thereof.  I further certify

15  that I am not a relative, employee, attorney or

16  counsel of any party to this action or relative or

17  employee of any such attorney or counsel and that

18  I am not financially interested in the said action

19  or the outcome thereof;

20          IN WITNESS WHEREOF, I have this date

21  subscribed my name.

22  Dated:_____

23

24          EMI ALBRIGHT, CSR No. 13042

25

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION

 4    ----------------------------

 5    LOG CABIN REPUBLICANS,

 6              Plaintiff,

 7         vs.                No. CV04-8425

 8                            (VAP) (Ex)

 9    UNITED STATES OF AMERICA

10    AND ROBERT GATES,

11    Secretary of Defense,

12              Defendants.

13    ----------------------------

14

15                 February 26, 2010

16                 10:02 a.m.

17         Deposition of Expert Witness

18    NATHANIEL FRANK, Ph.D., held at the

19    offices of White & Case, LLP, 1155 Avenue

20    of the Americas, New York, New York,

21    pursuant to Notice, before Theresa

22    Tramondo, a Notary Public of the State of

23    New York.

24

25
```

Nathaniel Frank, Ph.D.                                                February 26, 2010

New York, NY

Page 8

```
 1    N A T H A N I E L    F R A N K,    P h. D.,

 2         called as a witness, having been duly

 3         sworn by a Notary Public, was examined and

 4         testified as follows:

 5    EXAMINATION BY

 6    MR. FREEBORNE:

 7         Q.    State your name for the record,

 8    please.

 9         A.    Dr. Nathaniel Frank, Ph.D.

10         Q.    What is your address?

11         A.    Home address is 118 Gates Avenue,

12    Brooklyn, New York 11238.

13         Q.    Dr. Frank, good morning.

14         A.    Morning.

15         Q.    I introduced myself this morning,

16    but my name is Paul Freeborne.  I'm an

17    attorney at the Department of Justice.  I am

18    counsel of record in the case captioned Log

19    Cabin Republicans versus The United States.

20    The action has been brought against the

21    United States and Secretary Gates.  As you

22    know, it involves a facial challenge to the

23    "Don't Ask, Don't Tell" statute.

24              To my left is Ryan Parker.  He's

25
```

Nathaniel Frank, Ph.D.                                      February 26, 2010
                        New York, NY

                                                          Page 46

     1                        Frank

     2      irrational in a legal sense, but go ahead

     3      answer the question.

     4      Q.    Are you entering any legal opinions

     5   in this case?

     6      A.    No.

     7            When you say "in this case," do you

     8   mean --

     9      Q.    As an expert in this case.

    10      A.    You mean LCRVUS or in this issue

    11   we're discussing?

    12      Q.    I see them as co-extensive, but in

    13   "this case" being Log Cabin versus United

    14   States, as an expert, are you rendering any

    15   legal opinions?

    16      A.    Well, I am not a lawyer, so I

    17   have --

    18      Q.    I just note that because I am not

    19   asking you for a legal conclusion.

    20      A.    Okay.

    21      Q.    When I use "irrational," I mean it

    22   in a -- from the vantage point of expert

    23   opinion as a factual matter.

    24      A.    Let me try to answer that question

    25   this way:  Some people in the military have a

Nathaniel Frank, Ph.D.                                    February 26, 2010

New York, NY

Page 47

1                          Frank

2   desire not to serve with gay people because

3   they feel that it is an invasion of their

4   privacy.  I'm not comfortable concluding that

5   some people's feelings and desires are

6   irrational, that those people's desires and

7   feelings are irrational.

8       Q.    Do you have anything else to add on

9   that?  I don't want to cut you off?

10      A.    No.

11      Q.    Have you ever been involved either

12  as an expert or a nontestifying expert in any

13  other challenge to the "Don't Ask, Don't

14  Tell" policy?

15      A.    Legal challenge?

16      Q.    Legal challenge?

17      A.    I was involved as an expert witness

18  in a case -- a military criminal case of

19  nonconsensual sex.  My understanding is that

20  was not a challenge to "Don't Ask, Don't

21  Tell."

22      Q.    Is that United States V Sergeant

23  Dale Boldware?

24      A.    That's right.

25      Q.    What did you do in that case?

Nathaniel Frank, Ph.D.                                      February 26, 2010
New York, NY

Page 111

1                          Frank

2        Q.    Do you believe that General

3    Powell's testimony in that record was based

4    upon a moral animus towards gay and lesbian

5    service members?

6        A.    Based on that assertion, no.

7        Q.    Do you believe that he was

8    motivated by an animus towards gay and

9    lesbian service members in providing the

10   testimony he did before the Senate?

11       A.    What I say in my report is that

12   Powell is one of the people who argued for

13   the band based on personal reasons.  I don't

14   know that that rises in his case to moral

15   animus.  I believe that he believed that open

16   homosexuals should not be allowed to serve in

17   the military but didn't base that belief on

18   military necessity.  It was a personal

19   belief.  I am not calling it animus.

20       Q.    Do you agree or disagree that his

21   concern with privacy was based upon his

22   professional military judgment?

23       A.    His concern with privacy as a

24   general matter may certainly be based on his

25   professional military judgment, but what he

Nathaniel Frank, Ph.D.                                                    February 26, 2010

New York, NY

Page 112

```
 1                        Frank

 2    says here does not constitute an argument for

 3    keeping out open homosexuals.

 4        Q.    Why is that?

 5        A.    Because what he says here is that

 6    service members are required to serve with

 7    very little privacy, so it doesn't make any

 8    sense to me to conclude from that that there

 9    is a justification to exclude open

10    homosexuals since he's just acknowledged that

11    part of being in the military means

12    sacrificing privacy.

13        Q.    Isn't it fair to say that the

14    concern that he was expressing is that if the

15    military were to permit gay and lesbian

16    service members to serve openly that that

17    would infringe upon the privacy interests of

18    heterosexual service members?

19        A.    No.  More than all of the other

20    infringements of privacy he just said service

21    members would have to endure.

22        Q.    Right.  He's recognizing the

23    privacy --

24        A.    It is consistently infringed in the

25    military; hence, my interpretation when he
```

Nathaniel Frank, Ph.D.                                February 26, 2010

New York, NY

Page 113

1                          Frank

2    draws a line in the sand around gay people,

3    that reflects a personal basis because it's

4    inconsistent with his acknowledgment that

5    military service requires that privacy be

6    sacrificed.

7        Q.    I direct your attention further

8    down that same page.  This is in reference to

9    the sexual tension point.  The sentence that

10   reads "The separation of men and women is

11   based upon the military necessity to minimize

12   conditions that would disrupt unit cohesion,

13   such as the potential for increased sexual

14   tension that could result from mixed living

15   quarters."  Then it goes onto quote General

16   Powell.  He states, "Cohesion is strengthened

17   or weakened in the intimate living

18   arrangements we force upon our people.

19   Youngsters from different backgrounds must

20   get along together despite their individual

21   preferences.  Behavior too far away from the

22   norm undercuts the cohesion of the group.  In

23   our society gender differences are not

24   considered conducive to bonding and cohesion

25   within barracks living spaces."

Nathaniel Frank, Ph.D.                                         February 26, 2010

New York, NY

                                                        Page 114

1                          Frank

2            Do you see that?

3       A.    Yes.

4       Q.    Then he goes on to -- well, do you

5    have any reason to question the testimony he

6    gave as it relates to the accommodation we

7    must make for men and women?

8       A.    If I could have a second to read it

9    over again.

10      Q.    Sure.

11      A.    Again, you ask me if I agreed with

12   his assertion there?  It's a contradictory

13   statement as it relates to -- as it relates

14   to an argument in favor of excluding open

15   gays.  He says "Youngsters from different

16   background must get along together despite

17   their individual preferences."  And then he

18   says "Behavior too far away from the norm

19   undercuts cohesion of the group," having just

20   said that youngsters must get along despite

21   individual preferences.  So the assertion is

22   confusing to me at best.

23      Q.    Do you take issue with the separate

24   accommodations that the military provides for

25   men and women?

Nathaniel Frank, Ph.D.                                          February 26, 2010

New York, NY

Page 118

1                          Frank

2    according to this concern if it were to be

3    fully honored, you couldn't put individual

4    gay males together either because then they

5    could be uncomfortable undressing in front of

6    one another.

7        Q.    Beyond the financial cost, what

8    other costs are you referring to?

9        A.    Costs to cohesion; for instance,

10   General Carl Mundy, who is former opponent of

11   allowing open gay service has said

12   nevertheless that if open gay service is to

13   be the new policy there should not be

14   separate facilities, a finding that echoed in

15   the RAND study, because that breeds

16   resentment and undercuts the cohesiveness of

17   the force by separating people out that need

18   to be training and living together.

19       Q.    Part three of your report you

20   attribute certain statements to Senator Nunn.

21   If you could return back to your expert

22   report and look at part three, I ask you

23   where I could find the statements that you

24   attribute to Senator Nunn?  I am sorry.  On

25   page 5.

Nathaniel Frank, Ph.D.                                                    February 26, 2010
New York, NY

Page 119

```
 1                        Frank

 2      A.    Well, I would recommend looking in

 3   my book where I believe those quotes appear

 4   with footnotes.

 5      Q.    Okay.

 6            Describe for me the conversations

 7   you had with Professor Moskos?

 8      A.    I first interviewed Professor

 9   Moskos about this issue in the year 2000 for

10   an article I wrote.  I focused in part on the

11   question of unit cohesion and began examining

12   what, if any, evidence there might be for the

13   argument that open homosexuality creates a

14   risk to unit cohesion.  I spoke to him and

15   e-mailed him across a period of months

16   probably at that time for that article, and

17   subsequent to that I had several

18   conversations, again e-mail, phone and in

19   person, over the course of another eight

20   years.  Not frequent but from time to time.

21   You know, a couple of years -- a few years.

22            In one of the early conversations

23   in 2000 for the article I was writing at the

24   time, I asked him about the role of unit

25   cohesion in this argument and that's when he
```

Nathaniel Frank, Ph.D.                                    February 26, 2010

New York, NY

Page 120

                              Frank

1

2    dismissed unit cohesion saying "fuck unit

3    cohesion, I don't care about that," and told

4    me instead that his argument for supporting a

5    band on open service had to do with a moral

6    concern about the right, as he saw it, of

7    straight people not to have to share intimate

8    quarters with a gay person.

9        Q.    It's the privacy concern that we

10   have been discussing that Colin Powell

11   expressed for one?

12       A.    That's right.  But Professor Moskos

13   didn't always rely exclusively on the privacy

14   argument alone.

15       Q.    Based upon your interaction with

16   Professor Moskos, did you have any reason to

17   believe that he had a personal animus towards

18   gay and lesbian service members?

19       A.    Yes.

20       Q.    What was that based upon?

21       A.    He often used to joke that he knew

22   he served with gay people, but it worked out

23   because they didn't hit on him, which implied

24   to me a personal belief that gay people were

25   more likely to be sexual predators than

Nathaniel Frank, Ph.D.                                        February 26, 2010

New York, NY

Page 192

```
 1                    Frank

 2    proximity' and soldiers 'are told whom you're

 3    going to live with' and because it is such an

 4    important institution of American power

 5    Powell said, 'We have to be careful when we

 6    change the policy.'"

 7       Q.    The quotes that Dr. Frank -- those

 8    are from Colin Powell, correct?

 9       A.    Yes.

10       Q.    Why are you being critical of Colin

11    Powell here?

12       A.    Because in my view he's -- these

13    assertions are irrelevant to the question of

14    whether openly gay service undermines the

15    military, so to repeat assertions that are

16    not untrue necessarily but are not relevant

17    to the question at hand in my view in order

18    to make a reform in policy seem difficult and

19    dangerous is arguing in bad faith.

20       Q.    Why is it arguing in bad faith?

21       A.    Because he's saying these things as

22    though simply by saying them people should

23    understand that there is great risk to

24    letting gay serve in the military when, in

25    fact, in my view there isn't.
```

Nathaniel Frank, Ph.D.                                                February 26, 2010

New York, NY

Page 193

```
 1                        Frank

 2      Q.    Because you believe the privacy

 3 rationale to be irrelevant?

 4      A.    The privacy rationale to propping

 5 up the policy?

 6      Q.    The privacy rationale that we

 7 discussed earlier that Colin Powell espoused

 8 during the Senate hearing?

 9      A.    I believe that people's genuine

10 discomfort in terms of the impact of known

11 gays on their privacy does not rise to the

12 level of undercutting military effectiveness.

13      Q.    Dr. Frank, I would like to now mark

14 as Defendants' Exhibit 17 another opinion

15 piece that appears in the Huffington Post on

16 January 22, 2010.

17            (Defendants' Exhibit 17, opinion

18       piece appearing in the Huffington Post

19       entitled "Refuting the Latest Arguments

20       Against Gay Troops," marked for

21       identification, as of this date.)

22      Q.    This article is entitled "Refuting

23 the Latest Arguments Against Gay Troops."

24 Again, it appeared in --

25            Let me step back.  We have a posted
```

Nathaniel Frank, Ph.D.                                                February 26, 2010
New York, NY

Page 233

```
 1              CERTIFICATE OF DEPONENT

 2

 3   I hereby certify that I have read and examined the

 4   foregoing transcript, and the same is a true and

 5   accurate record of the testimony given by me.

 6   Any additions or corrections that I feel are

 7   necessary, I will attach on a separate sheet of

 8   paper to the original transcript.

 9

10                     _____

11                         Signature of Deponent

12

13   I hereby certify that the individual representing

14   himself/herself to be the above-named individual,

15   appeared before me this _____ day of _____,

16   2010, and executed the above certificate in my

17   presence.

18

19                     _____

20                     NOTARY PUBLIC IN AND FOR

21

22                     _____

23                         County Name

24   MY COMMISSION EXPIRES:

25
```

Nathaniel Frank, Ph.D.                                    February 26, 2010
New York, NY

                                                              Page 234

     1              C E R T I F I C A T E

     2     STATE OF NEW YORK     )

     3                           : ss.

     4     COUNTY OF NEW YORK    )

     5

     6              I, THERESA TRAMONDO, a Notary

     7        Public within and for the State of New

     8        York, do hereby certify:

     9              That NATHANIEL FRANK, Ph.D., the

    10        witness whose deposition is hereinbefore

    11        set forth, was duly sworn by me and that

    12        such deposition is a true record of the

    13        testimony given by the witness.

    14              I further certify that I am not

    15        related to any of the parties to this

    16        action by blood or marriage, and that I

    17        am in no way interested in the outcome of

    18        this matter.

    19              IN WITNESS WHEREOF, I have hereunto

    20        set my hand this 8th day of March, 2010.

    21

    22              _____

    23                   THERESA TRAMONDO

    24

    25

John Alexander Nicholson, III

Washington, DC

March 15, 2010

Page 1

1                 UNITED STATES DISTRICT COURT

2           FOR THE CENTRAL DISTRICT OF CALIFORNIA

3                     EASTERN DIVISION

4      - - - - - - - - - - - - - - x

5   LOG CABIN REPUBLICANS,          :

6                                   :

7          Plaintiff,               :

8                                   :

9              v.                   :    CA No. CV04-8425

10                                  :         (VAP)(Ex)

11  UNITED STATES OF AMERICA AND    :

12  ROBERT GATES, Secretary of      :

13  Defense,                        :

14                                  :

15         Defendants.              :

16  - - - - - - - - - - - - - - x

17

18                                  Washington, D.C.

19                          Monday, March 15, 2010

20

21

22

Alderson Reporting Company
1-800-FOR-DEPO

**LCR Appendix Page 0035**

John Alexander Nicholson, III          Confidential - Under Protective Order          March 15, 2010
                                              Washington, DC

Page 66

```
 1    the -- that was the trigger that started a process

 2    that included the -- the happenings that we just

 3    finished going over, and ended with my separation.

 4         Q    It says in paragraphs five and six, it

 5    says that a follow service member learned that you

 6    were a homosexual and revealed that to other

 7    members of the army.  As a consequence, you were

 8    subject to separation proceedings.

 9              You told me earlier about the

10    proceedings that started when you talked to your

11    supervisor about the harassment.

12              Are those the same separation

13    proceedings you're referring to in paragraph six?

14         A    Yes.  That was, like I said, sort of the

15    mid point of the entire process.

16         Q    What point was the mid point?

17         A    The point at which I spoke to my

18    supervisor about the harassment issues, the issues

19    of people asking me if I was gay, telling me they

20    knew I was gay or suspected I was gay.

21         Q    You said the mid point.  Let's make sure

22    we have the sequence of events down correctly.
```

John Alexander Nicholson, III          Confidential - Under Protective Order          March 15, 2010
Washington, DC

Page 67

1          Which came first, your talking to your

2     supervisor about the harassment, or a fellow

3     service member learning that you were a

4     homosexual?

5          A     The latter.

6          Q     Your talking to your supervisor?

7          A     No, a fellow service member learning

8     that I was a homosexual.

9          Q     Okay.  You said the latter.

10          And you say that this fellow service

11     member revealed -- well, first of all, let's go

12     back to how the fellow service member learned.

13          Can you tell me how the fellow service

14     member learned that you were a homosexual?

15          A     Yeah.  She basically read it in a letter

16     that I had written to someone that I used to date,

17     that basically revealed the fact that I was gay.

18     And that's how she came across the information.

19          Q     What were the circumstances of her

20     reading the letter?

21          A     What do you mean?

22          Q     How did she --

John Alexander Nicholson, III          Confidential - Under Protective Order          March 15, 2010
                                       Washington, DC

Page 68

1          A      How did she come across the letter?  I

2     had left the letter out in the course of drafting

3     it, because it was written in another language.

4     And so I had -- it was probably about five pages

5     long.  So I had, if I remember correctly, I had

6     more than five pages, because it was drafted and

7     rewritten a couple of times.

8                And let's see.  So I had a number of

9     these pages out on the table, on a table where I

10    was sitting.  And if I remember correctly, she

11    came over and sat down with me.  And if I remember

12    correctly -- and I'm trying to think through this,

13    so as to be as accurate as possible without

14    portraying as assumptions, portraying as fact what

15    may be assumptions.

16                So basically I had a letter -- several

17    pages of a letter laying out in which -- that I

18    was writing to someone that I used to date, in

19    which I was sort of making amends with that

20    person, so going through quite a bit of, you know,

21    past history, and clearing things up, and

22    apologizing, and, you know.  So most of the

1    content of the pages were about that relationship

2    and things like that.

3           So and then they were out.  She came

4    over and joined me where I was, where I had these

5    pages spread out and they were drafted.  And then

6    she saw the content of at least one of the pages.

7    And she also happened -- it was written in

8    Portuguese.  And she also happened to speak

9    Portuguese.  And so in seeing some of the content

10   of the letter there on the table, with the pages

11   spread out, that's how she came to realize that I

12   was gay.

13        Q    How did you know that that's how she

14   came to realize that you were gay?

15        A    Because -- I can't -- and I don't

16   remember exactly the expressions or words she

17   used, but she made it clear to me that that's what

18   she had picked up and seen.  And I think she said

19   something to the effect of -- if I remember

20   correctly, I want to say she said something to the

21   effect of that's okay, I still respect you, or

22   something like that.

John Alexander Nicholson, III        Confidential - Under Protective Order        March 15, 2010
Washington, DC

Page 70

1              She said something to clearly indicate

2    to me that she had saw something in there that

3    indicated that I was gay.  And I took that to

4    mean -- well, I mean, yeah, I took that to mean

5    that she had seen it or that she had picked that

6    up from that.

7        Q    And then you say in paragraph five of

8    Exhibit 42, your declaration, that she revealed

9    that to other members of the army.

10              To whom did she reveal it?

11       A    I don't know everyone she revealed it

12    to.  I do know a couple of the people who came

13    back and specifically referenced things related to

14    that particular letter I had written.  Are you

15    looking for specific names?

16       Q    No, not specific names.

17       A    Oh.  Yeah, there were just a couple of

18    the people who approached me right after that and

19    said that they, you know, knew I was -- some

20    people approached me and told me -- like one

21    person, for example, approached me and said you

22    need to be more careful.  This person is saying

Alderson Reporting Company
1-800-FOR-DEPO

**LCR Appendix Page 0040**

John Alexander Nicholson, III          Confidential - Under Protective Order          March 15, 2010
Washington, DC

Page 71

1    that she's recently found out about -- found out

2    things about you that made her lose a lot of

3    respect for you in some letter you've written.

4    And you just need -- you know, and another person

5    who was friends with her then, you know, made an

6    anti-gay remark at -- within a couple of days

7    towards me.

8              And so there was a series of a couple of

9    different people either who were close friends

10   with that person, or -- making remarks, or people

11   who made remarks and specifically referenced

12   something that let me know that the information

13   that they were referencing came from that

14   particular source.  If that makes sense.

15       Q    Were any of those other people who

16   mentioned that to you, were any of them among your

17   supervisors?

18       A    I don't think they were at the time that

19   they approached me about that.  And I don't

20   think -- I have to think about it, because I don't

21   exactly recall.  I don't think those particular

22   people that we were just talking about had been or

John Alexander Nicholson, III                                    March 15, 2010
                              Washington, DC

Page 82

1    investigated," again I think that if I were

2    telling the story myself, especially in a way in

3    which I would want to be as accurate and technical

4    as possible, I probably wouldn't choose some of

5    these words.

6            But I can -- I can definitely see I

7    guess -- and I'm trying to be as accurate as

8    possible here without being confusing, so I'm

9    searching for the right words.  Well, I guess let

10   me just put it this way.  And let me know if this

11   doesn't suffice.  I think it's not all technically

12   correct.  But it's a pretty typical, from what

13   I've seen, way in which writers will summarize or

14   try to convey the substance of an interview

15   they've done with me about my experience.  If that

16   makes sense.

17       Q    Would you have -- you said you may have

18   chosen different words.

19            In the sentence that you just read from

20   the Frank book, would you have chosen the word

21   "investigated"?

22       A    [Witness examined document].  I think

John Alexander Nicholson, III                                March 15, 2010
                        Washington, DC

                                                          Page 83

1    so.  I think I would describe what I feared would

2    be the outcome if I didn't go with the process

3    that was being recommended to me would be that I

4    would be interrogated or investigated in a perhaps

5    more abusive and malicious manner --

6        Q    Who told --

7        A    -- because of --

8        Q    Who told you you would be investigated?

9        A    I don't think anyone specifically said

10   to me you will be investigated.  I think it -- and

11   I'm trying to remember.  And as I'm talking, I'm

12   trying to also think at the same time if someone

13   specifically told me that.  I can't recall if

14   anyone did tell me that exact phrase or not.

15           But the way I recall it is it was my

16   understanding that if things proceeded as they --

17   it looked like they were going to had I not gotten

18   an attorney involved, that would have in -- that

19   process would have included being interrogated by

20   the first sergeant and possibly being investigated

21   in other ways that I may have not have known

22   specifically.  But I just had a general

                    Alderson Reporting Company
                        1-800-FOR-DEPO

John Alexander Nicholson, III                                          March 15, 2010
                              Washington, DC

                                                                    Page 84

1    understanding that that would be the case.

2            I'd seen -- and part of that

3    understanding was based on the fact that I'd seen

4    that happen once before.  And I -- I'd -- I'd been

5    told by someone else in the unit that that was

6    what the command and the first sergeant had done

7    before and might consider doing again, or might

8    consider doing with me, and that I think suspicion

9    or fear was sort of confirmed when they told me

10   that I was going to be interrogated or questioned

11   by the first sergeant.

12       Q    Who told you you were going to be

13   interrogated by the first sergeant?

14       A    The platoon sergeant, Messenger.

15       Q    Do you know what Messenger's rank was?

16       A    He was a Sergeant First Class, an E7.

17       Q    Now, you said at some point that you had

18   some communication with the squad leader?

19       A    What do you mean?

20       Q    I think earlier, before the break, you

21   testified that there was some communication with

22   the squad leader about the process that they were

John Alexander Nicholson, III
Washington, DC
March 15, 2010

Page 91

```
 1    knew of the need to be accurate and correct

 2    obviously here today, I at least wanted to be

 3    aware of what, you know, might be brought up that

 4    might not contradict but -- well, in a way

 5    contradict what I was saying here, because I knew

 6    there was some stuff out there that's largely

 7    inaccurate and some other stuff that's not so much

 8    inaccurate but just more of a summary than actual

 9    detail.

10    BY MR. SIMPSON:

11        Q    If I could get back --

12        A    Sure.

13        Q    -- Exhibit 43 from you, please.

14        A    [Handing document].

15        Q    Is it correct -- it says, Nicholson

16    worried that even though discharges for

17    homosexuality are normally honorable, if he

18    contested the charges, vengeful superiors might

19    seek to give him less than an honorable discharge.

20            Does that accurately reflect your

21    thoughts during the time of your discharge?

22        A    I remember thinking about the issue of
```

John Alexander Nicholson, III                                    March 15, 2010
                              Washington, DC

Page 92

1     the characterization of discharge at some point,

2     but I don't remember exactly when it was.  Let me

3     see.

4              [Witness examined document].  Okay.  I

5     don't remember exactly if -- state the question

6     one more time so I can make sure I'm answering

7     exactly --

8        Q    I read the sentence that starts with,

9     "Nicholson worried that," at the bottom of the

10    page.

11       A    You're just asking if it's accurate, if

12    the sentence is accurate?

13       Q    Correct.

14       A    Okay.

15              [Witness examined document].  My only

16    concern -- the only reason I hesitate in saying

17    that it's accurate or inaccurate is because I'm

18    trying to -- the sentence sort of implies a

19    chronological sequence I guess to my thought

20    process.  And I'm trying to remember -- and I

21    don't know that I can right now -- if the

22    chronology implied in the sentence is accurate

John Alexander Nicholson, III

Washington, DC

March 15, 2010

Page 93

1    here.

2          I generally remember at some point being

3    concerned about the characterization of

4    discharges, of discharge.  But I honestly don't

5    remember if it was specifically -- if it

6    specifically related to whether or not I contested

7    the discharge.  That may have been a part of the

8    calculus.  But I remember the larger part being

9    how wide-ranging is this line of inquiry going to

10   be if -- if I choose to contest it.

11          And it's -- it -- one other phenomena I

12   guess going on here too, it's -- in my mind it's a

13   little bit blurred too.  I mean, like I said,

14   first of all, it's been eight years.  And a lot of

15   this stuff I haven't thought of or thought about

16   in minute detail.  But I feel like my mind is also

17   a little bit blurred by the fact that I do this a

18   lot from an advocacy standpoint.

19          And so I know I talk a lot about the

20   fact that people fear that if you con -- if you

21   pursue or contest -- if you contest a discharge or

22   pursue the remedies, administrative remedies you

John Alexander Nicholson, III
Washington, DC
March 15, 2010

Page 94

1    have available, that there is a general fear that

2    you could end up with a less than honorable

3    discharge.

4            But I -- I honestly can't remember the

5    exact order.  And I hope I'm making sense here.  I

6    can't remember whether the chronology implied in

7    the sentence is one hundred percent accurate or

8    not.  Like I said, the best I can really give you

9    is that I remember that at some point that was

10   part of my thought process.

11       Q    You mean share --

12       A    But it was a smaller part of it than the

13   other fear, which was that this wide-ranging line

14   of inquiry would proceed.

15       Q    When you say that was part of your

16   thought process, you mean in sharing that it was

17   an honorable discharge?

18       A    Right.  At some point the concern about

19   making sure that the discharge was honorable

20   entered my thought process for the whole issue,

21   you know, at the time.

22       Q    After the disclosure that you are gay,

Alderson Reporting Company
1-800-FOR-DEPO

**LCR Appendix Page 0048**

John Alexander Nicholson, III                                        March 15, 2010
                            Washington, DC

Page 119

```
 1                  CERTIFICATE OF DEPONENT

 2    I hereby certify that I have read and examined the

 3    foregoing transcript, and the same is a true and

 4    accurate record of the testimony given by me.

 5    Any additions or corrections that I feel are

 6    necessary, I will attach on a separate sheet of

 7    paper to the original transcript.

 8

 9                    _____

10                         Signature of Deponent

11    I hereby certify that the individual representing

12    himself/herself to be the above-named individual,

13    appeared before me this _____ day of _____,

14    2010, and executed the above certificate in my

15    presence.

16

17                    _____

18                    NOTARY PUBLIC IN AND FOR

19                    _____

20                         County Name

21

22    MY COMMISSION EXPIRES:
```

John Alexander Nicholson, III

March 15, 2010

Washington, DC

Page 120

```
 1                 CERTIFICATE OF NOTARY PUBLIC

 2              I, BARBARA A. HUBER, CSR, the officer

 3    before whom the foregoing deposition was taken, do

 4    hereby certify that the witness whose testimony

 5    appears in the foregoing deposition was duly sworn

 6    by me; that the testimony of said witness was

 7    taken by me in stenotypy and thereafter reduced to

 8    print under my direction; that said deposition is

 9    a true record of the testimony given by said

10    witness; that I am neither counsel for, related

11    to, nor employed by any of the parties to the

12    action in which this deposition was taken; and,

13    furthermore, that I am not a relative or employee

14    of any attorney or counsel employed by the parties

15    hereto, nor financially or otherwise interested in

16    the outcome of this action.

17    _____

18    BARBARA A. HUBER, CSR

19    Notary Public, in and for the

20    District of Columbia

21    My Commission Expires: March 14, 2012

22
```

1  TONY WEST
   Assistant Attorney General
2
   GEORGE S. CARDONA
3  Acting United States Attorney

4  VINCENT M. GARVEY
   PAUL G. FREEBORNE
5  RYAN B. PARKER
   U.S. Department of Justice
6  Civil Division
   Federal Programs Branch
7  P.O. Box 883
   Washington, D.C. 20044
8  Telephone: (202) 353-0543
   Facsimile: (202) 616-8202
9  E-Mail: paul.freeborne@ usdoj.gov

10 Attorneys for Defendants United States
   of America and Secretary of Defense

11
               UNITED STATES DISTRICT COURT
12        FOR THE CENTRAL DISTRICT OF CALIFORNIA
                    EASTERN DIVISION
13
   LOG CABIN REPUBLICANS,           )   No. CV04-8425 GPS (Ex)
14                                   )
                  Plaintiff,         )   DEFENDANTS' OBJECTIONS
15                                   )   AND RESPONSES TO
           v.                        )   PLAINTIFF'S FIRST SET OF
16                                   )   REQUESTS FOR PRODUCTION
   UNITED STATES OF AMERICA AND      )   OF DOCUMENTS
17 ROBERT GATES, Secretary of Defense, )
                                     )
18                Defendants.        )
                                     )
19                                   )
                                     )
20                                   )
                                     )
21 _____ )

22

23

24

25

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

WHITE & CASE
File # _____
JAN 1 4 2010
Dkt_____By_____
Attys_____
   _____

1    Pursuant to Federal Rules of Civil Procedure 26 and 34, and subject to the

2  objections stated below, Defendants United States and Secretary Gates hereby

3  respond to Plaintiff's First Set of Requests for Production of Documents

4  ("Document Requests").

5    To the extent possible, Defendants plan to scan the documents they produce

6  onto compact discs, which will then be mailed to Plaintiff's counsel.  If production

7  in this manner becomes unduly burdensome, Defendants will make responsive

8  documents available for inspection.

9  **GENERAL OBJECTIONS**

10    1.    Defendants object to Plaintiff's Document Requests to the extent that

11  Plaintiff seeks to probe the motivations of the Legislative and Executive Branches

12  in passing statutes and promulgating regulations implementing the law.

13  Well-established Supreme Court precedent squarely holds that inquiry into the

14  motivations of Congress in enacting a statute is not appropriate.  See United States

15  v. O'Brien, 391 U.S. 367, 383-84 (1968) (noting that inquiries into congressional

16  motives or purposes is a "hazardous matter" and that courts may not strike down a

17  statute based upon "alleged illicit motive"); Board of Educ. of the Westside

18  Community Schools v. Mergens, 496 U.S. 226, 249 (1990) (in evaluating

19  constitutionality of statute, "what is relevant is the legislative purpose of the

20  statute, not the possibly religious motives of the legislators who enacted the law")

21  (emphasis in original); Las Vegas v. Foley, 747 F.2d 1294, 1298 (9th Cir. 1984)

22  (same).  The same is true of attempts to probe the motivations of the Executive

23  Branch.  See e.g., Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,

24  429 U.S. 252, 268 n.18 (1977) ("judicial inquiries into legislative or executive

25  motivation represent a substantial intrusion into the workings of other branches of

26  government").

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1        2.     Defendants object to Plaintiff's Document Requests to the extent that

2   they are not reasonably calculated to lead to the discovery of admissible evidence.

3   The Court has ruled that Plaintiff's challenge is governed by the rational basis

4   standard of review.   It is well understood that a legislative choice subject to the

5   rational basis test "is not subject to courtroom fact-finding." Federal

6   Communications Comm'n v. Beach Communications, 508 U.S. 307, 315 (1993)

7   (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)).

8   Defendants accordingly have "no obligation to produce evidence to sustain the

9   rationality of a statutory classification." Heller v. Doe, 509 U.S. 312, 320 (1993).

10   The analysis instead  asks whether the legislature "rationally *could have believed*"

11   that the conditions of the statute would promote its objective.  Western and

12   Southern Life Insurance Co. v. State Bd. of Equalization of California, 451 U.S.

13   654, 671-72 (1981) (emphasis in original).

14        Rational basis review, moreover, "is not a license for courts to judge the

15   wisdom, fairness, or logic of legislative choices." Beach Communications, 508

16   U.S. at 313.  Rather, "those challenging the legislative judgment must convince

17   the court that the legislative facts on which the classification is apparently based

18   could not reasonably be conceived to be true by the governmental decisionmaker."

19   Vance v. Bradley, 440 U.S. 93, 111 (1979).  While we understand that the Court

20   has permitted Plaintiff to attempt to engage in discovery, the congressional

21   findings and legislative history underlying the statute are "legislative fact[s]"

22   subject to judicial notice and are not appropriate subjects for fact-finding or

23   discovery.

24        3.     Defendants object to Plaintiff's Document Requests to the extent that

25   they attempt to probe the "continued rationality" of the statute.  Classifications

26   subject to rational-basis review are not subject to challenge on the ground of

27   changed circumstances.  See, e.g., United States v. Jackson, 84 F.3d 1154, 1161

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS         -3-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    (9th Cir. 1996) (Congress's initial decision to enact the 100:1 ratio "was rational,

2    even though it differs from the Sentencing Commission's current recommendation

3    regarding the magnitude of the disparity"); <u>Montalvo-Huertas v. Rivera-Cruz</u>, 885

4    F.2d 971, 977 (1st Cir. 1989) ("[E]valuating the continued need for, and suitability

5    of, legislation of this genre is exactly the kind of policy judgment that the rational

6    basis test was designed to preclude"); <u>United States v. Teague</u>, 93 F.3d 81, 85 (2d

7    Cir. 1996) ("Nor does Congress's failure to adopt the [Sentencing] Commission's

8    proposal render the current 100:1 [crack to powder cocaine] ratio unconstitutional

9    for lack of a rational basis.  The 100:1 ratio had a rational basis when enacted, and

10   the Commission's continuing consideration of the appropriate sentencing scheme

11   for crack and powder cocaine counsels against judicial intervention.").  Indeed,

12   courts have found that even where Congress has determined that a previous

13   enactment is no longer necessary, that finding does render the statute

14   unconstitutional.  <u>See</u> <u>Smart v. Ashcroft</u>, 401 F.3d 119, 123 (2d Cir. 2005) ("A

15   congressional decision that a statute is unfair, outdated, and in need of

16   improvement does not mean that the statute when enacted was wholly irrational or,

17   for purposes of rational basis review, unconstitutional."); <u>Howard v. U.S. Dept. of</u>

18   <u>Defense</u>, 354 F.3d 1358, 1361-62 (Fed. Cir. 2004) ("Congress acts based on

19   judgments as to preferable policy; the fact that Congress repeals or modifies

20   particular legislation does not reflect a judgment that the legislation, in its pre-

21   amendment form, lacked rational support.").  Were it otherwise, all legislation

22   subject to rational basis review could potentially be subject to periodic judicial

23   review on the basis of changed circumstances, a prospect incompatible with these

24   principles and the Supreme Court's well known and repeated admonition that "a

25   legislative choice is not subject to courtroom factfinding and may be based on

26   rational speculation unsupported by evidence or empirical data." <u>Heller</u>, 509 U.S.

27   at 320.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                               -4-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    4.    Defendants object to the Document Requests to the extent they

2  request that Defendants produce documents that are not in their possession,

3  custody, or control.  Fed. R. Civ. P. 34.

4    5.    Defendants object to the Document Requests as duplicative and

5  unduly burdensome to the extent they call for production of identical copies of the

6  same document.

7    6.    Defendants object to the definitions and instructions in Plaintiff's

8  Document Requests to the extent that they conflict with or purport to expand upon

9  Defendants' obligations under the Federal Rules of Civil Procedure or the local

10  rules of this Court.

11    7.    Defendants object to Plaintiff's Document Requests to the extent that

12  they are overbroad or attempt to impose obligations on Defendants that are unduly

13  burdensome, expensive, and/or oppressive.

14    8.    Defendants object to Plaintiff's Document Requests as unduly

15  burdensome to the extent that they require production of electronic information,

16  the retrieval of which, to the extent possible, would involve undue expense, time,

17  and allocation of resources for minimal return.  Defendants, accordingly, object to

18  instruction nos. 16 and 17.  Counsel will meet and confer as to the production of

19  electronically stored documents in an effort to arrive at a mutually agreeable

20  approach to the production of such information.

21    9.    Defendants object to Plaintiff's Document Requests to the extent that

22  they seek information and documents protected by the work-product doctrine,

23  Privacy Act, attorney-client privilege, law enforcement privilege, deliberative

24  process privilege, and any other applicable privilege.  Defendants object to

25  paragraph (2) of the instructions purporting to require Defendants to set forth

26  "[t]he identity of each Person who received and/or saw [an] original or a copy" of

27  a privileged document.  To the extent there are any documents subject to the

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -5-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

privileges and protections listed above, Defendants will produce a privilege log

that identifies (to the extent relevant, ascertainable, and not privileged or

otherwise protected from disclosure) the author or creator of the document,

the recipient(s) of the document (including any individuals who were sent copies

of the document), the date of the document, the privilege or protection claimed,

and a description of the document sufficient to enable the parties to assess the

applicability of the privilege or protection.  See Fed. R. Civ. P. 26(b)(5)(A).

10.    A statement that Defendants will produce documents responsive to a

particular request indicates that Defendants will conduct a good-faith search for

such documents, and does not constitute a representation that such documents do,

in fact, exist.

11.    Defendants object to the Document Requests to the extent they seek

"any and all" or "all" documents as overly broad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.

12.    Defendants object to searching beyond the Department of Defense for

responsive documents.  Defendants object to any request that current and former

employees, attorneys, accountants, agents, affiliates and representatives of the

United States must search for responsive documents as overly broad and unduly

burdensome.  Defendants also specifically object to any requests that can be

interpreted as requiring a search for responsive documents from Congress.   This

action is subject to review under the Administrative Procedure Act, which limits

review to "[a]gency action."  See 5 U.S.C. § 702.  Defendants will thus conduct a

reasonable search for responsive documents maintained within the agency charged

with administering 10 U.S.C. § 654–the United States Department of Defense.

13.    To the extent that the Department of Defense houses documents

belonging to another agency, Congress, or an instrumentality of the Government,

the Department of Defense will only produce those documents with the consent of

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -6-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   the agency, instrumentality or Congress.

2       14.     Defendants object to the Plaintiff's characterization of any particular

3   document.

4       15.     Defendants reserve the right to amend, supplement, or alter these

5   objections and responses to Plaintiff's Document Requests at any time.

6   Defendants further reserve the right to redact any portions of documents for any

7   reason contemplated under the Federal Rules of Civil Procedure or the local rules

8   of this Court without waiving any rights either by doing so or by producing

9   unredacted portions of documents.

10      16.     The foregoing General Objections shall be considered as made, to the

11  extent applicable, in response to each of the Document Requests, as if General

12  Objections were fully set forth in each response.

13                          **GENERAL DEFINITION**

14      1.      The term "Documents housed at the Pentagon" means documents in

15  the possession of the Office of the Joint Chief of Staff; the Office of the Secretary

16  of Defense; the Offices of the Under Secretaries of Defense for Policy,

17  Comptroller, Personnel and Readiness, Acquisition, Technology and Logistics,

18  and Intelligence; the Offices of the Assistant Secretaries of Defense for Network

19  and Information Integration, Public Affairs, and Legislative Affairs; the

20  Department of Defense Office of General Counsel; the Department of Defense

21  Office of the Inspector General; and the Offices of the Secretaries of the Army,

22  Navy and Air Force.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                     -7-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**DOCUMENT REQUESTS**

**DOCUMENT REQUEST NO . 1**:

All Documents referring or relating to the United States Armed Forces statement that "[h]omosexuality is incompatible with military service." DOD Directive 1332.14 (January, 1981).

**RESPONSE**:

Defendants object to this request, as it is currently drafted, as overly broad and unduly burdensome.  Accordingly, the parties have met, and conferred and Plaintiff has agreed to limit its request to documents Defendants intend to use to support the statement contained in the request.

Defendants presently intend to rely upon, among other things, the text of the statute, the legislative history, and any other basis that Congress "rationally *could have believed*" supported the objectives of the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981) (emphasis in original).

The text and legislative history of the statute are publically available and will not be produced by Defendants.  Subject to the specific and general objections set forth above, Defendants will produce documents they intend to rely on to support the statement contained in Plaintiff's request and will supplement their response as necessary.

**DOCUMENT REQUEST NO. 2**:

All drafts of the Policy.

**RESPONSE**:

Defendants object to this request, as it is currently drafted, as overly broad and unduly burdensome.  Accordingly, the parties have met and conferred and Plaintiff has agreed to limit its request to drafts housed at the Pentagon.

Defendants object to this request, even in its narrowed form, because requesting "drafts of the Policy" calls for the discovery of deliberative documents,

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                          -8-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0058**

1    which are subject to privilege.  In addition, the request is not reasonably calculated

2    to lead to the discovery of admissible evidence relating to Plaintiff's facial

3    challenge to the Policy.  To the extent that Plaintiff requests the production of bills

4    considered by Congress, they are publically available.

5         Based on the specific and general objections set forth above, Defendants

6    will not produce documents in response to this request.

7    **DOCUMENT REQUEST NO. 3**:

8         All Documents, including studies, research, and/or analysis of the Policy.

9    **RESPONSE**:

10        Defendants object to this request, as it is currently drafted, as overly broad

11   and unduly burdensome.  Accordingly, the parties have met and conferred and

12   Plaintiff has agreed to limit its request to studies of the policy housed at the

13   Pentagon.

14        Defendants object to this request, even in its narrowed form, to the extent

15   that Plaintiff already has access to studies of the Policy.  Indeed, many are

16   publically available on the internet.

17        Subject to the specific and general objections set forth above, Defendants

18   will produce studies of the Policy housed at the Pentagon that are not specifically

19   mentioned in Plaintiff's document requests.

20   **DOCUMENT REQUEST NO. 4**

21        All Documents referring or relating to the drafting of the DOD Directives

22   1332.14, 1332.30, and 1304.26.

23   **RESPONSE**:

24        Defendants object to this request, as it is currently drafted, as overly broad

25   and unduly burdensome.  Accordingly, the parties have met and conferred and

26   Plaintiff has agreed to limit its request to drafts of the listed DOD regulations or

27   documents relating to the process of drafting those regulations that are housed at

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -9-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  the Pentagon.

2      Defendants object to this request, even in its narrowed form, because by

3  requesting drafts and documents relating to the drafting process, the request calls

4  for the discovery of deliberative documents, which are subject to privilege.  In

5  addition, the request is not reasonably calculated to lead to the discovery of

6  admissible evidence relating to Plaintiff's facial challenge to the Policy.

7      Based on the specific and general objections set forth above, Defendants

8  will not produce responsive documents to this request.

9  **DOCUMENT REQUEST NO. 5:**

10      All Documents, including studies, research, and/or analysis, relating to the

11  Department of Defense Directives 1332.14, 1332.30 and 1304.26.

12  **RESPONSE:**

13      Defendants object to this request, as it is currently drafted, as overly broad

14  and unduly burdensome.  Accordingly, the parties have met and conferred and

15  Plaintiff has agreed to limit its request to studies, research and analysis of the

16  listed Directives that are housed at the Pentagon.

17      Defendants object to this request that the requested studies are publically

18  available or already in Plaintiff's possession.

19      Subject to the specific and general objections set forth above, Defendants

20  will produce studies, research and analysis of the listed Directives that are housed

21  at the Pentagon and not specifically mentioned in Plaintiff's document requests.

22  **DOCUMENT REQUEST NO. 6:**

23      All Documents referring or relating to the statement that the "presence in

24  the armed forces of persons who demonstrate a propensity or intent to engage in

25  homosexual acts would create an unacceptable risk to the high standards of

26  morale, good order and discipline, and unit cohesion that are the essence of

27  military capability." 10 U.S.C. § 654(a)(15).

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS     -10-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0060**

**RESPONSE:**

Defendants object to this request, as it is currently drafted, as overly broad and unduly burdensome.  Accordingly, the parties have met, and conferred and Plaintiff has agreed to limit its request to documents Defendants intend to use to support the statement contained in the request.

Notwithstanding these objections, Defendants presently intend to rely upon, among other things, the text of the statute, the legislative history, and any other basis that Congress "rationally *could have believed*" supported the objectives of the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981) (emphasis in original).

The text and legislative history of the statute are publically available and will not be produced by Defendants.  Subject to the general and specific objections set forth above, Defendants will produce documents they intend to rely on to support the statement contained in Plaintiff's request and will supplement their response as necessary.

**DOCUMENT REQUEST NO. 7:**

All Documents referring or relating to members of the Armed Forces discharged under the Policy and DOD Regulations whose primary mission was not "to engage in direct combat."

**RESPONSE:**

Defendants object to this request as vague because it is unclear what Plaintiff means by servicemembers "whose primary mission was not 'to engage in direct combat.'"  All members of the Armed Forces are expected to be prepared to engage in direct combat and servicemembers are not classified on the basis suggested by Plaintiff's request.  Servicemembers are categorized based on their military occupations.

Notwithstanding this objection, Defendants will thus produce statistical data

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -11-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  regarding servicemembers discharged under the Policy broken down by military
2  occupation.
3  **DOCUMENT REQUEST NO. 8:**
4      All Documents, including studies, research, and/or analysis, relating to the
5  application of the Policy.
6  **RESPONSE**:
7      Defendants object to this request, as it is currently drafted, as overly broad
8  and unduly burdensome.  Accordingly, the parties have met and conferred and
9  Plaintiff has agreed to limit its request to studies housed at the Pentagon that relate
10  to the application of the Policy.
11      Subject to the specific and general objections set forth above, Defendants
12  will produce studies housed at the Pentagon that relate to the application of the
13  Policy.
14  **DOCUMENT REQUEST NO. 9:**
15      All Documents, (dating from January 1, 2003 to the present), including
16  studies, research, and/or analysis, relating to the application of the Policy to
17  women in the United States Armed Forces.
18  **RESPONSE**:
19      Defendants object to this request, as it is currently drafted, as overly broad
20  and unduly burdensome.  Accordingly, the parties have met and conferred and
21  Plaintiff has agreed to limit its request to statistical information and studies that
22  relate to the application of the policy to women and are housed at the Pentagon.
23      Defendants object to this request, even in its narrowed form, because
24  Plaintiff has failed to identify any women among its membership who have been
25  purportedly harmed by the Policy.  Plaintiff, accordingly, lacks standing to bring
26  any challenge relating to the application of the Policy to women and, therefore,
27  any discovery on this issue is not likely to lead to admissible evidence.
28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -12-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0062

1    Subject to the specific and general objections set forth above, Defendants

2    will produce statistical information and studies that are housed at the Pentagon and

3    relate to the application of the Policy to women.

4    **DOCUMENT REQUEST NO. 10:**

5    All Documents (dating from January 1, 2003 to the present) referring or

6    relating to the compatibility or incompatibility of gay and lesbian Americans with

7    service in the United States Armed Forces for January 1, 2003 to the present.

8    **RESPONSE**:

9    Defendants object to this request, as it is currently drafted, as overly broad

10   and unduly burdensome.  Accordingly, the parties have met and conferred and

11   Plaintiff has agreed to limit its request to documents that are housed at the

12   Pentagon and contain studies or analysis of the compatibility or incompatibility of

13   gay and lesbian Americans with service in the United States Armed Forces for

14   January 1, 2003 to the present.

15   Subject to the specific and general objections set forth above, Defendants

16   will produce documents responsive to Plaintiff's narrowed request.  Defendants

17   note, however, that the request is predicated on a fundamental misunderstanding

18   of the statute and applicable regulations, which set forth a conduct-based policy.

19   **DOCUMENT REQUEST NO. 11:**

20   All documents (dating from January 2003 to the present) relating to any

21   effect or lack of effect on combat effectiveness caused by, resulting from,

22   associated with, or accompanying the presence in the United States Armed Forces

23   of gay or lesbian servicemembers.

24   **RESPONSE**:

25   During a meeting on November 18, 2009, Plaintiff's counsel agreed to

26   narrow their request to documents that Defendants intend to rely upon to support

27   the findings referenced above, in a manner consistent with request nos. 1, 6,

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -13-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0063

1  and 11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

2  for the production of documents relating to individual service members.  Plaintiff

3  has since reneged on its agreement and has chosen instead to stand on the request

4  as written.

5       Defendants have proceeded to search for documents within the bounds

6  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

7  among other things, the text of the statute, the legislative history, and any other

8  basis that Congress "rationally *could have believed*" supported the objectives of

9  the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

10  (emphasis in original).

11       The text and legislative history of the statute are publically available and

12  will not be produced by Defendants.  Defendants have, however, conducted a

13  reasonable search and will, subject to the specific and general objections set forth

14  above, produce studies housed at the Pentagon that relate to the finding referenced

15  in Plaintiff's request.

16       Defendants note, moreover, that this request rests on a fundamental

17  misunderstanding of the statute and applicable regulations.  The statute sets forth a

18  conduct-based policy focused on the conduct of members of the Armed Forces,

19  not "the presence in the United States Armed Forces of gay or lesbian

20  servicemembers."

21  **DOCUMENT REQUEST NO. 12:**

22       All Documents (dating from January 1, 2003 to the present) relating to any

23  effect or lack of effect on combat effectiveness caused by, resulting from,

24  associated with, or accompanying the presence in the United States Armed Forces

25  of servicemembers who engage in or have engaged in homosexual conduct.

26  **RESPONSE**:

27       During a meeting on November 18, 2009, Plaintiff's counsel agreed to

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                   -14-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  narrow their request to documents that Defendants intend to rely upon to support

2  the findings referenced above, in a manner consistent with request nos. 1, 6,

3  and11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

4  for the production of documents relating to individual service members.  Plaintiff

5  has since reneged on its agreement and has chosen instead to stand on the request

6  as written.

7      Defendants have proceeded to search for documents within the bounds

8  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

9  among other things, the text of the statute, the legislative history, and any other

10  basis that Congress "rationally *could have believed*" supported the objectives of

11  the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

12  (emphasis in original).

13      The text and legislative history of the statute are publically available and

14  will not be produced by Defendants.  Defendants have, however, conducted a

15  reasonable search and will, subject to the specific and general objections set forth

16  above, produce studies housed at the Pentagon that relate to the findings

17  referenced in Plaintiff's request.

18  **DOCUMENT REQUEST NO. 13:**

19      All Documents (dating from January 1, 2003 to the present) relating to any

20  effect or lack of effect on unit cohesion caused by, resulting from, associated with,

21  or accompanying the presence in the United States Armed Forces of gay or lesbian

22  servicemembers.

23  **RESPONSE**:

24      During a meeting on November 18, 2009, Plaintiff's counsel agreed to

25  narrow their request to documents that Defendants intend to rely upon to support

26  the findings referenced above, in a manner consistent with request nos. 1, 6,

27  and11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -15-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  for the production of documents relating to individual service members.  Plaintiff

2  has since reneged on its agreement and has chosen instead to stand on the request

3  as written.

4       Defendants have proceeded to search for documents within the bounds

5  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

6  among other things, the text of the statute, the legislative history, and any other

7  basis that Congress "rationally *could have believed*" supported the objectives of

8  the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

9  (emphasis in original).

10       The text and legislative history of the statute are publically available and

11  will not be produced by Defendants.  Defendants have, however, conducted a

12  reasonable search and will, subject to the specific and general objections set forth

13  above, produce studies housed at the Pentagon that relate to the findings

14  referenced in Plaintiff's request.

15       Defendants note, moreover, that this request rests on a fundamental

16  misunderstanding of the statute and applicable regulations.  The statute sets forth a

17  conduct-based policy focused on the conduct of members of the Armed Forces,

18  not "the presence in the United States Armed Forces of gay or lesbian

19  servicemembers."

20  **DOCUMENT REQUEST NO. 14:**

21       All Documents (dating from January 1, 2003 to the present) relating to any

22  effect or lack of effect on unit cohesion caused by, resulting from, associated with,

23  or accompanying the presence in the United States Armed Forces of

24  servicemembers who engage in or have engaged in homosexual conduct.

25  **RESPONSE**:

26       During a meeting on November 18, 2009, Plaintiff's counsel agreed to

27  narrow their request to documents that Defendants intend to rely upon to support

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -16-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  the findings referenced above, in a manner consistent with request nos. 1, 6,

2  and11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

3  for the production of documents relating to individual service members.  Plaintiff

4  has since reneged on its agreement and has chosen instead to stand on the request

5  as written.

6        Defendants have proceeded to search for documents within the bounds

7  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

8  among other things, the text of the statute, the legislative history, and any other

9  basis that Congress "rationally *could have believed*" supported the objectives of

10  the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

11  (emphasis in original).

12        The text and legislative history of the statute are publically available and

13  will not be produced by Defendants.  Defendants have, however, conducted a

14  reasonable search and will, subject to the specific and general objections set forth

15  above, produce studies housed at the Pentagon that relate to the findings

16  referenced in Plaintiff's request.

17  **DOCUMENT REQUEST NO. 15:**

18        All Documents (dating from January 1, 2003 to the present) relating to any

19  effect or lack of effect on unit morale caused by, resulting from, associated with,

20  or accompanying the presence in the United States Armed Forces of gay or lesbian

21  service members.

22  **RESPONSE**:

23        During a meeting on November 18, 2009, Plaintiff's counsel agreed to

24  narrow their request to documents that Defendants intend to rely upon to support

25  the findings referenced above, in a manner consistent with request nos. 1, 6,

26  and11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

27  for the production of documents relating to individual service members.  Plaintiff

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -17-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  has since reneged on its agreement and has chosen instead to stand on the request

2  as written.

3      Defendants have proceeded to search for documents within the bounds

4  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

5  among other things, the text of the statute, the legislative history, and any other

6  basis that Congress "rationally *could have believed*" supported the objectives of

7  the statute.  Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

8  (emphasis in original).

9      The text and legislative history of the statute are publically available and

10  will not be produced by Defendants.  Defendants have, however, conducted a

11  reasonable search and will, subject to the specific and general objections set forth

12  above, produce studies housed at the Pentagon that relate to the findings

13  referenced in Plaintiff's request.

14      Defendants note, moreover, that this request rests on a fundamental

15  misunderstanding of the statute and applicable regulations.  The statute sets forth a

16  conduct-based policy focused on the conduct of members of the Armed Forces,

17  not "the presence in the United States Armed Forces of gay or lesbian

18  servicemembers."

19  **DOCUMENT REQUEST NO. 16:**

20      All Documents (dating from January 1, 2003 to the present) relating to any

21  effect or lack of effect on unit morale caused by, resulting from, associated with,

22  or accompanying the presence in the United States Armed Forces of

23  servicemembers who engage in or have engaged in or have engaged in

24  homosexual conduct.

25  **RESPONSE**:

26      During a meeting on November 18, 2009, Plaintiff's counsel agreed to

27  narrow their request to documents that Defendants intend to rely upon to support

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS       -18-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  the findings referenced above, in a manner consistent with request nos. 1, 6,

2  and 11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

3  for the production of documents relating to individual service members.  Plaintiff

4  has since reneged on its agreement and has chosen instead to stand on the request

5  as written.

6      Defendants have proceeded to search for documents within the bounds

7  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

8  among other things, the text of the statute, the legislative history, and any other

9  basis that Congress "rationally *could have believed*" supported the objectives of

10  the statute.  Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

11  (emphasis in original).

12      The text and legislative history of the statute are publically available and

13  will not be produced by Defendants.  Defendants have, however, conducted a

14  reasonable search and will, subject to the specific and general objections set forth

15  above, produce studies housed at the Pentagon that relate to the findings

16  referenced in Plaintiff's request.

17  **DOCUMENT REQUEST NO. 17:**

18      All Documents (dating from January 1, 2003 to the present) relating to any

19  effect or lack of effect on good order caused by, resulting from, associated with, or

20  accompanying the presence in the United States Armed Forces of gay or lesbian

21  servicemembers.

22  **RESPONSE**:

23      During a meeting on November 18, 2009, Plaintiff's counsel agreed to

24  narrow their request to documents that Defendants intend to rely upon to support

25  the findings referenced above, in a manner consistent with request nos. 1, 6,

26  and 11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

27  for the production of documents relating to individual service members.  Plaintiff

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -19-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0069

1 | has since reneged on its agreement and has chosen instead to stand on the request
2 | as written.

3 |     Defendants have proceeded to search for documents within the bounds
4 | agreed to by Counsel on November 18, 2009 and presently intend to rely upon,
5 | among other things, the text of the statute, the legislative history, and any other
6 | basis that Congress "rationally *could have believed*" supported the objectives of
7 | the statute.  Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)
8 | (emphasis in original).

9 |     The text and legislative history of the statute are publically available and
10 | will not be produced by Defendants.  Defendants have, however, conducted a
11 | reasonable search and will, subject to the specific and general objections set forth
12 | above, produce studies housed at the Pentagon that relate to the findings
13 | referenced in Plaintiff's request.

14 |     Defendants note, moreover, that this request rests on a fundamental
15 | misunderstanding of the statute and applicable regulations.  The statute sets forth a
16 | conduct-based policy focused on the conduct of members of the Armed Forces,
17 | not "the presence in the United States Armed Forces of gay or lesbian
18 | servicemembers."

19 | **DOCUMENT REQUEST NO. 18:**

20 |     All Documents (dating from January 1, 2003 to the present) relating to any
21 | effect or lack of effect on good order caused by, resulting from, associated with, or
22 | accompanying the presence in the United States Armed Forces of servicemembers
23 | who engage in or have engaged in homosexual conduct.

24 | **RESPONSE**:

25 |     During a meeting on November 18, 2009, Plaintiff's counsel agreed to
26 | narrow their request to documents that Defendants intend to rely upon to support
27 | the findings referenced above, in a manner consistent with request nos. 1, 6,
28 |

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

-20-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   and11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

2   for the production of documents relating to individual service members.  Plaintiff

3   has since reneged on its agreement and has chosen instead to stand on the request

4   as written.

5       Defendants have proceeded to search for documents within the bounds

6   agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

7   among other things, the text of the statute, the legislative history, and any other

8   basis that Congress "rationally *could have believed*" supported the objectives of

9   the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

10  (emphasis in original).

11      The text and legislative history of the statute are publically available and

12  will not be produced by Defendants.  Defendants have, however, conducted a

13  reasonable search and will, subject to the specific and general objections set forth

14  above, produce studies housed at the Pentagon that relate to the findings

15  referenced in Plaintiff's request.

16  **DOCUMENT REQUEST NO. 19:**

17      All Documents (dating from January 1, 2003 to the present) relating to any

18  effect or lack of effect on discipline caused by, resulting from, associated with or

19  accompanying the presence in the United States Armed Forces of gay or lesbian

20  servicemembers.

21  **RESPONSE**:

22      During a meeting on November 18, 2009, Plaintiff's counsel agreed to

23  narrow their request to documents that Defendants intend to rely upon to support

24  the findings referenced above, in a manner consistent with request nos. 1, 6,

25  and11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

26  for the production of documents relating to individual service members.  Plaintiff

27  has since reneged on its agreement and has chosen instead to stand on the request

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                                        -21-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0071

1  as written.

2      Defendants have proceeded to search for documents within the bounds

3  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

4  among other things, the text of the statute, the legislative history, and any other

5  basis that Congress "rationally *could have believed*" supported the objectives of

6  the statute.   Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981)

7  (emphasis in original).

8      The text and legislative history of the statute are publically available and

9  will not be produced by Defendants.  Defendants have, however, conducted a

10  reasonable search and will, subject to the specific and general objections set forth

11  above, produce studies housed at the Pentagon that relate to the findings

12  referenced in Plaintiff's request.

13      Defendants note, moreover, that this request rests on a fundamental

14  misunderstanding of the statute and applicable regulations.  The statute sets forth a

15  conduct-based policy focused on the conduct of members of the Armed Forces,

16  not "the presence in the United States Armed Forces of gay or lesbian

17  servicemembers."

18  **DOCUMENT REQUEST NO. 20:**

19      All Documents (dating from January 1, 2003 to the present) relating to any

20  effect or lack of effect on discipline caused by, resulting from, associated with, or

21  accompanying the presence in the United States Armed Forces of servicemembers

22  with a homosexual orientation.

23  **RESPONSE**:

24      During a meeting on November 18, 2009, Plaintiff's counsel agreed to

25  narrow their request to documents that Defendants intend to rely upon to support

26  the findings referenced above, in a manner consistent with request nos. 1, 6,

27  and 11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS      -22-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0072

1  for the production of documents relating to individual service members.  Plaintiff

2  has since reneged on its agreement and has chosen instead to stand on the request

3  as written.

4       Defendants have proceeded to search for documents within the bounds

5  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

6  among other things, the text of the statute, the legislative history, and any other

7  basis that Congress "rationally *could have believed*" supported the objectives of

8  the statute.   <u>Western and Southern Life Ins. Co.</u>, 451 U.S. at 671-72 (1981)

9  (emphasis in original).

10       The text and legislative history of the statute are publically available and

11  will not be produced by Defendants.  Defendants have, however, conducted a

12  reasonable search and will, subject to the specific and general objections set forth

13  above, produce studies housed at the Pentagon that relate to the findings

14  referenced in Plaintiff's request.

15       Defendants note, moreover, that this request rests on a fundamental

16  misunderstanding of the statute and applicable regulations.  The statute sets forth a

17  conduct-based policy focused on the conduct of members of the Armed Forces,

18  not "the presence in the United States Armed Forces of gay or lesbian

19  servicemembers."

20  **DOCUMENT REQUEST NO. 21:**

21       All Documents (dating from January 1, 2003 to the present) relating to any

22  effect or lack of effect on readiness to fight caused by, resulting from, associated

23  with, or accompanying the presence in the United States Armed Forces of gay or

24  lesbian servicemembers.

25  **RESPONSE**:

26       During a meeting on November 18, 2009, Plaintiff's counsel agreed to

27  narrow their request to documents that Defendants intend to rely upon to support

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -23-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0073

1  the findings referenced above, in a manner consistent with request nos. 1, 6,

2  and11-22.  In addition, Plaintiff's counsel emphasized that this request did not call

3  for the production of documents relating to individual service members.  Plaintiff

4  has since reneged on its agreement and has chosen instead to stand on the request

5  as written.

6      Defendants have proceeded to search for documents within the bounds

7  agreed to by Counsel on November 18, 2009 and presently intend to rely upon,

8  among other things, the text of the statute, the legislative history, and any other

9  basis that Congress "rationally *could have believed*" supported the objectives of

10  the statute.  <u>Western and Southern Life Ins. Co.</u>, 451 U.S. at 671-72 (1981)

11  (emphasis in original).

12      The text and legislative history of the statute are publically available and

13  will not be produced by Defendants.  Defendants have, however, conducted a

14  reasonable search and will, subject to the specific and general objections set forth

15  above, produce studies housed at the Pentagon that relate to the findings

16  referenced in Plaintiff's request.

17      Defendants note, moreover, that this request rests on a fundamental

18  misunderstanding of the statute and applicable regulations.  The statute sets forth a

19  conduct-based policy focused on the conduct of members of the Armed Forces,

20  not "the presence in the United States Armed Forces of gay or lesbian

21  servicemembers."

22  **<u>DOCUMENT REQUEST NO. 22:</u>**

23      All Documents (dating from January 1, 2003 to the present) relating to any

24  effect or lack of effect on readiness to fight caused by, resulting from, associated

25  with, or accompanying the presence in the United States Armed Forces of

26  servicemembers who engaged in or have engaged in homosexual conduct.

27

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -24-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0074**

**RESPONSE**:

During a meeting on November 18, 2009, Plaintiff's counsel agreed to narrow their request to documents that Defendants intend to rely upon to support the findings referenced above, in a manner consistent with request nos. 1, 6, and 11-22. In addition, Plaintiff's counsel emphasized that this request did not call for the production of documents relating to individual service members. Plaintiff has since reneged on its agreement and has chosen instead to stand on the request as written.

Defendants have proceeded to search for documents within the bounds agreed to by Counsel on November 18, 2009 and presently intend to rely upon, among other things, the text of the statute, the legislative history, and any other basis that Congress "rationally *could have believed*" supported the objectives of the statute.  Western and Southern Life Ins. Co., 451 U.S. at 671-72 (1981) (emphasis in original).

The text and legislative history of the statute are publically available and will not be produced by Defendants. Defendants have, however, conducted a reasonable search and will, subject to the specific and general objections set forth above, produce studies housed at the Pentagon that relate to the findings referenced in Plaintiff's request.

**DOCUMENT REQUEST NO. 23:**

The Implementation Memorandum and all drafts or prior versions of the Memorandum.

**RESPONSE**:

The parties have met and conferred, and Plaintiff has agreed to limit this request to drafts and implemented iterations of the Implementation Memorandum.

Defendants object to this request to the extent it calls for drafts, which are inherently deliberative and thus privileged.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                           -25-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1     Subject to the specific and general objections set forth above, Defendants

2   will produce the Implementation Memorandum and versions of the

3   Implementation Memorandum that were implemented and are housed at the

4   Pentagon.

5   **DOCUMENT REQUEST NO. 24:**

6     The Policy Memorandum and all drafts or prior versions of that

7   Memorandum.

8   **RESPONSE**:

9     The parties have met and conferred, and Plaintiff has agreed to limit its

10  request to drafts and implemented iterations of the Policy Memorandum.

11    Defendants object to this request to the extent it calls for drafts, which are

12  inherently deliberative and thus privileged.  The requested document, moreover,

13  appears to be within Plaintiff's possession and will not be produced again by

14  Defendants.  In addition, the requested document is publically available and can

15  be found at: http://dont.stanford.edu/regulations/lesaspinmemo.pdf.

16    Subject to the specific and general objections set forth above, Defendants

17  will produce versions of the Policy Memorandum that were implemented and are

18  housed at the Pentagon.

19  **DOCUMENT REQUEST NO. 25:**

20    DOD Directive 1304.26 and all drafts or prior versions of that Directive.

21  **RESPONSE**:

22    The parties have met and conferred, and Plaintiff has agreed to limit its

23  request to drafts and promulgated iterations of DOD Directive 1304.26.

24    Defendants object to this request to the extent it calls for drafts, which are

25  inherently deliberative and thus privileged.  The requested document, moreover,

26  appears to be within Plaintiff's possession and will not be produced again by

27  Defendants.  In addition, the requested document is publically available and can

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -26-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  be found at: http://www.dtic.mil/whs/directives/corres/pdf/130426p.pdf.

2       Subject to the specific and general objections set forth above, Defendants

3  will produce versions of the Directive that were promulgated and are housed at the

4  Pentagon.

5  **DOCUMENT REQUEST NO. 26:**

6       The Briefing Memorandum and all drafts or prior versions of that

7  Memorandum.

8  **RESPONSE**:

9       The parties have met and conferred, and Plaintiff has agreed to limit its

10 request to drafts and implemented iterations of the Briefing Memorandum.

11      Defendants object to this request to the extent it calls for drafts, which are

12 inherently deliberative and thus privileged.  The requested document, moreover,

13 appears to be within Plaintiff's possession and will not be produced again by

14 Defendants.  In addition, the requested document is publically available and can

15 be found at: http://dont.stanford.edu/regulations/dornmemo2.pdf.

16      Subject to the specific and general objections set forth above, Defendants

17 will produce versions of the Briefing Memorandum that were implemented and are

18 housed at the Pentagon.

19 **DOCUMENT REQUEST NO. 27:**

20      DOD Directive 1332.14 and all drafts or prior versions of that Directive.

21 **RESPONSE**:

22      The parties have met and conferred, and Plaintiff has agreed to limit its

23 request to drafts and promulgated iterations of DOD Directive 1332.14.

24 Defendants object to this request to the extent it calls for drafts, which are

25 inherently deliberative and thus privileged.  The requested document, moreover,

26 appears to be within Plaintiff's possession and will not be produced again by

27 Defendants.  In addition, the requested document is publically available and can

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                          -27-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  be found at:  http://www.dtic.mil/whs/directives/corres/pdf/133214p.pdf.

2  　　　　Subject to the specific and general objections set forth above, Defendants

3  will produce versions of the Directive that were promulgated and are housed at the

4  Pentagon.

5  **DOCUMENT REQUEST NO. 28:**

6  　　　　DOD Directive 1332.30 and all drafts or prior versions of that Directive.

7  **RESPONSE**:

8  　　　　The parties have met and conferred, and Plaintiff has agreed to limit its

9  request to drafts and promulgated iterations of DOD Directive 1332.30.

10  Defendants object to this request to the extent it calls for drafts, which are

11  inherently deliberative and thus privileged.  The requested document, moreover,

12  appears to be within Plaintiff's possession and will not be produced again by

13  Defendants.  In addition, the requested document is publically available and can

14  be found at: http://www.dtic.mil/whs/directives/corres/pdf/133230p.pdf.

15  　　　　Subject to the specific and general objections set forth above, Defendants

16  will produce versions of the directive that were promulgated and are housed at the

17  Pentagon.

18  **DOCUMENT REQUEST NO. 29:**

19  　　　　DOD Instruction 5505.8 and all drafts or prior versions of that Instruction.

20  **RESPONSE**:

21  　　　　The parties have met and conferred, and Plaintiff has agreed to limit its

22  request to drafts and promulgated iterations of DOD Instruction 5505.8.

23  　　　　Defendants object to this request to the extent it calls for drafts, which are

24  inherently deliberative and thus privileged.  The requested document, moreover,

25  appears to be within Plaintiff's possession and will not be produced again by

26  Defendants.  In addition, the requested document is publically available and can

27  be found at: http://www.dtic.mil/whs/directives/corres/pdf/550508p.pdf.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS

-28-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  Subject to the specific and general objections set forth above, Defendants

2  will produce versions of the Instruction that were promulgated and are housed at

3  the Pentagon.

4  **DOCUMENT REQUEST NO. 30:**

5  The Investigation and Adjudication Memorandum and all drafts or prior

6  versions of that Memorandum.

7  **RESPONSE**:

8  The parties have met and conferred, and Plaintiff has agreed to limit its

9  request to drafts and implemented iterations of the Investigation and Adjudication

10  Memorandum.

11  Defendants object to this request to the extent it calls for drafts, which are

12  inherently deliberative and thus privileged.

13  Subject to the specific and general objections set forth above, Defendants

14  will produce versions of the Investigation and Adjudication Memorandum that

15  were implemented and are housed at the Pentagon.

16  **DOCUMENT REQUEST NO. 31:**

17  The Training Plan Memorandum and all drafts or prior versions of that

18  Memorandum.

19  **RESPONSE**:

20  The parties have met and conferred, and Plaintiff has agreed to limit its

21  request to drafts and implemented iterations of the Training Plan Memorandum.

22  Defendants object to this request to the extent it calls for drafts, which are

23  inherently deliberative and thus privileged.  The requested document, moreover,

24  appears to be within Plaintiff's possession and will not be produced again by

25  Defendants.  In addition, the requested document is publically available and can

26  be found at: http://dont.stanford.edu/regulations/dornmemo.pdf.

27  Subject to the specific and general objections set forth above, Defendants

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -29-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0079

1  will produce versions of the Training Plan Memorandum that were implemented

2  and are housed at the Pentagon.

3  **DOCUMENT REQUEST NO. 32:**

4      All studies, reports, or other documents relied upon, presented to or

5  considered, consulted or reviewed by Defendants in connection with the formation

6  of the rules, policies, and guidelines set forth in the Act and the DOD Regulations.

7  **RESPONSE**:

8      Defendants object to this request, as it is currently drafted, as overly broad

9  and unduly burdensome.  Accordingly, the parties have met and conferred and

10  Plaintiff has agreed to limit its request to documents housed at the Pentagon that

11  were consulted during the formation of the rules, policies, and guidelines set forth

12  in the Act and the DOD Regulations.

13      Defendants object to this request to the extent that it calls for documents

14  that are deliberative and thus privileged.

15      Subject to the specific and general objections set forth above, Defendants

16  will produce documents responsive to Plaintiff's narrowed request that are housed

17  at the Pentagon.

18  **DOCUMENT REQUEST NO. 33:**

19      All studies, reports or recommendations of the "working group of senior

20  officers in the Department of Defense" referred to in the Policy Memorandum,

21  including drafts of each study, report, or recommendation and each document

22  concerning any such study report, or recommendation.

23  **RESPONSE**:

24      Defendants object to this request, as it is currently drafted, as overly broad

25  and unduly burdensome.  Accordingly, the parties have met and conferred and

26  Plaintiff has agreed to limit its request to documents created by the "working

27  group of senior offices in the Department of Defense," referred to in the Policy

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS               -30-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   Memorandum, during the formation of the Act or regulations.

2       Defendants object to this request to the extent it calls for drafts, which are

3   inherently deliberative and thus privileged.

4       Subject to the specific and general objections set forth above, Defendants

5   will produce documents responsive to Plaintiff's narrowed request that are housed

6   at the Pentagon.

7   **DOCUMENT REQUEST NO. 34:**

8       All studies, report, or recommendations of the DOD staff working group

9   responsible for drafting the DOD Regulations.

10  **RESPONSE**:

11      Defendants object to this request, as it is currently drafted, as overly broad

12  and unduly burdensome.  Accordingly, the parties have met and conferred and

13  Plaintiff has agreed to limit its request to documents created by the DOD staff

14  working group responsible for drafting the DOD regulations, during the formation

15  of the regulations.

16      Defendants object to this request to the extent it calls for drafts, which are

17  inherently deliberative and thus privileged.

18      Subject to the specific and general objections set forth above, Defendants

19  will produce documents responsive to Plaintiff's narrowed request that are housed

20  at the Pentagon.

21  **DOCUMENT REQUEST NO. 35:**

22      All Documents concerning the "personnel policies" referred to in the Policy

23  Memorandum.

24  **RESPONSE**:

25      Defendants object to this request as overly broad,  unduly burdensome, and

26  vague.  The referenced document does not refer to "personnel policies."  The

27  parties have met and conferred but have been unable to reach a compromise as to

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -31-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0081

1  the scope of this request.  Defendants cannot produce documents until this is

2  request is clarified and narrowed.

3  **DOCUMENT REQUEST NO. 36:**

4      All studies, reports, or other documents (dating from January 1, 2003 to the

5  present) concerning United States Armed Forces service and homosexual conduct

6  or homosexual orientation, other than documents solely concerning specific

7  servicemembers.

8  **RESPONSE**:

9      Defendants object to this request, as it is currently drafted, as overly broad

10  and unduly burdensome.  Accordingly, the parties have met and conferred and

11  Plaintiff has agreed to limit its request to documents housed at the Pentagon that

12  contain studies or analysis concerning service in the United States Armed Forces

13  and homosexual conduct or homosexual orientation.

14      Defendants object to this request, even in its narrowed form, as overly broad

15  and unduly burdensome.  Moreover, Plaintiff appears to be asking for documents

16  that are not related to the Policy and are not relevant to Plaintiff's claims.  Finally,

17  Defendants also object to this request to the extent that it calls for drafts, which are

18  inherently deliberative and thus privileged.

19      Subject to the specific and general objections set forth above, Defendants

20  will produce documents housed at the Pentagon that contain studies or analysis

21  concerning service in the United States Armed Forces and homosexual conduct or

22  homosexual orientation.

23  **DOCUMENT REQUEST NO. 37:**

24      All studies, reports, or other documents relied upon, presented to, in the

25  files of or considered, consulted, or reviewed by Defendants (dating from January

26  1, 2003 to the present) concerning the presence in the United States Armed Forces

27  of gay or lesbian servicemembers, servicemembers with a homosexual orientation

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                          -32-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  or servicemembers who engage in or have engaged in homosexual conduct.

2  **RESPONSE**:

3      Defendants object to this request, as it is currently drafted, as overly broad

4  and unduly burdensome.  Accordingly, the parties have met and conferred and

5  Plaintiff has acknowledged that this request is likely subsumed by previous

6  document requests.  This request, therefore, does not require the production of

7  additional documents.

8      As noted above, neither the statute nor the regulations prohibit the

9  "presence in the United States Armed Forces of gay or lesbian servicemembers" or

10  "servicemembers with a homosexual orientation."  The statute is, instead, focused

11  on the conduct of members of the Armed Forces.

12  **DOCUMENT REQUEST NO. 38:**

13      The Defensibility Memorandum and all drafts or prior version of that

14  Memorandum.

15  **RESPONSE**:

16      The parties have met and conferred, and Plaintiff has agreed to limit this

17  request to drafts and implemented iterations of the Defensibility Memorandum.

18      Defendants object to this request to the extent it calls for drafts, which are

19  inherently deliberative and thus privileged.  The requested document, moreover,

20  appears to be within Plaintiff's possession and will not be produced again by

21  Defendants.  The referenced document can be found at:

22  http://dont.stanford.edu/regulations/RenoMemo.htm.

23      Subject to the specific and general objections set forth above, Defendants

24  will produce versions of the Defensibility Memorandum that were implemented

25  and are housed at the Pentagon.

26  **DOCUMENT REQUEST NO. 39:**

27      All Documents prepared by the Attorney General of the United States, any

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                                          -33-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0083**

1  attorney or any other employee of the DOD or the Department of Justice, or any

2  attorney for Defendants concerning United States Armed Forces personnel and

3  homosexual conduct or homosexual orientation, other than documents solely

4  concerning specific servicemembers.

5  **RESPONSE:**

6      Defendants object to this request, as it is currently drafted, as overly broad

7  and unduly burdensome.  Accordingly, the parties have met and conferred but

8  Plaintiff has refused to narrow its request.

9      Defendants object to this request as overly broad and unduly burdensome.

10  In addition, it inappropriately calls for the production of documents subject to the

11  attorney-client privilege and attorney work-product doctrine.

12      Defendants also object to this request to the extent that it calls for

13  documents prepared by the Attorney General or from the Department of Justice.

14  Rule 34 does not require us to search for or produce documents from outside of

15  the Department of Defense.  By its terms, Fed. R. Civ. P. 34 applies only to

16  parties–not non-parties, and thus "may [not] be used to discover matters from a

17  nonparty."  Hatch v. Reliance Ins. Co., 758 F.2d 409, 415 (9th Cir. 1985); see also

18  Viera v. Woodford, 258 Fed. Appx. 924, 2007 WL 4357761 at *1 (9th Cir. 2007).

19  While the United States may be named as a party to this action under section 702

20  Administrative Procedure Act ("APA"), any action under that section must result

21  from "agency action" and any injunctive relief sought may only be issued against

22  the "Federal Officer or officers" responsible for compliance.  Because the

23  Department of Defense, not Congress or any other governmental agency, is

24  charged with administering 10 U.S.C. § 654 and the applicable regulations,

25  discovery obligations do not reach beyond that Department.

26      Subject to the specific and general objections set forth above, Defendants

27  will produce documents housed at the Pentagon concerning United States Armed

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS            -34-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  Forces personnel and homosexual conduct or homosexual orientation, other than

2  documents solely concerning specific servicemembers.

3  **DOCUMENT REQUEST NO. 40:**

4       All Documents relating to <u>Lawrence v. Texas</u>, 593 U.S. 558 (2003) and its

5  effect or lack of effect on the Policy, the implementation of the Policy, or the

6  legality of the Policy.

7  **RESPONSE:**

8       Defendants object to this request, as it is currently drafted, as overly broad

9  and unduly burdensome.  In addition, this request inappropriately calls for the

10  production of documents subject to the attorney-client privilege and attorney

11  work-product doctrine.

12       Defendants also object to this request to the extent that it calls for

13  documents that are not in the possession of the Department of Defense.  Rule 34

14  does not require us to search for or produce documents from outside of the

15  Department of Defense.  By its terms, Fed. R. Civ. P. 34 applies only to

16  parties–not non-parties, and thus "may [not] be used to discover matters from a

17  nonparty."  <u>Hatch v. Reliance Ins. Co.</u>, 758 F.2d 409, 415 (9th Cir. 1985); <u>see also</u>

18  <u>Viera v. Woodford</u>, 258 Fed. Appx. 924, 2007 WL 4357761 at *1 (9th Cir. 2007).

19  And while the United States may be named as a party to this action under section

20  702 Administrative Procedure Act ("APA"), any action under that section must

21  result from "agency action" and any injunctive relief sought may only be issued

22  against the "Federal Officer or officers" responsible for compliance.  Because the

23  Department of Defense, not Congress or any other governmental agency, is

24  charged with administering 10 U.S.C. § 654 and the applicable regulations,

25  discovery obligations do not reach beyond that Department.

26       In light of these objections, the parties met and conferred and Plaintiff

27  agreed to reexamine this request and provide Defendants with clarification at a

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -35-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0085**

1  later date.  Plaintiff has since informed Defendants that it is unwilling to clarify or

2  narrow its request.

3      Subject to the specific and general objections set forth above, Defendants

4  will produced non-privileged, responsive documents housed at the Pentagon.

5  **DOCUMENT REQUEST NO. 41:**

6      All Documents that concern United States Armed Forces personnel and

7  homosexual conduct or homosexual conduct or homosexual orientation prepared

8  by or under the direction of Defendants (dating from January 1, 2003 to the

9  present), including but not limited to position papers, policy reports, and drafts of

10  legislation.

11  **RESPONSE**:

12      Defendants object to this request, as it is currently drafted, as overly broad

13  and unduly burdensome.  Accordingly, the parties have met and conferred and

14  Plaintiff has agreed to limit its request to position papers, policy reports, and drafts

15  of legislation housed at the Pentagon.

16      Even as narrowed, Defendants object to this request to the extent that it calls

17  for the production of documents that are deliberative or otherwise privileged.

18      Subject to the specific and general objections set forth above, Defendants

19  will produce documents responsive to Plaintiff's narrowed request that are housed

20  at the Pentagon.  As noted, however, the statute is conduct-based and is not

21  addressed to "homosexual orientation."

22  **DOCUMENT REQUEST NO. 42:**

23      All rules, regulations, policies, directives, instructions, manuals, guidelines,

24  memoranda, administrative decisions, handbooks, or reports concerning sexual

25  conduct, sexual behavior or sexual orientation of servicemembers.

26  **RESPONSE**:

27      Defendants object to this request, as it is currently drafted, as overly broad

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                  -36-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  and unduly burdensome.  Accordingly, the parties have met and conferred and

2  Plaintiff has agreed to narrow its request to documents that are housed at the

3  Pentagon and concern sexual conduct, sexual behavior, or sexual orientation of

4  servicemembers.  In addition, Plaintiff clarified that its request does not call for

5  the production of documents concerning individual service members.

6      Even as narrowed, Defendants object to this request to the extent it calls for

7  drafts, which are inherently deliberative and thus privileged.  The request is also

8  vague in that Plaintiff fails to explain what "concerning sexual conduct, sexual

9  behavior or sexual orientation of servicemembers" is intended to mean in the

10  context of this request.

11      Subject to the specific and general objections set forth above, Defendants

12  will produce documents that may be responsive to Plaintiff's narrowed request

13  that are housed at the Pentagon.

14  **DOCUMENT REQUEST NO. 43:**

15      All reports, interim reports, and drafts or summaries of reports prepared by

16  the United States GAO concerning United States Armed Forces personnel and

17  homosexual conduct or homosexual orientation, including but not limited to the

18  reports entitled "Homosexuals in the Military:  Policies and Practices of Foreign

19  Countries," "Defense Force Management:   DOD's Policy on Homosexuality," and

20  "Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct

21  Policy Cannot be Completely Estimated.  The referenced documents can be found

22  at: http://archive.gao.gov/t2pbat5/149440.pdf,

23  http://archive.gao.gov/d33t10/146980.pdf, and

24  http://www.gao.gov/new.items/d05299.pdf.

25  **RESPONSE:**

26      Defendants object to this request, as it is currently drafted, as overly broad

27  and unduly burdensome.  Defendants also object to this request to the extent that it

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -37-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0087

1  calls for drafts and other deliberative materials.  In addition, Defendants object to

2  this request to the extent that it call for documents that are in the possession of the

3  Government Accountability Office, which is an investigative arm of Congress.

4  Rule 34 does not require us to search for produce documents from outside of the

5  Department of Defense.  By its terms, Fed. R. Civ. P. 34 applies only to

6  parties–not non-parties, and thus "may [not] be used to discover matters from a

7  nonparty."  Hatch v. Reliance Ins. Co., 758 F.2d 409, 415 (9th Cir. 1985); see also

8  Viera v. Woodford, 258 Fed. Appx. 924, 2007 WL 4357761 at *1 (9th Cir. 2007).

9  While the United States may be named as a party to this action under section 702

10  Administrative Procedure Act ("APA"), any action under that section must result

11  from "agency action" and any injunctive relief sought may only be issued against

12  the "Federal Officer or officers" responsible for compliance.  Because the

13  Department of Defense, not Congress or any other governmental agency or

14  instrumentality, is charged with administering 10 U.S.C. § 654 and the applicable

15  regulations, discovery obligations do not reach beyond that Department.

16        In light of these objections, the parties met and conferred, and Plaintiff

17  agreed to reexamine this request and provide Defendants with clarification at a

18  later date.  Plaintiff has since informed Defendants that it is unwilling to clarify or

19  narrow its request.

20        Subject to the specific and general objections set forth above, Defendants

21  will produce documents housed at the Pentagon that contain analysis or studies of

22  reports prepared by the United States GAO concerning United States Armed

23  Forces personnel and homosexual conduct or homosexual orientation.

24  **DOCUMENT REQUEST NO. 44:**

25        All reports, interim reports, and drafts or summaries of reports prepared by

26  the RAND Corporation's (RAND") National Defense Research Institute

27  concerning United States Armed Forces personnel and homosexual conduct or

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -38-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0088

1   homosexual orientation, including but not limited to a report entitled "Sexual

2   Orientation and U.S. Military Personnel Policy: Options and Assessment."

3   **RESPONSE:**

4        Defendants object to this request, as it is currently drafted, as overly broad

5   and unduly burdensome.  Accordingly, the parties have met and conferred and

6   Plaintiff has agreed to limit its request to the RAND reports, drafts of the RAND

7   reports, and documents that contain analysis or studies of the RAND reports.

8        Defendants object to this request to the extent it calls for drafts, which are

9   inherently deliberative and thus privileged.  The RAND reports, moreover, appear

10  to be within Plaintiff's possession and will not be produced again by Defendants.

11  The referenced document can be found, in parts, at:

12  http://www.rand.org/pubs/monograph_reports/2009/MR323part1.pdf,

13  http://www.rand.org/pubs/monograph_reports/2009/MR323part2.pdf, and

14  http://www.rand.org/pubs/monograph_reports/2009/MR323part3.pdf.

15       Subject to the specific and general objections set forth above, Defendants

16  will produce documents housed at the Pentagon that contain analysis or studies of

17  the RAND reports concerning United States Armed Forces personnel and

18  homosexual conduct or homosexual orientation.

19  **DOCUMENT REQUEST NO. 45:**

20       All Documents concerning reports, interim reports, and drafts or summaries

21  of reports prepared by RAND's National Defense Research Institute, including but

22  not limited to, all correspondence and communications between RAND and

23  Defendants regrading the nature, scope and focus of "Sexual Orientation and U.S.

24  Military Personnel Policy," "Individual Characteristics and Unit Performance: A

25  Review of Research and Methods," and all other reports prepared by RAND.

26  **RESPONSE:**

27       Defendants object to this request, as it is currently drafted, as overly broad

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -39-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0089

1   and unduly burdensome.  Accordingly, the parties have met and conferred and

2   Plaintiff has agreed to limit its request to communications between RAND's

3   National Defense Research Institute and the Department of Defense regarding the

4   reports listed in the request.

5           Defendants object to this request to the extent it calls for interim reports,

6   drafts, or summaries which are deliberative and thus privileged.

7           Subject to the specific and general objections set forth above, Defendants

8   will produce correspondence housed at the Pentagon between RAND and the

9   Department of Defense concerning the reports listed in the request.

10  **DOCUMENT REQUEST NO. 46:**

11          All reports, interim reports, and drafts or summaries of reports produced by

12  or in countries other than the United States that were commissioned, requested, or

13  consulted by the United States Army Research Office and that concern

14  homosexual conduct or homosexual orientation within the armed forces of such

15  countries, including but not limited to the report entitled "Homosexuality and

16  Armed Forces in the Netherlands" produced by the Dutch Foundation on Armed

17  Forces and commissioned by the European Research Office of the United States

18  Army.  The referenced document can be found at:

19  http://www.dtic.mil/cgi-bin/GetTRDoc?AD=ADA350707&Location=U2&doc=G

20  etTRDoc.pdf on pages 34-53.

21  **RESPONSE:**

22          Defendants object to this request, as it is currently drafted, as overly broad

23  and unduly burdensome.  Accordingly, the parties have met and conferred and

24  Plaintiff has agreed to limit its request to responsive documents housed at the

25  Pentagon.

26          Defendants object to this request to the extent it calls for interim reports,

27  drafts, or summaries which are deliberative and thus privileged.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -40-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0090

1      Subject to the specific and general objections set forth above, Defendants

2  will produce documents responsive to Plaintiff's narrowed request that are housed

3  at the Pentagon.

4  **DOCUMENT REQUEST NO. 47:**

5      All reports, interim reports, and drafts or summaries of reports relating to

6  countries other than the United States' experience with, consideration of, or

7  evaluation of military service by individuals with a homosexual orientation or by

8  individuals who engage in homosexual conduct.

9  **RESPONSE:**

10      Defendants object to this request, as it is currently drafted, as overly broad

11  and unduly burdensome.  Accordingly, the parties met and conferred, and Plaintiff

12  agreed to limit its request to responsive documents housed at the Pentagon.

13  Plaintiff has since reneged on its agreement and has informed Plaintiff that it is no

14  longer willing to limit its request to documents in the possession of the

15  Department of Defense.

16      Defendants object to this request to the extent it calls for interim reports,

17  drafts, or summaries which are deliberative and thus privileged.  Defendants also

18  object to this request to the extent that it call for documents that are not in the

19  possession of the Department of Defense.  Rule 34 does not require us to search

20  for or produce documents from outside of the Department of Defense.  By its

21  terms, Fed. R. Civ. P. 34 applies only to parties–not non-parties, and thus "may

22  [not] be used to discover matters from a nonparty." Hatch v. Reliance Ins. Co.,

23  758 F.2d 409, 415 (9th Cir. 1985); see also Viera v. Woodford, 258 Fed. Appx.

24  924, 2007 WL 4357761 at *1 (9th Cir. 2007).   While the United States may be

25  named as a party to this action under section 702 Administrative Procedure Act

26  ("APA"), any action under that section must result from "agency action" and any

27  injunctive relief sought may only be issued against the "Federal Officer or

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  officers" responsible for compliance.  Because the Department of Defense, not
2  Congress or any other governmental agency, is charged with administering 10
3  U.S.C. § 654 and the applicable regulations, discovery obligations do not reach
4  beyond that Department.
5      Subject to the specific and general objections set forth above, Defendants
6  will produce certain documents housed at the Pentagon that relate to countries
7  other than the United States' experience with, consideration of, or evaluation of
8  military service by individuals with a homosexual orientation or by individuals
9  who engage in homosexual conduct.
10 **DOCUMENT REQUEST NO. 48**:
11      All reports, interim reports, and drafts or summaries or reports prepared by
12 the Walter Reed Army Institute of Research concerning United States Armed
13 Forces personnel and homosexual conduct or homosexual orientation, including
14 but not limited to a report entitled "Evaluating the Unit Manning System:  Lessons
15 Learned to Date" and "'Unit Reconstitution in a Wartime Scenario,' in David
16 Marlow, ed., Unit Manning System Field Evaluation:  Technical Report 4" by the
17 Department of Military Psychiatry, "Unit Manning System Field Evaluation:
18 Technical Report No. 5" edited by Faris Kirkland and Linett Sparzcino, and all
19 correspondence and communications between the Walter Reed Army Institute of
20 Research and Defendants regarding the nature, scope, and focus of the above
21 reports and all other reports prepared by the Walter Reed Army Institute of
22 Research.
23 **RESPONSE:**
24      Defendants object to this request as overly broad and unduly burdensome.
25 Accordingly, the parties have met and conferred but have been unable to reach a
26 compromise as to the scope of this request.
27      Defendants also object to this request to the extent it calls for interim
28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  reports, drafts, or summaries which are deliberative and thus privileged.  The

2  reports listed in the request appear to be in Plaintiff's possession and will not be

3  produced again.  In addition, the reports can be found at:

4  http://www.dtic.mil/cgi-bin/GetTRDoc?AD=ADA187892&Location=U2&doc=G

5  etTRDoc.pdf,

6  http://www.dtic.mil/cgi-bin/GetTRDoc?AD=ADA207026&Location=U2&doc=G

7  etTRDoc.pdf on pages47-59, and

8  http://www.dtic.mil/cgi-bin/GetTRDoc?AD=ADA207193&Location=U2&doc=G

9  etTRDoc.pdf.

10       Subject to the specific and general objections set forth above, Defendants

11  will produce reports from the Walter Reed Army Institute of Research that are not

12  listed in the request and concern United States Armed Forces personnel and

13  homosexual conduct or homosexual orientation.  Defendants will also produce,

14  subject to the specific and general objections set forth above, correspondence

15  between the Walter Reed Army Institute of Research and Defendants regarding the

16  reports.

17  **DOCUMENT REQUEST NO. 49:**

18       All reports, interim reports and drafts or summaries of reports prepared by

19  the Army Research Institute concerning United States Armed Forces personnel

20  and homosexual conduct or homosexual conduct or homosexual orientation.

21  **RESPONSE:**

22       Defendants object to this request as overly broad and unduly burdensome.

23  Accordingly, the parties have met and conferred but have been unable to reach a

24  compromise as to the scope of this request.

25       Defendants also object to this request to the extent it calls for interim

26  reports, drafts, or summaries which are deliberative and thus privileged.

27       Subject to the specific and general objections set forth above, Defendants

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                          -43-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0093

1  will produce reports prepared by the Army Research Institute concerning United

2  States Armed Forces personnel and homosexual conduct or homosexual conduct

3  or homosexual orientation.

4  **DOCUMENT REQUEST NO. 50:**

5      All rules, regulations, policies, directives, instructions, manuals, guidelines,

6  memoranda, administrative decisions, handbooks or reports formulated, prepared

7  for or on behalf of the Bureau or Naval Personnel concerning homosexual

8  orientation and homosexual conduct in the Navy, including but not limited to

9  those Documents prepared for or on behalf of the office of the Chief of Naval

10 Personnel for Personal Readiness and Community Support.

11 **RESPONSE:**

12     Defendants object to this request as overly broad and unduly burdensome.

13 Accordingly, the parties have met and conferred but have been unable to reach a

14 compromise as to the scope of this request.

15     Defendants also object to this request to the extent it calls for interim

16 reports, drafts, or summaries which are deliberative and thus privileged.

17     Subject to the specific and general objections set forth above, Defendants

18 will produce documents prepared for or on behalf of the Bureau or Naval

19 Personnel concerning homosexual orientation and homosexual conduct in the

20 Navy that are housed at the Pentagon.

21 **DOCUMENT REQUEST NO. 51:**

22     All rules, regulations, policies, directives, instructions, manuals, guidelines,

23 memoranda, administrative decisions, handbooks, or reports concerning the

24 United States Armed Forces' treatment of servicemembers who discriminate

25 against others or whose conduct is motivated by a prejudice based on another's

26 race, gender, or religion, including but not limited the anti-prejudice programs and

27 procedures through which servicemembers are trained to act in a non-

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                          -44-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0094**

1  discriminatory manner and the formal procedures through which discriminatory

2  behavior by servicemembers is addressed.

3  **RESPONSE:**

4          Defendants object to this request as overly broad and unduly burdensome.

5  Defendants also object to this request to the extent it calls for interim reports,

6  drafts, or summaries which are deliberative and thus privileged.  Finally,

7  Defendants object to this request because it is vague; it is unclear what Plaintiff

8  means when it requests documents that concern "United States Armed Forces'

9  treatment of servicemembers who discriminate against others or whose conduct is

10 motivated by a prejudice based on another's race, gender, or religion, including

11 but not limited the anti-prejudice programs and procedures through which

12 servicemembers are trained to act in a non-discriminatory manner and the formal

13 procedures through which discriminatory behavior by servicemembers."

14         Pursuant to Plaintiff's Counsel's letter to Defense Counsel, dated December

15 15, 2009, Defendants understand that Plaintiff has withdrawn this request for

16 review.  Defendants will thus not produce documents pursuant to this request.

17 **DOCUMENT REQUEST NO. 52:**

18         All rules, regulations, policies, directives, instructions, manuals, guidelines,

19 memoranda, administrative decisions, handbooks, or reports concerning the

20 United States Armed Forces' implementation of the Policy or the Act, including,

21 but not limited to, the Navy Manpower Analysis Center, "Homosexual

22 Administrative Discharge Board/Show Cause Hearings."  Memorandum of

23 Department of the Navy, June 1994, Judith Miller, General Counsel of the

24 Department of Defense, "Memorandum for the General Counsels of the Military

25 Departments, the Judge Advocate General of the Army, the Judge Advocate

26 General of the Navy, the Judge Advocate General of the Air Force, the Staff

27 Advocated to the Commandant to the Marine Corps:  Policy on Homosexual

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                                    -45-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0095**

1  Conduct in the Armed Forces," August 18, 1995, and Regulation 500-3-3. vol. 3,

2  "Reserve Component Unit Commanders Handbook," U.S. Army, 1999, Table 2.1:

3  "Personnel Actions During the Mobilization Process."

4  **RESPONSE:**

5      Defendants object to this request as overly broad and unduly burdensome.

6  Defendants also object to this request to the extent it calls for interim reports,

7  drafts, or summaries which are deliberative and thus privileged. Finally, the

8  referenced documents appear to be in Plaintiff's possession and will not be

9  produced again.  Moreover, the documents are publically available at:

10   http://dont.stanford.edu/regulations/hadbsch149.pdf,

11  http://dont.stanford.edu/regulations/memo18aug1995.pdf, and

12  http://88.80.13.160.nyud.net/leak/formdeps-handbook-1999.pdf on pages 27-37.

13      In light of these objections, the parties have met and conferred, and Plaintiff

14  has acknowledged that this request is likely subsumed by previous requests.

15  Defendants will thus not produce documents pursuant to this request.

16  **DOCUMENT REQUEST NO. 53:**

17      All editions of the Pentagon's "Early Bird" in which articles concerning

18  United States Armed Forces personnel and homosexual conduct or homosexual

19  orientation were published.

20  **RESPONSE:**

21      Defendants object to this request as overly broad and unduly burdensome.

22  Defendants also object to the extent that the documents requested are publically

23  available and can be found at: http://www.defenselink.mil/news/archive.aspx.

24      Pursuant to Plaintiff's Counsel's letter to Defense Counsel, dated December

25  15, 2009, Defendants understand that Plaintiff has withdrawn this request for

26  review.  Defendants will thus not produce documents pursuant to this request.

27

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                          -46-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**DOCUMENT REQUEST NO. 54:**

The "Report of the Board Appointed to Prepare and Submit Recommendation to the Secretary of the Navy for the Revision of Policies, Procedures and Directive Dealing with Homosexuals" (the "Crittenden Report"), any drafts of the Crittenden Report, and any Documents concerning the Crittenden Report.

**RESPONSE**:

Defendants object to this request as overly broad and unduly burdensome. Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit its request to documents housed at the Pentagon that contain studies or analysis of the Crittenden report.

Defendants object to this request to the extent it calls for drafts, which are inherently deliberative and thus privileged. The requested document, moreover, appears to be within Plaintiff's possession and will not be produced again by Defendants. The referenced document can be found at: http://www.lonelygods.com/res/crittenden_report.pdf.

Subject to the specific and general objections set forth above, Defendants will produce documents housed at the Pentagon that contain studies or analysis of the Crittenden report.

**DOCUMENT REQUEST NO. 55:**

All reports, research, or analyses prepared or undertaken by the Defense Personnel Security Research and Education Center that concern United States Forces personnel and homosexual conduct or homosexual orientation, and drafts of such reports, research or analyses, and any Documents concerning such reports, research or analyses.

**RESPONSE:**

Defendants object to this request as overly broad and unduly burdensome.

DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS                    -47-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0097

1  Accordingly, the parties have met and conferred but have been unable to reach a
2  compromise as to the scope of this request.

3      Defendants also object to this request to the extent it calls for interim
4  reports, drafts, or summaries, which are deliberative and thus privileged.

5      Subject to the specific and general objections set forth above, Defendants
6  will produce certain documents that contain reports, research, or analyses prepared
7  or undertaken by the Defense Personnel Security Research and Education Center
8  that concern United States Forces personnel and homosexual conduct or
9  homosexual orientation.

10 **DOCUMENT REQUEST NO. 56:**

11     All reports, research, or analyses prepared or undertaken by the office of the
12 Surgeon General that concern United States Armed Forces personnel and
13 homosexual conduct or homosexual orientation.

14 **RESPONSE:**

15     Defendants object to this request to the extent that it call for documents that
16 are in the possession of the Office of the Surgeon General, which is part of the
17 Department of Health and Human Services.  Rule 34 does not require us to search
18 for or produce documents from outside of the Department of Defense.  By its
19 terms, Fed. R. Civ. P. 34 applies only to parties–not non-parties, and thus "may
20 [not] be used to discover matters from a nonparty."  Hatch v. Reliance Ins. Co.,
21 758 F.2d 409, 415 (9th Cir. 1985); see also Viera v. Woodford, 258 Fed. Appx.
22 924, 2007 WL 4357761 at *1 (9th Cir. 2007).   While the United States may be
23 named as a party to this action under section 702 Administrative Procedure Act
24 ("APA"), any action under that section must result from "agency action" and any
25 injunctive relief sought may only be issued against the "Federal Officer or
26 officers" responsible for compliance.  Because the Department of Defense, not
27 Congress or any other governmental agency, is charged with administering 10
28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                              -48-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0098

1  U.S.C. § 654 and the applicable regulation, discovery obligations do not extend
2  beyond that Department.
3      In light of these objections, the parties met and conferred, and Plaintiff
4  agreed to reexamine this request and provide Defendants with clarification at a
5  later date.  Plaintiff has since informed Defendants that it is unwilling to clarify or
6  narrow its request.
7      Subject to the specific and general objections set forth above, Defendants
8  will produce documents housed at the Pentagon that contain reports, research, or
9  analyses prepared or undertaken by the office of the Surgeon General that concern
10 United States Armed Forces personnel and homosexual conduct or homosexual
11 orientation.

12 **DOCUMENT REQUEST NO. 57:**

13     All reports, research, or analysis concerning United States Armed Forces
14 personnel and homosexual conduct or homosexual orientation commissioned,
15 requested, or received by Defendants from any person or organization, including,
16 but not limited to, the Family Research Council, the Defense Readiness Council,
17 the Center for Military Readiness, TROA, the American Security Council
18 Foundation, the Conservative Resources Center, Exodus International,
19 Regeneration, the Jackson Institute, and the Homosexual Study Group.

20 **RESPONSE:**

21     Defendants object to this request, as it is currently drafted, as overly broad
22 and unduly burdensome.  Accordingly, the parties have met and conferred and
23 Plaintiff has agreed to limit its request to documents housed at the Pentagon.
24     Subject to the specific and general objections set forth above, Defendants
25 will produce documents responsive to Plaintiff's narrowed request.

26 **DOCUMENT REQUEST NO. 58:**

27     All public statements  made by the Defendants (dating from January 1, 2003

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -49-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   to the present), including but not limited to speeches, presentations, reports, and

2   press releases, on the subject of United States Armed Forces personnel and

3   homosexual conduct or homosexual orientation, and all drafts or prior version of

4   those public statements.

5   **RESPONSE:**

6       Defendants object to this request, as it is currently drafted, as overly broad

7   and unduly burdensome.  Defendants object to this request to the extent that it call

8   for documents that are not in the possession of the Department of Defense.  Rule

9   34 does not require us to reach outside of the Department of Defense – to

10  Congress, or to other agencies such as the Departments of Justice and Health and

11  Human Services, that are not parties to this action – for responsive documents.  By

12  its terms, Fed. R. Civ. P. 34 applies only to parties–not non-parties, and thus "may

13  [not] be used to discover matters from a nonparty."  Hatch v. Reliance Ins. Co.,

14  758 F.2d 409, 415 (9th Cir. 1985); see also Viera v. Woodford, 258 Fed. Appx.

15  924, 2007 WL 4357761 at *1 (9th Cir. 2007).   While the United States may be

16  named as a party to this action under section 702 Administrative Procedure Act

17  ("APA"), any action under that section must result from "agency action" and any

18  injunctive relief sought may only be issued against the "Federal Officer or

19  officers" responsible for compliance.  Because the Department of Defense, not

20  Congress or any other governmental agency, is charged with administering 10

21  U.S.C. § 654 or applicable regulation, discovery obligations do not reach beyond

22  that Department.

23      In light of these objections, the parties met and conferred, and Plaintiff

24  agreed to reexamine this request and provide Defendants with clarification at a

25  later date.  Plaintiff has since informed Defendants that it is unwilling to clarify or

26  narrow this request.

27      Defendants will not produce documents pursuant to this request absent

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -50-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  clarification and narrowing.  Defendants also note that "public statements" are

2  publically available and can be readily accessed by Plaintiff.

3  **DOCUMENT REQUEST NO. 59:**

4       All Documents upon which the Defendants intend to rely to support their

5  position that the Act, the DOD Regulations, and the DOD Act Regulations are

6  rationally related to a legitimate purpose.

7  **RESPONSE:**

8       Defendants object to this request as premature and subject to the general

9  objections set forth above.  Notwithstanding these objections, Defendants

10 presently intend to rely upon, among other things, the text of the statute, the

11 legislative history, and any other basis that Congress "rationally *could have*

12 *believed*" supported the objective of the statute in defense.  Western and Southern

13 Life Ins. Co., 451 U.S. at 671-72 (1981) (emphasis in original).

14      The text and legislative history of the statute are publically available and

15 will not be produced by Defendants.  Subject to the general and specific objections

16 set forth above, Defendants will produce documents they intend to rely on to

17 support the position stated in Plaintiff's request and will supplement their response

18 as necessary.

19 **DOCUMENT REQUEST NO. 60:**

20      All Documents related to the GAO report entitled "Defense Force

21 Management :   DOD's Policy on Homosexuality," including but not limited to a

22 draft report dated March 9, 1992.  The referenced document can be found at

23 http://archive.gao.gov/d33t10/146980.pdf.

24 **RESPONSE:**

25      Defendants object to this request as overly broad and unduly burdensome.

26 Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit

27 its request to documents housed at the Pentagon.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                          -51-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    Subject to the specific and general objections set forth above, Defendants

2  will produce documents responsive to Plaintiff's narrowed request.

3  **DOCUMENT REQUEST NO. 61:**

4    All correspondence and other documents transmitted between defendants

5  and Congress related to GAO studies or reports related to DOD's policy on the

6  service of gay and lesbians in the United States Armed Forces.

7  **RESPONSE:**

8    Defendants object to this request as overly broad and unduly burdensome.

9  Accordingly, the parties have met and conferred, and Plaintiff has agreed to

10  narrow its request to documents housed at the Pentagon.

11    Defendants object to this request to the extent that it calls for privileged

12  documents.

13    Subject specific and general objections set forth above, Defendants will

14  produce documents responsive to Plaintiff's narrowed request that are housed in

15  the Pentagon.  To the extent requested documents belong to Congress, or any other

16  agency or instrumentality outside of the Department of Defense, they will not be

17  produced absent consent of Congress or the originating agency or instrumentality.

18  **DOCUMENT REQUEST NO. 62:**

19    The PERSEREC report entitled "Nonconforming Sexual Orientations and

20  Military Suitability," prepared by Theodore R. Sarbin and Kenneth E. Karols,

21  dated December 1988 and all Documents relating thereto.

22  **RESPONSE**:

23    The requested document appears to be within Plaintiff's possession and will

24  not be produced again by Defendants.  The referenced document can be found at:

25  http://www.dod.mil/pubs/foi/reading_room/229.pdf.

26    Subject to the general objections set forth above, Defendants will produce

27  documents housed at the Pentagon that contain analysis or studies of the

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -52-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0102**

1  PERSEREC report entitled "Nonconforming Sexual Orientations and Military

2  Suitability," prepared by Theodore R. Sarbin and Kenneth E. Karols, dated

3  December 1988.

4  **DOCUMENT REQUEST NO. 63:**

5     The PERSEREC report entitled "Preservice Adjustment of Homosexual and

6  Heterosexual Military Accessions:  Implications for Security Clearance

7  Suitability," prepared by Michael McDaniel, dated January 1989 and all

8  Documents relating thereto.

9  **RESPONSE**:

10     The requested document appears to be within Plaintiff's possession and will

11  not be produced again by Defendants.  The referenced document can be found at:

12  http://www.dod.mil/pubs/foi/reading_room/228.pdf.

13     Subject to the general objections set forth above, Defendants will produce

14  documents housed at the Pentagon that contain analysis or studies of the

15  PERSEREC report entitled "Preservice Adjustment of Homosexual and

16  Heterosexual Military Accessions:  Implications for Security Clearance

17  Suitability," prepared by Michael McDaniel, dated January 1989.

18  **DOCUMENT REQUEST NO. 64:**

19     All Documents related to PERSEREC studies concerning the service of gay

20  and lesbian servicemembers in the United States Armed Forces.

21  **RESPONSE:**

22     Defendants object to this request as overly broad and unduly burdensome

23  and subject to the general objections set forth above. Accordingly, the parties have

24  met and conferred but were unable to reach a compromise as to the scope of this

25  request.

26     Subject to the specific and general objections set forth above, Defendants

27  will produce certain documents housed at the Pentagon that contain PERSEREC

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -53-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0103**

1  studies concerning the service of gay and lesbian servicemembers in the United

2  States Armed Forces or analysis of those studies.

3  **DOCUMENT REQUEST NO. 65:**

4      All correspondence and other documents transmitted between Defendants

5  and Congress related to PERSEREC studies and reports related to DOD's policy

6  on the service of gay and lesbian servicemembers in the United States Armed

7  Forces.

8  **RESPONSE:**

9      Defendants object to this request as overly broad and unduly burdensome

10  and subject to the general objections set forth above.  Accordingly, the parties

11  have met and conferred but were unable to reach a compromise as to the scope of

12  this request.

13      In addition, Defendants object to this request to the extent that it calls for

14  privileged documents.

15      Subject to the specific and general objections set forth above, Defendants

16  will produce correspondence and other documents that are housed at the Pentagon

17  and that were transmitted between Defendants and Congress related to

18  PERSEREC studies and reports related to DOD's policy on the service of gay and

19  lesbian servicemembers in the United States Armed Forces.  To the extent

20  requested documents belong to Congress, or any other agency or instrumentality

21  outside of the Department of Defense, they will not be produced absent consent of

22  Congress or the originating agency or instrumentality.

23  **DOCUMENT REQUEST NO. 66:**

24      All documents related to the policies, procedures, handbooks, rules,

25  guidelines, or communications relating to deployment of known or suspected gay

26  or lesbian servicemembers from the year 2001 to the present.

27

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -54-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**RESPONSE:**

Defendants object to this request as unduly burdensome and vague.  The request fails to define the universe of documents sought; to the extent it calls for the production of individual servicemembers' files, such documents will not be produced subject to Plaintiff's agreement.  The request also fails to define "known or suspected gay or lesbian servicemembers."

Subject to the specific and general objections set forth above, Defendants will produce documents housed at the Pentagon that relate to the policies, procedures, handbooks, rules, guidelines, or communications relating to deployment of known or suspected gay or lesbian servicemembers from the year 2001 to the present, if any exist.

**DOCUMENT REQUEST NO. 67:**

All documents related to the deployment of gay or lesbian servicemembers in the process of discharge proceedings for homosexual conduct from the year 2001 to the present.

**RESPONSE:**

Defendants object to this request as overly broad and unduly burdensome.

Subject to the specific and general objections set forth above, Defendants will produce documents housed at the Pentagon that relate to the deployment of gay or lesbian servicemembers in the process of discharge proceedings for homosexual conduct from the year 2001 to the present.

**DOCUMENT REQUEST NO. 68:**

All Documents related to any restriction on polling of service members on the subject of the service of gay men and lesbian (as described in RAND National Defense Research Institute, "Sexual Orientation and U.S. Military Personnel Policy; Option and Assessments," at 209 n.2 (1993)), during the period from January 1992 to the present.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                          -55-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0105

1  **RESPONSE:**

2      Defendants object to this request as overly broad and unduly burdensome.

3  Accordingly, the parties have met and conferred, and the Plaintiff has agreed to

4  narrow its request to documents housed at the Pentagon.

5      Subject to the specific and general objections set forth above, Defendants

6  will produce documents responsive to Plaintiff's narrowed request.

7  **DOCUMENT REQUEST NO. 69:**

8      All Documents and communications referring or relating to the total number

9  of enlisted members of the United States Armed Force who were discharged from

10  1994 through the present pursuant to the Policy and DOD Regulations.

11  **RESPONSE**:

12      Defendants object to this request as overly broad and unduly burdensome.

13  Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit

14  its request to responsive statistical data housed at the Pentagon.

15      Subject to the specific and general objections set forth above, Defendants

16  will produce documents responsive to Plaintiff's narrowed request.

17  **DOCUMENT REQUEST NO. 70:**

18      All Documents and communications referring or relating to the number of

19  officers of the United States Armed Forces that were discharged from 1994

20  through the present pursuant to the Policy, DOD Regulations, and DOD Act

21  Regulations.

22  **RESPONSE**:

23      Defendants object to this request as overly broad and unduly burdensome.

24  Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit

25  its request to responsive statistical data housed at the Pentagon.

26      Subject to the specific and general objections set forth above, Defendants

27  will produce documents responsive to Plaintiff's narrowed request that are housed

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -56-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0106**

1  at the Pentagon.

2  **DOCUMENT REQUEST NO. 71:**

3      All Documents and communications referring or relating to the number of

4  persons of the United States Armed Forces that were discharged from 1994

5  through the present pursuant to the Policy and DOD Regulations that contested

6  their discharge.

7  **RESPONSE**:

8      Defendants object to this request as overly broad and unduly burdensome.

9  Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit

10  its request to responsive statistical data housed at the Pentagon.

11      Subject to the specific and general objections set forth above, Defendants

12  will produce documents responsive to Plaintiff's narrowed request that are housed

13  at the Pentagon.

14  **DOCUMENT REQUEST NO. 72:**

15      All Documents and communications referring or relating to the

16  Administrative Separation Board and/or Board of Inquiries' policies, guidelines,

17  directive, handbooks, or other Documents as to the separation of servicemembers

18  under the Policy or DOD Regulation.

19  **RESPONSE**:

20      Defendants object to this request as overly broad and unduly burdensome.

21  Accordingly, the parties have met and conferred and Plaintiff has agreed to limit

22  its request to responsive documents housed at the Pentagon.

23      Subject to the specific and general objections set forth above, Defendants

24  will produce certain documents housed at the Pentagon relating to the

25  Administrative Separation Board and/or Board of Inquiries' policies, guidelines,

26  directive, handbooks, or other Documents as to the separation of servicemembers

27  under the Policy or DOD Regulation.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -57-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0107**

**DOCUMENT REQUEST NO. 73:**

All Document relating to any servicemembers' having demonstrated during a discharge proceeding all of the elements listed in 10 U.S.C. § 654(b)(1)(A)-(E).

**RESPONSE**:

Defendants object to this request as overly broad, unduly burdensome and, to the extent it calls for the production of individual servicemembers' files, subject to the Privacy Act. Accordingly, the parties have met and conferred but have been unable to reach an agreement as to the scope of this request.

Subject to the specific and general objections set forth above, Defendants will produce, to the extent reasonably possible, documents relating to any servicemembers' having demonstrated during a discharge proceeding all of the elements listed in 10 U.S.C. § 654(b)(1)(A)-(E) and upon the entry of an appropriate Privacy Act protective order.

**DOCUMENT REQUEST NO. 74:**

All Documents and communications referring or relating to the number of persons of the United States Armed Forces that were subject to discharge proceeding, contested their discharge, and ultimately were not discharged from 1994 through the present pursuant to the Policy and DOD Regulations.

**RESPONSE**:

Defendants object to this request as overly broad and unduly burdensome. Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit its request to responsive statistical data housed at the Pentagon.

Subject to the specific and general objections set forth above, Defendants will produce documents responsive to Plaintiff's narrowed request.

**DOCUMENT REQUEST NO. 75:**

All Documents and communications referring or relating to all studies and assessments concerning service by gay and lesbian servicemembers in the United

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -58-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  States Armed Forces.

2  **RESPONSE**:

3      Defendants object to this request as overly broad and unduly burdensome.

4  Accordingly, the parties have met and conferred, and Plaintiff has agreed to

5  narrow its request to responsive studies housed at the Pentagon.

6      Subject to the specific and general objections set forth above, Defendants

7  will produce documents responsive to Plaintiff's narrowed request.

8  **DOCUMENT REQUEST NO. 76:**

9      All Documents and communications referring or relating to all public

10  opinion polls issued concerning service by gay and lesbian servicemembers in the

11  United States Armed Forces.

12  **RESPONSE**:

13      Defendants object to this request as overly broad and unduly burdensome.

14  Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit

15  its request to responsive documents housed at the Pentagon.

16      Subject to the specific and general objections set forth above, Defendants

17  will produce documents responsive to Plaintiff's narrowed request.

18  **DOCUMENT REQUEST NO. 77:**

19      All documents received by Congress from 1992 through December 31, 1993

20  concerning the service of gay and lesbian servicemembers in the United States

21  Armed Forces.

22  **RESPONSE**:

23      Defendants object to this request as overly broad and unduly burdensome.

24  Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit

25  its request to documents housed at the Pentagon that the Department of Defense

26  sent to Congress concerning the service of gay and lesbian servicemembers in the

27  United States Armed Forces while the statute in question was under consideration.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -59-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0109

1    Defendants object to this request, even in its narrowed form, to the extent
2    that it call for the production of privileged documents.

3    Subject to specific and general objections set forth above, Defendants will
4    produce documents responsive to Plaintiff's narrowed request.  To the extent
5    requested documents belong to Congress, or any other agency or instrumentality
6    outside of the Department of Defense, they will not be produced absent consent of
7    Congress or the originating agency or instrumentality.

8    **DOCUMENT REQUEST NO. 78:**

9    All Documents referring or relating to the section entitled "Personnel
10   Actions During the Mobilizations Process," Regulation 500-3-3. vol. 3, "Reserve
11   Component United Commanders Handbook," U.S. Army, 1999, Table 2.1.

12   **RESPONSE:**

13   Defendants object to this request as overly broad and unduly burdensome.
14   Accordingly, the parties have met and conferred, and Plaintiff has agreed to limit
15   its request to documents housed at the Pentagon that contain analysis or studies of
16   the section entitled "Personnel Actions During the Mobilizations Process,"
17   Regulation 500-3-3. vol. 3, "Reserve Component United Commanders
18   Handbook," U.S. Army, 1999, Table 2.1.

19   Subject to the specific and general objections set forth above, Defendants
20   will produce documents responsive to Plaintiff's narrowed request.

21   **DOCUMENT REQUEST NO. 79:**

22   The Reserve Component Unit Commanders Handbook, U.S. Army, 1999.

23   **RESPONSE:**

24   The requested information appears to be within Plaintiff's possession and
25   will not be produced again by Defendants.  The request is also subject to the
26   general objections set forth above.  The referenced document can be found at:
27   http://www.transchool.eustis.army.mil/LIC/DISS1/Documents/fr500-3-31.pdf.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -60-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0110

Dated: January 12, 2010

TONY WEST
Assistant Attorney General

GEORGE S. CARDONA
Acting United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

PAUL G. FREEBORNE
RYAN B. PARKER
Trial Attorneys
U.S. Department of Justice,
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 6108
Washington, D.C. 20044
Telephone: (202) 353-0543
Facsimile: (202) 616-8202
E-Mail: paul.freeborne@usdoj.gov

*Counsel For Federal Defendants*

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                          -61-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0111

Log Cabin Republicans v. United States, Civil Action No. 04-8425 (VAP) (EX)
Privilege Log

| | | | | DMDC | | | |
|---|---|---|---|---|---|---|---|
| 135 | DMDC* | DMDC | Email | October 2009 email discussing proposed polling question to gauge attitudes of service members if DADT is changed | 13-Oct-09 | Unclassified | Deliberative Process |
| 137-157 | DMDC | DMDC | Email | 2009 Email discussion concerning student proposed DADT questions for the Service Academy Gender Relations Survey | 6-Nov-09 | Unclassified | Deliberative Process |
| not stamped | Army Litigation Division | DMDC | Email | Request to confirm numbers in LCR's amended complaint | 23-Jun-09 | Unclassified | Attorney Client, Work Product, and RCFC 26(b)(3) |
| 517-552 | OSD P&R | DMDC | Email | Email chain discussing survey review and impact of DADT on National Partner Sexual Violence Surveillance System | 23-Oct-09 | Unclassified | Deliberative Process |
| 553-561 | DMDC | DMDC | Email | 2009 Email discussion concerning student proposed DADT questions for the Service Academy Gender Relations Survey | 6-Nov-09 | Unclassified | Deliberative Process |
| 597-599 | DMDCEST | DMDCEST | Email | Email chain discussing DOD IG 1999 survey on evaluation and implementation of DADT | 21-Dec-99 | Unclassified | Deliberative Process |
| 600 | DMDCCEST | DMDCEST | Email | Email chain deciding whether to delete survey question concerning sexual harassment, racial/ethnic discrimination, fraternization, homosexual conduct in the military | 1-Mar-00 | Unclassified | Deliberative Process |
| 601-624 | DMDCEST | DMDCEST | Email | Email discussing development and review of survey for the Scientific Review of Understanding Domestic Violence in the Military | 19-Jul-05 | Unclassified | Deliberative Process |

* Pursuant to the Privacy Act, the names of the author and addressee contained in the documents in bates range 1-821 are redacted and protected.

**LCR Appendix Page 0112**

Log Cabin Republicans v. United States, Civil Action No. 04-8425 (VAP) (EX)
Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 652-661 | DMDC | ARI | Email | 2008 Email chain discussing whether Army G-1, Army Research Institute, can included questions on DADT in a survey | 6-Aug-08 | Unclassified | Deliberative Process |
| 666-676 | DMDC | ARI | Email | 2008 Email chain discussing whether Army G-1, Army Research Institute, can included questions on DADT in a survey | 6-Aug-08 | Unclassified | Deliberative Process |
| 692 | DMDC | DMDC | Email | Request update on status of Army G-1 ARI survey questions on DADT | 28-Aug-08 | Unclassified | Deliberative Process |
| 693-694 | DMDC | DMDC | Email | Oct 2009 email chain discussing impact of DADT on the workplace and gender relations survey | 29-Oct-09 | Unclassified | Deliberative Process |
| 701-706 | DMDC | DMDC | Email | Email chain discussing whether Army G-1, Army Research Institute, can included questions on DADT in a survey | July 08-Nov 09 | Unclassified | Deliberative Process |
| not stamped | DHRA | Army Litigation Division and DMDC | Email | Communications regarding handling of discovery in Log Cabin Republicans v. U.S. | 18-Nov-09 | Unclassified | Attorney Client, Work Product, and RCFC 26(b)(3) |
| 737-751 | ARI | ARI | Email | Email chain discussing whether Army G-1, Army Research Institute, can included questions on DADT in a survey | 28-Aug-08 | Unclassified | Deliberative Process |

* Pursuant to the Privacy Act, the names of the author and addressee contained in the documents in bates range 1-821 are redacted and protected.

1   TONY WEST
    Assistant Attorney General
2
    GEORGE S. CARDONA
3   Acting United States Attorney

4   VINCENT M. GARVEY
    PAUL G. FREEBORNE
5   U.S. Department of Justice
    Civil Division
6   Federal Programs Branch
    P.O. Box 883
7   Washington, D.C. 20044
    Telephone: (202) 353-0543
8   Facsimile: (202) 616-8202
    E-Mail: paul.freeborne@ usdoj.gov
9
    Attorneys for Defendants United States
10  of America and Secretary of Defense

11              **UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12                    **EASTERN DIVISION**

13  LOG CABIN REPUBLICANS,            )   No. CV04-8425 (VAP) (Ex)
                                      )
14                    Plaintiff,      )   DEFENDANTS' OBJECTIONS
                                      )   AND RESPONSES TO
15            v.                      )   PLAINTIFF'S FIRST SET OF
                                      )   REQUESTS FOR ADMISSION
16  UNITED STATES OF AMERICA AND      )
    ROBERT GATES, Secretary of Defense, )
17                                    )
                      Defendants.     )
18                                    )
                                      )
19                                    )
                                      )
20  _____  )

21

22

23

24

25

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    Pursuant to Federal Rules of Civil Procedure 26 and 36, and subject to the

2  objections stated below, Defendants United States and Secretary Gates hereby

3  respond to Plaintiff's First Set of Requests for Admission for purposes of Merits

4  Discovery.

5                              **GENERAL OBJECTIONS**

6  1.    Defendants object to the Requests to the extent that Plaintiff seeks discovery

7  to probe the motivations of the Legislative and Executive Branches in passing

8  statutes and promulgating regulations implementing the law. Well-established

9  Supreme Court precedent squarely provides that inquiry into the subjective

10  motives of members of Congress is a "hazardous matter" and that courts will not

11  strike down an otherwise constitutional statute on the basis of an alleged illicit

12  motive." United States v. O'Brien, 391 U.S. 367, 383-84 (1968); Board of Educ.

13  of the Westside Community Schools v. Mergens, 496 U.S. 226, 249 (1990) (in

14  evaluating constitutionality of statute, "what is relevant is the legislative *purpose*

15  of the statute, not the possibly religious *motives* of the legislators who enacted the

16  law") (emphasis in original); Las Vegas v. Foley, 747 F.2d 1294, 1298 (9th Cir.

17  1984) (same). The same is true of attempts to probe the motivations of the

18  Executive Branch. See e.g., Village of Arlington Heights v. Metropolitan Hous.

19  Dev. Corp., 429 U.S. 252, 268 n.18 (1977) ("judicial inquiries into legislative or

20  executive motivation represent a substantial intrusion into the workings of other

21  branches of government").

22  2.    Defendants object to the Requests to the extent that they are not reasonably

23  calculated to lead to the discovery of admissible evidence.  The Court has ruled

24  that Plaintiff's challenge is governed by the rational basis standard of review.   It

25  is well understood that a legislative choice subject to the rational basis test "is not

26  subject to courtroom fact-finding." Federal Communications Comm'n v. Beach

27  Communications, 508 U.S. 307, 315 (1993) (quoting Lehnhausen v. Lake Shore

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -2-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0115**

1  Auto Parts Co., 410 U.S. 356, 364 (1973)).  Defendants accordingly have "no

2  obligation to produce evidence to sustain the rationality of a statutory

3  classification." Heller v. Doe, 509 U.S. 312, 320 (1993).  The analysis instead

4  asks whether the legislature "rationally *could have believed*" that the conditions of

5  the statute would promote its objective.  Western and Southern Life Insurance Co.

6  v. State Bd. of Equalization of California, 451 U.S. 654, 671-72 (1981) (emphasis

7  in original).

8         Rational basis review, moreover, "is not a license for courts to judge the

9  wisdom, fairness, or logic of legislative choices." Beach Communications, 508

10  U.S. at 313.  Rather, "those challenging the legislative judgment must convince

11  the court that the legislative facts on which the classification is apparently based

12  could not reasonably be conceived to be true by the governmental decisionmaker."

13  Vance v. Bradley, 440 U.S. 93, 111 (1979).  While we understand that the Court

14  has permitted Plaintiff to attempt to engage in discovery, the congressional

15  findings and legislative history underlying the statute are "legislative fact[s]"

16  subject to judicial notice and are not appropriate subjects for fact-finding or

17  discovery.

18  3.    Defendants object to the Requests to the extent that they attempt to discover

19  information concerning the "continued rationality" of the statute.  Classifications

20  subject to rational-basis review are not subject to challenge on the ground of

21  changed circumstances.  See, e.g., Montalvo-Huertas v. Rivera-Cruz, 885 F.2d

22  971, 977 (1st Cir. 1989) ("[E]valuating the continued need for, and suitability of,

23  legislation of this genre is exactly the kind of policy judgment that the rational

24  basis test was designed to preclude.").  Indeed, courts have found that even where

25  Congress has determined that a previous enactment is no longer necessary, that

26  finding does not render the statute unconstitutional.  See Smart v. Ashcroft, 401

27  F.3d 119, 123 (2d Cir. 2005) ("A congressional decision that a statute is unfair,

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -3-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0116

1    outdated, and in need of improvement does not mean that the statute when enacted

2    was wholly irrational or, for purposes of rational basis review, unconstitutional.");

3    Howard v. U.S. Dept. of Defense, 354 F.3d 1358, 1361-62 (Fed. Cir. 2004)

4    ("Congress acts based on judgments as to preferable policy; the fact that Congress

5    repeals or modifies particular legislation does not reflect a judgment that the

6    legislation, in its pre-amendment form, lacked rational support.").  Were it

7    otherwise, all legislation subject to rational basis review – even legislation

8    authoritatively sustained as constitutional by the Supreme Court – could

9    potentially be subject to periodic judicial review on the basis of changed

10    circumstances, a prospect incompatible with these principles and the Supreme

11    Court's well known and repeated admonition that "a legislative choice is not

12    subject to courtroom factfinding and may be based on rational speculation

13    unsupported by evidence or empirical data."  Heller, 509 U.S. at 320.

14    4.    Defendants object to any response that calls for information outside of the

15    Department of Defense.  This action is subject to review under the Administrative

16    Procedure Act, which limits review to "[a]gency action."  See 5 U.S.C. § 702.

17    Defendants will thus make reasonable inquiry within the agency charged with

18    administering 10 U.S.C. § 654–the United States Department of Defense.

19    5.    Defendants object to the sheer volume and scope of these and subsequent

20    Requests, which impose an undue burden.  It is not Defendants' obligation to

21    undertake such an expansive inquiry in response to discovery.  Defendants have

22    conducted a reasonable inquiry and responded with information known or readily

23    obtainable.

24    6.    Defendants reserve the right to amend, supplement, or alter these objections

25    and responses to the Requests at any time.  The following responses are based

26    upon information currently known to Defendants, and Defendants reserve the right

27    to supplement or amend its responses should additional or different information

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION        -4-

1  become available.

2  7.    The foregoing General Objections shall be considered as made, to the extent

3  applicable, in response to each of the Requests, as if General Objections were fully

4  set forth in each response.

5  8.    Nothing contained in the following responses constitutes a waiver of any

6  applicable objection or privilege as to the requested discovery.

## INDIVIDUAL OBJECTIONS AND RESPONSES

8  1.    Admit that on June 29, 2009, President Barack Obama made a speech in

9  front of any audience attending the Lesbian, Gay, Bisexual and Transgendered

10  Pride Month Reception held at the White House, the text of which speech is

11  available at http://www.whitehouse.gov/the press office/Remarks-by-the-

12  President-at-LGBT-Pride-Month-Reception/.

13  **Response**:  Admit.

14  2.    Admit that on June 29, 2009, during his speech in front of an audience

15  attending the Lesbian, Gay, Bisexual and Transgendered Pride Month Reception

16  held at the White House, President Barack Obama stated, "As I said before–I'll say

17  it again–I believe 'don't ask, don't tell' doesn't contribute to our national security.

18  In fact, I believe preventing patriotic Americans from serving their country

19  weakens our national security."

20  **Response**:  Admit.

21  3.    Admit that DADT does not contribute to our national security.

22  **Response**:   Defendants object to this request, as it does not call for facts, the

23  application of law to fact, or an opinion about facts or the application of law to

24  fact.  See Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request

25  because the terms "contribute" and "national security" as used in this context are

26  vague and ambiguous.  To the extent a further response is required, Defendants

27  note the responses to requests for admission 1 and 2 supra, but deny this request

28  because it was rational for Congress to have concluded at the time the statute was

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -5-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0118**

1   enacted in 1993 that DADT was necessary "in the unique circumstances of

2   military service," 10 U.S.C. § 654(a)(13).

3   4.      Admit that DADT weakens our national security.

4   **Response**:   Defendants object to this request, as it does not call for facts, the

5   application of law to fact, or an opinion about facts or the application of law to

6   fact.  See Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request

7   because the terms "weakens" and "national security" as used in this context are

8   vague and ambiguous.  To the extent a further response is required, Defendants

9   note the responses to requests for admission 1 and 2 supra, but deny this request

10  because it was rational for Congress to have concluded at the time the statute was

11  enacted in 1993 that DADT was necessary "in the unique circumstances of

12  military service," 10 U.S.C. § 654(a)(13).

13  5.      Admit that discharging members pursuant to DADT weakens our national

14          security.

15  **Response**:   Defendants object to this request, as it does not call for facts, the

16  application of law to fact, or an opinion about facts or the application of law to

17  fact.  See Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request

18  because the terms "weakens" and "national security" as used in this context are

19  vague and ambiguous.  To the extent a further response is required, Defendants

20  note the responses to requests for admission 1 and 2 supra, but deny this request

21  because it was rational for Congress to have concluded at the time the statute was

22  enacted in 1993 that DADT was necessary "in the unique circumstances of

23  military service," 10 U.S.C. § 654(a)(13).

24

25

26

27

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -6-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0119

6.    Admit that on June 29, 2009, during his speech in front of an audience attending the Lesbian, Gay, Bisexual and Transgendered Pride Month Reception held at the White House, President Barack Obama stated that DADT has resulted in the discharge of "patriots who often possess critical language skills and years of training and who've served this country well."

**Response**:   Admit.

7.    Admit that DADT has resulted in the discharge of service members who possess critical language skills.

**Response**:   Defendants object to this request, as it does not call for facts, the application of law to fact, or an opinion about facts or the application of law to fact.   See Fed. R. Civ. P. 36(a)(1)(A).  Notwithstanding this objection, defendants can neither admit nor deny this Request because it does not maintain data on service members who "possess critical language skills"; the Department of Defense instead maintains data by occupation.  Defendants admit that service members with language skills have been discharged under the statute.

8.    Admit that DADT has resulted in the discharge of service members who have served this country well.

**Response**:   Defendants object to this request, as it does not call for facts, the application of law to fact, or an opinion about facts or the application of law to fact.   See Fed. R. Civ. P. 36(a)(1)(A).   Notwithstanding this objection, defendants admit that service members have been honorably discharged under the statute.

9.    Admit that on June 29, 2009, during his speech in front of an audience attending the Lesbian, Gay, Bisexual and Transgendered Pride Month Reception held at the White House, President Barack Obama stated: "What I hope is that these cases underscore the urgency of reversing this policy not just because it's the right thing to do, but because it is essential for our national security."

**Response**:   Admit.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    10.    Admit that reversing DADT is essential for our national security.

2    **Response:**   Defendants object to this request, as it does not call for facts, the

3    application of law to fact, or an opinion about facts or the application of law to

4    fact.  <u>See</u> Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request

5    because the terms "essential" and "national security" as used in this context are

6    vague and ambiguous. To the extent a further response is required, Defendants

7    note the responses to requests for admission 9 <u>supra</u>, but deny this request because

8    it was rational for Congress to have concluded at the time the statute was enacted

9    in 1993 that DADT was necessary "in the unique circumstances of military

10   service," 10 U.S.C. § 654(a)(13).

11   11.    Admit that on June 29, 2009, President Barack Obama made a speech at the

12          Walter E. [Washington] Convention Center for the Human Rights Campaign

13          Dinner, the text of which is available at:

14          http://www.whitehouse.gov/the_press_office/<u>Remarks-by-the-President-at-</u>

15          <u>Human-Rights-Campaign-Dinner/</u>.

16   **Response:** Admit.

17   12.    Admit that on October 10, 2009, President Barack Obama made a speech at

18          the Walter E. [Washington] Convention Center for the Human Rights

19          Campaign Dinner stated: ["]We should not be punishing patriotic

20          Americans who have stepped foreword to serve this country. We should be

21          celebrating their willingness to show such courage and selflessness on

22          behalf of their fellow citizens, especially when we're fighting two wars. We

23          cannot afford to cut from our ranks people with the critical skills we need to

24          fight any more than we can afford - for our military's integrity - to force

25          those willing to do so into careers encumbered and compromised by having

26          to live a lie.["]

27   **Response:**   Admit.

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

DEFENDANTS' OBJECTIONS AND RESPONSES TO          -8-
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

13.    Admit the United States cannot afford to cut LGBT service members from
        the ranks of its military.

**Response**:  Defendants object to this request, as it does not call for facts, the application of law to fact, or an opinion about facts or the application of law to fact.  See Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request because the term "cannot afford to cut LGBT service members" as used in this context is vague and ambiguous.   To the extent a response is required, Defendants deny this request because DADT does not prohibit the service of LGBT service members based upon sexual orientation alone, but does permit discharge based upon certain conduct.

14.    Admit the United States cannot afford to force LGBT service members to
        have their careers encumbered by DADT.

**Response**:  Defendants object to this request, as it does not call for facts, the application of law to fact, or an opinion about facts or the application of law to fact.  See Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request because the term "cannot afford to force LGBT service members to have their careers encumbered by DADT" as used in this context is vague and ambiguous. To the extent a response is required, Defendants deny this request because DADT does not prohibit the service of LGBT service members based upon sexual orientation alone, but does permit discharge based upon certain conduct.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -9-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0122**

15.    Admit the United States cannot afford to force LGBT service members to live a lie.

**Response**:   Defendants object to this request, as it does not call for facts, the application of law to fact, or an opinion about facts or the application of law to fact.  See Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request because the term "cannot afford to force LGBT service members to live a lie" as used in this context is vague and ambiguous.  To the extent a response is required, Defendants deny this request because DADT does not prohibit the service of LGBT service members based upon sexual orientation alone, but does permit discharge based upon certain conduct.

16.    Admit that since President Barack Obama's speech on June 29, 2009, there has been no stay in the application or enforcement of DADT.

**Response**:   Admit.

17.    Admit that since President Barack Obama's speech on June 29, 2009, there has been no stay of separation proceedings initiated pursuant to DADT.

**Response**:   Admit.

18.    Admit that since President Barack Obama's speech on June 29, 2009, there has been no stay of investigations pursuant to DADT.

**Response**:   Admit.

19.    Admit that no timeline to repeal DADT has been publicly proposed by President Barack Obama.

**Response**:   Denied.  The President has publicly stated that he intends to seek the repeal of the statute during his Administration.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -10-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0123

20.  Admit that in or around February 2005 the Government Accountability Office issued a report (the GAO Report) to Congress entitled "Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated," the text of which is available online at http://www.gao.gov/new.items/d05299.pdf.

**Response**:  Admit.

21.  Admit that the Government Accountability Office's Report issued in or around February 2005 and entitled "Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated" states: ["]The total cost of DOD's homosexual conduct policy cannot be estimated because DOD does not collect relevant cost data on inquiries and investigations, counseling and pastoral care, separation functions, and discharge reviews. However, DOD does collect data on recruitment and training costs for the force overall. Using these data, GAO estimated that, over the 10-year period, it could have cost the DOD about $95 million in constant fiscal year 2004 dollars to recruit replacements for service members separated under the policy. Also, the Navy, Air Force, and Army estimated that the cost to train replacements for separated service members by occupation was approximately $48.8 million, $16.6 million, and $29.7 million, respectively.["]

**Response**:  Admit that the report contains the referenced statement.

22.  Admit the Government Accountability Office's Report issued in or around February 2005 and entitled "Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated" found that between 1994 and 2003, 9,488 service members were separated from the United States Armed Forces for homosexual conduct pursuant to DADT.

**Response**:  Admit that the report contains the referenced estimate.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION        -11-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0124

23.   Admit the Government Accountability Office's Report issued in or around February 2005 and entitled "Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated" found that 757 of the service members separated from the United States Armed Forces between 1994 and 2003 held "critical occupations, identified by DOD as those occupations worthy of selective reimbursement bonuses."

**Response:**   Admit that the report contains the referenced statement.

24.   Admit the Government Accountability Office's Report issued in or around February 2005 and entitled "Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated" found that 322 of the service members separated from the United States Armed Forces between 1994 and 2003 had "some skills in an important foreign language such as Arabic, Farsi, or Korean."

**Response:**   Admit that the report contains the referenced estimate.

25.   Admit that it cost DOD at least $90 million in constant fiscal year 2004 dollars to recruit replacements for service members separated under the policy in the period between 1994 and 2003.

**Response:**   Defendants are unable to admit or deny this Request.  The Department of Defense has not conducted or commissioned a study of the fiscal impact of the Policy.

26.   Admit the accuracy of the GAO report's finding that at least 9,488 service members have been separated from the military under DADT from 1994 to 2003.

**Response:**   Defendants are unable to admit or deny this Request.  The data maintained by the Department of Defense prior to fiscal year 1997 does not permit Defendants to determine with precision the number of service members who were discharged under DADT.  Defendants admit that the Department of Defense

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -12-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  separated 7,270 service members pursuant to DADT  between fiscal years 1997

2  and 2003.

3  27.    Admit the accuracy of the GAO Report's finding that at least 757 of the

4         service members separated from the military under DADT from 1994 to

5         2003 held "critical occupations."

6  **Response**: Defendants are unable to admit or deny this Request.  The Department

7  of Defense does not code its information by "critical occupations"; the Department

8  instead codes information by occupation.  The data maintained by the Department

9  of Defense prior to fiscal year 1997 does not permit Defendants to determine with

10 precision the number of service members who were discharged under DADT.

11 28.    Admit the accuracy of the GAO Report's finding that at least 322 service

12        members separated from the military under DADT from 1994 to 2003 had

13        "some important foreign language such as Arabic, Farsi, or Korean."

14 **Response**:   Defendants are unable to admit or deny this Request.  The

15 Department of Defense does not code its information by language specialty; it

16 instead codes its information by occupation.  The data maintained by the

17 Department of Defense prior to fiscal year 1997 does not permit Defendants to

18 determine with precision the number of service members who were discharged

19 under DADT.  Defendants admit that between 1997 and 2003, the Department of

20 Defense discharged 870 service members under DADT with foreign language

21 skills.

22 29.    Admit that at least 13,000 service members were separated from the United

23        States Armed Forces since 1994 pursuant to DADT.

24 **Response**:   Defendants are unable to admit or deny this Request.  The data

25 maintained by the Department of Defense prior to fiscal year 1997 does not permit

26 Defendants to say with precision which service members were discharged under

27 DADT.  Defendants admits the that 10,935 service members were discharged

28 under DADT for fiscal year 1997 through fiscal year 2009.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION        -13-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0126

30.    Admit that at least 615 service members were separated from the United States Armed Forces pursuant to DADT in 1994.

**Response**:  Defendants are unable to admit or deny this Request.  The data maintained by the Department of Defense prior to fiscal year 1997 does not permit Defendants to say with precision which service members were discharged under DADT.

31.    Admit that at least 757 service members were separated from the United States Armed Forces pursuant to DADT in 1995.

**Response**:  Defendants are unable to admit or deny this Request.  The data maintained by the Department of Defense prior to fiscal year 1997 does not permit Defendants to say with precision which service members were discharged under DADT.

32.    Admit that at least 858 service members were separated from the United States Armed Forces purusant to DADT in 1996.

**Response**:  Defendants are unable to admit or deny this Request.  The data maintained by the Department of Defense prior to fiscal year 1997 does not permit Defendants to say with precision which service members were discharged under DADT.

33.    Admit that at least 997 service members were separated from the United States Armed Forces pursuant to DADT in 1997.

**Response**:   Admit.

34.    Admit that at least 1,145 service members were separated from the United States Armed Forces pursuant to DADT in 1998.

**Response**:   Admit.

35.    Admit that at least 1,033 service members were separated from the United States Armed Forces pursuant to DADT in 1999.

**Response**:   Admit.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -14-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0127

36.   Admit that at least 1,212 service members were separated from the United States Armed Forces pursuant to DADT in 2000.

**Response:**   Admit.

37.   Admit that at least 1,217 service members were separated from the United States Armed Forces pursuant to DADT in 2001.

**Response:**   Admit.

38.   Admit that at least 885 service members were separated from the United States Armed Forces pursuant to DADT in 2002.

**Response:**   Admit.

39.   Admit that at least 770 service members were separated from the United States Armed Forces pursuant to DADT in 2003.

**Response:**   Admit.

40.   Admit that at least 668 service members were separated from the United States Armed Forces pursuant to DADT in 2004.

**Response:**   Denied; in 2004, 653 service members were separated pursuant to DADT.

41.   Admit that at least 742 service members were separated from the United States Armed Forces pursuant to DADT in 2005.

**Response:**   Denied; in 2005, 726 service members were separated pursuant to DADT.

42.   Admit that at least 623 service members were separated from the United States Armed Forces pursuant to DADT in 2006.

**Response:**   Denied; in 2006, 612 service members were separated pursuant to DADT.

43.   Admit that at least 627 service members were separated from the United States Armed Forces pursuant to DADT in 2007.

**Response:**   Admit.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

44.   Admit that at least 619 service members were separated from the United States Armed Forces pursuant to DADT in 2008.

**Response**:   Admit.

45.   Admit that at least 275 service members were separated from the United States Armed Forces pursuant to DADT in 2009.

**Response**:   Admit.

46.   Admit that, in 2009 alone, at least 2,000 former service members have left the United States Armed Forces voluntarily in anticipation of investigation or discharge pursuant to DADT.

**Response**:   Defendants are unable to admit or deny this Request.  The Department of Defense does not track the number of service members who leave the Armed Forces in anticipation of an investigation or discharge pursuant to DADT.

47.   Admit that without a change in policy DOD will continue to authorize the separation of service members for homosexual acts, for statements by service members that demonstrate a propensity or intent to engage in homosexual acts, or for homosexual marriage or attempted marriage.

**Response**:   Admit.

48.   Admit that between 1994 and 2003, servicewomen accounted for 27% of all separations pursuant to DADT.

**Response**:   Defendants are unable to admit or deny this Request.  The data maintained by the Department of Defense prior to fiscal year 1997 does not permit Defendants to say with precision which service members were discharged under DADT.  Between 1997 and 2003, 4,385 women were discharged under DADT, accounting for 40.36% of all separations under DADT.

49.   Admit that between 1994 and 2003, servicewomen accounted for less than 20% of all service members in the United States Armed Forces.

**Response**:   Admit.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

50.    Admit that between 1994 and 2003, DADT disproportionately affected servicewomen in the United States Armed Forces.

**Response**:   Defendants object to this request because the term "disproportionately affected" is vague and ambiguous.   To the extent a response is required, it is denied because, whatever the affect for men and women, the Department of Defense applies DADT in the same manner regardless of gender.

51.    Admit that DADT continues to disproportionately affect servicewomen in the United States Armed Forces.

**Response**:   Defendants object to this request because the term "disproportionately affected" is vague and ambiguous.   To the extent a response is required, it is denied because, whatever the affect for men and women, the Department of Defense applies DADT in the same manner regardless of gender.

52.    Admit that known felons are currently permitted to serve in the United States Armed Forces.

**Response**:   Defendants admit that although Congress prohibits the enlistment of persons convicted of a felony, it has authorized exceptions in meritorious cases, as provided in 10 U.S.C. § 504.

53.    Admit that at least 824 felons enlisted in the United States Armed Forces in 2003.

**Response**:   Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.   The Department of Defense cannot accurately determine the number of enlistment waivers granted for felonies for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category and did not distinguish between convicted felons and others who were simply charged with felony offenses and otherwise adjudicated.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -17-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0130

54.    Admit that at least 638 felons enlisted in the United States Armed Forces in 2004.

**Response**:    Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.   The Department of Defense cannot accurately determine the number of enlistment waivers granted for felonies for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category and did not distinguish between convicted felons and others who were simply charged with felony offenses and otherwise adjudicated.

55.    Admit that at least 1,163 felons enlisted in the United States Armed Forces in 2005.

**Response**:    Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.   The Department of Defense cannot accurately determine the number of enlistment waivers granted for felonies for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category and did not distinguish between convicted felons and others who were simply charged with felony offenses and otherwise adjudicated.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION        -18-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0131**

56.    Admit that at least 1,605 felons enlisted in the United States Armed Forces in 2006.

**Response**:   Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.   The Department of Defense cannot accurately determine the number of enlistment waivers granted for felonies for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category and did not distinguish between convicted felons and others who were simply charged with felony offenses and otherwise adjudicated.

57.    Admit that from 2003 to 2006, the number of felons enlisting in the United States Armed Forces increased by at least 194%.

**Response**:   Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.   The Department of Defense cannot accurately determine the number of enlistment waivers granted for felonies for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category and did not distinguish between convicted felons and others who were simply charged with felony offenses and otherwise adjudicated.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

58.    Admit that from 2003 to 2006, the United States Armed Forces allowed at least 4,320 convicted felons to enlist under the "moral waiver" program for new recruits.

**Response**:  Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.  The Department of Defense cannot accurately determine the number of enlistment waivers granted for felonies for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category and did not distinguish between convicted felons and others who were simply charged with felony offenses and otherwise adjudicated.

59.    Admit that from 2003 to 2006, the United States Armed Forces allowed at least 43,977 individuals convicted of serious misdemeanors, such as assault, to enlist under the "moral waiver" program for new recruits.

**Response**:  Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.  The Department of Defense cannot accurately determine the number of enlistment waivers granted for serious misdemeanors for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -20-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0133

60.     Admit that from 2003 to 2006, the United States Armed Forces allowed at least 58,561 individuals who had abused illegal drugs to enlist under the "moral waivers" program for new recruits.

**Response**:   Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.  The Department of Defense cannot accurately determine the number of enlistment waivers granted for illegal drug use for fiscal year 2003 because, prior to fiscal year 2007, the data that would permit such a determination was not standardized according to offense category.

61.     Admit that the United States Army includes kidnapping among its offenses permissible under the "moral waiver" program for new recruits.

**Response**:   Admit that an enlistment waiver can be obtained under Department of Defense promulgated Directive-Type Memorandum (DTM) 08-018, but further note that such waivers can be denied.

62.     Admit that the United States Army includes rape among its offenses permissible under the "moral waiver" program for new recruits.

**Response**:   Admit that an enlistment waiver can be obtained under Department of Defense promulgated Directive-Type Memorandum (DTM) 08-018, but further note that such waivers can be denied.

63.     Admit that the United States Army includes child abuse among its offenses permissible under the "moral waiver" program for new recruits.

**Response**:   Admit that an enlistment waiver can be obtained under Department of Defense promulgated Directive-Type Memorandum (DTM) 08-018, but further note that such waivers can be denied.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -21-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0134**

64. Admit that the United States Army includes making terrorist threats among its offenses permissible under the "moral waiver" program for new recruits.

**Response:** Admit that an enlistment waiver can be obtained under Department of Defense promulgated Directive-Type Memorandum (DTM) 08-018, but further note that such waivers can be denied.

65. Admit that the United States Army includes hate crimes among its offenses permissible under the "moral waiver" program for new recruits.

**Response:** Admit that an enlistment waiver can be obtained under Department of Defense promulgated Directive-Type Memorandum (DTM) 08-018, but further note that such waivers can be denied.

66. Admit that the United States Army includes murder among its offenses permissible under the "moral waiver" program for new recruits.

**Response:** Admit that an enlistment waiver can be obtained under Department of Defense promulgated Directive-Type Memorandum (DTM) 08-018, but further note that such waivers can be denied.

67. Admit that the "moral waiver" program does not permit openly gay or lesbian Americans to enlist in the United States Army.

**Response:** Defendants object to this Request because the term "openly gay or lesbian" are vague and ambiguous. Defendants further object to this Request on the ground that it suggests that such an enlistment waiver would be necessary. The Directive-Type Memorandum (DTM) 08-018 sets forth enlistment waivers for certain violations of law the DTM has no application to the conduct-based policy set forth in DADT.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION    -22-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0135**

68.    Admit that kidnappers, rapists, child abusers, terrorists, racists, and murderers are more morally capable of serving in the United States Army than gay men and lesbians.

**Response**:  Defendants deny this Request because the Directive-Type Memorandum (DTM) 08-018 sets forth enlistment waivers for certain violations of law; the DTM has no application to the conduct-based policy set forth in DADT.

69.    Admit that a bill to repeal DADT has been pending in Congress since 2005.

**Response**:  Denied, but admit that since 2005 various bills have been introduced in Congress to repeal or modify DADT.

70.    Admit that over 100 Congress members have co-sponsored a bill to repeal DADT.

**Response**:  Defendants object to this Request because it does not reference a specific bill.  Defendants admit that H.R. 1283, the Military Readiness Enhancement Act of 2009, introduced on March 3, 2009, has 187 cosponsors.

71.    Admit that gay and lesbian service members' constitutional liberties and right to privacy under the Due Process Clause of the Fifth Amendment encompass and protect intimate, consensual physical acts and relationships with persons of the same gender.

**Response**:  Defendants object to this request, as it does not call for facts, the application of law to fact, or an opinion about facts or the application of law to fact.  See Fed. R. Civ. P. 36(a)(1)(A).  The Request is instead calls for a legal conclusion and is thus improper under Rule 36.  To the extent a response is required, the Request is denied.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -23-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0136

72.    Admit that DADT applies to members of the armed forces regardless of whether they serve in combat or non-combat positions.

**Response**:    Admit but note that every service member must be ready, willing, and able to serve in combat.

73.    Admit that service members who have been separated from the United States Armed Forces under DADT include translators.

**Response**:    Admit.

74.    Admit that 37 linguists at the Defense Language Institute were discharged pursuant to DADT in 2002 and 2003.

**Response**:    Defendants are unable to admit or deny this Request.  The Department of Defense is unable to determine from the data it maintains whether discharged service members were serving at the Defense Language Institute.  In fiscal year 2002, the Department of Defense discharged 33 linguists under DADT. In fiscal year 2003, the Department of Defense discharged 38 linguists under DADT.

75.    Admit that service members who have been separated for United States Armed Forces under DADT include medical personnel.

**Response**:    Admit.

76.    Admit that service members who have been separated from the United States Armed Forces under DADT include dental care technicians.

**Response**:    Admit.

77.    Admit that service members who have been separated from the United States Armed Forces under DADT include ophthalmologists.

**Response**:    Admit.

78.    Admit that service members who have been separated from the United States Armed Forces under DADT include members of the JAG Corps.

**Response**:    Admit.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -24-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0137

79.   Admit that discharges under DADT occur more frequently in times of peace than in times of conflict.

**Response:**   Defendants object to the Request as vague and ambiguous.  The Requests define "peace" and "conflict" according to the "scale [of] deployments" in "areas of intense conflict" but nowhere define these terms.  Defendants can thus neither admit nor deny this Request because the Department of Defense does not maintain data regarding discharges according to the parameters set forth in this Request.  To the extent a response is required, it is denied; although numbers of discharges have fluctuated over time, DADT has been consistently applied.

80.   Admit that since the commencement of Operation Enduring Freedom in Afghanistan in October 2001 and Operation Iraqi Freedom in March 2003, separations of service members under DADT have decreased by over 45% from a peak of at least 1,217 separations in 2001 to at least 619 separations in 2008.

**Response:**   Defendants deny that 1,217 service members were separated under DADT in fiscal year 2001.  Defendant admits that it separated 1,227 service members in fiscal year 2001 under the DADT policy.  Defendants admit that the Department of Defense separated 49% less service members under DADT in fiscal year 2008 than it separated in fiscal year 2001.  Defendants admit that it separated 19% less service members under the DADT policy in fiscal year 2008 than it separated in 2003.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

81.    Admit that Australia permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

82.    Admit that Austria permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

83.    Admit that Bahamas permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

84.    Admit that Belgium permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

85.    Admit that the United Kingdom permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

86.    Admit that Canada permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.   The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION         -27-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0140

87.    Admit that the Czech Republic permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

88.    Admit that Denmark permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

89.    Admit that Estonia permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -28-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0141

90.    Admit that Finland permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

91.    Admit that France permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

92.    Admit that Ireland permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:    Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.   The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION        -29-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0142**

93.    Admit that Israel permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

94.    Admit that Italy permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.   The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

95.    Admit that Lithuania permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

96.   Admit that Luxembourg permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.   The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

97.   Admit that Netherlands permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

98.   Admit that New Zealand permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

99.   Admit that Norway permits openly gay and lesbian service members to
        enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

100.   Admit that Slovenia permits openly gay and lesbian service members to
         enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

101.   Admit that South Africa permits openly gay and lesbian service members to
         enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

102.   Admit that Spain permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

103.   Admit that Sweden permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

104.   Admit that Switzerland permits openly gay and lesbian service members to enlist and serve in its armed forces.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

105.   Admit that at least 24 countries allow openly gay and lesbian service members of their respective armed forces to serve.

**Response**:   Defendants object to this Request because the term "openly gay and lesbian" is vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.   The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations.

106.   Admit that Australia abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on unit cohesion.

**Response**:   Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous.  Defendants can thus neither admit or deny this Request.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

107.   Admit that Australia abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on troop morale.

**Response**:   Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous.  Defendants can thus neither admit or deny this Request.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -34-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0147**

108.   Admit that Australia abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on national defense.

**Response**:   Defendants object to this Request because the terms "openly gay and lesbian,""prohibition," and "documented adverse impact" are vague and ambiguous. Defendants can thus neither admit or deny this Request. To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

109.   Admit that Canada abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on unit cohesion.

**Response**:   Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous. Defendants can thus neither admit or deny this Request. To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -35-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0148**

110.   Admit that Canada abandoned its prohibition of military service by openly gay and lesbian members without any documented adverse impact on troop morale.

**Response:**   Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

111.   Admit that Australia abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on national defense.

**Response:**   Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous.  Defendants can thus neither admit or deny this Request.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -36-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0149

1    112.    Admit that the United Kingdom abandoned its prohibition of military

2            service by openly gay and lesbian service members without any documented

3            adverse impact on unit cohesion.

4    **Response:**    Defendants object to this Request because the terms "openly gay and

5    lesbian" "prohibition," and "documented adverse impact" are vague and

6    ambiguous.  Defendants can thus neither admit or deny this Request.  To the

7    extent a response is required, Defendants can neither admit nor deny this request.

8    The Department of Defense has not conducted its own independent study of the

9    extent to which service members who engage in homosexual conduct are able to

10   serve in the armed forces of other nations or the impacts of any such service.

11   113.    Admit that the United Kingdom abandoned its prohibition of military

12           service by openly gay and lesbian service members without any documented

13           adverse impact on troop morale.

14   **Response:**    Defendants object to this Request because the terms "openly gay and

15   lesbian" "prohibition," and "documented adverse impact" are vague and

16   ambiguous.  Defendants can thus neither admit or deny this Request.  To the

17   extent a response is required, Defendants can neither admit nor deny this request.

18   The Department of Defense has not conducted its own independent study of the

19   extent to which service members who engage in homosexual conduct are able to

20   serve in the armed forces of other nations or the impacts of any such service.

21

22

23

24

25

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

114. Admit that the United Kingdom abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on national defense.

**Response:** Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous. Defendants can thus neither admit or deny this Request. To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

115. Admit that Israel abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on unit cohesion.

**Response:** Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous. Defendants can thus neither admit or deny this Request. To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION        -38-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0151

116.   Admit that Israel abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on troop morale.

**Response**:   Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague ambiguous. Defendants can thus neither admit or deny this Request.  To the extent a response is required, Defendants can neither admit nor deny this request.  The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

117.   Admit that Israel abandoned its prohibition of military service by openly gay and lesbian service members without any documented adverse impact on national defense.

**Response**:   Defendants object to this Request because the terms "openly gay and lesbian" "prohibition," and "documented adverse impact" are vague and ambiguous.  Defendants can thus neither admit nor deny this Request.  To the extent a response is required, Defendants can neither admit nor deny this request. The Department of Defense has not conducted its own independent study of the extent to which service members who engage in homosexual conduct are able to serve in the armed forces of other nations or the impacts of any such service.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION      -39-

118.    Admit that in both Afghanistan and Iraq, U.S. Armed Forces fight side by
    side with coalition forces from Great Britain, Australia, and numerous other
    coalition member countries that allow lesbian and gay service members to
    serve openly in their respective militaries.

**Response**:   Defendants objects to the form of this Request because it is a compound question that violates the requirement in Fed. R. Civ. P 36 (a)(2) that each matter must be separately stated.   Defendants also object to the terms "side by side," "numerous other coalition member countries," and "openly" as vague and ambiguous.  Defendants can thus neither admit or deny this Request. Defendants admit that armed forces from both America and Great Britain conducted or supported combat operations within Afghanistan at the same time. Defendants admit that armed forces from both America and Australia conducted or supported combat operations within Afghanistan at the same time.  Defendants admit that, in addition to America, Great Britain, and Australia, armed forces from other countries conducted or supported combat operations within Afghanistan. Defendants admit that armed forces from both America and Great Britain conducted or supported combat operations within Iraq at the same time. Defendants admit that armed forces from both America and Australia conducted or supported combat operations within Iraq at the same time.  Defendants admit that, in addition to America, Great Britain, and Australia, armed forces from other countries conducted or supported combat operations within Iraq.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION          -40-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0153

119.   Admit that since members of the U.S. Armed Forces began fighting side by side with coalition forces from countries that allow lesbian and gay service members to serve openly in their respective militaries, there have been no documented adverse effects arising from the proximity of gay and lesbian coalition soldiers to American soldiers on the unit cohesion or morale of any member or members of the U.S. Armed Forces.

**Response**:   Defendants object to this Request because it is a compound question that violates the requirement in Fed. R. Civ. P. 36(a)(2) that each matter must be separately stated.  Defendants also objects to the terms "side by side," "coalition forces", "openly", and "proximity of gay and lesbian coalition soldiers" as vague and ambiguous.  To the extent a response is required, Defendants can neither admit nor deny this Request because Defendants do not keep or track data concerning incidents of American soldiers coming into direct contact with foreign soldiers who engage in homosexual conduct.

120.   Admit the Federal Bureau of investigation has no ban on the service of openly gay or lesbian agents or employees.

**Response**:   Defendants object to this request because "openly gay or lesbian agents or employees" is vague and ambiguous.  To the extent a response is required, Defendants  admit that the FBI has no ban on the service of gay or lesbian individuals.

121.   Admit that Central Intelligence Agency has no ban on the service of openly gay or lesbian agents or employees.

**Response**:   Defendants object to this request because "openly gay or lesbian agents or employees" is vague and ambiguous.  To the extent a response is required, Defendants  admit that the CIA has no ban on the service of gay or lesbian individuals.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

122.    Admit that the National Security Agency has no ban on the service of
      openly gay or lesbian employees.

**Response**:   Defendants object to this request because "openly gay or lesbian agents or employees" is vague and ambiguous.  To the extent a response is required, Defendants admit that the NSA has no ban on the service of gay or lesbian individuals.  To the extent military members are assigned to the NSA, however, they are subject to the conduct-based policy set forth in DADT.  Civilian employees are not subject to DADT.

123.    Admit that at least 21 states forbid discrimination on the basis of sexual
      orientation.

**Response**:   Defendants can neither admit nor deny this Request.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.

124.    Admit that at least 21 states allow the service of openly gay or lesbian
      individuals in their fire departments.

**Response**:   Defendants object to this Request because the terms "openly gay and lesbian" is vague and ambiguous.  The information Defendants know or can readily obtain is insufficient for it to admit or deny this Request.

125.    Admit that during the 1992 Congressional hearings on the service in the
      United States Armed Forces by gay and lesbian service members, Senator
      John Kerry asked how the United States Armed Forces could "properly or
      righteously or morally protect freedom if its policies deny freedom to
      significant minority of citizens."

**Response**:   Admit.

126.    Admit that in a 2003 article in the National Law Review, Rear Admiral John
      Hutson (ret.) Described DADT as "odious" and "virtually unworkable in the
      military."

**Response**:   Admit.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0155**

127. Admit that in a New York Times essay date January 2, 2007, General John Shalikashvili (ret.), former chairman of the Joint Chiefs of staff, wrote: "When [the repeal of DADT] comes, gay men and lesbians will no longer have to conceal who they are, and the military will no longer need to sacrifice those whose service it cannot afford to lose."

**Response:**   Admit.

128. Admit that former Vice President Dick Cheney described the security risk rationale underlying policies banning gays and lesbians from service in the United Sates Armed Forces as "a bit of an old chestnut."

**Response:**   Admit.

129. Admit that NATO Commander Wesley Clark (ret.) On NBC's *Meet the Press* on June 15, 2003 said: "People were much more irate about [gay service in the military] in the early 90's, for whatever reason, [perhaps because of] younger people coming into the military. It just didn't seem to be the same emotional hot button issue by '98, '99, than it had been in '92, '93."

**Response:** Admit.

130. Admit that in a 2007 Wall Street Journal essay, former Republican Congressman Bob Barr wrote: "The bottom line here is that, with nearly a decade and a half of the hybrid 'don't ask, don't tell' policy to guide us, I have become deeply impressed with the growing weight of credible military opinion which concludes that allowing gays to serve openly in the military does not pose insurmountable problems for the good order and discipline of the services."

**Response:** Admit.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, D.C. 20044
(202) 353-0543

131.    Admit that a 2006 Zogby poll of troops who had served in Afghanistan and Iraq found that 72% of respondents would be personally comfortable interacting with gays and lesbians in the United States Armed Forces.

**Response:**   Denied; the Zogby Poll did not ask if "respondents would be personally comfortable interacting with gays and lesbians in the United States Armed Forces."

132.    Admit that Charles Moskos was one of the principal authors of DADT.

**Response:**   Defendants object to this Request because the term "principal authors" is vague and ambiguous as used in this context.  Defendants deny the Request because Congress enacted, and then-President Bill Clinton signed into law, the DADT statute in 1993 and are therefore the "principal author[s]" of the statute.


Date:  January 28, 2010                    TONY WEST
                                           Assistant Attorney General

                                           GEORGE S. CARDONA
                                           Acting United States Attorney

                                           VINCENT M. GARVEY
                                           Deputy Branch Director

                                           _Paul G. Freeborne_
                                           PAUL G. FREEBORNE
                                           Trial Attorney
                                           U.S. Department of Justice,
                                           Civil Division
                                           Federal Programs Branch
                                           20 Massachusetts Ave., N.W.
                                           Room 6108
                                           Washington, D.C.  20001
                                           Telephone: (202) 353-0543
                                           Facsimile:  (202) 616-8202
                                           E-Mail:  paul.freeborne@usdoj.gov

                                           *Counsel For Federal Defendants*

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION        -44-

                    UNITED STATES DEPARTMENT OF JUSTICE
                    CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
                    P.O. BOX 883, BEN FRANKLIN STATION
                    WASHINGTON, D.C. 20044
                    (202) 353-0543

**LCR Appendix Page 0157**

1

## PROOF OF SERVICE

2    I hereby certify that I served DEFENDANTS' OBJECTIONS AND

3    RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

4    by electronic mail and regular mail upon the persons below on January 28, 2010:

5        Dan Woods
         Patrick O. Hunnius
6        White & Case LLP
         633 West Fifth Street, Suite 1900
7        Los Angeles, CA 90071-2007
         Tel. (213) 620-7714
8
         I declare under penalty of perjury that the above is true and correct.

9

10       _Paul G. Freeborne_

11       Paul G. Freeborne

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  TONY WEST
   Assistant Attorney General
2
   GEORGE S. CARDONA
3  Acting United States Attorney

4  VINCENT M. GARVEY
   PAUL G. FREEBORNE
5  RYAN B. PARKER
   U.S. Department of Justice
6  Civil Division
   Federal Programs Branch
7  P.O. Box 883
   Washington, D.C. 20044
8  Telephone: (202) 353-0543
   Facsimile: (202) 616-8202
9  E-Mail: paul.freeborne@ usdoj.gov

10 Attorneys for Defendants United States
   of America and Secretary of Defense

11
                **UNITED STATES DISTRICT COURT**
12        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                      **EASTERN DIVISION**
13
   LOG CABIN REPUBLICANS,              )  No. CV04-8425 VAP (Ex)
14                                     )
                    Plaintiff,         )  DEFENDANTS' OBJECTIONS
15                                     )  AND RESPONSES TO
                 v.                    )  PLAINTIFF'S FIRST SET OF
16                                     )  INTERROGATORIES
   UNITED STATES OF AMERICA AND        )
17 ROBERT GATES, Secretary of Defense, )
                                       )
18                  Defendants.        )
                                       )
19                                     )
                                       )
20                                     )
                                       )
21
22
23
24
25
26
27
28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1      Pursuant to Federal Rules of Civil Procedure 26 and 33, and subject to the

2  objections stated below, Defendants United States and Secretary Gates hereby

3  respond to Plaintiff's First Set of Interrogatories for purposes of Merits Discovery.

4                          **GENERAL OBJECTIONS**

5      1.      Defendants object to the Interrogatories to the extent that Plaintiff

6  seeks discovery to probe the motivations of the Legislative and Executive

7  Branches in passing statutes and promulgating regulations implementing the law.

8  Well-established Supreme Court precedent squarely provides that inquiry into the

9  subjective motives of members of Congress is a "hazardous matter" and that courts

10  will not strike down an otherwise constitutional statute on the basis of an alleged

11  illicit motive." United States v. O'Brien, 391 U.S. 367, 383-84 (1968); Board of

12  Educ. of the Westside Community Schools v. Mergens, 496 U.S. 226, 249 (1990)

13  (in evaluating constitutionality of statute, "what is relevant is the legislative

14  *purpose* of the statute, not the possibly religious *motives* of the legislators who

15  enacted the law") (emphasis in original); Las Vegas v. Foley, 747 F.2d 1294, 1298

16  (9th Cir. 1984) (same). The same is true of attempts to probe the motivations of the

17  Executive Branch. See e.g., Village of Arlington Heights v. Metropolitan Hous.

18  Dev. Corp., 429 U.S. 252, 268 n.18 (1977) ("judicial inquiries into legislative or

19  executive motivation represent a substantial intrusion into the workings of other

20  branches of government").

21      2.      Defendants object to Plaintiff's Interrogatories to the extent that they

22  are not reasonably calculated to lead to the discovery of admissible evidence.  The

23  Court has ruled that Plaintiff's challenge is governed by the rational basis standard

24  of review.   It is well understood that a legislative choice subject to the rational

25  basis test "is not subject to courtroom fact-finding." Federal Communications

26  Comm'n v. Beach Communications, 508 U.S. 307, 315 (1993) (quoting

27  Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)).  Defendants

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES                    -2-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   accordingly have "no obligation to produce evidence to sustain the rationality of a

2   statutory classification." Heller v. Doe, 509 U.S. 312, 320 (1993). The analysis

3   instead asks whether the legislature "rationally *could have believed*" that the

4   conditions of the statute would promote its objective. Western and Southern Life

5   Insurance Co. v. State Bd. of Equalization of California, 451 U.S. 654, 671-72

6   (1981) (emphasis in original).

7        Rational basis review, moreover, "is not a license for courts to judge the

8   wisdom, fairness, or logic of legislative choices." Beach Communications, 508

9   U.S. at 313. Rather, "those challenging the legislative judgment must convince the

10  court that the legislative facts on which the classification is apparently based could

11  not reasonably be conceived to be true by the governmental decisionmaker."

12  Vance v. Bradley, 440 U.S. 93, 111 (1979). While we understand that the Court

13  has permitted Plaintiff to attempt to engage in discovery, the congressional

14  findings and legislative history underlying the statute are "legislative fact[s]"

15  subject to judicial notice and are not appropriate subjects for fact-finding or

16  discovery.

17       3.    Defendants object to Plaintiff's Interrogatories to the extent that they

18  call for information concerning the "continued rationality" of the statute.

19  Classifications subject to rational basis review are not subject to challenge on the

20  ground of changed circumstances. See, e.g., Montalvo-Huertas v. Rivera-Cruz,

21  885 F.2d 971, 977 (1st Cir. 1989) ("[E]valuating the continued need for, and

22  suitability of, legislation of this genre is exactly the kind of policy judgment that

23  the rational basis test was designed to preclude."). Indeed, courts have found that

24  even where Congress has determined that a previous enactment is no longer

25  necessary, that finding does render the statute unconstitutional. See Smart v.

26  Ashcroft, 401 F.3d 119, 123 (2d Cir. 2005) ("A congressional decision that a

27  statute is unfair, outdated, and in need of improvement does not mean that the

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES          -3-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  statute when enacted was wholly irrational or, for purposes of rational basis

2  review, unconstitutional."); Howard v. U.S. Dept. of Defense, 354 F.3d 1358,

3  1361-62 (Fed. Cir. 2004) ("Congress acts based on judgments as to preferable

4  policy; the fact that Congress repeals or modifies particular legislation does not

5  reflect a judgment that the legislation, in its pre-amendment form, lacked rational

6  support."). Were it otherwise, all legislation subject to rational basis review -- even

7  legislation authoritatively sustained as constitutional by the Supreme Court – could

8  potentially be subject to periodic judicial review on the basis of changed

9  circumstances, a prospect incompatible with these principles and the Supreme

10  Court's well known and repeated admonition that "a legislative choice is not

11  subject to courtroom factfinding and may be based on rational speculation

12  unsupported by evidence or empirical data." Heller, 509 U.S. at 320.

13      5.    Defendants object to any Interrogatory that calls for information

14  outside of the Department of Defense. This action is subject to review under the

15  Administrative Procedure Act, which limits review to "[a]gency action." See 5

16  U.S.C. § 702. Defendants will thus conduct a reasonable search for information

17  maintained within the agency charged with administering 10 U.S.C.

18  § 654—the United States Department of Defense.

19      6.    Defendants object to Plaintiff's Interrogatories to the extent they seek

20  information protected by the work-product doctrine, Privacy Act, attorney-client

21  privilege, law enforcement privilege, deliberative process privilege, and any other

22  applicable privilege.

23      7.    Defendants object to the definitions and instructions generally to the

24  extent that they seek to impose obligations beyond those imposed by the Federal

25  Rules of Civil Procedure (Civil Rules). Defendant will answer these

26  interrogatories consistent with the obligations imposed by the Civil Rules.

27      8.    Defendants reserve the right to amend, supplement, or alter these

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES      -4-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0162

objections and responses to the Interrogatories at any time. The following responses are based upon information currently known to Defendants, and Defendants reserve the right to supplement or amend its responses should additional or different information become available.

9.    The foregoing General Objections shall be considered as made, to the extent applicable, in response to each of the Interrogatories, as if General Objections were fully set forth in each response.

10.    Nothing contained in the following responses constitutes a waiver of any applicable objection or privilege as to the requested discovery.

## INDIVIDUAL OBJECTIONS AND RESPONSES

1.    Describe in detail each of the governmental purposes and interests alleged to be advanced by DADT.

**RESPONSE:** The purposes and governmental interests advanced by DADT are set forth in the Statute, 10 U.S.C. § 654, and legislative history.

2.    For each governmental purpose or interest identified in defendants' Answers to Interrogatory 1 above, describe in detail all facts that defendants contend establish the need or justification to further that purpose or interest.

**RESPONSE:** The facts establishing the purposes and interests advanced by DADT are set forth in the Statute, 10 U.S.C. § 654, and legislative history.

3.    For each governmental purpose or interest identified in defendants' Answers to Interrogatory 1 above, describe in detail all facts that defendants contend demonstrate that DADT furthers that purpose or interest.

**RESPONSE:** The facts demonstrating that DADT advances governmental interests and purposes are set forth in the Statute, 10 U.S.C. § 654, and legislative history.

4.    Identify all documents that defendants contend constitute the legislative history of DADT.

**RESPONSE:** Pursuant to Rule 33(d), Defendants will provide, with these

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES                -5-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0163

1  objections and responses, all documents they contend constitute the legislative
2  history of DADT.
3  5.     Describe in detail all facts and identify all documents that defendants
4         contend demonstrate that DADT promotes military readiness.
5  **RESPONSE:** Defendants presently intend to rely upon, among other things, the
6  text of the statute, the legislative history, and any other basis that Congress
7  "rationally *could have believed*" supported the objectives of the statute.   Western
8  and Southern Life Ins. Co., 451 U.S. at 671-72 (1981) (emphasis in original).
9  6.     Describe in detail all facts and identify all documents that defendants
10        contend demonstrate that DADT promotes good order and discipline.
11 **RESPONSE:** Defendants presently intend to rely upon, among other things, the
12 text of the statute, the legislative history, and any other basis that Congress
13 "rationally *could have believed*" supported the objectives of the statute.   Western
14 and Southern Life Ins. Co., 451 U.S. at 671-72 (1981) (emphasis in original).
15 7.     Describe in detail all facts and identify all documents that defendants
16        contend demonstrate that DADT promotes unit cohesion.
17 **RESPONSE:**  Defendants presently intend to rely upon, among other things, the
18 text of the statute, the legislative history, and any other basis that Congress
19 "rationally *could have believed*" supported the objectives of the statute.   Western
20 and Southern Life Ins. Co., 451 U.S. at 671-72 (1981) (emphasis in original).
21 8.     Identify the public opinion polls and statistical and other studies upon which
22        the Military Working Group relied in identifying and evaluating the alleged
23        governmental purposes of DADT.
24 **RESPONSE:** Defendants object to this interrogatory to the extent that it calls for
25 information protected by the deliberative process privilege.  To the extent a
26 response is required, Defendants do not know what public opinion polls, statistical
27 data, or studies the Military Working Group relied on beyond that which will be
28 provided in response to Plaintiff's Document Requests.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES          -6-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0164

9.    Describe the actions of the Military Working Group, including describing
      when, how and by whom the Military Working Group was formed, who its
      members were, when it met, what the subject matter(s) of its meetings were
      and to whom it reported.

**RESPONSE:** Defendants object to this interrogatory to the extent it call for
information protected by the deliberative process privilege. Subject to their
objection, Defendants will produce the Summary Report of the Military Working
Group, July 1, 1993. This report states that the Secretary of Defense formed the
military working group. It further states that the MWG was composed of a general
or flag officer from each service. These members included Major General John P.
Otjen, United State Army; Rear Admiral Scott Redd, United States Navy; Major
General William B. Davitte, United States Air Force; Rear Admiral James M. Loy,
United States Coast Guard; and Brigadier General Gerald L. Miller, United States
Marine Corps. The report further states that the MWG had a support staff of
approximately 50 officers, enlisted personnel, and civilian employees organized
into four functional panels: military operations; service life; personnel policy; and
legal. Defendants do not know the actions of the Military Working Group, beyond
that which will be provided in response to Plaintiff's document requests.

10.   Identify all DOD employees, including but not limited to those persons
      identified in defendants' Answer to Interrogatory 12, who communicated,
      either orally or in writing, or had meetings with persons in the Legislative
      Branch of the United States government concerning gay men and lesbians
      serving in the armed forces of the United States, identify those Legislative
      Branch employees with whom DOD employees communicated, identify the
      oral and written communications between DOD and Legislative Branch
      employees, and identify the meetings that DOD and the Legislative Branch
      employees attended.

**RESPONSE:** Defendants object to this interrogatory to the extent that it calls for

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES                    -7-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   information that is intended to probe the motivations of Congress, and for
2   information that is not in the possession of the Department of Defense.  Defendants
3   further object to this interrogatory because Plaintiff's request that Defendants
4   identify "all DOD employees" who communicated with members of the legislative
5   branch is unduly burdensome.  To the extent a response is required, Defendants do
6   not have sufficient information to respond to this interrogatory because the
7   Department of Defense does not have a record of who at the Department has
8   communicated with the members of the Legislative Branch concerning the Policy.

9

10   11.    Identify all persons, including but not limited to persons, organizations,
11          committees, and other ad hoc working groups, from whom information or
12          opinion was solicited by the military working group.

13   **RESPONSE:**  Defendants object to this interrogatory to the extent that it calls for
14   information protected by the deliberative process privilege.  To the extent a
15   response is required, Defendants do not know from whom the Military Working
16   Group solicited information or opinion beyond information contained in the
17   documents which will be provided in response to Plaintiff's document requests.

18   12.    Identify all DOD employees who worked with, provided information to, or
19          communicated with, either orally or in writing, employees of the RAND
20          National Defense Institute concerning the studies that resulted in the final
21          report entitled "Sexual Orientation and U.S. Military Personnel Policy:
22          Options and Assessments" (1993).

23   **RESPONSE:**  Defendants object to this interrogatory  to the extent that it calls for
24   information that is not in the possession of the Department of Defense.  To the
25   extent a response it required, Defendants do not have sufficient information to
26   answer this interrogatory because the Department of Defense does not have a
27   record of who at the Department worked with, provided information to or
28   communicated with employees of the RAND National Defense Institute

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES                -8-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0166

1  concerning the report referenced in Plaintiff's interrogatory.

2  13.  Identify all DOD employees who worked with, provided information to or

3       communicated with, either orally or in writing, employees of the U.S.

4       General Accounting Office concerning the study that resulted in the final

5       report to congressional requesters entitled "Defense Force Management:

6       DOD's Policy on Homosexuality" (June 1992), and the supplemental report

7       entitled "Defense Force Management: Statistics Related to DOD's Policy on

8       Homosexuality" (June 1992).

9  **RESPONSE:** Defendants object to this interrogatory to the extent that it calls for

10 information that is not in the possession of the Department of Defense. To the

11 extent a response it required, Defendants do not have sufficient information to

12 answer this interrogatory because the Department of Defense does not have a

13 record of who at the Department worked with, provided information to or

14 communicated with employees of the General Accounting Office concerning the

15 documents referenced in Plaintiff's interrogatory.

16 14.  Describe in detail the so-called "stop-loss policy" as it applies to service

17      members who are discharged or in the process of being discharged pursuant

18      to the Act and the DOD Regulations, including all facts that defendants

19      contend establish the need or justification for this policy.

20 **RESPONSE:** Defendants have never used the "stop-loss policy" to stop or

21 suspend discharges for homosexual conduct under the Policy.

22 15.  Identify all research conducted by or on behalf of defendants prior to

23      January 1, 1994 demonstrating the need for, or advisability of, implementing

24      DADT.

25 **RESPONSE:** To the best of their knowledge, Defendants have produced in

26 response to Plaintiff's document requests all research conducted by or on behalf of

27 Defendants prior to January 1, 1994 demonstrating the need for, or advisability of,

28 implementing DADT.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

16.   Identify all research conducted by or on behalf of defendants since

December 31, 1993 evaluating whether DADT is furthering the interests and

goals identified in the responses to Interrogatory 1.

**RESPONSE:** To the best of their knowledge, Defendants have produced in

response to Plaintiff's document requests all research conducted by or on behalf of

Defendants since December 31, 1993 evaluating whether DADT is furthering the

interests and goals identified in the responses to Interrogatory 1.


Date: February 22, 2010

TONY WEST
Assistant Attorney General

GEORGE S. CARDONA
Acting United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

_____
PAUL G. FREEBORNE
RYAN B. PARKER
Trial Attorney
U.S. Department of Justice,
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 6108
Washington, D.C. 20044
Telephone: (202) 353-0543
Facsimile: (202) 616-8202
E-Mail: paul.freeborne@usdoj.gov

*Counsel For Federal Defendants*

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES                    -10-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0168

<u>VERIFICATION</u>

I have reviewed the responses of Defendants the United States of America and Secretary Gates to Plaintiff's First Set of Interrogatories, Nos. 1-16, in the matter of *Log Cabin Republicans v. United States of America, et al.*, 04-8425 (C.D. Cal.). As to the Department of Defense (DoD), I hereby declare, under penalty of perjury, that the information contained therein is accurate to the best of my knowledge based upon my review of documents available to me and information furnished to me by other employees of DoD.

Date: Febhny 22, 2010

Michael J. Fucci

## PROOF OF SERVICE

I hereby certify that I served DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES by electronic mail and regular mail upon the persons below on February 22, 2010:

> Dan Woods
> Patrick O. Hunnius
> White & Case LLP
> 633 West Fifth Street, Suite 1900
> Los Angeles, CA 90071-2007
> Tel. (213) 620-7714

I declare under penalty of perjury that the above is true and correct.

Ryan B. Parker

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES                    -11-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0170

1  TONY WEST
   Assistant Attorney General
2
   GEORGE S. CARDONA
3  Acting United States Attorney

4  VINCENT M. GARVEY
   PAUL G. FREEBORNE
5  RYAN B. PARKER
   U.S. Department of Justice
6  Civil Division
   Federal Programs Branch
7  P.O. Box 883
   Washington, D.C. 20044
8  Telephone: (202) 353-0543
   Facsimile: (202) 616-8202
9  E-Mail:  paul.freeborne@ usdoj.gov

10 Attorneys for Defendants United States
   of America and Secretary of Defense
11
                UNITED STATES DISTRICT COURT
12       FOR THE CENTRAL DISTRICT OF CALIFORNIA
                     EASTERN DIVISION
13
   LOG CABIN REPUBLICANS,                )  No. CV04-8425 VAP (Ex)
14                                        )
                       Plaintiff,         )  DEFENDANTS' OBJECTIONS
15                                        )  AND RESPONSES TO
                 v.                       )  PLAINTIFF'S SECOND SET OF
16                                        )  REQUESTS FOR ADMISSION
   UNITED STATES OF AMERICA AND           )
17 ROBERT GATES, Secretary of Defense,    )
                                          )
18                     Defendants.        )
                                          )
19                                        )
                                          )
20                                        )
                                          )
21 ─────────────────────────────────────  )

22

23

24

25

26

27

28

                          UNITED STATES DEPARTMENT OF JUSTICE
                          CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
                          P.O. Box 883, BEN FRANKLIN STATION
                          WASHINGTON, D.C. 20044
                          (202) 353-0543

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION    -1-

1    Pursuant to Federal Rules of Civil Procedure 26 and 36, and subject to the

2  objections stated below, Defendants United States and Secretary Gates hereby

3  respond to Plaintiff's Second Set of Requests for Admission for purposes of

4  Merits Discovery.

5                    **GENERAL OBJECTIONS**

6  1.    Defendants object to the Requests to the extent that Plaintiff seeks discovery

7  to probe the motivations of the Legislative and Executive Branches in passing

8  statutes and promulgating regulations implementing the law. Well-established

9  Supreme Court precedent squarely provides that inquiry into the subjective

10  motives of members of Congress is a "hazardous matter" and that courts will not

11  strike down an otherwise constitutional statute on the basis of an alleged illicit

12  motive." United States v. O'Brien, 391 U.S. 367, 383-84 (1968); Board of Educ.

13  of the Westside Community Schools v. Mergens, 496 U.S. 226, 249 (1990) (in

14  evaluating constitutionality of statute, "what is relevant is the legislative *purpose*

15  of the statute, not the possibly religious *motives* of the legislators who enacted the

16  law") (emphasis in original); Las Vegas v. Foley, 747 F.2d 1294, 1298 (9th Cir.

17  1984) (same). The same is true of attempts to probe the motivations of the

18  Executive Branch. See e.g., Village of Arlington Heights v. Metropolitan Hous.

19  Dev. Corp., 429 U.S. 252, 268 n.18 (1977) ("judicial inquiries into legislative or

20  executive motivation represent a substantial intrusion into the workings of other

21  branches of government").

22  2.    Defendants object to the Requests to the extent that they are not reasonably

23  calculated to lead to the discovery of admissible evidence.  The Court has ruled

24  that Plaintiff's challenge is governed by the rational basis standard of review.   It

25  is well understood that a legislative choice subject to the rational basis test "is not

26  subject to courtroom fact-finding." Federal Communications Comm'n v. Beach

27  Communications, 508 U.S. 307, 315 (1993) (quoting Lehnhausen v. Lake Shore

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION    -2-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0172

1  Auto Parts Co., 410 U.S. 356, 364 (1973)).  Defendants accordingly have "no

2  obligation to produce evidence to sustain the rationality of a statutory

3  classification." Heller v. Doe, 509 U.S. 312, 320 (1993).  The analysis instead

4  asks whether the legislature "rationally *could have believed*" that the conditions of

5  the statute would promote its objective.  Western and Southern Life Insurance Co.

6  v. State Bd. of Equalization of California, 451 U.S. 654, 671-72 (1981) (emphasis

7  in original).

8          Rational basis review, moreover, "is not a license for courts to judge the

9  wisdom, fairness, or logic of legislative choices." Beach Communications, 508

10  U.S. at 313.  Rather, "those challenging the legislative judgment must convince

11  the court that the legislative facts on which the classification is apparently based

12  could not reasonably be conceived to be true by the governmental decisionmaker."

13  Vance v. Bradley, 440 U.S. 93, 111 (1979).  While we understand that the Court

14  has permitted Plaintiff to attempt to engage in discovery, the congressional

15  findings and legislative history underlying the statute are "legislative fact[s]"

16  subject to judicial notice and are not appropriate subjects for fact-finding or

17  discovery.

18  3.      Defendants object to the Requests to the extent that they attempt to discover

19  information concerning the "continued rationality" of the statute.  Classifications

20  subject to rational-basis review are not subject to challenge on the ground of

21  changed circumstances.  See, e.g., Montalvo-Huertas v. Rivera-Cruz, 885 F.2d

22  971, 977 (1st Cir. 1989) ("[E]valuating the continued need for, and suitability of,

23  legislation of this genre is exactly the kind of policy judgment that the rational

24  basis test was designed to preclude.").  Indeed, courts have found that even where

25  Congress has determined that a previous enactment is no longer necessary, that

26  finding does not render the statute unconstitutional.  See Smart v. Ashcroft, 401

27  F.3d 119, 123 (2d Cir. 2005) ("A congressional decision that a statute is unfair,

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION     -3-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  outdated, and in need of improvement does not mean that the statute when enacted

2  was wholly irrational or, for purposes of rational basis review, unconstitutional.");

3  Howard v. U.S. Dept. of Defense, 354 F.3d 1358, 1361-62 (Fed. Cir. 2004)

4  ("Congress acts based on judgments as to preferable policy; the fact that Congress

5  repeals or modifies particular legislation does not reflect a judgment that the

6  legislation, in its pre-amendment form, lacked rational support."). Were it

7  otherwise, all legislation subject to rational basis review – even legislation

8  authoritatively sustained as constitutional by the Supreme Court – could

9  potentially be subject to periodic judicial review on the basis of changed

10  circumstances, a prospect incompatible with these principles and the Supreme

11  Court's well known and repeated admonition that "a legislative choice is not

12  subject to courtroom factfinding and may be based on rational speculation

13  unsupported by evidence or empirical data." Heller, 509 U.S. at 320.

14  4.    Defendants object to any response that calls for information outside of the

15  Department of Defense. This action is subject to review under the Administrative

16  Procedure Act, which limits review to "[a]gency action." See 5 U.S.C. § 702.

17  Defendants will thus make reasonable inquiry within the agency charged with

18  administering 10 U.S.C. § 654–the United States Department of Defense.

19  5.    Defendants object to the sheer volume and scope of these and previous

20  Requests, which impose an undue burden. It is not Defendants' obligation to

21  undertake such an expansive inquiry in response to discovery. Defendants have

22  conducted a reasonable inquiry and responded with information known or readily

23  obtainable.

24  6.    Defendants reserve the right to amend, supplement, or alter these objections

25  and responses to the Requests at any time. The following responses are based

26  upon information currently known to Defendants, and Defendants reserve the right

27  to supplement or amend its responses should additional or different information

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION    -4-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0174

become available.

7.     The foregoing General Objections shall be considered as made, to the extent applicable, in response to each of the Requests, as if General Objections were fully set forth in each response.

8.     Nothing contained in the following responses constitutes a waiver of any applicable objection or privilege as to the requested discovery.

## INDIVIDUAL OBJECTIONS AND RESPONSES

133.   President Obama has authority to halt enforcement of DADT by executive
       order.

**Response:**  Defendants object to this request, as it does not call for facts, the application of law to fact, or an opinion about facts or the application of law to fact.   See Fed. R. Civ. P. 36(a)(1)(A).  Defendants further object to this request because the term "authority to halt enforcement," as used in this context, is vague and ambiguous.

134.   The 1957 Crittenden report, prepared for the U.S. Navy, concluded that gay
       people were no more likely to be a security risk than heterosexuals.

**Response:**  Defendants deny this Request; the report concluded that there was insufficient data to determine whether homosexuals presented a security risk and recommended that a factual study of the issue be conducted.

135.   The 1957 Crittenden report, prepared for the U.S. navy, concluded that there
       was no rational basis for excluding gay people from military service.

**Response:**  Defendants deny this request; the report recommends that "there be no relaxation in the broad concept that the service cannot tolerate homosexual behavior."

136.   A 1988 Defense Personal Security Research Education Center Study
       concluded that "having a same-gender or an opposite-gender orientation is
       unrelated to job performance in the same way as is being left - or right -
       handed."

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   **Response:** Defendants deny this request. The study referred to in Plaintiff's

2   request simply reports on the findings of other researchers: "Studies of

3   homosexual veterans make clear that having a same-gender or an opposite gender

4   orientation is unrelated to job performance in the same way as is being left - or

5   right - handed (Williams and Weinberg, 1971)." The Study then opines that those

6   findings may be of limited value in the military context: "For the purpose of

7   military organization, however, quality of job performance may be less important

8   than the effects of homosexuals (minority group members) on that important but

9   ephemeral quality: group cohesion."

10   137.   In 1999, Regulation 500-3-3 [FORSCOM] allowed active duty deployment

11          of Army reservists and National Guard troops who said they were gay or

12          were accused of being gay.

13   **Response:** Defendants object to this request because the term "accused of being

14   gay" is vague and ambiguous when used in this context. To the extent a response

15   is required, Defendants admit this request but note that Regulation 500-3-3

16   [FORSCOM] simply clarifies that once a unit receives an alert notification, service

17   members who are not subject to a discharge request will enter active duty with

18   their units.

19   138.   In 1993, the National Defense Research Institute prepared a study for the

20          Office of the Secretary of Defense, "Sexual Orientation and U.S. Military

21          Personnel Policy: Options and Assessment" concluding that "circumstances

22          could exist where the ban on homosexuals could be lifted with little or no

23          adverse consequences for recruitment and retention."

24   **Response:** Defendants deny this request. The National Defense Research

25   Institute study, cited above, introduces the statement quoted by Plaintiff as a

26   possibility based on arguments set forth earlier in the study: "*These arguments*

27   *imply that* circumstances could exist under which the ban on homosexuals could

28   be lifted with little or no adverse consequences for recruitment or retention."

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0176

1    (emphasis added.) The study then examines the possible "adverse impacts" of

2    rescinding the Policy.

3    139.    In a May 2005 national poll conducted by the Boston Globe, 79% of

4            respondents said openly gay people should be allowed to serve in the

5            military.

6    **Response:** Admit.

7    140.    In a 2008 Washington Post-ABC News poll, 75% of Americans said that

8            openly gay people should be allowed to serve in the military.

9    **Response:** Admit.

10   141.    In a 2006 Zogby International poll of current and/or former United States

11           service members, 66% of respondents who had experience with gays or

12           lesbians in their units said that the presence of gay or lesbian unit members

13           had no impact or a positive impact on their personal morale.

14   **Response:** Defendants deny this request. The poll results show that of those who

15   had experience with gays or lesbians in their units, 66% said that the presence of

16   gays or lesbians in their units had *no impact* on their personal morale. In addition,

17   6% said it had a positive impact on their personal morale, and 28% said it had a

18   negative impact on their personal morale.

19   142.    In a 2006 Zogby International poll of current and/or former United States

20           service members, 64% of respondents who had experience with gays or

21           lesbians in their units said that presence of gay or lesbian unit members had

22           no impact or a positive impact on their personal morale on overall unit

23           morale. [*sic*]

24   **Response:** Defendants deny this request. The poll results show that of those who

25   had experience with gays and lesbians in their units, 64% said that the presence of

26   gays or lesbians in their unit had no impact on their unit's overall morale. In

27   addition, 3% said it had a positive impact on their unit's overall morale, and 27%

28   said it had a negative impact on their unit's overall morale.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION    -7-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0177

143.    In December 2007, 28 retired generals and admirals urged Congress to repeal DADT, citing evidence that 65,000 gay men and women are serving and that there are over 1 million gay veterans.

**Response:** Defendants admit that 28 retired generals and admirals urged Congress to repeal DADT and claimed that 65,000 gay men and women are serving and that there are over 1 million gay veterans.

144.    In November 2008, 104 retired generals and admirals signed a statement urging Congress to repeal DADT.

**Response:** Admit.

145.    On July 5, 2009, Colin Powell, in reference to DADT, said "this is a policy and a law that should be reversed."

**Response:** Defendants deny this request. On July 5, 2009, Colin Powell, in reference to DADT, said, "this is a policy and a law that should be *reviewed*" (emphasis added).

146.    In September 2009, Air Force Colonel Om Prakash authored an article published in Joint Force Quarterly.

**Response:** Admit.

147.    Air Force Colonel Om Prakash's September 2009 article, published in Joint Force Quarterly, won the Secretary of Defense National Security Essay competition for 2009.

**Response:** Admit.

148.    Air Force Colonel Om Prakash's September 2009 article, published in Joint Force 'Quarterly, criticized DADT and argued that there was a lack of scientific basis for the proposition that unit cohesion is compromised by homosexuals serving openly in the military.

**Response:** Admit.

149.    Of the 26 countries that participate in NATO, 22 permit openly gay people to serve in their armed forces.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, D.C. 20044
(202) 353-0543

1  **Response:** Defendants object to this Request because the term "openly gay

2  people" is vague and ambiguous. To the extent a response is required, Defendants

3  can neither admit nor deny this request. The Department of Defense has not

4  conducted its own independent study of the extent to which service members who

5  engage in homosexual conduct are able to serve in the armed forces of other

6  nations or the impacts of any such service.

7  150.  Of the European Union countries, all but one permit gay people to serve

8       openly in their armed forces.

9  **Response:** Defendants object to this Request because the term "gay people

10  to serve openly" is vague and ambiguous. To the extent a response is required,

11  Defendants can neither admit nor deny this request. The Department of Defense

12  has not conducted its own independent study of the extent to which service

13  members who engage in homosexual conduct are able to serve in the armed forces

14  of other nations or the impacts of any such service.

15  151.  The Argentine Republic permits openly gay and lesbian service members to

16       enlist and serve in its armed forces.

17  **Response:** Defendants object to this Request because the term "openly gay and

18  lesbian" is vague and ambiguous. To the extent a response is required, Defendants

19  can neither admit nor deny this request. The Department of Defense has not

20  conducted its own independent study of the extent to which service members who

21  engage in homosexual conduct are able to serve in the armed forces of other

22  nations or the impacts of any such service.

23  152.  The Oriental Republic of Uruguay permits openly gay and lesbian service

24       members to enlist and serve in its armed forces.

25  **Response:** Defendants object to this Request because the term "openly gay and

26  lesbian" is vague and ambiguous. Defendants can thus neither admit nor deny this

27  Request. To the extent a response is required, Defendants can neither admit nor

28  deny this request. The Department of Defense has not conducted its own

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION    -9-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0179**

1  independent study of the extent to which service members who engage in
2  homosexual conduct are able to serve in the armed forces of other nations or the
3  impacts of any such service.

4  153.    Republic of the Philippines permits openly gay and lesbian service members
5             to enlist and serve in its armed forces.

6  **Response:**  Defendants object to this Request because the term "openly gay and
7  lesbian" is vague and ambiguous.  Defendants can thus neither admit nor deny this
8  Request.  To the extent a response is required, Defendants can neither admit nor
9  deny this request.  The Department of Defense has not conducted its own
10  independent study of the extent to which service members who engage in
11  homosexual conduct are able to serve in the armed forces of other nations or the
12  impacts of any such service.

13  154.    The defendants have no evidence to substantiate their position that DADT
14             preserves order and discipline.

15  **Response:**  Defendants deny this request; the text and legislative history of the
16  statute, which embody the considered judgment of Congress, provide the
17  necessary support for the law.

18  155.    The defendants have no evidence to substantiate their position that DADT
19             preserves unit cohesion.

20  **Response:**  Defendants deny this request; the text and legislative history of the
21  statute, which embody the considered judgment of Congress, provide the
22  necessary support for the law.

23  156.    The defendants have no evidence to substantiate their position that DADT
24             preserves troop morale.

25  **Response:**  Defendants deny this request; the text and legislative history of the
26  statute, which embody the considered judgment of Congress, provide the
27  necessary support for the law.

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

157.   The same rationale used to exclude homosexuals from openly serving in the military was used previously to exclude African-Americans from serving in the United States military.

**Response:** Defendants object to this request because the term "the same rationale" is vague and ambiguous when used in this context. To the extent a further response is required, Defendants deny this request because the historical circumstances and the set of rationales with respect to those historical circumstances are not identical.

158.   The same rationale used to exclude homosexuals from openly serving in the military was used previously to exclude women from serving in the United States military.

**Response:** Defendants object to this request because the term "the same rationale" is vague and ambiguous when used in this context. To the extent a further response is required, Defendants deny this request because the historical circumstances and the set of rationales with respect to those historical circumstances are not identical.

159.   There is a rational basis for prejudice against homosexuals.

**Response:** Defendants object to this request because the term "prejudice" is vague and ambiguous. To the extent the term "prejudice" means "an unfavorable opinion or feeling formed beforehand or without knowledge, thought, or reason,[1]" Defendants deny this request.

160.   There is no rational basis for prejudice against homosexuals.

**Response:** Defendants object to this request because the term "prejudice" is vague and ambiguous. To the extent the term "prejudice" means "an unfavorable

---

[1] See prejudice. Dictionary.com. Dictionary.com Unabridged. Random House, Inc. http://dictionary.reference.com/browse/prejudice (accessed: February 18, 2010).

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION   -11-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0181

1  opinion or feeling formed beforehand or without knowledge, thought, or reason,"

2  Defendants admit this request.

3  161.    There is a rational basis for prejudice against homosexuals openly serving in

4          the military.

5  **Response:** Defendants object to this request because the term "prejudice" is

6  vague and ambiguous.  To the extent the term "prejudice"  means "an unfavorable

7  opinion or feeling formed beforehand or without knowledge, thought, or reason,"

8  Defendants deny this request.

9  162.    There is no rational basis for prejudice against homosexuals openly serving

10         in the military.

11  **Response:** Defendants object to this request because the term "prejudice" is

12  vague and ambiguous.  To the extent the term "prejudice"  means "an unfavorable

13  opinion or feeling formed beforehand or without knowledge, thought, or reason,"

14  Defendants admit this request.

15  163.    Openly gay officers from the armed forces of other countries have

16         commanded U.S. service members.

17  **Response:** Defendants have made a reasonable inquiry but the information they

18  know or can readily obtain is insufficient to enable them to admit or deny whether

19  openly gay officers from the armed forces of other countries have commanded

20  U.S. service members.

21  164.    Openly gay officers from the armed forces of other countries have

22         commanded U.S. service members without any negative impact on unit

23         cohesion or troop morale.

24  **Response:** Defendants have made a reasonable inquiry but the information they

25  know or can readily obtain is insufficient to enable them to admit or deny whether

26  openly gay officers from the armed forces of other countries have commanded

27  U.S. service members .

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

165.  In 1999, President Bill Clinton stated that DADT was "out of whack" and "not working."

**Response:**  Defendants admit that, according to a CNN article dated December 11, 1999, then-President Clinton stated, "What I'd like to do is focus on making the policy we announced back in 1993 work the way it's intended to, because it's out of whack now, and I don't think any serious person could say it's not." Otherwise, Defendants deny this request.

166.  There is no federal law prohibiting an openly gay or lesbian individual from serving as the President of the United States and Commander in Chief of the United States Armed Forces.

**Response:**  Admit.

167.  There is no Department of Defense regulation or directive prohibiting an openly gay or lesbian individual from serving as the President of the United States and Commander in Chief of the United States Armed Forces.

**Response:**  Admit.

168.  Admit that persons who have identified themselves as lesbians and gay men have received honorable discharges from the Armed·Forces of the United States.

**Response:**  Admit.

169.  Admit that under DADT a member's sexual orientation is considered a personal and private matter, and is not a bar to continued services unless manifested by homosexual conduct as described in DADT.

**Response:**  Defendants object to this request because it calls for a legal conclusion.  To the extent a response is required, Defendants admit this request.

170.  Admit that under DADT defendants will not inquire into the sexual orientation of prospective or active service members, and will not seek to exclude a service member for homosexual conduct in the absence of credible evidence indicating that the service member has engaged in

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    homosexual conduct as defined in DADT.

2    **Response:**  Defendants object to this request because it calls for a legal

3    conclusion.  To the extent a response is required, Defendants admit this request.

4    171.  Admit that under DADT defendants will not seek to exclude a service

5    member for homosexual conduct in the absence of credible evidence

6    indicating that a service member has engaged in homosexual conduct as

7    defined in the Act and regulations.

8    **Response:**  Defendants object to this request because it calls for a legal

9    conclusion.  To the extent a response is required, Defendants admit this request.

10   172.  Admit that defendants will not contend in this litigation that the rationale

11   that gay men and lesbians pose security risks is a basis for DADT.

12   **Response:**  Defendants object to this request because it is a contention

13   interrogatory rather than a proper request for admission under Rule 33.  To the

14   extent a response is required, Defendants admit that they have no intention of

15   relying on the rationale that gay men and lesbians are more likely than their

16   heterosexual counterparts to reveal classified or otherwise confidential

17   information as a basis for DADT.

18   173.  Admit that defendants will not contend in this litigation that the rationale

19   that gay men and lesbians have a physical or psychological defect rendering

20   them unfit to serve within the Armed Forces of the United States is basis for

21   DADT.

22   **Response:**  Defendants object to this request because it is a contention

23   interrogatory rather than a proper request for admission under Rule 33.  To the

24   extent a response is required, Defendants admit that they have no intention of

25   relying on such a rationale as a basis underlying DADT.

26   174.  Admit that defendants will not contend in this litigation that the rationale

27   that gay men and lesbians are more likely than heterosexuals to violate a

28   code of conduct, other rules generally, the UCMJ, or other DOD regulations

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION   -14-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0184

1      is a basis for DADT.

2 **Response:** Defendants object to this request because it is a contention

3 interrogatory rather than a proper request for admission under Rule 33. To the

4 extent a response is required, Defendants admit that they have no intention of

5 relying on such a rationale as a basis underlying DADT.

6 175. Admit that the Military Working Group did not have the final report of the

7      RAND National Defense Research Institute entitled "Sexual Orientation and

8      U.S.Military Personnel Policy: Options and Assessments," dated 1993.

9 **Response:** Admit.

10 176. Admit that the Military Working Group did not provide the 103rd Congress

11      with the final report of the RAND National Defense Research Institute

12      entitled "Sexual Orientation and U.S. Military Personnel Policy: Options

13      and Assessments," dated 1993.

14 **Response:** Defendants have made a reasonable inquiry but the information they

15 know or can readily obtain is insufficient to enable them to admit or deny this

16 request. The Department of Defense does not have a record of documents that

17 were provided to the 103rd Congress (1993-1995).

18 177. Admit that defendants did not provide the 103rd Congress with the GAO

19      draft report entitled "Defense Force Management: DOD's Policy on

20      Homosexuality," dated March 9, 1992.

21 **Response:** Defendants have made a reasonable inquiry but the information they

22 know or can readily obtain is insufficient to enable them to admit or deny this

23 request. The Department of Defense does not have a record of documents that

24 were provided to the 103rd Congress (1993-1995). Defendants note, however, that

25 the Government Accountability Office is part of Congress.

26 178. Admit that defendants did not provide the 103rd Congress with the GAO

27      final report entitled "Defense Force Management: DOD's Policy on

28      Homosexuality," dated June, 1992.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION   -15-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, D.C. 20044
(202) 353-0543

LCR Appendix Page 0185

1   **Response:** Defendants have made a reasonable inquiry but the information they

2   know or can readily obtain is insufficient to enable them to admit or deny this

3   request. The Department of Defense does not have a record of documents that

4   were provided to the 103rd Congress (1993-1995). Defendants note, however, that

5   the Government Accountability Office is part of Congress.

6   179.   Admit that defendants did not provide the 103rd Congress with the GAO

7         report entitled "Defense Force Management: Statistics Related to DOD's

8         Policy on Homosexuality," dated June, 1991.

9   **Response:** Defendants have made a reasonable inquiry but the information they

10   know or can readily obtain is insufficient to enable them to admit or deny this

11   request. The Department of Defense does not have a record of documents that

12   were provided to the 103rd Congress (1993-1995). Defendants note, however, that

13   the Government Accountability Office is part of Congress.

14   180.   Admit that defendants did not provide the 103rd Congress with the

15         memorandum from Craig Alderman, Jr., Deputy Undersecretary of Defense

16         for Policy, to DOD PERSEREC Director, regarding PERS-TR-89-002,

17         "Nonconforming Sexual Orientations and Military Suitability," dated

18         January 18, 1989.

19   **Response:** Defendants have made a reasonable inquiry but the information they

20   know or can readily obtain is insufficient to enable them to admit or deny this

21   request. The Department of Defense does not have a record of documents that

22   were provided to the 103rd Congress (1993-1995).

23   181.   Admit that defendants did not provide the 103rd Congress with the

24         memorandum from Carson K. Eoyang, PERSEREC Director, to Deputy

25         Undersecretary of Defense for Policy, regarding PERSEREC research on

26         homosexuality and suitability, dated January 30, 1989.

27   **Response:** Defendants have made a reasonable inquiry but the information they

28   know or can readily obtain is insufficient to enable them to admit or deny this

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION   -16-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0186**

1   request.  The Department of Defense does not have a record of documents that

2   were provided to the 103rd Congress (1993-1995).

3   182.   Admit that defendants did not provide the 103rd Congress with the

4           memorandum from Craig Alderman, Jr., Deputy Undersecretary of Defense

5           for Policy, to Peter Nelson through Maynard Anderson, regarding

6           PERSEREC draft report, "Nonconforming Sexual Orientations," dated

7           February 10, 1989.

8   **Response:**  Defendants have made a reasonable inquiry but the information they

9   know or can readily obtain is insufficient to enable them to admit or deny this

10  request.  The Department of Defense does not have a record of documents that

11  were provided to the 103rd Congress (1993-1995).

12  183.   Admit that defendants did not provide the 103rd Congress with the

13          PERSEREC report entitled "Preservice Adjustment of Homosexual and

14          Heterosexual Military Accessions: Implications for Security Clearance

15          Suitability," dated January 1989.

16  **Response:**  Defendants have made a reasonable inquiry but the information they

17  know or can readily obtain is insufficient to enable them to admit or deny this

18  request.  The Department of Defense does not have a record of documents that

19  were provided to the 103rd Congress (1993-1995).

20  184.   Admit that defendants did not provide the 103rd Congress with the

21          PERSEREC report entitled "Homosexuality and Personnel Security," dated

22          September 1991.

23  **Response:**  Defendants have made a reasonable inquiry but the information they

24  know or can readily obtain is insufficient to enable them to admit or deny this

25  request.  The Department of Defense does not have a record of documents that

26  were provided to the 103rd Congress (1993-1995).

27  185.   Admit that defendants did not provide the 103rd Congress with the

28          Crittenden Report.

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION   -17-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0187

**Response:** Defendants have made a reasonable inquiry but the information they know or can readily obtain is insufficient to enable them to admit or deny this request. The Department of Defense does not have a record of documents that were provided to the 103rd Congress (1993-1995).

Date: February 22, 2010

TONY WEST
Assistant Attorney General

GEORGE S. CARDONA
Acting United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

_Ryan B. Parker_

PAUL G. FREEBORNE
RYAN B. PARKER
Trial Attorneys
U.S. Department of Justice,
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 6108
Washington, D.C. 20044
Telephone: (202) 353-0543
Facsimile: (202) 616-8202
E-Mail: paul.freeborne@usdoj.gov

*Counsel For Federal Defendants*

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR ADMISSION    -18-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

LCR Appendix Page 0188

1

## PROOF OF SERVICE

2    I hereby certify that I served DEFENDANTS' OBJECTIONS AND

3    RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR

4    ADMISSION by electronic mail and regular mail upon the persons below on

5    February 22, 2010:

6

7    Dan Woods
     Patrick O. Hunnius
8    White & Case LLP
     633 West Fifth Street, Suite 1900
9    Los Angeles, CA 90071-2007
     Tel. (213) 620-7714
10
     I declare under penalty of perjury that the above is true and correct.
11

12                        *Ryan B. Parker*

13                        Ryan B. Parker

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   TONY WEST
    Assistant Attorney General
2
    GEORGE S. CARDONA
3   Acting United States Attorney

4   VINCENT M. GARVEY
    PAUL G. FREEBORNE
5   W. SCOTT SIMPSON
    RYAN B. PARKER
6   U.S. Department of Justice
    Civil Division
7   Federal Programs Branch
    P.O. Box 883
8   Washington, D.C. 20044
    Telephone: (202) 353-0543
9   Facsimile: (202) 616-8202
    E-Mail: paul.freeborne@ usdoj.gov
10
    Attorneys for Defendants United States
11  of America and Secretary of Defense

12          UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF CALIFORNIA
13               EASTERN DIVISION

14  LOG CABIN REPUBLICANS,              )   No. CV04-8425 GPS (Ex)
                                        )
15          Plaintiff,                  )   DEFENDANTS' OBJECTIONS
                                        )   AND RESPONSES TO
16          v.                          )   PLAINTIFF'S SECOND SET OF
                                        )   REQUESTS FOR PRODUCTION
17  UNITED STATES OF AMERICA AND        )   OF DOCUMENTS
    ROBERT GATES, Secretary of Defense, )
18                                      )
            Defendants.                 )
19                                      )
                                        )
20                                      )
                                        )
21  _____ )

22

23

24

25

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    Pursuant to Federal Rules of Civil Procedure 26 and 34, and subject to the

2    objections stated below, Defendants United States and Secretary Gates hereby

3    respond to Plaintiff's Second Set of Requests for Production of Documents

4    ("Document Requests").

5        To the extent possible, Defendants plan to scan the documents they produce

6    onto compact discs, which will then be mailed to Plaintiff's counsel.  If production

7    in this manner becomes unduly burdensome, Defendants will make responsive

8    documents available for inspection.

9                    **GENERAL OBJECTIONS**

10    1.    Defendants object to Plaintiff's Document Requests to the extent that

11    Plaintiff seeks discovery to probe the motivations of the Legislative and Executive

12    Branches in passing statutes and promulgating regulations implementing the law.

13    Well-established Supreme Court precedent squarely provides that inquiry into the

14    subjective motives of members of Congress is a "hazardous matter" and that courts

15    will not strike down an otherwise constitutional statute on the basis of an alleged

16    illicit motive." United States v. O'Brien, 391 U.S. 367, 383-84 (1968); Board of

17    Educ. of the Westside Community Schools v. Mergens, 496 U.S. 226, 249 (1990)

18    (in evaluating constitutionality of statute, "what is relevant is the legislative

19    *purpose* of the statute, not the possibly religious *motives* of the legislators who

20    enacted the law") (emphasis in original); Las Vegas v. Foley, 747 F.2d 1294, 1298

21    (9th Cir. 1984) (same). The same is true of attempts to probe the motivations of the

22    Executive Branch. See e.g., Village of Arlington Heights v. Metropolitan Hous.

23    Dev. Corp., 429 U.S. 252, 268 n.18 (1977) ("judicial inquiries into legislative or

24    executive motivation represent a substantial intrusion into the workings of other

25    branches of government").

26    2.    Defendants object to Plaintiff's Document Requests to the extent that

27    they are not reasonably calculated to lead to the discovery of admissible evidence.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -2-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. Box 883, Ben Franklin Station
Washington, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0191**

1  The Court has ruled that Plaintiff's challenge is governed by the rational basis
2  standard of review.   It is well understood that a legislative choice subject to the
3  rational basis test "is not subject to courtroom fact-finding." Federal
4  Communications Comm'n v. Beach Communications, 508 U.S. 307, 315 (1993)
5  (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)).
6  Defendants accordingly have "no obligation to produce evidence to sustain the
7  rationality of a statutory classification." Heller v. Doe, 509 U.S. 312, 320 (1993).
8  The analysis instead  asks whether the legislature "rationally *could have believed*"
9  that the conditions of the statute would promote its objective.  Western and
10  Southern Life Insurance Co. v. State Bd. of Equalization of California, 451 U.S.
11  654, 671-72 (1981) (emphasis in original).

12      Rational basis review, moreover, "is not a license for courts to judge the
13  wisdom, fairness, or logic of legislative choices." Beach Communications, 508
14  U.S. at 313.  Rather, "those challenging the legislative judgment must convince
15  the court that the legislative facts on which the classification is apparently based
16  could not reasonably be conceived to be true by the governmental decisionmaker."
17  Vance v. Bradley, 440 U.S. 93, 111 (1979).  Although the Court has permitted
18  Plaintiff to pursue discovery, this is not the type of discovery plaintiff is entitled to
19  pursue; the congressional findings and legislative history underlying the statute
20  are "legislative fact[s]" subject to judicial notice and are not appropriate for
21  fact-finding or discovery.

22      3.    Defendants object to Plaintiff's Document Requests to the extent that
23  they call for documents concerning the "continued rationality" of the statute.
24  Classifications subject to rational basis review are not subject to challenge on the
25  ground of changed circumstances.  See, e.g., Montalvo-Huertas v. Rivera-Cruz,
26  885 F.2d 971, 977 (1st Cir. 1989) ("[E]valuating the continued need for, and
27  suitability of, legislation of this genre is exactly the kind of policy judgment that
28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -3-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   the rational basis test was designed to preclude."). Indeed, courts have found that

2   even where Congress has determined that a previous enactment is no longer

3   necessary, that finding does render the statute unconstitutional. See Smart v.

4   Ashcroft, 401 F.3d 119, 123 (2d Cir. 2005) ("A congressional decision that a

5   statute is unfair, outdated, and in need of improvement does not mean that the

6   statute when enacted was wholly irrational or, for purposes of rational basis

7   review, unconstitutional."); Howard v. U.S. Dept. of Defense, 354 F.3d 1358,

8   1361-62 (Fed. Cir. 2004) ("Congress acts based on judgments as to preferable

9   policy; the fact that Congress repeals or modifies particular legislation does not

10   reflect a judgment that the legislation, in its pre-amendment form, lacked rational

11   support."). Were it otherwise, all legislation subject to rational basis review –

12   even legislation authoritatively sustained as constitutional by the Supreme Court –

13   could potentially be subject to periodic judicial review on the basis of changed

14   circumstances, a prospect incompatible with these principles and the Supreme

15   Court's well known and repeated admonition that "a legislative choice is not

16   subject to courtroom factfinding and may be based on rational speculation

17   unsupported by evidence or empirical data." Heller, 509 U.S. at 320.

18      4.    Defendants object to Plaintiff's Document Requests to the extent they

19   request that Defendants produce documents that are not in their possession,

20   custody, or control. Fed. R. Civ. P. 34.

21      5.    Defendants object to Plaintiff's Document Requests as duplicative

22   and unduly burdensome to the extent they call for production of identical copies of

23   the same document.

24      6.    Defendants object to the definitions and instructions in Plaintiff's

25   Document Requests to the extent that they conflict with or purport to expand upon

26   Defendants' obligations under the Federal Rules of Civil Procedure or the local

27   rules of this Court.

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                -4-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1       7.     Defendants object to Plaintiff's Document Requests to the extent that

2  they are overbroad or attempt to impose obligations on Defendants that are unduly

3  burdensome, expensive, and/or oppressive.

4       8.     Defendants object to Plaintiff's Document Requests as unduly

5  burdensome to the extent that they require production of electronic information,

6  the retrieval of which, to the extent possible, would involve undue expense, time,

7  and allocation of resources for minimal return.  Defendants, accordingly, object to

8  instruction nos. 16 and 17.  Counsel will meet and confer as to the production of

9  electronically stored documents in an effort to arrive at a mutually agreeable

10  approach to the production of such information.

11       9.     Defendants object to Plaintiff's Document Requests to the extent that

12  they seek information and documents protected by the work-product doctrine,

13  Privacy Act, attorney-client privilege, law enforcement privilege, deliberative

14  process privilege, and any other applicable privilege.  Defendants object to

15  paragraph (2) of the instructions purporting to require Defendants to set forth

16  "[t]he identity of each Person who received and/or saw [an] original or a copy" of

17  a privileged document.  To the extent there are any documents subject to the

18  privileges and protections referenced above, Defendants will produce a privilege

19  log that identifies (to the extent relevant, ascertainable, and not privileged or

20  otherwise protected from disclosure) the author or creator of the document,

21  the recipient(s) of the document (including any individuals who were sent copies

22  of the document), the date of the document, the privilege or protection claimed,

23  and a description of the document sufficient to enable the parties to assess the

24  applicability of the privilege or protection.  See Fed. R. Civ. P. 26(b)(5)(A).

25      10.    A statement that Defendants intend to produce documents responsive

26  to a particular request indicates that Defendants will conduct a good-faith search

27  for such documents, and does not constitute a representation that such documents

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS              -5-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1 | do, in fact, exist.

2 |     11.   Defendants object to Plaintiff's Document Requests to the extent they

3 | seek "any and all" or "all" documents as overly broad, unduly burdensome, and

4 | not reasonably calculated to lead to the discovery of admissible evidence.

5 |     12.   Defendants object to Plaintiff's Document Request to the extent they

6 | call for information outside of the Department of Defense (the "DoD").  Courts in

7 | the Ninth Circuit have applied the waiver of sovereign immunity found in the

8 | Administrative Procedures Act ("APA"), 5 U.S.C. § 702, to Constitutional claims

9 | seeking nonmonetary relief.  <u>See</u>, <u>e.g.</u>, <u>The Presbyterian Church v. United States</u>,

10 | 870 F.2d 518, 525 n. 9 ("This court has previously held that the 1976 amendment

11 | to § 702 waives sovereign immunity not only for suits brought under § 702 itself,

12 | but for constitutional claims brought under the general federal-question

13 | jurisdiction statute, 28 U.S.C. § 1331." (citations omitted)).  Claims under Section

14 | 702, must be the result of "agency action."  Because the Department of Defense

15 | ("DOD"), not Congress or any other governmental agency, is charged with

16 | administering 10 U.S.C. § 654 and the applicable regulations, discovery

17 | obligations do not reach beyond that Department.

18 |     13.   To the extent that the Department of Defense houses documents

19 | belonging to another agency, Congress, or an instrumentality of the Government,

20 | the Department of Defense will only produce those documents with the consent of

21 | the agency, instrumentality or Congress.

22 |     14.   Defendants object to the Plaintiff's characterization of any particular

23 | document.

24 |     15.   Defendants reserve the right to amend, supplement, or alter these

25 | objections and responses to Plaintiff's Document Requests at any time.

26 | Defendants further reserve the right to redact any portions of documents for any

27 | reason contemplated under the Federal Rules of Civil Procedure or the local rules

28 |

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS             -6-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  of this Court without waiving any rights either by doing so or by producing

2  unredacted portions of documents.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                    -7-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    **DOCUMENT REQUESTS**

2        The foregoing General Objections shall be considered as made, to the extent

3    applicable, in response to each of the Document Requests, as if the General

4    Objections were fully set forth in each response.

5    **DOCUMENT REQUEST NO. 1**:

6        All Documents referring or related to meetings of the Joint Chiefs of the

7    United States Armed Forces between January 20, 2007 and the present at which

8    DADT was discussed, including all memoranda created by any person in

9    preparation for, or for use during, the meeting(s) and all documents which

10    summarize what occurred or was discussed during the meeting(s).

11    **RESPONSE:** Defendants object to this request because it is not reasonably

12    calculated to lead to the discovery of admissible evidence; documents referring or

13    relating to meetings of the Joint Chiefs of the United States Armed Forces

14    between January 2007 and the present have no bearing on whether Congress had a

15    rational basis for enacting the DADT Statute in 1993.  Defendants also object to

16    this request because it is unduly burdensome.  The Joint Chiefs of the United

17    States Armed Forces maintain busy schedules and searching for and reviewing "all

18    documents" related to meetings at which DADT was discussed, over a period of

19    more than three years, would impose an undue burden on the Joint Chiefs and

20    their staffs.  Defendants further object to this request to the extent it calls for

21    documents protected by the deliberative process privilege, the attorney-client

22    privilege, the attorney work product privilege, or any other applicable privilege.

23    Moreover, this request is a further attempt by Plaintiff to use the tools of civil

24    discovery to affect the political process that has been initiated to address issues

25    related to the Policy; discovery of this type directly interferes with the work of the

26    political branches and is improper.  See United States v. Morgan, 313 U.S. 409,

27    422 (1941) (explaining that it is not the function of the court to probe the mental

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                                                -8-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0197**

1    processes of agency decision makers).

2         Subject to the general objections set forth above and the specific objections

3    set forth herein, Defendants intend to produce responsive documents identified

4    through a reasonable and good faith search.

5    **DOCUMENT REQUEST NO. 2:**

6         All Documents referring or relating to the position of the Chairman of the

7    Joint Chiefs of Staff, the Secretary of Defense, the Chief of Staff of the Army, the

8    Chief of Naval Operations, the Chief of Staff of the Air Force, and the

9    Commandant of the Marine Corps or their advisors, not including legal counsel,

10   regarding the repeal of DADT.

11   **RESPONSE:** Defendants object to this request because it is not reasonably

12   calculated to lead to the discovery of admissible evidence; documents referring or

13   relating to the positions of military leaders regarding the repeal of DADT have no

14   bearing on whether Congress had a rational basis for enacting the Statute in 1993.

15   Defendants also object to this request to the extent it calls for documents protected

16   by the deliberative process privilege or any other applicable privilege. Moreover,

17   this request is a further attempt by Plaintiff to use the tools of civil discovery to

18   affect the political process that has been initiated to address issues related to the

19   Policy; discovery of this type directly interferes with the work of the political

20   branches and is improper. See United States v. Morgan, 313 U.S. 409, 422 (1941)

21   (explaining that it is not the function of the court to probe the mental processes of

22   agency decision makers).

23        Subject to the general objections set forth above and the specific objections

24   set forth herein, Defendants intend to produce responsive documents identified

25   through a reasonable and good faith search.

26   **DOCUMENT REQUEST NO. 3:**

27        All Documents referring or relating to the position of the any [*sic*] legal

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                         -9-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  counsel to [*sic*] Chairman of the Joint Chiefs of Staff, the Secretary of Defense,

2  the Chief of Staff of the Army, the Chief of Naval Operations, the Chief of Staff of

3  the Air Force, and the Commandant of the Marine Corps, regarding the repeal of

4  DADT.

5  **RESPONSE**:  Defendants object to this request because it is not reasonably

6  calculated to lead to the discovery of admissible evidence; documents referring or

7  relating to the positions of legal counsel to military leaders regarding the repeal of

8  DADT have no bearing on whether Congress had a rational basis for enacting the

9  Statute in 1993.  Defendants also object to this request to the extent it calls for

10  documents protected by the deliberative process privilege, the attorney-client

11  privilege, the attorney work product privilege, or any other applicable privilege.

12  Moreover, this request is a further attempt by Plaintiff to use the tools of civil

13  discovery to affect the political process that has been initiated to address issues

14  related to the Policy; discovery of this type directly interferes with the work of the

15  political branches and is improper.  See United States v. Morgan, 313 U.S. 409,

16  422 (1941) (explaining that it is not the function of the court to probe the mental

17  processes of agency decision makers).

18       Subject to the general objections set forth above and the specific objections

19  set forth herein, Defendants intend to produce responsive documents identified

20  through a reasonable and good faith search.

21  **DOCUMENT REQUEST NO. 4:**

22       All Documents referring or relating to any request by congress or DOD that

23  the RAND Corporation update studies it previously conducted regarding gays in

24  the military.

25  **RESPONSE:**  Defendants object to this request to the extent it calls for

26  documents that are outside the possession of the DOD.  Plaintiff's suit challenges

27  a statute that was implemented and is enforced by the DOD, and the relief that

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -10-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0199**

1  Plaintiff seeks must necessarily lie against that agency.  Accordingly, Plaintiff's

2  discovery should be limited to documents in the possession of the DOD.

3  Defendants also object to this request to the extent it calls for the production of

4  documents that are protected by the deliberative process privilege, the attorney

5  client privilege, the attorney work product privilege, or any other applicable

6  privilege.

7       Subject to the general objections set forth above and the specific objections

8  set forth herein, Defendants intend to produce responsive documents identified

9  through a reasonable and good faith search.

10  **DOCUMENT REQUEST NO. 5:**

11       All Documents referring or relating to any plan or draft plan by DOD to

12  repeal DADT.

13  **RESPONSE**:   Defendants object to this request because it is not reasonably

14  calculated to lead to the discovery of admissible evidence; documents referring or

15  relating to any plan or draft plan by DOD to repeal DADT have no bearing on

16  whether Congress had a rational basis for enacting the Statute in 1993.

17  Defendants also object to this request to the extent it calls for documents protected

18  by the deliberative process privilege, the attorney-client privilege, the attorney

19  work product privilege, or any other applicable privilege.  Moreover, this request

20  is a further attempt by Plaintiff to use the tools of civil discovery to affect the

21  political process that has been initiated to address issues related to the Policy;

22  discovery of this type directly interferes with the work of the political branches

23  and is improper.  See United States v. Morgan, 313 U.S. 409, 422 (1941)

24  (explaining that it is not the function of the court to probe the mental processes of

25  agency decision makers).

26       Subject to the general objections set forth above and the specific objections

27  set forth herein, Defendants intend to produce responsive documents identified

28

DEFENDANTS' OBJECTIONS AND RESPONSES TO
PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS                                    -11-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

**LCR Appendix Page 0200**