1

2

3                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   LOG CABIN REPUBLICANS, a )      Case No. CV 04-08425-VAP
     non-profit corporation, )       (Ex)
12                            )
                   Plaintiff, )      **[Motion filed on March 29,**
13                            )      **2010]**
          v.                  )
14                            )      **ORDER DENYING IN PART MOTION**
     UNITED STATES OF AMERICA )      **FOR SUMMARY JUDGMENT**
15   and DONALD H. RUMSFELD, )
     SECRETARY OF DEFENSE, in )
16   his official capacity,   )
                              )
17                 Defendants. )
     _____)
18

19        Log Cabin Republicans, ("Plaintiff" or "Plaintiff

20   association"), a nonprofit corporation whose membership

21   includes current, retired, and former homosexual members

22   of the U.S. armed forces, challenges as "restrictive,

23   punitive, . . . discriminatory," and unconstitutional the

24   "Don't Ask Don't Tell" policy ("DADT Policy") of

25   Defendants United States of America and Robert M. Gates

26   ("Defendants"), including both the statute codified at 10

27   U.S.C. section 654 and the implementing instructions

28   appearing at Department of Defense Instructions("DoDI" or

"implementing instructions") 1332.14, 1332.30, and 1304.26.  Defendants now move for entry of summary judgment.

## I. BACKGROUND

**A.   The DADT Policy**

The DADT Policy includes both the statutory language appearing at 10 U.S.C. section 654 and the implementing instructions appearing as DoDIs 1332.14, 1332.30, and 1304.26.  DADT can be triggered by three kinds of "homosexual conduct:" (1) "homosexual acts"; (2) statements that one "is a homosexual"; or (3) marriage to, or an attempt to marry, a person of one's same biological sex.  10 U.S.C. § 654 (b); DoDI 1332.14 at 17-18; 1332.30 at 9-10.

**1.   "Homosexual Acts"**

First, Defendants may "initiate separation proceedings" — *i.e.*, begin the process of removing an active service member from military ranks — if a service member engages in a "homosexual act," defined as "(A) any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and (B) any bodily contact which a reasonable person would understand to demonstrate a propensity or intent to engage in an act

described in subparagraph (A)."  10 U.S.C. § 654 (b)(1),
(f)(3).

### 2.   Statements About One's Homosexuality

Second, Defendants may initiate separation if a
service member makes a statement "he or she is a
homosexual or bisexual, or words to that effect."  10
U.S.C. § 654(b)(2).  These words create a presumption the
service member is a "person who engages in, attempts to
engage in, has a propensity to engage in, or intends to
engage in homosexual acts."  10 U.S.C. § 654(b)(2).  A
propensity is "more than an abstract preference or desire
to engage in homosexual acts; it indicates a likelihood
that a person engages or will engage in homosexual acts."
DoDI 1332.14 at 18.

### 3.   Marriage or Attempted Marriage to a Person
###       of the Same Sex

The third route to separation under DADT, marriage or
attempted marriage to a person of the same sex, is self-
explanatory.

### 4. Discharge

Once Defendants find a service member has engaged in
"homosexual conduct," as defined above, Defendants will
discharge him or her unless the service member can
demonstrate that, <u>inter</u> <u>alia</u>, such acts are not his or

her usual or customary behavior and that he or she has no propensity to engage in "homosexual acts."  10 U.S.C. § 654(b)(1); DoDI 1332.14 at 18.

## B.  Plaintiff and Its Members

According to the Complaint, Plaintiff Log Cabin Republicans ("Plaintiff") is a nonprofit corporation organized under the laws of the District of Columbia, is associated with the Republican Party, and is dedicated to the interests of the gay and lesbian community.[1]

John Alexander Nicholson is a member of Plaintiff organization.  Mr. Nicholson enlisted in the United States Army in 2001; the Army discharged him one year later pursuant to the DADT Policy.  (Declaration of John Alexander Nicholson ("Nicholson Decl.") ¶¶ 3, 5-6.)  Mr. Nicholson signed up to be included in Plaintiff's database in April of 2006.  (Stmt. of Genuine Issues ("SGI") at 6:5-20.)  In 2006, Plaintiff's Georgia chapter awarded Mr. Nicholson honorary membership.[2]  (Id.)  Mr.

---

[1]Although neither Defendants in their Motion nor Plaintiff in its Opposition point to any evidence concerning the corporate form of Plaintiff, the nature of Plaintiff organization does not appear to be in dispute.

[2]Although Defendants argue "the record contains no evidence that the national board of directors ever granted 'honorary membership' to Mr. Nicholson," Plaintiff has submitted evidence, in the form of the Declaration of Jamie Ensley, that the Georgia Chapter of Plaintiff organization granted Mr. Nicholson honorary membership.  (See Decl. of Jamie Ensley ("Ensley Decl.")
(continued...)

4

1   Nicholson has attended several of Plaintiff's national

2   conventions, (id.), and addressed Plaintiff's national

3   convention in 2006.  (SGI at 5:11-6:4.)

4

5        John Doe is also a member of Plaintiff organization.

6   (Decl. of John Doe ("Doe Decl.") ¶ 2.)  He joined

7   Plaintiff at some time before October 12, 2004.  (Decl.

8   of C. Martin Meekins ("Meekins Decl.") ¶ 3.)  John Doe is

9   an officer in the United States Army Reserves who

10  recently completed a tour of duty in Iraq.  (SGI at

11  7:5-8:10; Doe Decl. ¶ 4.)  Lt. Col. Doe is gay and wishes

12  to continue his service in the United States Army.  (Doe

13  Decl. ¶¶ 2, 6.)  He believes that identifying himself in

14  this action would subject him to investigation and

15  discharge under the DADT Policy.  (Doe Decl. ¶ 8.)

16

17  **C.  Procedural History**

18       Plaintiff filed its Complaint on October 12, 2004.

19  On December 13, 2004, Defendants moved to dismiss the

20  Complaint, alleging, inter alia, that Plaintiff lacked

21  standing.  The Honorable George P. Schiavelli granted the

22  motion to dismiss the Complaint with leave to amend on

23  March 21, 2006.

24

25

26

27  _____

          [2](...continued)

28  ¶ 4.)

On April 28, 2006, Plaintiff filed timely its Amended
Complaint, attaching the declaration of Mr. Nicholson.
According to the Amended Complaint, the DADT Policy
violates the First and Fifth Amendments to the U.S.
Constitution by violating guarantees to: (1) substantive
due process; (2) equal protection; and (3) freedom of
speech.  On June 11, 2007, Plaintiff filed the
declaration of Lt. Col. Doe, a current member of
Plaintiff organization, a homosexual, and a current U.S.
Army reservist on active duty.

On June 12, 2006, Defendants moved to dismiss the
Amended Complaint.  On May 23, 2008, Judge Schiavelli
entered an order staying this action in light of the
Ninth Circuit's May 21, 2008 decision in <u>Witt v. Dep't of
the Air Force</u>, 527 F.3d 806 (9th Cir. 2008).  After the
case was transferred to this Court in late 2008, the
Court heard the motion to dismiss, and denied it on June
9, 2009.  On November 24, 2009, the Court denied a motion
by Defendants to certify its June 9, 2009 Order for
interlocutory appeal.

On March 29, 2010, Defendants filed this Motion for
Summary Judgment.  Plaintiff's Opposition and Defendants'
Reply were filed timely.  On April 21, 2010, the Court
provided the parties with its tentative ruling relating
to standing.  On April 22, 2010, Plaintiff filed a

1  supplemental memorandum of points and authorities in

2  support of its Opposition, and on April 23, 2010,

3  Defendants filed a response to Plaintiff's supplemental

4  brief.  On April 26, 2010, Plaintiff submitted the

5  Meekins Declaration in support of its Opposition.  The

6  Court held a hearing on the Motion on April 26, 2010, and

7  granted the parties leave to submit further supplemental

8  briefing concerning standing; both sides timely filed

9  additional briefs on May 3, 2010.

10

11  **D.   Evidentiary Objections**

12       The only evidentiary objection the Court need address

13  in order to resolve the threshold issue of standing is

14  Defendants' challenge to consideration of the Meekins

15  declaration.

16

17       Defendants argue that the Court should strike the

18  Meekins Declaration because Plaintiff failed to disclose

19  Mr. Meekins as a witness during discovery.  Defendants

20  are correct that where a party fails to disclose the

21  identity of a witness required by either Rule 26(a) or

22  otherwise requested during discovery without substantial

23  justification, the party may not later rely on evidence

24  from that witness.  See Wong v. Regents of Univ. of Cal.,

25  410 F.3d 1052, 1062 (9th Cir. 2005); Fed. R. Civ. P.

26  37(c)(1).

27

28

7

Defendants' challenge to the declaration fails for two reasons, however.  First, Rule 26(a) only requires a party to disclose the identity of persons "the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i).  The Meekins Declaration is offered solely to rebut Defendants' challenge to Plaintiff's standing to bring this lawsuit, by establishing Lt. Col. Doe's membership in Plaintiff organization at the time the action commenced.  Mr. Meekins does not offer any testimony relating to the merits of Plaintiff's claims for relief.  Accordingly, disclosure of Mr. Meekins' identity was not required by Rule 26(a).  Defendants have pointed to no written discovery request they propounded upon Plaintiff that would have called for identification of Mr. Meekins. Plaintiff thus was not obligated to disclose Mr. Meekins' identity during discovery.

Furthermore, assuming disclosure was required either by Rule 26(a) or an as-yet unidentified discovery request, substantial justification exists for Plaintiff's failure to disclose Mr. Meekins' identity during discovery.  Defendants have known that Plaintiff sought to use Lt. Col. Doe's membership as the basis of its claim to standing for almost three years, yet never challenged the timing of his membership in Plaintiff

1  organization.[3]  The ambiguity that caused the Court to
2  question when Lt. Col. Doe became a member of Plaintiff
3  organization appears clearly on the face of the Doe
4  Declaration, which has been in Defendants' possession
5  since June 11, 2007.  Based on Defendants' silence in the
6  face of the Doe Declaration, Plaintiff reasonably may
7  have believed that the timing of Lt. Col. Doe's
8  membership was not in dispute.  Plaintiff thus would have
9  had no reason to seek out additional evidence of the date
10 on which Lt. Col. Doe joined Plaintiff organization, let
11 alone disclose such evidence.

13     For the foregoing reasons, the Court DENIES
14 Defendants' request to strike the Meekins Declaration.

16                    **II. LEGAL STANDARD**
17     A motion for summary judgment shall be granted when
18 there is no genuine issue as to any material fact and the
19 moving party is entitled to judgment as a matter of law.
20 Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc.,
21 477 U.S. 242, 247-48 (1986).  The moving party must show
22 that "under the governing law, there can be but one
23 reasonable conclusion as to the verdict."  Anderson, 477
24 U.S. at 250.

26 _____
27     [3]Defendants did not raise this issue in their Motion;
   it was raised by the Court sua sponte in its tentative
28 ruling distributed to the parties before the April 26,
   2010 hearing.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.  <u>Id.</u>  The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144.

1   A defendant has the burden of proof at trial with respect
2   to any affirmative defense.  Payan v. Aramark Mgmt.
3   Servs. Ltd. P'ship, 495 F.3d 1119, 1122 (9th Cir. 2007).

4

5       A genuine issue of material fact will exist "if the
6   evidence is such that a reasonable jury could return a
7   verdict for the non-moving party."  Anderson, 477 U.S. at
8   248.  In ruling on a motion for summary judgment, the
9   Court construes the evidence in the light most favorable
10  to the non-moving party.  Barlow v. Ground, 943 F.2d
11  1132, 1135 (9th Cir. 1991); T.W. Electrical Serv. Inc. v.
12  Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31
13  (9th Cir. 1987).

14

15                    **III. DISCUSSION**
16  **A.   Standing**
17      Defendants argue they are entitled to summary
18  judgment because Plaintiff lacks standing to bring this
19  action.

20

21      "To satisfy Article III's standing requirement,
22  [plaintiffs] must demonstrate: (1) they suffered or will
23  suffer an 'injury in fact' that is concrete,
24  particularized, and actual or imminent; (2) the injury is
25  fairly traceable to [defendant's] challenged action; and
26  (3) the injury is likely, not merely speculative, and
27  will be redressed by a favorable decision."  Biodiversity
28

                              11

Legal Found. v. Badgley, 309 F.3d 1166, 1171 (9th Cir. 2002); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing its standing.  See Lujan, 504 U.S. at 561; Chandler v. State Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

Plaintiff has identified two of its members who, it argues, have standing to sue in their own right and thus confer standing on it: John Doe and John Alexander Nicholson.  Defendants do not dispute the second and third prongs of Hunt's associational standing elements as to Lt. Col. Doe and Mr. Nicholson, nor do they dispute that Mr. Nicholson has standing to sue in his own right. Defendants argue, instead, that Lt. Col. Doe and Mr. Nicholson are not bona fide members of Plaintiff. Defendants further argue that Lt. Col. Doe lacks standing

1    to sue in his own right because he has not yet been
2    discharged from the military, and thus any harm to him
3    from the DADT Policy is speculative.  Defendants also
4    argue that even if Lt. Col. Doe and Mr. Nicholson were
5    bona fide members with standing to sue in their own
6    right, they were not members at the time this action
7    commenced, and the Court therefore lacks subject matter
8    jurisdiction.  Finally, Defendants argue that Plaintiff
9    cannot proceed without disclosing Lt. Col. Doe's
10   identity.

11

12       At the threshold, the Court must determine the date
13   on which Plaintiff's standing should be evaluated.
14   Defendants argue the Court should examine Plaintiff's
15   standing as of the date the action was initiated, i.e.,
16   the date the original Complaint was filed — October 12,
17   2004.  Plaintiff, on the other hand, contends the Court
18   should inquire whether standing existed as of  the date
19   the First Amended Complaint was filed, April 28, 2006.

20

21       As a general matter, "[s]tanding is determined at the
22   time of the lawsuit's commencement, and [the Court] must
23   consider the facts as they existed at that time the
24   complaint was filed."  Skaff v. Meridien N. Am. Beverly
25   Hills, LLC, 506 F.3d 832, 850 (9th Cir. 2007) (citing
26   Lujan, 504 U.S. at 569 n. 4); see also Friends of the
27   Earth, Inc. v. Laidlaw Envtl. Serv., 528 U.S. 167, 180
28

(2000) ("[W]e have an obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the litigation.").

Plaintiff urges that this case falls within an exception to the general rule.  In his March 21, 2006 Order, Judge Schiavelli dismissed Plaintiff's original Complaint and granted Plaintiff leave to file a First Amended Complaint.  Relying on Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), Plaintiff argues that "[t]he dismissal of Log Cabin's original complaint and the filing of the first amended complaint rendered the original complaint of no legal effect and obsolete." (Pl.'s Apr. 22, 2010 Mem. of P. & A. at 1:19-20.)  In support of this argument, Plaintiff cites County of Riverside v. McLaughlin, 500 U.S. 44 (1991).  (Id. at 2:14-3:2.)

In McLaughlin, the class members claimed that the County of Riverside had violated their Constitutional rights when it failed to provide persons subject to warrantless arrest with timely probable cause determinations.  McLauqlin, 500 U.S. at 47.  The original complaint in McLaughlin, filed in August 1987, named a single plaintiff.  Id. at 48.  The second amended complaint, filed in July 1988, named three additional plaintiffs.  Id. at 48-49.  In response to the

14

defendants' argument challenging the standing of the named plaintiffs, the Court examined the facts relating to standing as set forth in the second amended complaint, not the original complaint.  <u>Id.</u> at 50-52.

Defendants attempt to avoid the effect of <u>McLaughlin</u> by arguing that the Supreme Court analyzed standing as of the date the second amended complaint was filed because new named plaintiffs were added in the second amended complaint, and the claims of these new plaintiffs were not included in the case before that date.  This is unpersuasive, however.  The procedural posture of this case closely resembles that before the Court in <u>McLaughlin</u>.  Just as a class must identify a named plaintiff with standing, so too must an association seeking to assert claims of its members identify an individual member with standing.  Although it is true that there has been but one named plaintiff here for the duration of the action, an association that newly identifies a member for standing purposes is analogous to a class that newly identifies a class member with standing.  Accordingly, the analysis of <u>McLaughlin</u> applies here, and the critical date for standing is the date the First Amended Complaint was filed — April 28, 2006.

Turning to the specific standing arguments raised by the parties with respect to Lt. Col. Doe and Mr. Nicholson, the Court finds each of these challenges, too, lacks merit.

### 1.   John Doe

Defendants raise three principal objections to Plaintiff's use of Lt. Col. Doe to confer standing: (1) he does not have standing to sue in his own right; (2) he was not a member of Plaintiff at the time the original Complaint was filed; and (3) Plaintiff may not rely on John Doe for standing without identifying him by name. The Court addresses each argument in turn.

#### a.   Imminence of Harm

Defendants contend that because Lt. Col. Doe has not been discharged from the military yet, any harm to him is too speculative to constitute the actual or imminent harm required for standing.  (Mot. at 11:8–12:17.)

The Supreme Court has rejected the argument that a plaintiff lacks standing to challenge the constitutionality of a statute merely because the statute has not been enforced against him yet.  Instead, the Court has long held that so long as there is a reasonable threat of enforcement, "it is not necessary that petitioner first expose himself to actual arrest or

1  prosecution to be entitled to challenge a statute that he
2  claims deters the exercise of his constitutional rights."
3  Steffel v. Thompson, 415 U.S. 452, 459 (1974); see also,
4  e.g., MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118,
5  128-29 (2007) ("[W]here threatened action by government
6  is concerned, we do not require a plaintiff to expose
7  himself to liability before bringing suit to challenge
8  the basis for the threat — for example the
9  constitutionality of a law threatened to be enforced.");
10 Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,
11 477 U.S. 619, 626 n. 1 (1986).

12

13     Here, the DADT Policy on its face shows that there is
14 a reasonable threat that it will be enforced against Lt.
15 Col. Doe if the military learns his identity.   The
16 language of the DADT Policy is mandatory, see 10 U.S.C. §
17 654(b)(2) ("A member of the armed forces shall be
18 separated from the armed forces . . . if . . . the member
19 has stated that he or she is a homosexual . . . .")
20 (emphasis added), and does not leave the armed forces any
21 discretion about enforcing the policy where a
22 servicemember is unable to rebut a finding that he or she
23 is "a person who engages in, attempts to engage in, has a
24 propensity to engage in, or intends to engage in
25 homosexual acts."  Id.  Lt. Col. Doe has stated that he
26 is homosexual (see Doe Decl. ¶ 2); the mandatory nature
27 of the DADT Policy requires it be applied to him if he is

28

identified.  Furthermore, Defendants do not dispute that
many service members have been discharged previously
under the DADT Policy, or that the DADT Policy will
continue to be applied to persons who admit to being
homosexuals.

Indeed, Defendants have not argued that it is even
within their discretion to decline to initiate separation
proceedings against Lt. Col. Doe if he were identified.
In fact, they are unwilling to stipulate not to initiate
such proceedings against him were his identity revealed
for purposes of this litigation.  Defendants have offered
no evidence suggesting that the DADT Policy will not be
enforced against Lt. Col. Doe.

Defendants' legal authorities do not establish that
no imminent threat of harm to Lt. Col. Doe exists.  In
support of their argument, Defendants rely on City of Los
Angeles v. Lyons, 461 U.S. 95 (1983), Nat'l Treasury
Employees Union v. Dep't of the Treasury, 25 F.3d 237
(5th Cir. 1994), and Hodgers-Durgin v. de la Viña, 199
F.3d 1037 (9th Cir. 1999).

Lyons is easily distinguishable from the facts here.
In Lyons, the Supreme Court held that a plaintiff did not
have standing to obtain injunctive relief preventing the
Los Angeles Police Department from enforcing an unwritten

policy that officers employ choke holds to restrain
suspects who pose no threat of deadly force to officers.
<u>Lyons</u>, 461 U.S. at 98, 111-13.   In <u>Lyons</u>, there was
substantial uncertainty as to whether or not the
plaintiff would engage in future activity sufficient to
arouse the suspicions of police officers and if he did,
whether or not the police officers would enforce the
unwritten alleged choke hold policy.   <u>See</u> <u>id.</u> at 105-06.
The Court recognized there was nothing about the
plaintiff that made it more likely the policy would be
applied to him than any other individual.   <u>See</u> <u>id.</u> at 111
("[Plaintiff] is no more entitled to an injunction than
any other citizen of Los Angeles.")


Here, by contrast, the DADT Policy is non-
discretionary and based on a single criterion which Lt.
Col. Doe meets.   There is no reason to doubt it will be
applied to him.   His testimony that he is gay certainly
suffices to raise a triable issue of material fact as to
imminent harm.   (<u>See</u> Doe Decl. ¶ 2.)


<u>National Treasury</u> similarly fails to support
Defendants' position.   There, the Fifth Circuit found the
plaintiff organization lacked standing because the
plaintiff had "not even alleged that there is a threat of
such an injury to any individual member of the

association," <u>Nat'l Treasury</u>, 25 F.3d at 242, not because the policy it challenged had not been enforced against any of its members.  Here, Plaintiff has identified Lt. Col. Doe as a member to whom a threat exists.

Finally, <u>Hodgers-Durgin</u> does not support Defendants' position.  The named plaintiffs in <u>Hodgers-Durgin</u> sought to enjoin an alleged Border Patrol practice of stopping motorists in violation of the Fourth Amendment.  Although Defendants maintain that the Ninth Circuit found the named plaintiffs lacked standing, the Ninth Circuit's holding actually was two-fold: (1) the named plaintiffs sufficiently alleged  a "case or controversy" for purposes of Article III standing, but (2) failed to show a likelihood of substantial and immediate irreparable injury for the purposes of obtaining a preliminary injunction.  <u>See Hodgers-Durgin</u>, 199 F.3d at 1041–44. The standard for obtaining injunctive relief, of course, is different from the standard for establishing standing, as evidenced by the Ninth Circuit's decision.

   **b.   When John Doe Became A Member of Plaintiff**
   John Doe began paying membership dues to Plaintiff before the filing of the Original Complaint in 2004. (Meekins Decl. ¶ 4.)  Although he apparently took measures to protect against disclosure of his identity — including paying his membership dues through a member of

1   Plaintiff's national board rather than directly to the
2   organization, (see id.) — he appears to have become a
3   dues-paying member before the Original Complaint was
4   filed.

5

6       Summary judgment is inappropriate here whether the
7   Court applies April 28, 2006 or October 12, 2004 as the
8   appropriate date for its standing analysis.  As discussed
9   above, Plaintiff here must demonstrate it had standing to
10  bring suit as of April 28, 2006, the date the First
11  Amended Complaint was filed.  Lt. Col. Doe was
12  indisputably a member of Plaintiff before that date.
13  Even assuming arguendo that Defendants are correct in
14  their assertion that Plaintiff must establish it had
15  standing as of the date the original complaint was filed,
16  however, there is at a minimum a genuine issue of fact as
17  to whether or not Lt. Col. Doe was a member of Plaintiff
18  association on that date.  (See id. ¶¶ 3-4.)  This
19  genuine issue of fact precludes summary judgment on this
20  basis.[4]

21

22

23

24

25

26      [4]Defendants further appear to argue that Lt. Col. Doe
    was not a bona fide member of Plaintiff organization at
27  any time.  (See Mot. at 11:6-8.)  As discussed above,
    however, it is clear that Lt. Col. Doe was a dues-paying
28  member of Plaintiff organization.

### c.   Proceeding Pseudononymously

Finally, Defendants argue that Plaintiff should not be allowed to proceed without identifying Lt. Col. Doe by name, and that by allowing them to do so, the Court is departing from its March 21, 2006 ruling.  (See Defs.' May 3, 2010 Mem. of P. & A. at 5:11-7:23.)  The Court has already held that this case presents the rare set of circumstances in which anonymity is appropriate, however, and declines to revisit this ruling.  (See Docket No. 83 at 13:13-20.)  The rationale for that ruling is only strengthened by Defendants' refusal to stipulate that Lt. Col. Doe would not be subject to separation proceedings if he were identified by name.  (Opp'n at 9:3-6.) Defendants cite Judge Schiavelli's March 21, 2006 Order on this issue, but that Order did not foreclose entirely the possibility that Plainiff could proceed without identifying the members on whom it relies for standing. (See Docket No. 24 at 16:1-17:14.)  Accordingly, the Court's ruling that Plaintiff may proceed without identifying Lt. Col. Doe by name is not a "departure" from the March 21, 2006 Order.

### 2.   Terry Nicholson

In addition to Lt. Col. Doe, Mr. Nicholson's membership in Plaintiff association provides a basis for the Court to find Plaintiff has standing here.

In 2006, Plaintiff's Georgia chapter made Mr.
Nicholson an honorary member.  (Ensley Decl. ¶ 4.)
Though Plaintiff does not specify the date in 2006 on
which Mr. Nicholson became an honorary member, the
parties agree that he signed up to be included in
Plaintiff's database in April 2006, (Stmt. of Undisputed
Facts ("SUF") ¶ 10; SGI ¶ 10), and Plaintiff's records
indicate that Mr. Nicholson has been a member since April
28, 2006.  (See Decl. of Terry Hamilton ("Hamilton
Decl.") ¶¶ 3-5, Ex. A.)  Construing these facts in the
light most favorable to Plaintiff, the non-moving party,
it appears that Mr. Nicholson was an honorary member at
the time the First Amended Complaint was filed, the
applicable measuring date here.

Defendants argue that Mr. Nicholson's honorary
membership is a nullity because the provision of
Plaintiff's bylaws authorizing awards of honorary
membership conflict with Plaintiff's articles of
incorporation — which provide for a single class of dues-
paying members — and thus Plaintiff has no ability to
award honorary memberships.  Plaintiff maintains that Mr.
Nicholson's honorary membership is valid, and even if it
were not, sufficient indicia of Mr. Nicholson's
membership exist to provide for standing here.

1        Defendants respond that the line of authority
2   permitting associational standing where sufficient
3   indicia of membership exist is unavailable to Plaintiff,
4   a traditional membership organization, and that in any
5   case, the indicia of Mr. Nicholson's membership are
6   insufficient to confer standing.  As the Court finds
7   Defendants have not met their burden of showing that
8   Plaintiff's grant of honorary membership to Mr. Nicholson
9   was invalid, the Court does not reach the question of
10  whether Plaintiff may alternatively obtain standing based
11  on Mr. Nicholson's indicia of membership.

12

13       Defendants' argument that Mr. Nicholson's honorary
14  membership is insufficient to confer standing on
15  Plaintiff fails for two reasons.  First, although as a
16  general principle of corporate law[5] bylaws that conflict
17  with mandatory provisions of a corporation's articles of
18  incorporation are ultra vires and void, see, e.g.,
19  Paolino v. Mace Sec. Int'l, Inc., 985 A.2d 392, 403 (Del.
20  Ch. 2009), Defendants have not shown that the bylaw at
21  issue actually conflicts with Plaintiff's articles of
22  incorporation.  In relevant part, Plaintiff's articles of
23  incorporation provide that "[m]embers of the corporation

24

25       [5]Defendants have directed the Court to no authority
26  specifically applying the District of Columbia Nonprofit
    Corporation Act, and the Court has found none; Defendants
27  rely solely on Nev. Classified Sch. Employees Ass'n v.
    Quaglia, 177 P.3d 509 (Nev. 2008), which appears to have
28  applied Nevada corporate law.

                              24

shall be individuals who support the purposes of the
corporation and make a financial contribution to the
corporation each calendar year," and that "[t]he
corporation shall have one membership class."  (Reply
App. of Evid. Ex. 8 at 2.)  It does not, however, contain
any provision prohibiting Plaintiff's Board of Directors
from using their authority to create additional classes
and criteria of membership.

     Furthermore, the law of the District of Columbia does
not require the harsh result Defendants advocate.  The
District of Columbia Nonprofit Corporation Act (the
"Corporation Act") provides that a nonprofit corporation
shall designate its membership class or classes and
accompanying qualifications "in the articles of
incorporation or the bylaws."  D.C. Code § 29-301.12
(emphasis added).  The Corporation Act further provides
that articles of incorporation shall contain "any
provision which the incorporators elect to set forth . .
. designating the class or classes of members, stating
the qualifications and rights of the members of each
class and conferring, limiting, or denying the right to
vote."  D.C. Code § 29-301.30(a)(5) (emphasis added).
Viewed together, these provisions offer flexibility and
broad discretion to incorporators as to where they choose
to describe membership classes and qualifications.  The
ability to describe one class of members in the articles

25

1  of incorporation and another in the bylaws falls within
2  this broad discretion.

3

4  **B.   Standard of Review**

5       As indicated during the hearing on April 26, 2010,
6  the Court is inclined apply the standard of review set
7  forth in <u>Witt v. Dep't of the Air Force</u>, 527 F.3d 806,
8  819 (9th Cir. 2008) — <u>i.e.</u>, that "when the government
9  attempts to intrude upon the personal and private lives
10 of homosexuals, in a manner that implicates the rights
11 identified in <u>Lawrence</u>, the government must advance an
12 important government interest, the intrusion must
13 significantly further that interest, and the intrusion
14 must be necessary to further that interest" — when
15 considering Defendants' challenge to Plaintiff's
16 substantive due process claim.   Neither side addressed
17 whether or not the DADT Policy survives the <u>Witt</u> standard
18 in their papers in support of and opposition to the
19 Motion.   The Court thus grants both sides leave to submit
20 further briefing addressing application of the <u>Witt</u>
21 standard of review to the DADT Policy.

22

23                     **IV. CONCLUSION**

24      For the reasons set forth above, the Court DENIES
25 Defendants' Motion to the extent it is based on a lack of
26 standing.   The Court grants the parties leave to file
27 supplemental briefs for the sole purpose of discussing
28

1  application of the _Witt_ standard to Plaintiff's

2  substantive due process claim.  Defendant may file its

3  supplemental memorandum of points and authorities, along

4  with any further supporting evidence, no later than June

5  9, 2010.  Plaintiff may file its response no later than

6  June 23, 2010.  Neither side's supplemental memoranda

7  shall exceed fifteen pages, exclusive of tables of

8  contents and authorities.

12  Dated: May 27, 2010

13                              VIRGINIA A. PHILLIPS

14                              United States District Judge