1  TONY WEST
   Assistant Attorney General
2  ANDRE BIROTTE, Jr.
   United States Attorney
3  JOSEPH H. HUNT
   VINCENT M. GARVEY
4  PAUL G. FREEBORNE
   W. SCOTT SIMPSON
5  JOSHUA E. GARDNER
   RYAN B. PARKER
6  U.S. Department of Justice
   Civil Division
7  Federal Programs Branch
   P.O. Box 883
8  Washington, D.C. 20044
   Telephone: (202) 353-0543
9  Facsimile: (202) 616-8460
   E-mail:  paul.freeborne@ usdoj.gov
10
   *Attorneys for Defendants United States*
11 *of America and Secretary of Defense*

12            **UNITED STATES DISTRICT COURT**
        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13                **EASTERN DIVISION**

14 LOG CABIN REPUBLICANS,              )  No. CV04-8425 VAP (Ex)
                                       )
15                  Plaintiff,         )  DEFENDANTS' MOTION *IN*
                                       )  *LIMINE* REGARDING
16         v.                          )  PLAINTIFF'S EXPERT
                                       )  WITNESSES
17 UNITED STATES OF AMERICA AND        )
   ROBERT M. GATES, Secretary of       )  DATE: June 28, 2010
18 Defense,                            )
                                       )  TIME: 2:30 p.m.
19                  Defendants.        )
                                       )  BEFORE: Judge Phillips
20                                     )
                                       )
21                                     )
                                       )
22

23

24

25 Filed herewith:
   1.    Notice of Motion and Motion *In Limine*
26 2.    Memorandum of Points and Authorities in support of Motion
         *In Limine*
27 3.    Appendix
   4.    Proposed Order

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

DEFENDANTS' NOTICE OF MOTION
AND MOTION *IN LIMINE*

## NOTICE OF MOTION AND MOTION *IN LIMINE*

**NOTICE IS HEREBY GIVEN** that on June 28, 2010, at 2:30 p.m. in the Courtroom of the Honorable Virginia A. Phillips, United States District Judge, Defendants United States and Secretary of Defense (collectively, "Defendants"), by and through counsel, will move *in limine* to exclude the testimony of plaintiff Log Cabin Republican's ("LCR") seven expert witnesses.  The expert testimony LCR seeks to introduce is inadmissible under Federal Rules of Evidence 702, 402 and 403, and the "revised" report of of one of LCR's expert, Dr. Aaron Belkin, which includes a new opinion, is untimely under Rule 26 and, therefore, should be excluded under Rule 37.  The motion will be based upon these moving papers, the attached Memorandum of Points and Authorities in support of the Motion, and upon such other and further arguments, documents, and grounds as may be advanced in the future.

This Motion is made following conference with counsel pursuant to L.R. 7-3, which took place on June 8, 2010.

Dated: June 18 2010

Respectfully submitted,

TONY WEST
Assistant Attorney General

ANDRÉ BIROTTE, JR
United States Attorney

JOSEPH H. HUNT
Director

VINCENT M. GARVEY
Deputy Branch Director

 */s/ Joshua E. Gardner*
PAUL G. FREEBORNE
W. SCOTT SIMPSON
JOSHUA E. GARDNER
RYAN B. PARKER
Trial Attorneys
U.S. Department of Justice,
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 6108

DEFENDANTS' NOTICE OF MOTION
AND MOTION *IN LIMINE*                    -1-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Washington, D.C.  20044
Telephone: (202) 353-0543
Facsimile: (202) 616-8202
paul.freeborne@usdoj.gov

*Attorneys for Defendants United
States of America and Secretary of
Defense*

DEFENDANTS' NOTICE OF MOTION
AND MOTION *IN LIMINE*                    -2-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

# TABLE OF CONTENTS

**page**

INTRODUCTION. ................................................................................. 1

BACKGROUND. .................................................................................. 1

ARGUMENT. ....................................................................................... 6

I.    LCR'S EXPERTS' OPINIONS ARE INADMISSIBLE
      UNDER FRE 702 AND 402. .................................................... 6

      A.    Legal Standard. ............................................................... 6

      B.    LCR's Experts' Opinions Are Legally Irrelevant
            and Unhelpful To The Court Under FRE 702 and
            402. .................................................................................. 7

            1.    Evidence, Including Expert Testimony, Is
                  Inappropriate In Resolving LCR's Facial Challenge. ...... 8

            2.    Opinions Regarding The Motivations Behind
                  Those That Enacted DADT Is Inadmissible. ................. 10

            3.    Opinion Testimony Regarding The Issue Of
                  Unit Cohesion Is Inadmissible Under FRE
                  702 and 402 . ....................................................... 12

            4.    Opinions Regarding The Experience Of Foreign
                  Militaries Is Inadmissible Under FRE 702 and
                  402   .................................................................. 14

            5.    Dr. Korb's Opinion Is An Inadmissible Legal
                  Conclusion. .......................................................... 16

            6.    Opinions Regarding The Purported Lack of
                  Empirical Evidence In Support of DADT Is
                  Inadmissible. ........................................................ 18

II.   LCR's PROPOSED TESTIMONY CONCERNING
      ALLEGED DISPROPORTIONATE IMPACT OF DADT
      ON LESBIANS IS INADMISSIBLE. ..................................... 19

III.  OPINIONS REGARDING THE "CONTINUING"
      RATIONALITY OF DADT ARE INADMISSIBLE
      UNDER FRE 702 AND 402. .................................................. 20

IV.   MANY OF LCR'S EXPERTS' OPINIONS ARE
      UNRELIABLE. ......................................................................... 21

V.   ALTERNATIVELY, LCR's EXPERTS' OPINIONS SHOULD BE LIMITED BECAUSE THEY ARE CUMULATIVE UNDER FRE 403. .................................................. 24

CONCLUSION   ................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Aetna Casualty & Surety Co. v. Guynes,*
    713 F.2d 1187 (5th Cir. 1983). ..................................................... 24

*Aguilar v. International Longshoremen's Union Local #10,*
    966 F.2d 443 (9th Cir. 1992). ...................................................... 17

*Baker v. Delta Airlines, Inc.,*
    6 F.3d 632 (9th Cir. 1993). ......................................................... 7

*Board of Education v. Mergens,*
    496 U.S. 226 (1990)................................................................. 10

*Beech Aircraft Corp. v. U.S.,*
    51 F.3d 834 (9th Cir. 1995). ........................................................ 7

*Cook v. Gates,*
    528 F.3d 42, (1st Cir. 2008). ....................................................... 9

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579 (1993)................................................................. 6

*Daubert v. Merrell Dow Pharms., Inc.,*
    43 F.3d 1311 (9th Cir. 1995). ................................................ 6, 22

*Federal Commc'ns Commission v. Beach Comm'ns,*
    508 U.S. 307 (1993)............................................................ 8, 18

*Gable v. Patton,*
    142 F.3d 940 (6th Cir. 1998). ..................................................... 10

*Gen. Offshore Corp. V. Farrelly,*
    743 F. Supp. 1177 (D.V.I. 1990). ................................................. 10

*Goldman v. Weinberger,*
    475 U.S. 503 (1986)......................................................... 9, 12, 18

*Gordon v. Davenport,*
    No. 08-3341, 2009 WL 322891 (N.D. Cal. 2009). ............................... 19, 20

*Heller v. Doe,*
    509 U.S. 312 (1993)................................................................. 12

*Hemmings v. Tidyman's Inc.,*
    285 F.3d 1174 (9th Cir. 2002). ..................................................... 7

*Howard v. U.S. Department of Defense,*
    354 F.3d 1358 (Fed. Cir. 2004). ................................................... 21

-iii-

*INS v. Chadha,*
    462 U.S. 919 (1983)..................................................................................... 12

*In re Air Crash Disaster,*
    720 F. Supp. 1493 (D. Colo. 1989)............................................................... 14

*In re Initial Public Offering Sec. Litigation,*
    174 F. Supp. 2d 61 (S.D.N.Y. 2001). ........................................................... 17

*James River Insurance Co. v. Rapid Funding, LLC,*
    No. 07-01146, 2009 WL 481688 (D. Colo. Feb. 24, 2009)........................... 22

*Jarrow v. Cupit,*
    No. 99-3539, 2000 WL 1537989 (E.D. La. Oct. 17, 2000). ......................... 17

*Johnson v. Bush,*
    No. 00-3542, 2002 WL 34355953 (S.D. Fla. Apr. 19, 2002). ...................... 17

*Kirk v. Raymark Indus., Inc,*
    61 F.3d 147 (3d Cir. 1995). .......................................................................... 14

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)........................................................................................ 6

*Las Vegas v. Foley,*
    747 F.2d 1294 (9th Cir. 1984). ..................................................................... 10

*Lira v. Cate,*
    No. 00-0905, 2010 WL 727979 (N.D. Cal. Feb. 26, 2010). ......................... 17

*Montalvo-Huertas v. Rivera-Cruz,*
    885 F.2d 971 (1st Cir. 1989)......................................................................... 21

*Nationwide Transport Finance v. Cass Information System,*
    523 F.3d 1051 (9th Cir. 2008). ..................................................................... 17

*Paddock v. Christensen, Inc.,*
    745 F.2d 1254 (9th Cir. 1984). ....................................................................... 7

*Phillips v. Perry,*
    106 F.3d 1420 (9th Cir. 1997). ............................................................... 11, 19

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. Of Life Activists,*
    290 F.3d 1058 (9th Cir. 2002). ..................................................................... 14

*Reid v. Lockheed Martin Aeronautics Co.,*
    205 F.R.D. 655 (N.D. Ga. 2001)..................................................................... 4

*Rice v. Fox Broad. Co.,*
    330 F.3d 1170 (9th Cir. 2003). ........................................................... *passim*

*Rivera v. Patino,*
    524 F. Supp. 136 (N.D. Cal. 1981). ............................................................ 12

*S.E.C. v. Capital Consultants, LLC,*
    397 F.3d 733 (9th Cir. 2005). .................................................................. 17

*Smart v. Ashcroft,*
    401 F.3d 119 (2d Cir. 2005). ................................................................... 21

*United States v. Alisal Water Corp.,*
    431 F.3d 643 (9th Cir. 2005). .................................................................. 24

*United States v. Baca,*
    610 F. Supp. 2d 1203 (E.D. Cal. 2009). ..................................................... 17

*United States v. Hankey,*
    203 F.3d 1160 (9th Cir. 2000). ................................................................. 22

*United States v. Hermanek,*
    289 F.3d 1076 (9th Cir. 2002). ............................................................ 6, 22

*United States v. Jackson,*
    84 F.3d 1154 (9th Cir. 1996). ............................................................ 20, 21

*United States v. Leo,*
    941 F.2d 181 (3d Cir. 1991). .................................................................. 17

*United States v. Lujan,*
    504 F.3d 1003 (9th Cir. 2007). .................................................................. 9

*United States v. Manning,*
    509 F.2d 1230 (9th Cir. 1974). ................................................................. 16

*United States v. O'Brien,*
    391 U.S. 367 (1968). ............................................................................ 10

*United States v. Rincon,*
    28 F.3d 921 (9th Cir. 1994). ................................................................... 22

*United States v. Vallejo,*
    237 F.3d 1008 (9th Cir. 2001). ................................................................. 7

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,*
    517 U.S. 544 (1996). ............................................................................ 19

*Van Slyke v. Capital One Bank,*
    503 F. Supp. 2d 1353 (N.D. Cal. 2007). ..................................................... 14

*Vance v. Bradley,*
    440 U.S. 93 (1979). .......................................................................... 9, 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*
    429 U.S. 252 (1977)..................................................................................... 11

*Western & S. Life Insurance Co. v. State Board of Equalization,*
    451 U.S. 648 (1981)................................................................................... 8, 9

*Zenith Electrics Corp. v. WH-TV Broad. Corp.,*
    395 F.3d 416 (7th Cir. 2005). ........................................................ 11, 22, 24

## STATUTES

10 U.S.C. § 654  ............................................................................................. 1, 13

1

# INTRODUCTION

2    Plaintiff Log Cabin Republicans ("LCR") has brought a facial due process

3 challenge to 10 U.S.C. § 654 and the regulations promulgated thereunder ("Don't

4 Ask, Don't Tell," or "DADT").   In support of its claim that DADT is facially

5 unconstitutional, LCR intends to introduce "extensive expert testimony explaining

6 that there was no rational basis for Congress's [sic] original determination at the time

7 of the enactment of DADT."   (Dkt. No. 140, P.15:12-17).   In addition, in apparent

8 reliance upon its legally unsupported "continuing rationality" theory, LCR intends to

9 present the opinions of *seven* purported experts who will testify that DADT

10 "continues to have no rational basis today."   (*id.* at 17:11-17).   However, none of this

11 testimony is admissible under the Federal Rules of Evidence ("FRE").

12    LCR's experts' opinions – which, in general, seek to question the wisdom of

13 Congress in enacting DADT and challenge the continuing wisdom of DADT –  are

14 legally irrelevant to the legal issue of whether DADT is facially constitutional.   In

15 certain circumstances, moreover, the experts employ no discernable methodology or

16 identify any facts or data in reaching their conclusions.   In addition, several of LCR's

17 experts have conceded that they lack the requisite expertise to offer certain of their

18 opinions.

19    Accordingly, LCR's experts' opinions should be excluded under FRE 702 and

20 402, because they are neither relevant nor reliable.   Furthermore, if this testimony

21 nonetheless were found to be admissible, the Court should limit LCR to one witness

22 per topic pursuant to FRE 403 because LCR seeks to introduce needlessly cumulative

23 testimony from multiple experts on the same topics.

24

# BACKGROUND

25    In support of its facial constitutional challenge to DADT, LCR seeks to present

26 the opinions of seven expert witnesses to testify as to the wisdom of Congress'

27

28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   enactment of DADT and the continuing rationality of the DADT policy. Specifically,
2   LCR seeks to introduce opinions from the following individuals:

3        1.   <u>Lawrence Korb</u>:  The primary opinion Dr. Korb offers is that DADT is
4   "unconstitutional." Ex. 9 ( Tr. 23:6-20).[1]  Without any identifiable methodology, and
5   relying largely upon the opinions of several of LCR's other expert witnesses in this
6   case, Dr. Korb opines that DADT is "irrational" because:  (a) he interprets certain
7   studies as concluding that sexual orientation is not relevant to military service; (b) he
8   believes that DADT has exacted costs in terms of training and the divergence of
9   money from the purchase of equipment; (c) he concludes that there is a "growing
10  acceptance within the military and American civilian society" regarding
11  homosexuals; and (d) allowing homosexuals to serve improves military readiness.
12  Ex. 1, at pp. 5-9. Dr. Korb also purports to refute what he has identified as "the most
13  common arguments in favor of DADT," including that the repeal of DADT would
14  damage unit cohesion; that "militaries similar to the United States[] do not allow
15  openly gay men and lesbians to serve;" that "existing service members will have
16  moral objections;" and that there are problems associated with the repeal of DADT
17  while the United States is currently engaged in two wars. *Id.* at pp. 9-11.

18       2.   <u>Nathaniel Frank</u>:  Dr. Frank, a Senior Research Fellow at the Palm
19  Center, an organization advocating for the repeal of DADT, is a social scientist who
20  has authored a book entitled "Unfriendly Fire," in which he argues for the repeal of
21  DADT.  Relying largely on anecdotes, hearsay, and others' non-peer reviewed
22  research, Dr. Frank offers the following opinions:  (1) DADT was based upon moral
23  animus; (2) "three influential leaders [Colin Powell, Senator Sam Nunn, and
24  Professor Charlie Moskos] who opposed homosexuals in the military relied on their
25  credentials to argue against lifting the ban for what were actually personal, not
26  military reasons;"(3) there are similarities between those who opposed racial

27
28      [1]  "Ex. __ " refers to the exhibits submitted in support of this motion.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   integration of the military and those who oppose open homosexuals serving in the

2   military that "suggests that resistance is rooted in prejudice and fear of the

3   unfamiliar;" (4) there is an "absence of social scientific evidence" supporting DADT;

4   (5) research associated with foreign militaries and certain domestic institutions that

5   allow open homosexuals to serve are relevant to the repeal of DADT; (6) DADT

6   imposes certain financial and national security costs, and impacts the morale and

7   readiness of homosexual troops; (7) homosexuals already serve openly in the military;

8   and (8) both military and public opinion towards homosexuality has "softened" since

9   the enactment of DADT.  Ex. 2, pp. 2-21.

10        3.   Aaron Belkin:   Dr. Belkin, the Director of the Palm Center, opines,

11  without any discernable methodology, that the potential repeal of DADT will not

12  compromise military readiness.  Ex. 3.  Specifically, Dr. Belkin bases his conclusion

13  upon three subsidiary conclusions.  First, Dr. Belkin opines, without any identified

14  support, that "[t]he U.S. military suspended the discharge proceedings of a number

15  of gay troops during [the] first Gulf War, and sent those troops to the Middle East to

16  fight in the war."  *Id.* at pp. 1-2.  Second, like Dr. Frank, Dr. Belkin opines that "data

17  from analogous institutions," such as foreign militaries, U.S. police and fire

18  departments, and certain federal agencies that allow homosexuals to serve openly,

19  supports the conclusion that the military could repeal DADT without compromising

20  military readiness.  *Id.* at p. 2.  Finally, like Dr. Frank, Dr. Belkin claims that

21  "empirical data" calls into question the unit cohesion rationale for DADT, and that

22  unit cohesion would be promoted by repealing the statute.  *Id.* at pp. 3-4.  Dr. Belkin

23  acknowledged in his deposition that he had not addressed the issue of privacy in his

24  expert report.  Ex. 11 (Tr. 123:8-22).[2]

25

26        [2]  On March 24, 2010, after Dr. Belkin's deposition, LCR submitted what it referred to as

27  a "revised" report for Dr. Belkin.  Ex. 4.  This revised report includes a new page that discusses

28                                                        (continued...)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    4.    Robert MacCoun:  Dr. MacCoun, a law professor and professor of public

2    policy at the University of California at Berkeley, offers seven opinions related to the

3    issue of unit cohesion, the same issue addressed by Drs. Korb, Frank, and Belkin:  (1)

4    there is no "systemic evidence (direct or indirect) for the claim that openly gay or

5    lesbian personnel would impair military unit cohesion or unit effectiveness;" (2) there

6    is "no single phenomenon called 'unit cohesion' and it is important to distinguish

7    'social cohesion' from 'task cohesion';" (3) the "evidence that cohesion promotes

8    team performance is mixed;" (4) "estimates of the cohesion-performance association

9    are partly attributable to the effect of performance on cohesion rather than the

10   reverse;" (5) "recent meta-analyses on the effects of team heterogeneity suggest little

11   or no effect on either cohesion or on performance;" (6) "many factors in military

12   settings will promote cohesion, regardless of the personal attributes of team members;

13   and (7) "[s]oldiers' abstract attitudes towards homosexuality, and their speculation

14   about hypothetical situations, are likely to be poor predictors of their actual responses

15   when serving with a gay or lesbian colleague."  Ex. 5.  Dr. MacCoun acknowledged

16   in his deposition that he is not offering any opinions in his report regarding the

17

18

---

19   [2](...continued)

20   the issue of privacy in the context of the potential repeal of DADT.  *Id.* at p. 5.  Pursuant to the
     Court's Scheduling Order, Dkt. No. 92, the deadline for providing expert reports in this case was

21   January 19, 2010.  Under FRCP 26, LCR has a duty to have Dr. Belkin supplement his report if
     new information comes to light that alters his opinions.  Fed. R. Civ. P. 26(e)(2).  Rule 26 does

22   not, however, give LCR the right to simply provide additional opinions from Dr. Belkin after the
     deadline set by the Court.  *See Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662

23   (N.D. Ga. 2001) ("In short, Rule 26 imposes a *duty* on Plaintiffs; it grants them no *right* to
     produce information in a belated fashion.") (emphasis in original).  Dr. Belkin acknowledged that

24   he did not address privacy in his expert report, and that he was asked the night before his
     deposition to offer an entirely new opinion on privacy.  Ex. 11 (Tr. 123:8-22).  And, as discussed

25   below, because this "revision," which includes an entirely new opinion regarding privacy, lacks
     any identification of the facts or data relied upon or the method by which he developed this new

26   opinion, this opinion is inadmissible under FRE 702.  Accordingly, Dr. Belkin's new opinion
     regarding privacy should be stricken as untimely and otherwise inadmissible.

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   privacy rationale identified by Congress in the enactment of DADT.  Ex. 12 (Tr.

2   130:11-24).

3        5.    Elizabeth Hillman: Dr. Hillman, a law professor at the University of

4   California, Hastings College of Law, has prepared a two-page expert report that

5   discloses no identifiable methodology and comprises five primary opinions:  (1)

6   similar to the opinions of Drs. Korb and Frank, DADT was drafted and adopted

7   "because of hostility towards homosexuals and fear of homosexuality;" (2) DADT

8   "has been disproportionately used to limit and punish servicewomen as compared to

9   servicemen;" (3) DADT "preserves a false image of servicemembers as exclusively

10  heterosexual, despite significant and extensive historical and contemporary evidence

11  to the contrary;" (4) "[I]f the policy was irrational when drafted and adopted in 1992,

12  to retain it in 2009 is detrimental to military efficiency"; and (5) in her "personal

13  experience . . . the reaction of servicemembers to President Clinton's proposal to open

14  military service to lesbian and gay men were based on fear, hostility, and ignorance,

15  not reason." Ex. 6, pp. 1-2.

16       6.    Melissa Sheridan Embser-Herbert:  Dr. Emsber-Herbert, a sociology

17  professor at Hamline University (and also an attorney), offers the following five

18  opinions, without any discernable methodology, related solely to the application of

19  DADT to females in the military, an opinion similar to the one offered by Dr.

20  Hillman: (1) under DADT, women are discharged "at a rate disproportionate to their

21  representation among military personnel;" (2) the rationales used in 1993 to support

22  DADT do not apply to lesbians; (3) DADT "divides" women, a factor having a

23  negative personal and professional impact, "including the potential to lead to physical

24  and/or emotional trauma;" (4) "DADT creates a situation where women do not want

25  to be seen as 'too' competent;" and (5) "DADT creates an environment that not only

26  tolerates, but encourages, sexual harassment."  Ex. 7, pp. 2-10.

27

28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES                    -5-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1      7.   <u>Alan Okros</u>: Dr. Okros, a professor at the Canadian Forces College,

2  opines that Canada was able to successfully change its policy to allow gay men and

3  lesbians to serve openly in the armed forces and speculates that, based on the

4  Canadian experience, the United States could repeal DADT without having a

5  detrimental effect on military readiness.  Ex. 8, p. 2.

6  **ARGUMENT**

7  **I.   LCR'S EXPERTS' OPINIONS ARE INADMISSIBLE UNDER FRE**

8       **702 AND 402**

9      **A.   Legal Standard**

10      To be admissible, the testimony and opinions of an expert witness must satisfy

11  the requirements of FRE 702, which provide that, "if scientific, technical or other

12  specialized knowledge will ***assist the trier of fact*** to understand the evidence or to

13  determine ***a fact in issue***, a witness qualified as an expert . . . may testify . . . if (1) the

14  testimony is based upon sufficient facts or data, (2) the testimony is the product of

15  reliable principles and methods, and (3) the witness has applied the principles and

16  methods reliably to the facts of the case." FRE 702 (emphasis added). Accordingly,

17  expert testimony must be both relevant and reliable. *See Daubert v. Merrell Dow*

18  *Pharms., Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*").

19      Rule 702 "assigns to the district court the role of gatekeeper and charges the

20  court with assuring that expert testimony . . . is relevant to the task at hand." *U. S. v.*

21  *Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (internal quotations omitted); *Kumho*

22  *Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (holding that "gatekeeper"

23  function applies to all expert testimony). LCR bears the burden of establishing the

24  admissibility of its experts' opinions by a preponderance of proof. *See Daubert v.*

25  *Merrell Dow Pharms.*, 509 U.S. 579, 592 n. 10 (1993). As explained below, LCR

26  cannot meet this burden.

27

28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES    -6-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1

2

**B.     LCR's Experts' Opinions Are Legally Irrelevant and Unhelpful To The Court Under FRE 702 and 402**

3     The testimony proposed by LCR's expert witnesses is inadmissible under FRE

4     702 and 402 because that testimony is not helpful to the Court in resolving any

5     question at issue in the case.  Federal Rule 702 allows for the admission of expert

6     testimony only if it will help the trier of fact to understand a *fact in issue*.  FRE 702.

7     The first prong of the court's inquiry addresses relevancy and often implicates

8     the questions set forth in FRE 402.  *See Hemmings v. Tidyman's Inc.,* 285 F.3d 1174,

9     1184 (9th Cir. 2002) ("Whether testimony is helpful within the meaning of Rule 702

10    is in essence a relevancy inquiry.").  "'Relevant evidence' means evidence having any

11    tendency to make the existence of any fact that is of consequence to the determination

12    of the action more probable or less probable than it would be without the evidence."

13    FRE 401; *Baker v. Delta Airlines, Inc.*, 6 F.3d 632, 641 (9th Cir. 1993).  "The

14    particular facts of the case determine the relevancy of a piece of evidence." *U.S. v.*

15    *Vallejo,* 237 F.3d 1008, 1015 (9th Cir. 2001).  The Ninth Circuit has outlined four

16    criteria to determine the helpfulness of expert testimony: "1) qualified expert; 2)

17    proper subject; 3) conformity to a generally accepted explanatory theory; and 4)

18    probative value compared to prejudicial effect." *Beech Aircraft Corp. v. U.S.*, 51 F.3d

19    834, 842 (9th Cir. 1995) (citation omitted).[3]  As discussed below, LCR's experts seek

20    to opine upon legally irrelevant issues and, pursuant to FRE 702 and 403, offer no

21    opinions that are helpful to the Court in resolving the sole legal issue in this case.

22

23

24

25     [3] Nor is it permissible, as LCR apparently intends to do, to use its expert witnesses as sponsoring witnesses to admit otherwise inadmissible documents into evidence.  While experts

26    may rely upon inadmissible documents as bases for their opinions, such reliance does not constitute an independent basis for the admittance of those documents into evidence to establish

27    the truth of what they assert. *See e.g., Paddock v. Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984).

28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES          -7-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1

2

**1.   Evidence, Including Expert Testimony, Is Inappropriate In Resolving LCR's Facial Constitutional Challenge**

3   LCR seeks to offer the opinions of seven "experts" on a variety of topics,

4   including, among others, that DADT was motivated by animus towards homosexuals;

5   that the unit cohesion rationale articulated in the congressional findings lacks support;

6   that the treatment of homosexuals by allegedly analogous entities such as police and

7   fire departments and foreign militaries is somehow instructive as to whether DADT

8   is constitutional; and the purported disparate impact of DADT on lesbian

9   servicemembers.   LCR seeks to introduce this testimony for one purpose – to

10   challenge the wisdom and logic of Congress in enacting DADT.  Yet, such an inquiry

11   (and, indeed, fact-finding more generally), is wholly inappropriate in resolving LCR's

12   facial constitutional challenge to an Act of Congress.

13   For the reasons previously identified by the Court in its June 9, 2009 Order

14   (Dkt. No. 83, p. 16) and by defendants in their summary judgment and supplemental

15   briefing, LCR's facial constitutional challenge properly is governed by rational basis

16   review.   The Supreme Court has made abundantly clear that a legislative choice

17   subject to the rational basis test "is not subject to courtroom fact-finding and may be

18   based on rational speculation unsupported by evidence or empirical data." *FCC v.*

19   *Beach Commc'ns*, 508 U.S. 307, 315 (1993).   The proper analysis instead asks

20   whether the legislature "*rationally could have believed*" that the conditions of the

21   statute would promote its objective. *W. & S. Life Ins. Co. v. State Bd.*, 451 U.S. 648,

22   671-72 (1981) (emphasis in original).  Rational basis review, moreover, "is not a

23   license for courts to judge the wisdom, fairness, or logic of legislative choices."

24   *Beach Commc'ns*, 508 U.S. at 313.   Rather, "those challenging the legislative

25   judgment must convince the court that the legislative facts on which the classification

26   is apparently based could not reasonably be conceived to be true by the governmental

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 111 (1979).  That is not what LCR

2   has sought to do here by the experts it has designated.

3       Moreover, even if the Court were to apply a heightened level of scrutiny, the

4   Supreme Court has rejected reliance upon expert testimony to support a constitutional

5   challenge that is governed by heightened review.  *See Goldman v. Weinberger*, 475

6   U.S. 503, 509 (1986).   In *Goldman*, an Air Force colonel challenged on First

7   Amendment Free Exercise grounds an Air Force regulation banning the wearing of

8   a yarmulke while in uniform.   *Id.* at 504.   As in this case, the plaintiff in *Goldman*

9   sought to introduce expert testimony to contradict the Air Force's rationale for the

10  ban. *Id.* at 509.  The Supreme Court rejected that notion out of hand, finding expert

11  testimony to have no relevance in the context of a constitutional challenge to military

12  policy, and held that "[w]hether or not expert witnesses may feel that religious

13  exceptions to [the air force regulation] are desirable is quite beside the point.  The

14  desirability of dress regulations in the military is decided by the appropriate military

15  officials, and they are under no constitutional mandate to abandon their considered

16  professional judgment." *Id.*   As in *Goldman*, the legislative history in this case

17  reflects the substantial congressional and military deliberation on this issue,[4] and

18  LCR's attempt to contradict that deliberation through the submission of expert

19  testimony should similarly be rejected.

20      Regardless of the level of scrutiny the Court ultimately adopts, because the

21  constitutionality of DADT is a question of law, consideration of "facts" beyond the

22  statute and legislative history is inappropriate.  *See U.S. v. Lujan*, 504 F.3d 1003,

23  1006 (9th Cir.2007) ("[T]he constitutionality of a federal statute [is] a question of law

24  

25      [4] *See Cook v. Gates*, 528 F.3d 42, 58-59 (1st Cir. 2008) (noting that the House and
    Senate Armed Services Committees conducted 14 days of hearings, heard more than 50
26  witnesses, traveled to military facilities to investigate the issue, and heard from witnesses with a
    wide range of views and various backgrounds, "including the Secretary of Defense, the Chairman
27  of the Joint Chiefs of Staff, military and legal experts, enlisted personnel, officers, and public
    policy activists").
28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    that we review de novo."); *Gable v. Patton*, 142 F.3d 940, 944 (6th Cir. 1998)

2    ("Because the four provisions are challenged with regard to facial constitutionality,

3    thus implicating only issues of law, neither Plaintiff nor Defendants contest the

4    appropriateness of summary judgment."); *Gen. Offshore Corp. v. Farrelly*, 743

5    F.Supp. 1177, 1187 (D.V.I 1990) ("By definition, a facial challenge is made in a

6    factual vacuum; the court's job is merely to determine whether the statute, however

7    applied, is constitutional.").  By seeking to introduce expert testimony, as proposed,

8    LCR wholly ignores this binding authority.   Because LCR's proposed expert

9    testimony is not helpful to the Court on the legal issue of the facial constitutionality

10   of DADT – that testimony is inadmissible under FRE 702 and 402, and should be

11   excluded in its entirety.  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1179 (9th Cir.

12   2003) (affirming exclusion that was not helpful to trier of fact).

13           **2.     Opinions Regarding The Motivations Behind Those That**

14                    **Enacted DADT Is Inadmissible**

15           Even if testimony in general somehow were permissible in support of LCR's

16   facial due process challenge, three of LCR's experts – Drs. Korb, Frank, and Hillman

17   – seek to offer the opinion that those who enacted DADT  (Congress, and the

18   Executive, who signed the bill into law) were motivated by animus towards

19   homosexuals.  Ex. 1, p. 2; Ex. 2, pp. 2-5; Ex. 6, p. 1.  This testimony is inadmissible

20   under FRE 702 and 402; Supreme Court precedent squarely provides that inquiry into

21   the subjective motives of members of Congress is a "hazardous matter" and that

22   courts will not strike down an otherwise constitutional statute on the basis of an

23   alleged illicit motive.  *U.S. v. O'Brien*, 391 U.S. 367, 383-84 (1968).[5]  Indeed, the

24

25           [5]  *See Bd. of Educ. v. Mergens*, 496 U.S. 226, 249 (1990) (in evaluating constitutionality

26   of statute, "what is relevant is the legislative *purpose* of the statute, not the possibly religious

     *motives* of the legislators who enacted the law") (emphasis in original); *Las Vegas v. Foley*, 747

27   F.2d 1294, 1298 (9th Cir. 1984) (same).  The same is true of attempts to probe the motivations of

28                                                                                        (continued...)

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES               -10-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    Ninth Circuit already has rejected the claim made by LCR in this case, and has held

2    that Congress' determination that DADT "further[ed] military effectiveness by

3    maintaining unit cohesion, accommodating personal privacy and reducing sexual

4    tension" was ***not*** based on "mere negative attitudes, or fear, unsubstantiated by

5    factors which are properly cognizable." *Phillips v. Perry*, 106 F.3d 1420, 1428-29

6    (9th Cir. 1997).

7         Despite this binding precedent – which has both rejected an inquiry into the

8    subjective motivations of legislators and upheld the congressional findings

9    underlying DADT as ***not*** being motivated by animus (based upon a review of those

10   findings) – LCR seeks to offer the opinions of Drs. Korb, Frank, and Hillman that

11   DADT was enacted out of moral animus towards homosexuals.  *See* Ex. 6, p. 1

12   (stating that DADT was drafted out of fear towards homosexuals)]; Ex. 2, p. 2 (stating

13   that DADT based on moral animus based upon a "thorough examination of the

14   rhetoric comprising the national debate over whether to lift the ban in 1992 and

15   1993"); Ex. 1, p. 2 (citing to Frank's opinion regarding moral animus).[6]  This

16   testimony is inadmissable under FRE 702 and 402 because it is irrelevant as a matter

17   of law and, accordingly, it should be excluded from trial.  *See Rice*, 330 F.3d at 1179.

18

19

20   _____

21        [5](...continued)
     the Executive Branch.  *See, e.g., Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429
22   U.S. 252, 268 n.18 (1977) ("judicial inquiries into legislative or executive motivation represent a
     substantial intrusion into the workings of other branches of government").
23

24        [6]  Indeed, Dr. Korb's opinion lacks any reliable method and, therefore, is inadmissible
     under FRE 702 for an additional reason.  The basis for Dr. Korb's opinion that DADT was the
25   product of prejudice is merely his belief that there was no rational basis for DADT.  Ex. 9 (Tr.
     72:17-73:4).  This is simply *ipse dixit* rather than a reliable, methodologically sound opinion, and
26   for this reason alone is inadmissible.  *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416,
     419 (7th Cir. 2005) (affirming exclusion of testimony of expert whose methodology amounted to
27   "my expertise" or "my industry experience").

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    **3.     Opinion Testimony Regarding The Issue Of Unit Cohesion**

2    **Is Inadmissible Under FRE 702 and 402**

3    LCR seeks to offer testimony from *six* of its experts regarding the impact of

4  unit cohesion on the potential repeal of DADT.  Congress specifically considered the

5  issue of unit cohesion in considering the passage of DADT, and heard testimony from

6  a number of individuals – including, among others, Dr. Korb.  Ex. 13, p. 246.  As

7  with the other topics upon which LCR's experts offer opinions, LCR's experts

8  purport to challenge the wisdom of Congress in enacting DADT – a challenge that is

9  legally irrelevant.  *Heller v. Doe*, 509 U.S. 312, 319 (1993) (holding that rational-

10  basis review "is not a license for courts to judge the wisdom, fairness, or logic of

11  legislative choices"); *INS v. Chadha*, 462 U.S. 919, 944 (1983) ("[The statute's]

12  wisdom is not the concern of the courts"); *Goldman*, 475 U.S. at 509 (rejecting expert

13  testimony under heightened scrutiny review of constitutional challenge to military

14  regulation); *Rivera v. Patino*, 524 F. Supp. 136, 145 (N.D. Cal. 1981) ("We cannot

15  question the wisdom or fairness of the legislature's policy judgments," in due process

16  challenge subject to rational-basis review).  Accordingly, the Court should exclude

17  testimony from LCR's witnesses regarding the issue of unit cohesion.

18    As reflected in the Congressional record, Congress heard over five hours of

19  testimony from Dr. William Henderson, former commander of the Army Research

20  Institute, Dr. David Marlowe, chief of the Department of Military Psychiatry, Walter

21  Reed Army Research Institute, and Dr. Korb, on the issue of unit cohesion.  Ex. 13,

22  pp. 248-343.[7]  Notably, consistent with his opinion in this case, Dr. Korb testified

23  before Congress that the effect on unit cohesion would be minimal if the ban on open

24  homosexuals serving in the military were lifted.  Ex. 13, p. 259.  In contrast, Drs.

25

26    [7]  Congress also heard from a number of individuals in the armed forces on the issue of
unit cohesion, including General H. Norman Schwarzkopf, General Gordon Sullivan, General
27  Colin Powell, Lieutenant General Calvin Waller, Command Master Chief David Borne, and
Major Kathleen Bergeron.  Ex. 14, pp. 274-77.
28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES                    -12-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

Henderson and Dr. Marlowe disagreed with Dr. Korb on the impact of unit cohesion if the ban on open homosexuals in the military were lifted.  Ex. 13, p. 278 (Dr. Henderson:  "The effects would be far more substantial than Dr. Korb indicate.  I think he greatly minimized the problems involved."); *Id.* p. 280 (Dr. Marlowe: "My bottom line is that I do not think it will be as easy or as facile as Dr. Korb thinks it will be.").[8]  Congress considered all of this testimony, and ultimately concluded that just as "[i]t is reasonable for the armed forces to take [cohesion] into consideration in establishing gender-based assignment policies[,] it is reasonable for the armed forces to take [cohesion] into consideration when addressing issues concerning persons who engage in or have the propensity or intent to engage in sexual activity with persons of the same sex." Ex. 14, p. 278.  After hearing all of this testimony and considering the information before it, Congress further found that "[t]he presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability." *See* 10 U.S.C. § 654(a)(15).

LCR seeks to present *six* witnesses ((Belkin, MacCoun, Embser-Herbert, Korb, Hillman and Frank), to challenge the wisdom of Congress in crediting certain testimony over other testimony and in reaching the conclusion that the enactment of DADT promotes unit cohesion.  Dr. Korb expressly acknowledged as much in his deposition. Ex. 9 (Tr. 150:10-20) (acknowledging disagreement with the wisdom of Congress in relying upon certain testimony from the hearings).  Because this

---

[8]  Indeed, Drs. Henderson and Marlowe explicitly discussed in their congressional testimony the issues of privacy and sexual tension, and how the presence of open homosexuality in the armed forces could potentially destroy the unit cohesion that privacy and the reduction of sexual tension seeks to foster.  Ex. 13, pp. 296-297.  Notably, none of LCR's experts address the issue of sexual tension in their reports, and only one of LCR's experts – Dr. Belkin – belatedly addresses the issue of privacy in his inadmissible "revised" report.  Ex. 4, p. 5.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  testimony is legally irrelevant and unhelpful to the Court in reaching its conclusion

2  regarding the constitutionality of DADT, the Court should exclude this testimony

3  under FRE 702 and 402.[9]  *See Rice*, 330 F.3d at 1179.

### 4.    Opinions Regarding The Experience Of Foreign Militaries Is Inadmissible Under FRE 702 and 402

6         LCR's experts similarly seek to challenge the wisdom of Congress with respect

to the applicability (or lack thereof) of foreign militaries' experience in allowing open

homosexuals to serve.    As discussed above, *five* of LCR's witnesses offer

substantially similar opinions about the experience of foreign militaries in allowing

open homosexuals to serve.  For example, Dr. Okros offers the opinion that Canada

changed its policy to allow gay men and lesbians to serve openly in the armed forces

without a negative impact on the operational effectiveness of its military and,

---

[9]  Dr. MacCoun's opinions regarding unit cohesion are irrelevant for an additional reason. Dr. MacCoun acknowledged in his deposition that he is not offering any opinions regarding the privacy rationale identified by Congress in the enactment of DADT. Ex. 12 (Tr. 130:11-24). Accordingly, LCR cannot meet its burden through Dr. MacCoun of showing that there are no set of circumstances under which DADT would be constitutional.

Further, LCR has indicated that it seeks to designate the deposition of Dr. MacCoun rather than call him live, purportedly because Dr. MacCoun has become "unavailable" under FRE 804. Under FRE 804(a)(5), a witness is considered to be unavailable if the declarant is "absent from the hearing and the proponent of a statement *has been unable to procure the declarant's attendance . . . by process or other means*." Fed. R. Evid. 804(a)(5) (emphasis added). Plaintiff bears the burden of demonstrating that his experts are unavailable under the Federal Rules, se*e Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 165 (3d Cir. 1995), and it has failed, to date, to meet that burden.  And, even if it could make such a showing, the courts "clearly favor[ ] live testimony over deposition evidence," partly to provide the factfinder with "complete information concerning the witness's demeanor." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1118 (9th Cir. 2002); *see Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1364 (N.D. Cal. 2007) ("Live testimony is easier to follow [and] can respond to all issues in play at the trial . . . ."). This is particularly true with respect to expert witnesses. *See In re Air Crash Disaster*, 720 F. Supp. 1493, 1502 (D. Colo. 1989).  Accordingly, Dr. MacCoun's testimony should be excluded.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  consequently, the United States could do the same if it follows Canada's example.

2  Ex. 8, pp. 2-3.  Similarly, Dr. Korb opines that, subsequent to the enactment of

3  DADT, the British government in January 2000 allowed gay troops to serve openly,

4  and "the British have not experienced any cohesion problems over the past decade."

5  Ex. 1, pp. 10-11.  Dr. MacCoun also opines that "the experiences of the Australian,

6  Canadian, Israeli, and British militaries has failed to turn up any evidence that openly

7  gay and lesbian personnel impair unit effectiveness."  Ex. 5, p. 6.  Dr. Belkin

8  similarly opines that 25 foreign militaries allow gays and lesbians to serve openly,

9  and "[n]ot a single one has reported any detriment to cohesion, readiness, recruiting,

10 morale, retention or any other measure of effectiveness or quality."  Ex. 3, p. 2.  Dr.

11 Frank offers a substantially similar opinion to that of Dr. Belkin.  Ex. 2, p. 8.

12      These opinions, which are needlessly cumulative, are, at bottom, a policy

13 argument regarding the potential effects if DADT were repealed.  More importantly,

14 this *same* testimony was considered – and rejected – by Congress during the lengthy

15 policy debate that led to its decision to enact DADT.  During the DADT hearings,

16 Congress heard testimony from four individuals regarding the experience of foreign

17 militaries – Dr. Charles Moskos, Dr. David Segal, Dr. Judith Stiehm, and Lt. General

18 Calvin Waller.  Ex. 13, pp. 345-453.[10]  Notably, like the opinions proffered by Dr.

19 Okros in this case, Dr. Segal testified before Congress specifically about the

20 experience in Canada after the repeal of its ban on open homosexuals serving in the

21 military, and stated that "in the few months since the change . . . there has been no

22 impact of the policy change on recruitment or retention, nor have there been incidents

23 of harassment of homosexuals.   Homosexuals, for their part, have not made

24

25      [10]  This testimony spanned over 100 pages and included the submission of documents by

26 the various witnesses.  *See* Ex. 13, pp. 345-453.

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   declarations of their sexual orientation." *Id.,* p. 356.  And, like Drs. Belkin, Frank,

2   and MacCoun, Dr. Segal also testified about the experiences in Great Britain,

3   Australia, New Zealand, Northern Ireland, Germany, Belgium, Poland, and the

4   Scandinavian countries. *Id.*, pp. 355, 358, 359.  Similarly, Dr. Moskos testified about

5   the experiences in Israel, Germany and France regarding the service of homosexuals

6   in the military. *Id.*  pp. 349, 351.  Dr. Stiehm likewise testified about the experience

7   in Canada and Australia with respect to service by homosexuals in the military.  *Id.*

8   p. 394.  After considering all of this testimony, Congress ultimately concluded that

9   "while the foreign experience is worth monitoring, it does not provide a relevant basis

10  for permitting gays and lesbians to serve openly in the armed forces of the United

11  States." *See* Ex. 14,  p. 288.

12      Because the testimony LCR seeks to elicit in this case about foreign militaries

13  is a not-so-thinly-veiled attempt to challenge the wisdom of Congress' determination,

14  (after a thorough consideration by Congress of testimony on this issue), the Court

15  should exclude this testimony under FRE 702.  Indeed, Dr. Korb acknowledged in his

16  testimony, which is illustrative of each of LCR's experts, that he is questioning the

17  wisdom of the Senate Armed Services Committee in discounting the foreign military

18  experience in enacting DADT.  Ex. 9 (Tr. 230:6-18).  This testimony simply is not

19  helpful to the only issue presented in this case – namely, whether DADT, as a matter

20  of law, is facially constitutional. *See. e.g., Rice*, 330 F.3d at 1179; *U.S. v. Manning,*

21  509 F.2d 1230, 1234 (9th Cir. 1974).  This testimony is inadmissible under FRE 702

22  and 402.

23          **5.    Dr. Korb's Opinion Is An Inadmissible Legal Conclusion**

24      As discussed above, Dr. Korb's opinion in this case is that DADT is

25  unconstitutional. *See* Ex. 9 (Tr. 23:6-20).  This opinion is a legal conclusion, and

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  thus inadmissible under FRE 702, which limits expert opinions to those that will help

2  the trier of fact to determine a fact in issue.

3        Legal opinions are not helpful to the trier of fact.  *U.S. v. Leo*, 941 F.2d 181,

4  197 (3d Cir. 1991).  "Experts may interpret and analyze factual evidence but may not

5  testify about the law."  *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 749 (9th

6  Cir. 2005); *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059-60 (9th

7  Cir. 2008) ("[A]n expert witness cannot give an opinion as to her legal conclusion,

8  i.e., an opinion on an ultimate issue of law."); *Aguilar v. Int'l Longshoremen's Union*

9  *Local #10*, 966 F.2d 443, 447 (9th Cir. 1992).[11]

10        In this case, Dr. Korb offers the opinion that DADT is unconstitutional, and

11  devotes the majority of his report to his view that DADT "was irrational when it was

12  enacted in 1993." Ex. 9 (Tr. 23:6-20, 143:3-18); Ex. 1, pp.  5-9.  Dr. Korb explained

13  his opinion as follows:

14        Q.    And so your opinion is there's no rational basis when Don't Ask, Don't

15                 Tell was enacted in 1993 because there was no rational basis?

16        A.    That's correct.

17        Q.    Why was there no rational basis?

18

19

20

---

21     [11]  *See also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)

22  (excluding expert's opinion regarding whether recusal was appropriate based upon application of
statute because it constituted legal conclusion); *Lira v. Cate*, No. 00-0905, 2010 WL 727979, *4

23  n.5 (N.D. Cal. Feb. 26, 2010) (excluding expert testimony "regarding the appropriate rates under
the PLRA [and] whether a multiplier is authorized by the PLRA," as constituting improper legal

24  opinions); *U.S. v. Baca*, 610 F. Supp. 2d 1203, 1220 (E.D. Cal. 2009) (excluding expert opinion
that item was a "cultural resource" for purposes of a statute because it constituted a legal

25  opinion); *Johnson v. Bush*, No. 00-3542, 2002 WL 34355953, *1 (S.D. Fla. Apr. 19, 2002);

26  *Jarrow v. Cupit*, No. 99-3539, 2000 WL 1537989, *2 (E.D. La. Oct. 17, 2000).

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    A.    Because there was never any data that showed allowing people to serve

2          who were openly gay was going to cause problems in unit cohesion or

3          for military readiness.

4    Q,    Why does the absence of data on those two points, in your mind, show

5          that Don't Ask, Don't Tell, when enacted in 1993, was irrational?

6    A.    Well, without data, I don't see how you can have a rational policy.

7   Ex. 9 (Tr. 143:19-144:11). Congress obviously concluded otherwise based on a great

8   deal of testimony and information before it at the time it considered the issue and

9   enacted the statute.  Dr. Korb's opinion is both a legal conclusion and a tautology,

10  and is not helpful to the Court in resolving whether DADT is facially constitutional.

11  Accordingly, Dr. Korb's opinions are inadmissible under FRE 702.

12               **6.    Opinions Regarding The Purported Lack of Empirical**

13                    **Evidence In Support of DADT Is Inadmissible**

14       Four of LCR's experts opine that there is a lack of empirical evidence to

15  support DADT.  *See* Ex. 6 (Dr. Hillman - opining that there is no rationale for the

16  policy that is supported by empirical evidence); Ex. 2 (Dr. Frank - same); Ex. 1 (Dr.

17  Korb - same); Ex. 3 (Dr. Belkin - same).  The Supreme Court explicitly rejected a

18  similar argument in *Goldman*, 475 U.S. at 509, finding that whether a military policy

19  is supported by "a scientific study" is "quite beside the point.  The desirability of

20  [suitability standards] in the military is decided by the appropriate military officials,

21  and they are under no constitutional mandate to abandon their considered professional

22  judgment."  *See also Beach Commc'ns*, 508 U.S. at 315 (holding that, under rational

23  basis review, "a legislative choice is not subject to courtroom fact-finding and may

24  be based on rational speculation ***unsupported by evidence or empirical data***")

25  (emphasis added); *Vance*, 440 U.S. at 111 n.28 (under rationality review, state need

26

27

28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES                      -18-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   not "verify logical assumptions with statistical evidence"); *Phillips*, 106 F.3d at 1425

2   (quoting *Beach Communications*).  LCR's experts' opinions regarding the purported

3   lack of empirical evidence in support of DADT is irrelevant to the resolution of

4   LCR's facial due process challenge, and should be excluded under FRE 702 and 402.

5   **II.   TESTIMONY CONCERNING ALLEGED DISPROPORTIONATE**

6   **IMPACT OF DADT ON LESBIANS IS INADMISSIBLE**

7        Under FRE 702 and 402, the Court should exclude expert testimony regarding

8   the purported disproportionate impact DADT has on lesbian service members because

9   this testimony is not helpful to the Court in resolving LCR's facial due process

10  challenge to DADT.  The only opinion that Dr. Embser-Herbert offers is that DADT

11  has a disproportionate impact on women.  *See* Ex. 7, pp. 1-10.  Dr. Hillman dedicates

12  a significant portion of her expert report to the same opinion.  See Ex. 6, p. 1, ¶ 2.

13  Their opinions about the effects of DADT on lesbian service members, however, are

14  not relevant to LCR's facial due process claim and, therefore, should be excluded.

15       As an initial matter, LCR does not have standing to bring a claim that DADT

16  disproportionately impacts women.  As an associational plaintiff, LCR's claims must

17  be based on harms suffered by its members.  *See United Food & Commercial Workers*

18  *Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996) ("requiring an

19  organization suing as representative to include at least one member with standing to

20  present, in his or her own right, the claim (or the type of claim) pleaded by the

21  association.").  Because LCR has not identified a female member who would have

22  standing to bring her own claim that she was harmed by DADT, it lacks standing to

23  bring claims that DADT has a disproportionate impact on women.

24       In any event, evidence that a statute has a disproportionate impact is relevant

25  to equal protection, not due process, claims.  *Gordon v. Davenport*, No. 08-3341,

26

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1   2009 WL 322891,*4 (N.D. Cal. 2009) (recognizing that evidence of a

2   disproportionate impact supports equal protection rather than due process claims.).

3   As the Court already has dismissed LCR's equal protection claim, Drs. Hillman's and

4   Ember-Herbert's opinions that DADT disproportionately impacts women are

5   irrelevant to LCR's remaining claims. *See* Dkt. No. 83, pp. 18-20. Accordingly, Drs.

6   Hillman and Embser-Herbert's opinions about the impact of DADT on women should

7   be excluded under FRE 702 and 402. *See Rice*, 330 F.3d at 1179.

8   **III.   OPINIONS REGARDING THE "CONTINUING" RATIONALITY OF**

9   **DADT ARE INADMISSIBLE UNDER FRE 702 AND 402**

10          In addition to expressing its intention to submit expert testimony challenging

11   the wisdom of Congress in enacting DADT in 1993, LCR seeks to introduce

12   testimony regarding the "continued" rationality of DADT today. For example, LCR's

13   experts seek to offer opinions concerning the costs associated with implementation

14   of DADT over the past 17 years (Ex. 1, pp. 2-4, 6-7 (Korb); Ex. 2, pp. 11-14 (Frank));

15   claims that DADT has decreased military readiness over time (Ex. 1, pp. 1, 6-9

16   (Korb); Ex. 2, pp. 11-16 (Frank); Ex. 6, p. 2 (Hillman)); the results of recent polling

17   of civilians and servicemembers regarding their attitudes towards homosexuals

18   serving openly in the military (Ex. 1, p. 8 (Korb); Ex. 2, pp. 18-21 (Frank); Ex. 3, pp.

19   3-4 (Belkin); Ex. 5, p.6 (MacCoun)); and the experiences of foreign militaries post-

20   1993 in allowing homosexuals to serve openly (Ex. 1, pp. 4, 10-11 (Korb); Ex. 2, pp.

21   8, 9-10 (Frank); Ex. 3, p. 2 (Belkin); Ex. 5, p. 6 (MacCoun)). This testimony is

22   legally irrelevant and not helpful to the Court under FRE 702 and 402.

23          As explained in Defendants' motion for summary judgment, the DADT policy

24   must be reviewed at the time of its enactment and is not subject to challenge on the

25   ground of changed circumstances. *See*, *e.g.*, *U.S. v. Jackson*, 84 F.3d 1154, 1161 (9th

26

27

28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES                -20-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  Cir. 1996); *Montalvo-Huertas v. Rivera-Cruz*, 885 F.2d 971, 977 (1st Cir. 1989)

2  ("evaluating the continued need for, and suitability of, legislation of this genre is

3  exactly the kind of policy judgment that the rational basis test was designed to

4  preclude.").   Courts have found that even where Congress has determined that a

5  previous enactment is no longer necessary, that finding does not render the statute

6  unconstitutional. *Smart v. Ashcroft*, 401 F.3d 119, 123 (2d Cir. 2005); *Howard v.*

7  *U.S. Dep't of Def.*, 354 F.3d 1358, 1361-62 (Fed. Cir. 2004).  Indeed, even if it were

8  legally relevant to determine whether Congress rationally could conclude today that

9  DADT meets the legitimate interests identified in the statute, issues such as the

10  alleged costs associated with DADT or the results of public opinion polls – issues

11  upon which LCR's experts opine – are entirely irrelevant to such an inquiry.[12]

12     Nor do LCR's experts possess the requisite expertise to offer opinions on the

13  subjects of the costs associated with DADT.  Dr. Korb acknowledged that he has no

14  training as an economist, and his sole basis for opining upon the economic costs

15  associated with DADT is his layman's reading of two reports issued by others.  Ex.

16  9 (Tr. 120:7-121:8).  Similarly, Dr. Frank acknowledged that he is not an economist,

17  and has no specialized knowledge in the field of economics.  Ex. 10 (Tr. 160:16-

18  161:11).   Accordingly, LCR's experts' opinions regarding the "continuing"

19  rationality of DADT subsequent to the enactment of DADT in 1993 should be

20  excluded pursuant to FRE 702 and 402.

21  **IV.    MANY OF LCR'S EXPERTS' OPINIONS ARE UNRELIABLE**

22     In addition to offering legally irrelevant testimony, a number of LCR's experts'

23  opinions lack the indicia of reliability required to be admissible under FRE 702.  The

24

25     [12]  Dr. Frank admitted as much in his deposition, and stated that polls are not predicative

26  of behavior.  Ex. 10 (Tr. 175:7-9).

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert II,* 43 F.3d at 1318.  Several non-exhaustive factors guide a court's evaluation of whether an expert's methodology is sufficiently scientific:  "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Id.* at 1316.[13]  In addition, "[t]he plain language of Rule 702 requires an expert to base his or her opinion on sufficient facts or data. Even if an expert presents impeccable credentials, he or she cannot speculate or jump to an opinion without factual support." *James River Ins. Co. v. Rapid Funding, LLC*, No. 07-01146, 2009 WL 481688, at *7 (D. Colo. Feb. 24, 2009) (citations omitted). To be admissible, "the court must assure that the methods are adequately explained." *U.S. v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002) (holding that reliance upon general qualifications of expert without requiring explanation of method was error); *U.S. v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994).  At bottom, "[a]n expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable." *Zenith Elecs. Corp.*, 395 F.3d at 419 (excluding witness because "[h]e was relying on intuition, which we won't do.").

---

[13]   The Ninth Circuit has articulated the admissibility of expert testimony under FRE 702 as turning upon the following preliminary legal questions, including whether: (1) the opinions are based upon specialized knowledge; (2) the opinions would assist the trier of fact in understanding the evidence or determining a fact in issue; (3) the expert has appropriate qualifications; (4) the testimony is both relevant and reliable; (5) the methodology or technique the expert uses "fits" the conclusions; and (6) the probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. *See U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    In this case, Dr. Korb's opinions are not based on any discernible reliable

2   methodology.  Indeed, Dr. Korb, who describes himself as a "scholar" by profession

3   and an admitted "strong advocate" for the repeal of DADT, *see* Ex. 9 (Tr. 39:5-8),

4   fails to identify any reliable method in his report regarding his ultimate conclusions.

5   His methodology boils down to the following circular logic:

6       Q.    Dr. Korb, I want to understand.  What is the methodology that you're

7             employing to determine that [DADT] is unconstitutional?

8       A.    The methodology that I'm employing basically says that if you want to

9             exclude a person from serving their country, you have to have a reason

10            that shows that exclusion is based on something that would harm

11            military readiness or undermine unit cohesion.

12  Ex. 9 (Tr. 24:13-21).  Dr. Korb's opinions and methods were not subject to peer

13  review.  *Id.* (Tr. 38:1-5).[14]  He also acknowledged that his methodology consisted

14  simply of reviewing documents and writing what those documents stated in his report.

15  *Id.* (Tr. 40:4-41:8).  Dr. Korb further explained that the method by which he conducts

16  research into the issue of homosexuals in the military is by doing Google searches.

17  *Id.* (Tr. 125:2-26:12).  Dr. Korb thus has failed to demonstrate any reliable method

18  that would satisfy the admissibility requirements of FRE 702.  Accordingly, his

19  opinions should be excluded as unreliable.[15]

20

21      [14]  Dr. Korb did not write his report in this case.  Rather, an attorney for LCR prepared

22  Dr. Korb's report based upon excerpts of a June 2009 report that Dr. Korb prepared with two
    other individuals for his employer, the Center for American Progress. Ex. 9 (Tr. 31:6-33:17).

23  Dr. Korb ultimately signed the report that counsel for LCR prepared for him.  *Id.*

24      [15]  In the last section of Dr. Korb's report, entitled "[t]he most common arguments in

25  favor of DADT do not make sense," Dr. Korb relies exclusively upon Dr. Frank, Dr. Belkin and a
    New York Times article.  Ex. 1, pp. 9-11.  In the last section, entitled "Now is not the time," Dr.

26                                                                    (continued...)

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1    Similarly, the reports of Drs. Hillman or Embser-Herbert fail to identify any

2  method, reliable or otherwise, that satisfy the reliability prong of FRE 702.   *See* Ex.

3  6, 7.   Nor does Dr. Belkin's report reveal any method by which he reached his

4  opinions.   *See* Ex. 3.   Furthermore, Dr. Belkin's new opinion regarding privacy

5  contained in his March 24, 2010 "revised" report fails to identify *any* facts or data

6  relied upon or discuss the method by which he developed this new opinion.   *See* Ex.

7  4. Accordingly, his new opinion regarding privacy, which is nothing more than *ipse*

8  *dixit*,  should be excluded as unreliable under FRE 702.   *Zenith*, 395 F.3d at 419;

9  *James River Ins. Co.*, 2009 WL 481688, at *7.

10  **V.    ALTERNATIVELY, LCR's EXPERTS' OPINIONS SHOULD BE**

11  **LIMITED BECAUSE THEY ARE CUMULATIVE UNDER FRE 403**

12    Even if LCR could overcome the substantial admissibility hurdles under FRE

13  702 and 402, LCR's experts' opinions should be excluded because they are

14  cumulative under FRE 403. A trial court possesses broad discretion to exclude

15  cumulative expert testimony under FRE 403.   *See* FRE 403 (prohibiting otherwise

16  relevant evidence on grounds of "undue delay, waste of time, or needless presentation

17  of cumulative evidence").   "It is well within the discretion of a district court to limit

18  the number of expert witnesses who testify at trial."   *See Aetna Cas. & Sur. Co. v.*

19  *Guynes*, 713 F.2d 1187, 1193 (5th Cir. 1983); *U.S. v. Alisal Water Corp.*, 431 F.3d

20  643, 660 (9th Cir. 2005).

21    Here, LCR seeks to produce a parade of expert witnesses who will provide the

22  "needless presentation of cumulative evidence."   For example, LCR seeks to

23  _____

24    [15](...continued)

25  Korb identifies *no* facts or data relied upon at all.  *Id.* p. 11.  This simply highlights both the
cumulative nature of Dr. Korb's opinions, as well as an insufficient factual basis upon which to

26  offer expert opinions under FRE 702.

27

28

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

1  introduce testimony from *six* of its experts on the issue of unit cohesion (Belkin,

2  MacCoun, Embser-Herbert, Korb, Hillman and Frank);[16] *five* of its experts on the

3  issue of foreign military experiences regarding the service of openly homosexual

4  servicemembers (Belkin, MacCoun, Korb, Okros, and Frank); *four* of its experts on

5  the claim that DADT lacks "empirical" support (Hillman, Frank, Korb and Belkin);

6  *three* of its experts regarding the claim that DADT was enacted out of animus towards

7  homosexuals (Frank, Hillman, and Korb); *two* of its experts on the issue of the current

8  polling of civilians and servicemembers regarding their attitudes towards the service

9  of open homosexuals in the military (Frank and Korb); and *two* of its experts on the

10  purported disparate impact of DADT on lesbian servicemembers (Hillman and

11  Embser-Herbert).  To the extent the Court somehow determines that these opinions

12  nonetheless are admissible under FRE 702 and 402, it should limit LCR to one expert

13  witness per topic.  *See* FRE 403.

14  ## CONCLUSION

15  For the foregoing reasons, Defendants respectfully request that the Court grant

16  the Defendants' motion *in limine* and exclude the opinions of LCR's seven expert

17  witnesses from trial.

18

19

20  ⎯⎯⎯⎯⎯⎯⎯⎯⎯

    [16]  Dr. Korb acknowledged in his deposition that his opinion regarding unit cohesion was

21  cumulative of Dr. Frank's opinion. Ex. 9 (Tr. 341:17-20) ("Q: Okay.  Your opinion is fairly cumulative of Nathaniel Frank's on the point of unit cohesion?  A: That's correct").  Similarly,

22  not only is Dr. MacCoun's testimony regarding unit cohesion cumulative of LCR's other experts, his opinions are cumulative of his work regarding unit cohesion that was submitted to Congress

23  in 1993 in the form of the RAND study, entitled "Sexual Orientation and U.S. Military Personnel Policy, Options and Assessment." Ex. 12 (Tr. 42:22-43:1) (acknowledging that opinion is based

24  largely upon the work he performed regarding the 1993 Rand Study).  Because Congress had before it the 1993 Rand study, *see* Ex. 13, pp. 801-02, it properly is part of the legislative history

25  in this case, and Dr. MacCoun's testimony, which simply restates his portion of the Rand study, should be excluded under FRE 403.

26

27

28

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES                    -25-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543

Dated: June 18, 2010

Respectfully submitted,

TONY WEST
Assistant Attorney General

ANDRÉ BIROTTE, JR
United States Attorney

JOSEPH H. HUNT
Director

VINCENT M. GARVEY
Deputy Branch Director


/s/Joshua E. Gardner
PAUL G. FREEBORNE
W. SCOTT SIMPSON
JOSHUA E. GARDNER
RYAN B. PARKER
Trial Attorneys
U.S. Department of Justice,
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 6108
Washington, D.C.  20044
Telephone: (202) 353-0543
Facsimile: (202) 616-8202
paul.freeborne@usdoj.gov

*Attorneys for Defendants United States
of America and Secretary of Defense*

DEFENDANTS' MOTION *IN LIMINE*
REGARDING PLAINTIFF'S EXPERT WITNESSES

-26-

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
P.O. BOX 883, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 353-0543