DAN WOODS (SBN 78638)
FERNANDO AENLLE-ROCHA (SBN 129515)
DEVON MYERS (SBN 240031)
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA  90071-2007
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:    dwoods@whitecase.com
Email:    faenlle-rocha@whitecase.com
Email:    dmyers@whitecase.com

Attorneys for Plaintiff
Log Cabin Republicans

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOG CABIN REPUBLICANS, a non-profit corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA and ROBERT M. GATES, SECRETARY OF DEFENSE, in his official capacity,<br><br>          Defendants. | Case No.  CV 04-8425 VAP (Ex)<br><br>**OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN OF PLAINTIFF'S PROPOSED EXHIBITS; DECLARATION OF DAN WOODS; EXHIBITS**<br><br>**DATE: June 28, 2010**<br><br>**Time: 2:30 p.m.**<br><br>**Place: Courtroom of Judge Phillips** |

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ........................................................................................ 1

ARGUMENT .................................................................................................................. 1

    I.    DEFENDANTS' REQUEST TO EXCLUDE VIRTUALLY ALL PLAINTIFF'S TRIAL EXHIBITS IS PROCEDURALLY AND SUBSTANTIVELY IMPROPER ........................................................... 1

        A.    Regardless of the Standard of Review, Evidence Pre- and Post-Dating the Enactment of DADT is Relevant to the Due Process Rights of Servicemembers ............................................. 1

        B.    Defendants' Compound Motion Violates the Court's June 3 Order Limiting the Number of Motions in Limine .......... 3

        C.    Defendants' Motion Is Unnecessary As Evidentiary Issues In This Bench Trial Can Be Decided As Issues Arise ................ 5

    II.    LOG CABIN'S EXHIBITS ARE ADMISSIBLE AT TRIAL .............. 7

        A.    The Exhibits Relating to Individual Servicemembers Are Relevant as They Illustrate the Unjustified and Unnecessary Intrusion DADT Represents to Constitutionally Protected Rights ........................................................................................ 7

        B.    The So-Called "Contractor Exhibits" Principally Consists of the Defendants' Own Statements and the Remainder Were Either Adopted or Are Otherwise Admissible as Admissions ................................................................................ 9

        C.    The Categorization of "Advocacy Exhibits" Is Both False and Illustrates the Misguided Nature of the Exhibit Motion..... 13

        D.    The Other Categories of Exhibits Should Be Ruled on During Trial ................................................................................ 15

        E.    Log Cabin's Evidence Is Trustworthy and Reliable ................. 16

CONCLUSION ............................................................................................................. 16

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

Alvord-Polk, Inc. v. F. Schumacher & Co.,
  37 F.3d 996 (3d Cir. 1994) ............................................................................................ 10

Annex Books, Inc. v. City of Indianapolis,
  581 F.3d 460 (7th Cir. 2009) ...................................................................................... 2, 3

Atl.-Pac. Constr. Co., Inc. v. NLRB,
  52 F.3d 260 (9th Cir. 1995) ........................................................................................... 15

Banks v. United States,
  78 Fed. Cl. 603 (Fed. Cl. 2007) .................................................................................... 12

Gibson v. County of Riverside,
  181 F. Supp. 2d 1057 (C.D. 2006) ......................................................................... 15, 16

McCullen v. Coakley,
  573 F. Supp. 2d 382 (D. Mass. 2008) ............................................................................. 3

McEwen v. City of Norman,
  926 F.2d 1539 (10th Cir. 1991) ....................................................................................... 5

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
  454 F. Supp. 2d 966 (C.D. Cal. 2006) .......................................................................... 10

Morgan v. Plano Independent School District,
  No. 04-447, 2007 WL 397494 (E.D. Tex. Feb. 1, 2007) ................................................ 3

Pac. Gas & Elec. Co. v. United States,
  73 Fed. Cl. 333 (Fed. Cl. 2006) .............................................................................. 11, 12

Reid Bros. Logging Co. v. Ketchikan Pulp Co.,
  699 F.2d 1292 (9th Cir. 1983) ...................................................................................... 13

Sperberg v. Goodyear Tire & Rubber Co.,
  529 F.2d 708 (6th Cir. 1975) .......................................................................................... 6

United States v. Heller,
  551 F.3d 1108 (9th Cir. 2009) ..................................................................................... 5, 6

**FEDERAL RULES**

Fed. R. Civ. P. 7(b)(1)(B) ........................................................................................................ 6

Fed. R. Civ. P. 26 .................................................................................................................... 8

Fed. R. Evid. 403 .................................................................................................................... 1

| | |
|---|---|
| 1 | Fed. R. Evid. 801(c) ................................................................................................. 15 |
| 2 | Fed. R. Evid. 801(d)(2) ......................................................................................... 8, 10 |
| 3 | Fed. R. Evid. 801(d)(2)(C) .................................................................................. 12, 13 |
| 4 | Fed. R. Evid. 803(8)(A) ...................................................................................... 11, 12 |
| 5 | Fed. R. Evid. 803(18) ............................................................................................... 14 |

**LOCAL RULES**

Local Rule 7-6 ............................................................................................................ 7

Local Rule 11-3.9.3 .................................................................................................... 4

Local Rule 11-6 .......................................................................................................... 4

Local Rule 56-1, 2, and 3 ........................................................................................... 4

**TREATISES**

30B Michael H. Graham, Federal Practice and Procedure,
    § 7059 (Interim Ed. 2006) ................................................................................... 14

- iii -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO
EXCLUDE CERTAIN OF PLAINTIFF'S PROPOSED EXHIBITS

LOSANGELES 870264 (2K)

## SUMMARY OF ARGUMENT

Defendants' Motion *In Limine* regarding trial exhibits ("Exhibits Motion") is – together with Defendants' other two motions *in limine* – part and parcel of Defendants' continuing, rear-guard action to avoid a trial based on the relevant issues and instead hope the Court will view the "Don't Ask, Don't Tell" policy through a prism devised by Defendants without any basis in law or in fact. While the motion purports to be directed at "certain" of Log Cabin Republicans' ("Log Cabin") proposed trial exhibits, its scope is far broader: in total, through what is effectively several motions *in limine* camouflaged to appear as one – and before the Court has determined what standard of review to employ, what claims will be tried, or considered any evidence or testimony at trial – Defendants seek to have the Court exclude, prospectively, 288 exhibits. This, despite the Court's having reminded the parties "that this matter is being tried to the Court," and although Defendants do not claim that **any** exhibit, much less a category or set of exhibits, should be excluded based on Federal Rule of Evidence 403.

For the reasons described below and in the other oppositions to Defendants' *in limine* motions Log Cabin is filing concurrently, the Court should deny the Exhibits Motion and decide any evidentiary issues regarding the parties' trial exhibits at trial.

## ARGUMENT

### I. DEFENDANTS' REQUEST TO EXCLUDE VIRTUALLY ALL PLAINTIFF'S TRIAL EXHIBITS IS PROCEDURALLY AND SUBSTANTIVELY IMPROPER

#### A. Regardless of the Standard of Review, Evidence Pre- and Post-Dating the Enactment of DADT is Relevant to the Due Process Rights of Servicemembers

Defendants devote several pages in the Exhibits Motion (and the two other motions *in limine*) to recycling arguments it has raised before to the effect that the

only evidence the Court should consider regarding the constitutionality of a statute is the evidence considered by Congress at the time of enactment.  Log Cabin has already demonstrated, principally in its Opposition to Summary Judgment (pp. 14-17), the errors in Defendants' arguments; tomorrow, in its brief pursuant to the Court's Order that the parties address the Witt standard, Log Cabin will refute – again and with additional detail – the argument.

While the Court has already received extensive briefing regarding Defendants' contention (and how it is wrong), two further points are instructive – and potentially dispositive – with respect to Defendants' Exhibit Motion.  First, if the Court elects to apply a higher or "intermediate" standard of review such as that articulated in Witt, that election would negate the vast majority of Defendants' objections to evidence and the principal argument of the Exhibit Motion.  That is because where a higher level of scrutiny applies, such as that required by Witt, Defendants must prove, through evidence, a tight fit between the statute and its stated goals.

Annex Books, Inc. v. City of Indianapolis, 581 F.3d 460 (7th Cir. 2009), is instructive.  In Annex Books, Judge Easterbrook held that when a legislative body (there a municipality) promulgates a regulation subject to intermediate scrutiny, it must marshal evidence supporting the need for the policy.  Id. at 462, 464.  It is not enough to simply "belittle plaintiffs' evidence." Id. at 464.  The case was remanded for an *evidentiary* hearing.  Id. at 467.

Annex Books arose out of a first amendment challenge to an ordinance regulating adult book and video stores.  It is nonetheless instructive here given the court's application of intermediate scrutiny.  The court stated:

> Indianapolis [assumes] that any empirical study of morals offenses near any kind of adult establishment in any city justifies every possible kind of legal restriction in every city.  That might be so if the rational-relation test governed, for then all a court need do is ask whether a sound justification of a law may be imagined.  … But because books (even of the "adult" variety) have a

- 2 -

>constitutional status … the public benefits of the restrictions must be established by evidence, and not just asserted. The evidence need not be local; Indianapolis is entitled to rely on findings from Milwaukee or Memphis (provided that a suitable effort is made to control for other variables). … But there must be <u>evidence</u>; lawyers' talk is insufficient.

Id. at 463 (citations omitted) (emphasis in original).

Second, there is no support in case law for Defendants' broad assertion that "[Log Cabin's] … use of exhibits[,] regardless of the level of scrutiny employed by the Court, is wholly inappropriate in resolving [Log Cabin's] facial constitutional challenge." (Mot. at 6.) In the section of its brief regarding facial challenges, the government cites just two cases involving evidentiary issues. Neither case holds that the admission of evidence is inappropriate in a facial constitutional context. In one case, Morgan v. Plano Independent School District, No. 04-447, 2007 WL 397494 (E.D. Tex. Feb. 1, 2007), far from ruling that evidence is inadmissible in the context of a facial constitutional challenge, the court concluded that "evidence is relevant to the facial constitutionality of [the challenged regulation]." Id. at *3. The evidentiary ruling Defendants rely on – as the basis for its contention that evidence can <u>never</u> be relevant in a facial challenge – concerned *one* paragraph from *one* affidavit, as to which the Court sustained an objection. Id.[1]

### B. Defendants' Compound Motion Violates the Court's June 3 Order Limiting the Number of Motions in Limine

Had Defendants included a Table of Contents (as required by the Local Rules), the compound nature of the Exhibits Motion (which effectively combines at least five motions in one omnibus motion) would be self-evident.

Defendants' failure to comply with the local rules and the Court's instructions is standard practice. At the November 16, 2009 hearing, after

---

[1] In the other case cited by Defendants, McCullen v. Coakley, 573 F. Supp. 2d 382, 387 (D. Mass. 2008), the Court noted it was declining the parties' requests to adopt various findings of fact in part because it did "not have a complete record from which to make such findings" because certain additional issues remained to be tried.

- 3 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN OF PLAINTIFF'S PROPOSED EXHIBITS

LOSANGELES 870264 (2K)

1  Defendants violated the local rules for failing to meet and confer, the Court
2  contemplated sanctions and admonished Defendants: "I expect that no matter how
3  much you think you may disagree and be unable, I expect in the future in this case
4  to have full compliance with the spirit as well as the letter of the Local Rule about
5  meet and confer." Tr. of Oral Argument Nov. 16, 2009 at 21:4-6. Despite the
6  Court's warning, Defendants continue to disregard the local rules. For example,
7  Defendants' Motion for Summary Judgment violated L.R. 56-1, 2, and 3 because it
8  did not include a statement of uncontroverted facts but rather 12 proposed findings
9  of fact. Further, the purported "conclusions of law" amounted to additional briefing
10 in violation of the 25 page limit of L.R. 11-6. Defendants' footnotes in its moving
11 and reply papers in its Summary Judgment Motion violated the font size
12 requirement and were too small to read. More recently, Defendants' Supplemental
13 Brief filed on June 9, 2010 (Docket No. 172) squeezed inside the page limit by
14 omitting parallel citations to Supreme Court cases, which L.R. 11-3.9.3 requires.

15        And now, true to form, Defendants cram an extra motion into their already
16 bloated motions *in limine*. Despite the Court's clear instruction in its June 3, 2010
17 Order that the parties were limited to three motions *in limine*, Defendants filed three
18 scattershot motions. The Exhibits Motion alone targets, by Defendants' own
19 admission, five categories of documents. These "categories" include a wide swath
20 of sub-categories (e.g., Defendants' first category includes books, book chapters,
21 law review articles and other works; the second category ranges from newspaper
22 articles to polling data; another category purports to be concerned with "documents
23 created by government contractors") but also seeks to exclude documents created
24 by direct employees of Defendants; another category includes "the remainder of
25 [Log Cabin]'s exhibits." (Mot. at 3.) Additionally, Defendants advance at least six
26 separate purported bases for the Exhibits Motion.

27        In their letter dated May 18, 2010, Defendants indicated that they would file
28 <u>at least</u> four motions in limine to exclude: (1) plaintiff's exhibits; (2) plaintiff's

- 4 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO
EXCLUDE CERTAIN OF PLAINTIFF'S PROPOSED EXHIBITS

1  experts' testimony; (3) plaintiff's deposition designations; and (4) testimony of
2  plaintiff's allegedly late disclosed lay witnesses.  (See Ex. A attached to the
3  Declaration of Dan Woods ("Woods Decl.").)  Evidently, Defendants could not
4  substantively comply with the Court's limit to three motions in limine, so instead
5  they overfilled each motion to circumvent the Court's Order.  Defendants continue
6  to blatantly flaunt their disregard for the Court's rules.

7  Thus, the Exhibits Motion alone is effectively in excess of the Court-ordered
8  limit of three motions per side.  The Court could and should deny the Exhibits
9  Motion and/or the other *in limine* motions on the basis of the Defendants' violation
10 of the Court's Order alone.

### C. Defendants' Motion Is Unnecessary As Evidentiary Issues In This Bench Trial Can Be Decided As Issues Arise

There is no reason – and Defendants have articulated none – why the Court and the parties could not resolve any evidentiary objections during trial, either witness by witness or exhibit by exhibit.  The purpose of *in limine* motions is to avoid the obviously futile attempt to "unring the bell" when highly prejudicial evidence is offered at trial.  McEwen v. City of Norman, 926 F.2d 1539, 1548 (10th Cir. 1991).  Obviously, these principles do not apply with the same force in a court trial, as opposed to a jury trial.

United States v. Heller, 551 F.3d 1108 (9th Cir. 2009) cert. denied, - U.S. - , 129 S. Ct. 2419, 173 L. Ed. 2d (2009), articulates why motions *in limine* serve little purpose in bench trials:

> The term "in limine" means "at the outset."  A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area.  In the case of a jury trial, a court's ruling "at the outset" gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury. Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous. It would be, in effect, "coals to Newcastle," asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence. **For logistical and other reasons, pretrial**

- 5 -

1
2
> **evidentiary motions may be appropriate in some cases. But here, once the case became a bench trial, any need for an advance ruling evaporated**.

3  Id. at 1111-12 (internal citations omitted) (emphasis added).

4         A more precise evaluation of evidentiary issues would be a far more
5  appropriate instrument to resolve evidentiary issues rather than the cudgel of
6  Defendants' Exhibit Motion.  Orders granting motions *in limine* "which exclude
7  broad categories of evidence should rarely be employed" and the better practice "is
8  to deal with questions of admissibility of evidence as they arise." Sperberg v.
9  Goodyear Tire & Rubber Co., 529 F.2d 708, 712 (6th Cir. 1975).  Yet the Exhibit
10 Motion requests that the Court rule on 288 exhibits based on the Defendants'
11 conclusory, unsupported, and glib characterization of the 288 exhibits as falling in
12 five startlingly broad categories.

13         Moreover, the Exhibit Motion provides neither the Court nor Log Cabin with
14 a fair and appropriate basis upon which to consider and respond to the
15 government's evidentiary objections.  See Fed. R. Civ. Proc. 7(b)(1)(B) (a motion
16 must "state with particularity the grounds for seeking the order").  For example, the
17 Exhibits Motion seeks the exclusion of a "category" of Plaintiff's exhibits that
18 Defendants call the "Miscellaneous Exhibits," as if that were a defined term.  It is
19 not.  Defendants do not identify with specificity the "Miscellaneous Exhibits."  The
20 first use of the term is on page 15 of the Exhibits Motion; the "Background" section
21 of the Exhibits Motion provide a vague, catch-all description of a category of
22 documents (that may or may not be the "Miscellaneous Exhibits") that consists of
23 "the remainder of [Log Cabin]'s exhibits, such as, among other things, [Log
24 Cabin]'s experts' reports, email exchanges by non-parties, non-party letters,
25 articles, and other documents that do not fall within the other four categories."
26 (Mot. at 3.)  Nowhere within the Motion or in Defendants' [Proposed] Order do
27 Defendants identify with any particularity of what this category of Exhibits
28 consists.

1    This extreme level of generality is symptomatic of the entire Motion: in 22 pages of briefing, Defendants quote from just 4 of Plaintiff's exhibits.  Moreover, the Motion is replete with factual assertions for which the Defendants have provided absolutely no support.  See L.R. 7-6 ("Factual contentions involved in any motion . . . shall be presented, heard, and determined upon declarations and other written evidence  . . . .").  For example, Defendants make the blanket assertion that the authors of well more than 50 of the Exhibits they seek to exclude — a group that includes several well-admired academics and at least two people hired by Defendants to conduct research regarding DADT — are "advocates" who "issue reports to further their political agendas."  (Mot. at 18.)

In short, the Exhibits Motion is overbroad because it is based on false categorizations and unsupported generalities.  It is not the way that the Court should determine the key evidentiary issues. The Court and parties can deal with these isues in the normal course of the trial.

## II.   LOG CABIN'S EXHIBITS ARE ADMISSIBLE AT TRIAL

### A.   The Exhibits Relating to Individual Servicemembers Are Relevant as They Illustrate the Unjustified and Unnecessary Intrusion DADT Represents to Constitutionally Protected Rights

Defendants seek the blanket exclusion of "approximately 50 documents" relating to seven of Log Cabin's proposed trial witnesses, all of whom are former servicemembers who were discharged pursuant to DADT.  (According to footnote 8 of Defendants' Exhibit Motion, the relevant exhibits are 40, 41, 110A, 111-129, 131-151, 255, and 256.)[2]  The Court should decline Defendants' request to exclude these materials.

First, Defendants' claim that these materials "were not previously disclosed to defendants" is incorrect. For example, Exhibits 40 and 41 were marked as

---

[2] After reviewing Defendants' objections and the Exhibit Motion, Plaintiff withdraws Exhibits 131, 133, 147, and 148.

- 7 -

1  exhibits – by Defendants – at Alex Nicholson's deposition; Exhibit 110A is a
2  record of Mr. Nicholson's discharge, and was produced to Defendants by Log
3  Cabin during the litigation (Bates # LCR000018-19); and Exhibits 255 and 256
4  were produced by Defendants.

5       Second, for the reasons explained in Log Cabin's opposition to Defendants'
6  Motion *in Limine* to Exclude Lay Witness Testimony, Defendants' argument that
7  the remaining exhibits (111-129, and 131-151) should be excluded based on Log
8  Cabin's alleged failure to comply with Rule 26 fails.  Moreover, even if Log
9  Cabin's disclosure of certain exhibits relative to the experience of individuals
10 discharged under DADT were untimely, there is no harm or prejudice to
11 Defendants.  Log Cabin identified every one of these individuals to Defendants on
12 May 17, 2010, nearly two months before trial.  Moreover, Plaintiff immediately
13 offered to make all of these individuals available for deposition, an invitation
14 Defendants disregarded.

15      Every single exhibit proffered by Plaintiff in connection with these witnesses
16 is a government document and therefore has always been in the possession of
17 Defendants.  (The exhibits are all either discharge records, evidence relating to a
18 separation proceeding, or performance review or other documents relating to the
19 job performance of the respective individual servicemembers.) Importantly,
20 because these are government documents, they are admissible as party admissions
21 under Fed. R. Evid. 801(d)(2).[3]  Most are letters (1) drafted on government
22 letterhead (see Section II.B below), (2) made by government employees in their
23 official capacities, and (3) were directly submitted to the government.  For example,
24 there is a letter written by Lt. Colonel Jeffrey B. Kromer on Department of Defense

---

[3] Defendants expand their "fourth" category of documents in footnote 13, which adds exhibits 193, 199, 201, 202, 203, 275, 281, 292, 308, 318, 320, and 355. These documents, with the possible exception of 281, are all government reports and constitute admissions (see Section II.B below). Defendants provide no plausible argument for why documents within their control that they published are somehow inadmissible as late disclosures. These documents are admissible and the Court should not exclude them.

letterhead in support of Major Almy directed to "All Reviewing Authorities" regarding Major Almy's "character and integrity" and that "he should be retained in the Air Force without prejudice." (Ex. 114.)  Another is a letter written on Department of the Air Force letterhead by Major Scott Weenum to "All Reviewing Authorities" that recommends that he "be retained on active duty status."  (Ex. 115.)  Defendants' generalizations aside, a closer look at the exhibits demonstrates they are reliable, admissible documents.

Finally, all of the proposed exhibits are directly relevant to the subject on which these witnesses will testify: the individual circumstances of these six witnesses – all of whom were discharged pursuant to DADT despite their exemplary records and, in some cases, evidence from their superior officers who knew firsthand that neither their orientation nor the fact that it was known within their respective units had any effect on morale, unit cohesion, or their individual job performance – confirm that DADT is both irrational and an unjustified intrusion into constitutionally protected liberty interests.

### B. The So-Called "Contractor Exhibits" Principally Consists of the Defendants' Own Statements and the Remainder Were Either Adopted or Are Otherwise Admissible as Admissions

Defendants seek the exclusion of at least thirteen exhibits (69, 70, 71, 72, 73, 74, 101, 172, 193, 199, 212, 231, and 290) that they label – without providing the Court with any evidence, context, or explanation upon which to evaluate the claim – the "Contractor Exhibits."  Indeed, Defendants go as far as to say "None of the Contractor Documents contains any evidence that the contractors who created the documents were authorized to speak for the Department of Defense or were entitled to do so within the scope of its agency."  This broad-brush statement, however, is a perfect illustration of the dangerous nature of Defendants' facile attempt to exclude virtually all of Log Cabin's exhibits because Defendants' argument elides over a simple, important fact: a great many of these exhibits are – on their face – the

1  Defendants' own statements, marked with their imprimatur, and therefore are not
2  hearsay under FRE 801(d)(2).  Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,
3  Ltd., 454 F. Supp. 2d 966, 976 (C.D. Cal. 2006) (documents, produced by
4  defendant "that bear [its] trade names, logos, and trademarks are statements by [the
5  defendant], and are admissible as admissions by a party-opponent under Rule
6  801(d)(2), or alternatively as non-hearsay to show [defendant's] state of mind.").  In
7  many cases, the challenged exhibits were published by Defendants after they were
8  reviewed and approved for publication by Defendants.  Whether the published
9  report includes a "disclaimer" or not, the published statement is still Defendants'
10 admission.  Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1005 n.6 (3d
11 Cir. 1994) (admitting articles published by the defendant even though an
12 independent retailer drafted them and included language in the articles that "his
13 views were his own").[4]

14 At least nine of the 13 exhibits Defendants seek to exclude are either self-
15 evidently Defendants' own statements or bear the imprimatur of Defendants.  For
16 example:

17 - The title page of Exhibit 69 reads:  "Comparative International
18   Military Personnel Policies, Gwyn Harries-Jenkins, University of Hull,
19   editor **for European Research Office of the U.S. Army**, May 1993,
20   **U.S. Army Research Institute for the Behavioral and Social**
21   **Sciences"** (emphasis added).
22 - The title page of Exhibit 70 reads:  "**U.S. Army Research Institute**
23   **for the Behavioral and Social Sciences**…Perspectives on
24   Organizational Change in the Canadian Forces."
25 - Moreover, the second page of Exhibit 70 indicates that the report was

---

[4] Defendants claim that "several" of these exhibits include "disclaimers" is an exaggeration.  Defendants cite a total of 2 such disclaimers (and one of those is found in Exhibit 70, which – as demonstrated below – was clearly adopted by the U.S. Army Research Institute (see Exhibit 70).

- 10 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO
EXCLUDE CERTAIN OF PLAINTIFF'S PROPOSED EXHIBITS

LOSANGELES 870264 (2K)

subject to a "technical review" by, among others, Paul A. Gade, who during his deposition as the government's 30(b)(6) witness on foreign militaries' experiences regarding service by openly gay or lesbian servicemembers testified that he has worked at the U.S. Army Research Institute for 35 years.

- Similarly, Exhibit 71 is a document written **by Mr. Gade** – i.e., a U.S. Army Research Institute employee and not a "contractor" – in which he writes that Exhibit 70 "is a very well written report," notes that Exhibit 70 is "particularly useful," recommends "minor changes" and, ultimately, "recommend[s] that [Exhibit 70] be published as a research report." In other words, far from a "contractor exhibit," Exhibit 71 is both the Army Research Institute's own statement and confirmation of its adoption of and responsibility for Exhibit 70.

- Likewise, Exhibit 74 is a Army Research Institute report authored by **Mr. Gade**, entitled "Research Findings and Issues Concerning Homosexuals in Military Service."

- Every page of Exhibit 193 indicates that it is a Defense Manpower Research Center document.[5]

Thus, for these exhibits the Court need not engage in any analysis of whether Defendants "adopted" these statements; it is self-evident that Defendants **made** these statements.

Most importantly, Defendants' "Contractor" argument fails as a matter of law. Pac. Gas & Elec. Co. v. United States, 73 Fed. Cl. 333, 438 (Fed. Cl. 2006) rev'd in part and remanded on other grounds by 536 F.3d 1282, 1293 (Fed. Cir. 2008). Pacific Gas admitted "Contractor Documents" prepared for the government

---

[5] Similarly, Exhibits 101 (the PERSEREC report), 172, 212, and 231 (a U.S. Army Research Institute report) all bear the imprimatur of the government agency that sponsored the work.

1  at its request under both Fed. R. Evid. 803(8)(A)[6] and 801(d)(2)(C). Id. Pacific
2  Gas found the reports to qualify as reports from public offices or agencies under
3  Fed. R. Evid. 803(8)(A), "[n]otwithstanding that the contractor documents were
4  created by contractors and not [Department of Energy] employees, to the extent that
5  the contractor documents were indeed records of a public nature 'emanating' from
6  DOE, and to the extent that foundation and authenticity of the contractor documents
7  could be established," they were admissible. Id. at 439. This finding was based, in
8  part, on the rationale that the "Contractor Documents" were "'generated or
9  collected by the national government in the course of its public functions.'" Id.
10 (quoting In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1309 (7th Cir. 1992)).

11    Pacific Gas further found the "Contractor Documents" to be admissible as
12 non-hearsay because the government "authorized" their reports by hiring the
13 contractors to perform work for them. Id. at 440. Pacific Gas clarified that "[t]o
14 the extent that such statements in the contractor documents were not consistent with
15 the views of DOE, defendant could elicit that on cross-examination at trial. Such
16 inconsistencies were probative of the contractor documents' weight, not their
17 admissibility." Id.

18    Notably, despite Defendants' boisterous opposition to the admissibility of
19 these exhibits, defense counsel Joshua Gardner was government counsel in Pacific
20 Gas. Nonetheless, Defendants omitted Pacific Gas from their motion and argue in
21 the face of a ruling they helped create. See also Banks v. United States, 78 Fed. Cl.
22 603, 617 (Fed. Cl. 2007) ("[S]tudies not issued directly by an agency of the United
23 States and instead issued by a private entity hired by the government for the

---

[6] Fed. R. Evid. 803(8)(A) provides as a hearsay exception: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

purpose of studying and submitting a report on the erosion at St. Joseph qualify as statements made 'by a person authorized by the party to make a statement concerning the subject.'" (quoting Fed. R. Evid. 801(d)(2)(C))); Reid Bros. Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1306 (9th Cir. 1983) (admitting report as non-hearsay where it was created by the employee of a shareholder of a parent company because defendant gave author access to its books and records).

Here, those documents Defendants wish to call "Contractor Documents" are admissible as a report compiled for a public agency and non-hearsay under 801(d)(2)(C). As in Pacific Gas, Defendants cannot seek exclude the "contractor" documents because they all emanate from the government as it contracted for those reports. Moreover, because Defendants hired the "Contractors" to produce the reports, they authorized them to make those statements. For example, Defendants paid Rand $1.3 million for its reports, including the interim reports (Exs. 193 and 199), and granted Rand employees, as in Reid, access to military facilities (see MacCoun Depo. at 27, 11:17-20). While Defendants likely seek to exclude these "Contractor" documents because their conclusions run contrary to Defendants' purported rationales for enacting DADT, Pacific Gas makes clear that contrary conclusions do not an exclusion make. Rather, the "Contractors'" conclusions go to the weight and not the admissibility of their documents. Defendants cannot sweep under the rug evidence that they do not like when that evidence is their own records and admissions. The Court should deny Defendants' motion for all documents in their "Category Three."

### C. The Categorization of "Advocacy Exhibits" Is Both False and Illustrates the Misguided Nature of the Exhibit Motion

Perhaps Defendants' most regrettable rhetorical device is to group together 72 widely disparate types of exhibits and label them as "Advocacy Exhibits," notwithstanding the fact that several of them are simply academic studies of either DADT or service by homosexuals in the military. Quite simply, Defendants apply

- 13 -

1   the "advocate" label – without any basis – to anyone who has studied DADT,
2   whether it be the Palm Center ("a research institute of the University of California,
3   Santa Barbara, committed to sponsoring state-of-the-art scholarship to enhance the
4   quality of public dialogue about critical and controversial issues of the day")[7] or
5   virtually every one of Log Cabin's experts – including Robert MacCoun (a
6   psychologist and University of California, Berkeley faculty member and, for 7
7   years a behavioral scientist at The RAND Corporation,[8] who has been retained
8   *again* by the RAND Corporation to study unit cohesion as it relates to service by
9   openly gay and lesbian servicemembers *for the benefit of Defendants at the request*
10  *of the Senate*).  Indeed, Defendants seek to exclude as "advocacy exhibits" reports
11  that *they* published.  (Exs. 69, 307).

12   In any event, Defendants' attempt to "exclude" *en masse* the "Advocacy
13  Exhibits" provides further illustration of the Exhibit Motion's overkill.  While the
14  documents identified by Defendants in this category may not ultimately be
15  admissible as exhibits, a significant number of them (the reports of Log Cabin's
16  experts, seminal academic works that Log Cabin's experts either rely on or
17  otherwise will be addressing during their live testimony) will be referred to – and
18  read from pursuant to FRE 803(18) – frequently during the trial.  This is why Log
19  Cabin has previously identified these types of documents as falling within the
20  learned treatise exception.  (See generally Pl. Response to Def. Evidentiary
21  Objections to Pl.'s Appendix, Docket No. 164.)  While a party must lay a
22  foundation with respect to each document, it is a burden that is easily satisfied.
23  30B Michael H. Graham, Federal Practice and Procedure, §7059 (Interim Ed.
24  2006).  Accordingly, Log Cabin identified these materials for the parties', the
25  Court's, and the witnesses' convenience.  The admissibility of each of these
26  exhibits can be dealt with as each arises.

---

[7] http://www.palmcenter.org/about (last visited June 19, 2010).
[8] http://www.law.berkeley.edu/php-programs/faculty/facultyProfile.php?facID=239 (last visited June 19, 2010).

**D.  The Other Categories of Exhibits Should Be Ruled on During Trial**

Similarly, Defendants' attempt to exclude at least 21 exhibits it dubs the "Media and Polling Exhibits" is both premature and a waste of the Court's resources.  Defendants object to the Polls and Media on hearsay grounds.  (Mot. at 11-13.)  While this discussion would be more effective if Defendants raised particular arguments to particular documents, Defendants' hearsay argument fails.  Log Cabin is not offering the "media" and "polling" to demonstrate the truth of each document.

Log Cabin offers the "media" and "polling" exhibits as evidence that DADT is the subject of national attention and discussion and that attitudes towards homosexuals have changed from when Congress enacted DADT.  Testimony not offered for the truth of the matter asserted is not hearsay.  Fed. R. Evid. 801(c); Atl.-Pac. Constr. Co., Inc. v. NLRB, 52 F.3d 260, 263 (9th Cir. 1995) (affirming admission of testimony regarding conversations employee had with other employees, not for the truth of the matters discussed in the conversations, but "to permit the factfinder to learn the circumstances surrounding the matter").  Consequently, the documents are not, by definition, hearsay and are admissible.  At the very least, the "media" and "polling" evidence survives Defendants' haphazard motion *in limine*.

Moreover, on February 19, 2010, the Custodian of Records for the Zogby Poll (Ex. 11), the document that Defendants identify in their motion, authenticated the poll.  (See Woods Decl. Ex. B.)  Defendants know of this authentication because Log Cabin provided it to them, yet they continue to waste the Court's time by making unsupportable arguments.  The authentication supports admissibility because it demonstrates reliability of the document.  Further, the document provides a detailed explanation of its methodology.  It explains the poll's margin of error, sample size, and weighting.  (See Ex. 11 at 2.)  Defendants cite Gibson v. County

- 15 -

1  of Riverside, 181 F. Supp. 2d 1057 (C.D. 2006) for the reliability concerns polls
2  raise.  Here, unlike Gibson, the Zogby report was not written by an attorney in the
3  case and did not disclose its purpose in conducting the poll.  Id. at 1067-68.  Thus,
4  contrary to Defendants' assertion, Log Cabin can demonstrate that the Zogby Poll
5  meets the standards of reliability outlined in Gibson.

### E.    Log Cabin's Evidence Is Trustworthy and Reliable

Defendants' motions try to muddy the water and to keep the Court from reaching the merits of Log Cabin's claims.  At no point do Defendants contest the facts that Log Cabin's evidence supports.  Defendants do not argue — they cannot argue — that Log Cabin's factual record is misleading or unreliable.  There is little risk of prejudice here because the Court will hear the facts.  Accordingly, the Court should deny Defendants' motion.

### CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion *in Limine* To Exclude Certain of Plaintiff's Proposed Exhibits.

Dated:    June 22, 2010

DAN WOODS
WHITE & CASE LLP

By:        /s/ *Dan Woods*
         Dan Woods
     Attorneys for Plaintiff