DAN WOODS (SBN 78638)
FERNANDO AENLLE-ROCHA (SBN 129515)
RACHEL J. FELDMAN (SBN 246394)
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA  90071-2007
Telephone:  (213) 620-7700
Facsimile:   (213) 452-2329
Email:       dwoods@whitecase.com
Email:       faenlle-rocha@whitecase.com
Email:       rfeldman@whitecase.com

Attorneys for Plaintiff
Log Cabin Republicans

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOG CABIN REPUBLICANS, a non-profit corporation,<br><br>           Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA and ROBERT M. GATES, SECRETARY OF DEFENSE, in his official capacity,<br><br>         Defendants. | Case No.  CV04-8425 VAP (Ex)<br><br>**PLAINTIFF LOG CABIN REPUBLICANS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE LAY WITNESS TESTIMONY**<br><br>**DATE: June 28, 2010**<br><br>**Time: 2:30 p.m.**<br><br>**Place: Courtroom of Judge Phillips** |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 2

THE COURT SHOULD DENY DEFENDANTS' MOTION ................................ 8

    I.      Defendants' Compound Motion is Procedurally Improper ................... 8

    II.     Log Cabin Properly Disclosed the Identities of Its Lay Witnesses ........ 9

        A.    Log Cabin Complied with Rule 26 ................................................. 9

            1.     The Former Servicemembers .............................................. 10

            2.     The Log Cabin Representatives ......................................... 11

        B.    Any Delay in Disclosure of Lay Witnesses Was Substantially Justified and Harmless ................................................................. 12

            1.     The Former Servicemembers .............................................. 13

            2.     The LCR Representatives ................................................... 15

    III.    Defendants' Request to Exclude All Contemplated Testimony Is Procedurally and Substantively Improper ........................................... 16

    IV.    Log Cabin Is Entitled to Present Testimony of Six Out of the Thousands of Unique Individuals Discharged Under, or Impacted by, DADT ..................................................................... 18

    V.     The Testimony of the 30(b)(6) Witnesses Is Relevant and Admissible ................................................................................ 19

        A.    The Designated Testimony Is Admissible ................................... 19

        B.    The Specific Areas of Inquiry Are Relevant ............................... 22

            1.     Post-Enactment Evidence .................................................. 22

            2.     Enlistment Waivers for Felons .......................................... 23

            3.     Experiences of Foreign Militaries ..................................... 24

    VI.    A Motion in Limine Is the Improper Means for Objecting to Designated Deposition Testimony ....................................................... 25

CONCLUSION .................................................................................................. 25

LOSANGELES 870263 v1 (2K)

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

### <u>FEDERAL CASES</u>

5
Benson v. Tocco, Inc.,
  113 F.3d 1203 (11th Cir. 1997) ............................................................................ 10

6

7
Brighton Collectibles v. Marc Chantal USA, Inc.,
  2008 WL 40010066 (S.D. Cal. 2008) ............................................................. 9, 10

8
Burrows v. Orchid Island TRS, LLC,
  2010 WL 217908 (S.D. Cal. 2010) ................................................................. 12, 15

9

10
Castaneda v. Burger King Corp.,
  264 F.R.D. 557 (N.D. Cal. 2009) ................................................................... 13, 15

11
City of Las Vegas v. Foley,
  747 F.2d 1294 (9th Cir. 1984) ............................................................................. 23

12

13
Detoy v. City & County of San Francisco,
  196 F.R.D. 362 (N.D. Cal. 2000) .................................................................... 21, 22

14
Dey, L.P. v. Ivax Pharmaceuticals, Inc.,
  233 F.R.D. 567 (C.D. Cal. 2005) ......................................................................... 12

15

16
El Ranchito, Inc. v. City of Harvey,
  207 F. Supp. 2d 814 (N.D. Ill. 2002) ................................................................... 14

17
Equity Lifestyles Props, Inc. v. County of San Luis Obispo,
  548 F.3d 1184 (9th Cir. 2008) ............................................................................. 23

18

19
Gonzales v. Carhart,
   550 U.S. 124, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007) .................................... 17

20
Hoffman v. Construction Protective Services, Inc.,
  541 F.3d 1175 (9th Cir. 2008) ....................................................................... 12, 13

21

22
Hunt v. Washington State,
  432 U.S. 333, 97 S.Ct. 2435, 53 L.Ed.2d 383 (1977) ........................................ 18

23
King v. Pratt & Whitney,
  161 F.R.D. 475 (S.D. Fla. 1995) .......................................................................... 21

24

25
Kreidler v. Pixler,
  2010 WL 1537058 (W.D. Wash. 2010) ............................................................... 13

26
Lawrence v. Texas,
  539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) .................................... 17

27

28

- ii -

1

## TABLE OF AUTHORITIES (cont.)

Page(s)

Luce v. United States,
  469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) ............................................ 8

McEwen v. City of Norman,
  926 F.2d 1539 (10th Cir. 1991) ................................................................ 8

Overseas Private Inv. Corp. v. Mandelbaum,
  185 F.R.D. 67 (D.D.C. 1999) ................................................................ 21

Planned Parenthood of Southeastern Pa. v. Casey,
  505 U.S. 833, 112 S. Ct. 2791, 120 L.Ed.2d 674 (1992) ................................ 17

Sperberg v. Goodyear Tire & Rubber Co.,
  529 F.2d 708 (6th Cir. 1975) ................................................................ 8

United States v. Heller,
  551 F.3d 1108 (9th Cir. 2009), cert. denied, _ U.S. _, 129 S.Ct. 2419,
  173 L.Ed2d 1323 (2009) ................................................................ 8

United States v. Hooton,
  662 F.2d 628 (9th Cir. 1981) ................................................................ 19

United States v. Ives,
  609 F.2d 930 (9th Cir. 979) ................................................................ 18

United States v. Jackson,
  84 F.3d 1154 (9th Cir. 1996) ................................................................ 23

Washington State Grange v. Washington State Republican Party,
  552 U.S. 442, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) ................................ 17

Witt v. Dep't of the Air Force,
  527 F.3d 806 (9th Cir. 2008) ................................................................ 22

Yeti by Molly Ltd. v. Deckers Outdoor Corp.,
  259 F.3d 1101 (9th Cir. 2001) ................................................................ 12

## FEDERAL STATUTES

10 U.S.C. § 504 ................................................................ 7, 23

## FEDERAL RULES

Fed. R. Civ. P. 26 ................................................................ passim

Fed. R. Civ. P. 37 ................................................................ 9, 12

Fed. R. Evid. 403 ................................................................ 20

LOS ANGELES 870263 v1
(2K)

1

## **LOCAL RULES**

Local Rule 11-3.9.3 ................................................................................... 9

Local Rule 16-2.7 ........................................................................... 20, 25

LOSANGELES 870263 v1
(2K)

**INTRODUCTION**

Defendants' Motion in Limine to Exclude Lay Witness Testimony ("Motion") seeks to exclude testimony from twelve of the fourteen fact witnesses Plaintiff Log Cabin Republicans ("Log Cabin") may introduce at trial. Disregarding the nature of this action, Defendants' Motion asserts that fourteen lay witnesses is an unreasonable number of witnesses to present in this action.

Defendants discount that this action seeks to find unconstitutional a federal law enacted nearly two decades ago that has spanned three Presidential terms and effected the lives of tens of thousands of servicemembers, civilians, and government officials.  Log Cabin has narrowly determined that nine of these people – six former servicemembers and three government witnesses – can provide relevant testimony crucial to its presentation.  Four other witnesses are necessary to rebut Defendants' challenge to Log Cabin's standing to bring this case.  Log Cabin's limited list of lay witnesses is reasonable under the circumstances.[1]

Defendants also discount the practical impact "Don't Ask, Don't Tell" ("DADT") has on the servicemembers it affects.  Defendants' Motion claims that testimony of *"six* former service members" – out of the roughly 14,000 people discharged under DADT and the thousands of others that have been impacted by it – constitutes a "needless presentation of cumulative evidence."  Motion at 12.  In doing so, Defendants imply that DADT affects all individuals similarly, regardless of gender, rank, or military branch, and dismiss the personal experience and unique injury suffered by each person discharged under, or impacted by, DADT.  Each witness will provide different testimony relevant to Log Cabin's claims.

For the reasons shown below, the inclusion of all of Log Cabin's proposed lay witnesses is appropriate.  The Court should deny Defendants' Motion.

---

[1] Indeed, in the recent trial concerning the constitutionality of Proposition 8's amendment prohibiting same-sex marriage, enacted less than two years ago, plaintiffs called eight lay witnesses.

- 1 -

1

## **FACTUAL BACKGROUND**

2
3
4
5
6

This action is a facial constitutional challenge to DADT.  At trial, Log Cabin intends to rely on testimony from three categories of lay witnesses: (1) former servicemembers impacted by DADT ("Former Servicemembers"); (2) Log Cabin representatives who will establish standing ("Log Cabin Representatives"); and (3) Defendants' 30(b)(6) witnesses.

7
8
9
10
11
12
13
14
15
16
17
18
19
20

After the Court stated its inclination to apply the <u>Witt</u> standard to this case at the April 26, 2010, hearing on Defendants' motion summary judgment, Log Cabin's counsel recognized the importance of introducing fact witnesses to demonstrate the practical effect and enforcement of DADT.  Declaration of Melanie Scott ("Scott Decl."), ¶ 2. Thus, on May 5, 2010, Log Cabin's counsel reached out to Lt. Jenny L. Kopfstein, SSgt. Anthony Loverde, and P03 Joseph Christopher Rocha to potentially serve as witnesses.  <u>Id</u>. at ¶ 4.  Log Cabins' counsel had previously spoken briefly with Major Mike Almy and Sgt. Stephen Vossler in early April 2010, and then contacted them again after the April 26 hearing.  <u>Id</u>. at ¶ 3. On May 17, 2010, Log Cabin's counsel emailed Defendants' counsel to inform them of Log Cabin's intent to call at trial the Former Servicemembers.  <u>Id</u>. at ¶ 5; Motion, Attchmt. 3.  At that time, Log Cabin's counsel offered to make the witnesses available for deposition.  <u>Id</u>. at ¶ 6.; Motion, Attchmt. 3.  Defendants declined the offer of discovery.  <u>Id</u>.

21
22
23

Each Former Servicemember will provide important, relevant testimony about his or her own individual, experiences to show that DADT does not further, and in fact harms, its stated purpose of preserving unit cohesion and troop morale:

24
25
26
27
28

<u>Major Michael Almy</u>: During Almy's 18 years of service with the Air Force (five years as a reservist and 13 years on active duty), he served in the Middle East and obtained numerous awards, including the 2004 Lieutenant General Leo Marquez Award in the field grade officer category for electronic maintenance, an award presented to maintainers who have demonstrated the highest degree of

- 2 -

1    sustained job performance, job knowledge, job efficiency, and results in the

2    categories of aircraft, munitions and missile, and communications-electronics

3    maintenance. As a result of the Award, Almy was regarded as the top Air Force

4    Communications Officer in Europe and obtained the rank of Major.

5        Almy was discharged from the military after a search conducted on an Air

6    Force computer revealed his personal emails.  The removal of Almy from his

7    leadership position resulted in tremendous disruption to his unit and a loss of unit

8    cohesion.  Almy was replaced with a junior officer with neither the training nor

9    expertise Almy possessed.  A year after he was removed from his duties, Almy's

10   Wing Commander recommended that he be promoted to Lieutenant Colonel.

11       Lt. Jenny L. Kopfstein: Kopfstein, a U.S. Naval Academy graduate, served

12   openly as lesbian throughout two deployments.  Admitting her sexual orientation to

13   others did not harm Kopfstein's job performance. To the contrary, during her

14   deployment and in the months following that deployment, Kopfstein continued to

15   display a high degree of competence, professionalism, and excellence. The Navy

16   recognized this, and gave Kopfstein several awards and honors.  In 2002, her

17   commanding officer wrote in her Fitness Report that her "sexual orientation has not

18   disrupted good order and discipline onboard U.S.S. Shiloh."

19       After her second deployment, Kopfstein was promoted to the rank of

20   Lieutenant Junior Grade (O-2).  Nineteen months after Kopfstein first disclosed she

21   was homosexual, a Board of Inquiry convened and voted to discharge her,

22   disregarding testimony from two Captains who knew she was homosexual and

23   believed she was an excellent officer who should remain in the Navy.

24       SSgt. Anthony Loverde: Loverde served as an active member of the Air

25   Force for seven years, during which time he was promoted to Staff Sergeant.

26   During his deployment in Kuwait, Loverde flew sixty-one combat missions into

27   Iraq.  During many of those missions, Loverde faced small arms fire, surface to air

28   missiles, and inclement weather.  Loverde was awarded two Air Medals as a result

- 3 -

1  of the missions.  While serving in Kuwait and Iraq, Loverde endured constant

2  harassment by his supervisor, who repeatedly made homophobic remarks to him

3  and his unit.  Although Loverde strongly desired to vocally defend his concealed

4  sexuality, he repeatedly resisted the urge to do so to protect his career.

5  After returning from deployment,  Loverde decided he could no longer

6  conceal his sexuality.  After he came out, members of his command told him they

7  had known he was homosexual and several members apologized for making

8  homophobic comments.  One servicemember told him that Loverde had changed

9  the way he viewed homosexuals and that he would be honored to be deployed with

10  him at any time.  Even though all of Loverde's supervisors from the ranks of Major

11  Sergeant (E-7) to Chief Master Sergeant (E-9) wrote character reference letters that

12  requested his retention, Loverde was relieved of his flying duties in April 2008.

13  During the months that Loverde served openly, he made sure everybody knew he

14  was homosexual and was being forced to leave the Air Force because of that status.

15  During this time, no servicemembers approached Loverde to tell him they had a

16  problem with his homosexuality

17  <u>John Alexander Nicholson</u>[2]: Nicholson, a trained human intelligence

18  collector proficient in four languages, was discharged from the Army after someone

19  intercepted a personal letter from him to another man in Portuguese and revealed

20  the contents of the letter.  Rather than face investigation and a potential less-than-

21  honorable discharge, Nicholson acknowledged his sexual orientation officially and

22  was discharged from the Army in March 2002.

23  <u>PO3 Joseph Christopher Rocha</u>: Rocha, a Navy veteran, served 28 months in

24  the Middle East training and utilizing dogs to keep explosives, narcotics, and

25  insurgents out of Iraq and Afghanistan.  While in the Middle East, Rocha was

26  subject to continual, severe harassment and repeated questions concerning his

27
28  [2] If Defendants continue to challenge Log Cabin's standing, Nicholson, a Log Cabin member, will also provide testimony to establish standing.  Defendants' Motion states that they do not move to exclude his testimony on this issue.

- 4 -

sexuality.  Among other abuses, Rocha was: (1) hosed down in full uniform, (2) tied to a chair, fed dog food and left in a kennel with feces, (3) spanked for his birthday, and (4) forced to kneel before dogs and tell them he was not worthy.

After being selected to attend the U.S. Naval Academy Preparatory School, Rocha realized that DADT has endangered him in the past and would continue to do so in the future.  DADT prevented him from admitting he was homosexual and standing up for himself.  Rocha issued a statement acknowledging his sexuality and resigning from the military, thereby surrendering his dream of graduating from the Naval Academy.  Rocha's commanding officer urged him to withdraw his resignation and attend the Naval Academy despite knowing he was homosexual.

Sgt. Stephen J. Vossler:  Vossler is a straight man from rural Nebraska who served as an active duty member of the Army from June 2001 to June 2006.  During Vossler's training as a Korean language cryptologic linguist at the Defense Language Institute, he shared a room with a homosexual soldier in the process of being discharged under DADT.  During his training, Vossler also developed a close friendship with a colleague in his unit, Jarrod Chlapowski, a decorated and accomplished member of the Armed Forces that Vossler later learned was homosexual.  Vossler quickly developed a great sense of respect for Chlapowski because he was honest with Vossler about his sexual orientation.  Vossler served with Chlapowski at several bases in the U.S. and in the Republic of Korea and witnessed firsthand that his friend's presence did not affect unit cohesion or morale.

Defendants also seek to exclude the testimony of Log Cabin Representatives, including Craig Engle[3], Jamie Ensley, President of Log Cabin's Georgia Chapter, and C. Martin Meekins, a former Log Cabin board member and outside counsel.  Each of these witnesses is necessary only to the extent Defendants continue to challenge Log Cabin's standing.  For example, Ensley will testify that he awarded

---

[3] The parties reached an agreement under which Log Cabin will remove Engle from its witness list in exchange for Defendants' stipulation to the authenticity and admissibility of Log Cabin's bylaws, attached as an exhibit to Engle's declaration.

PLAINTIFF'S OPPOSITION TO MOTION *IN LIMINE*
TO EXCLUDE LAY WITNESS TESTIMONY

Nicholson honorary Log Cabin membership, and Meekins will testify that he accepted Lt. Col. John Doe's membership fees anonymously to avoid Lt. Col. Doe's identification as a homosexual and the threat of discharge from the military.

Finally, Defendants seek to exclude the deposition testimony of its own 30(b)(6) witnesses: (1) Lt. Col. Jamie Scott Brady; (2) Dennis Drogo; and (3) Dr. Paul Gade.  Each 30(b)(6) witness provides relevant, admissible testimony:

Lt. Col. Jamie Scott Brady: Brady has served in the Air Force for 21 years and is currently the Assistant Director of Assignments, Separations, and Evacuation policies for the office of the Secretary of Defense, Personnel and Readiness. Motion, Attchmt. 7 at 6.  Brady testified that between 1997 and 2008, the percentage of women discharged under DADT ranged from 22.4% to 38.11% of total discharges, although women comprise only 14% of servicemembers in the U.S. military.  Id. at 22-29.  He further testified that the government has not done any study to determine why a higher percentage of women are discharged under DADT.  Id. at 30.  Brady also testified that non-combat personnel, such as chaplains, engineers, lawyers, doctors, and translators, are discharged under DADT, yet he was aware of no studies conducted that show the application of DADT to non-combat personnel furthers the purposes of DADT.  Id. at 57-61, 71-84.

In addition, Brady testified about the Army Reserves' FORSCOM handbook, which provides that, even if a commander has received information that a reserve may be subject to separation under DADT, has evaluated that information and decided it is credible, and has appointed an inquiry officer, the member under investigation will enter active duty if his or her unit receives a deployment alert notification prior to the commander issuing a discharge order.  Id. at 138-152.

Dennis Drogo:  Drago, who was with the Air Force for 26 years and has since served as a civilian employee as Assistant Director of the Office of the Undersecretary of Defense for Personnel and Readiness, testified on the subject of felony waivers.  Motion, Attchmt. 8.  Drago testified that the armed forces can

- 6 -

1   accept enlistees with criminal records.  Id. at 16-17.  The military gives waivers to

2   individuals with, among other offenses: (1) four non-traffic offenses and one

3   offense classified as "misconduct" (Id.); (2) two "misconducts" (Id.); and, (3) one

4   or more "major misconducts," including murder, arson, rape, armed robbery, and

5   burglary (Id. at 23-24).  Individuals who have committed such offenses can and do

6   obtain waivers and become members of the armed forces.  See 10 U.S.C. § 504;

7   Depo. of Dennis Drago, Ex. 66 (Directive Memorandum 08-018).

8           Drago admitted there is no study showing the impact of enlisting convicted

9   felons on unit cohesion or troop morale.  Motion, Attchmt. 8 at 29-30.  Drago also

10  admitted that, in considering applications for waivers, the military looks at the

11  "whole person" in deciding whether to allow the individual to enlist but does not

12  use the "whole person" concept in deciding whether to allow a homosexual to

13  enlist.  Id. at 34-39.

14          Dr. Paul Gade:  Gade, who has worked for the Army Research Institute for

15  the Behavioral and Social Sciences for 35 years, testified on the government's

16  research concerning foreign militaries and homosexual military service.  Gade

17  testified that the most useful current information on homosexuals in the military

18  comes from the experience of other Western nations.  Motion, Attchmt. 9 at 66-67.

19  Gade also testified as to the existence, before DADT was enacted, of studies

20  showing that several nations that allowed homosexual members to serve openly had

21  encountered no problems in the functioning of military units.  Id at 25-33.  Further,

22  since enactment of DADT, he cannot identify any country that has adopted a ban on

23  homosexual service and can identify several, e.g., the United Kingdom, who have

24  lifted prior bans.  Id. at 63-64.  In those countries, lifting the ban was a non-event;

25  various predicted negative consequences (e.g. decreased enlistment and resignation

26  of heterosexual members) never materialized.  Id. at 39-42.  Gade believes DADT

27  can be repealed successfully if military leaders supports the change and homosexual

28  servicemembers are discrete.  Id. at 76-78.  He also stated that a sentence in the

- 7 -

Senate Armed Service Committees' comments to the DADT legislation that "there is little actual experience in foreign nations with open homosexuality in military service" was untrue at the time it was written. Id. at 112-14.

## THE COURT SHOULD DENY DEFENDANTS' MOTION

### I.    Defendants' Compound Motion is Procedurally Improper

Defendants' Motion to exclude all of Log Cabin's lay witnesses is procedurally improper, particularly in the context of this bench trial. A motion in limine is a motion "to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40, 105 S.Ct. 460, 462 n. 2 83 L.Ed. 2d 443 (1984). Its purpose is to avoid the obviously futile attempt to "unring the bell" when highly prejudicial evidence is offered at trial. McEwen v. City of Norman, 926 F.2d 1539, 1548 (10th Cir. 1991). These principles do not apply with the same force in a court trial, as this Court is able to determine the weight of relevant evidence and discount inadmissible evidence. United States v. Heller, 551 F.3d 1108, 1111-12 (9th Cir. 2009), cert. denied, __ U.S. __, 129 S.Ct. 2419, 173 L.Ed.2d 1323 (2009).

Moreover, Defendants' Motion, which seeks to broadly and categorically exclude all lay witnesses, is improper. Because of the specific nature of a motion in limine, orders granting motions "which exclude broad categories of evidence should rarely be employed" and the better practice "is to deal with questions of admissibility of evidence as they arise." Sperberg v. Goodyear Tire & Rubber Co., 529 F.2d 708, 712 (6th Cir. 1975). Nevertheless, Defendants attempt to broadly exclude all lay witness testimony on the merits of this case, all testimony of the 30(b)(6) witnesses as individuals, and all testimony on post-enactment research and developments, moral waivers for convicted felons, and the experience of foreign militaries. It is more appropriate, and will be more efficient, for the Court to

- 8 -

1    resolve each evidentiary issue if, and when, it arises.[4]

2    II.    **Log Cabin Properly Disclosed the Identities of Its Lay Witnesses**

3         Defendants argue: (1) Log Cabin violated Rule 26(a) and (e) by not timely

4    disclosing the identity of its facts witnesses; and, (2) the Court should exclude Log

5    Cabin's witnesses pursuant to Rule 37(c)(1).  Motion at 6-8.  Neither argument is

6    persuasive – Log Cabin did not violate Rule 26 and, even if it did, exclusion under

7    Rule 37 is not appropriate.

8         A.    **Log Cabin Complied with Rule 26**

9         Rule 26(a) only requires the identification of individuals with information

10   relevant to a party's claims that are known to the party at the time of disclosure.

11   Fed. R. Civ. P. 26(a), (e); <u>Brighton Collectibles v. Marc Chantal USA, Inc.</u>, 2008

12   WL 40010066, at *2 (S.D. Cal. 2008).  Under Rule 26(e), a party must supplement

13   disclosures "in a timely manner if the party learns that in some material respect the

14   disclosure or response is incomplete or incorrect, and if the additional or corrective

15   information <u>has not otherwise been made known</u> to the other parties during the

16   discovery process or in writing."  Fed. R. Civ. P. 26(e) (emphasis added).

17   ─────────────
     [4] Further, Defendants' failure to comply with the local rules or this Court's Order
18   dated June 3, 2010, which limits the parties to three motions in limine, is standard
     practice for them.  At the November 16, 2009 hearing, the Court addressed
19   Defendants' failure to meet and confer and told Defendants: "I expect in the future in
     this case to have full compliance with the spirit as well as the letter of the Local Rule
20   about meet and confer."  Tr. of Oral Argument Nov. 16, 2009 at 21:4-6.  Despite the
     Court's admonition, Defendants continue to disregard the Local Rules.  <u>See</u> Opp. to
21   Mot. for Summ. J. at 3, n.2 (explaining how Defendants' Motion for Summary
     Judgment violated Local Rules 56 and 11, and subparts thereto).  In addition,
22   Defendants' Supplemental Brief filed on June 9, 2010 (Dkt. no. 172) squeezed
     inside the page limit by omitting parallel citations to Supreme Court cases, which
23   are required by Local Rule 11-3.9.3.  Further, their moving and reply papers in
     support of their motion for summary judgment used impermissibly small font size
24   in footnotes to squeeze in more words.  One of Defendants' motions in limine does
     not include a required table of contents.  And now, true to form, Defendants cram
25   an extra motion into their already bloated motions in limine.  In their letter dated
     May 18, 2010, Defendants indicated that they will file <u>at least four</u> motions in
26   limine to exclude Log Cabin's: (1) exhibits; (2) experts; (3) deposition
     designations; and (4) allegedly late disclosed lay witnesses.  Evidently, Defendants
27   could not comply substantively with the Court's three motion limit, so instead they
     overfilled each motion to circumvent the Court's Order.  Defendants continue to
28   blatantly flaunt their disregard for this Court's rules despite the Court's warning to
     the contrary.

The advisory committee notes to Rule 26(e) explain, "there is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." Fed. R. Civ. P. 26(e) advisory. comm. nn. (West 1993); <u>Benson v. Tocco, Inc.</u>, 113 F.3d 1203, 1208 (11th Cir. 1997) (finding the district court abused its discretion in striking an expert witness affidavit where plaintiffs had informed defendants at the time of initial disclosures that they had not yet decided to use an expert, subsequently served discovery requests to obtain information needed for an expert evaluation, and notified defendants of the expert they intended to use); <u>Brighton Collectibles</u>, 2008 WL 40010066, at *3 (holding fact witnesses should not be excluded from trial because, even though they were not identified in plaintiff's initial disclosures, their identities were disclosed during a deposition).

### 1.    The Former Servicemembers

Here, Log Cabin's December 9, 2009 Rule 26 disclosure stated: "The following individuals or categories of individuals may have discoverable information that LCR may use to support its claims or defenses in this action . . . (6) Former service members who have been discharged from the military under DADT." Motion, Attchmt. 1, p.1. In addition, Log Cabin's March 18, 2010 interrogatory responses informed Defendants, "Every member of the United States Armed Services who has been discharged under the DADT Policy, and every member of the United States Armed Services who fears his or her discharge, who fears the discharge of a comrade, or who desires the discharge of another under the DADT Policy, has information relating to the Policy, its implementation, its consequences, and its irrationality." Motion, Attchmt. 2, p. 4. Thus, Log Cabin properly disclosed to Defendants that former and current servicemembers had information relating to DADT. Defendants did not press Log Cabin to be any more specific, consistent with their view that no evidence other than the 1993 legislative

- 10 -

1 history is admissible.

2      Further, Log Cabin timely disclosed the names of the specific Former

3 Servicemembers in a timely manner in compliance with Rule 26(e).  Defendants

4 argue that Log Cabin violated Rule 26 because it did not identify the Former

5 Servicemembers by name until May 17, 2010.  Motion at 7.  However, Log Cabin

6 could not have identified these witnesses by name until Log Cabin itself had spoken

7 with and identified the Former Servicemembers with information relevant to its

8 claims.  As explained above, Log Cabin did not decide to rely on lay witness

9 testimony until after the April 26 hearing.  Log Cabin's counsel informed

10 Defendants of the Former Servicemembers' names soon after counsel themselves

11 determined the identities of the fact witnesses on which it intended to rely.  Log

12 Cabin thus met its obligation under Rule 26(e) of making supplemental information

13 known to defendants in a timely manner.

14      2.    The Log Cabin Representatives

15      Defendants also seek to exclude the testimony of Ensley and Meekins

16 because they were never identified under Rule 26(a) or in response to Defendants'

17 interrogatories.  Motion at 8.  However, the Court already ruled on this issue in its

18 May 27 Order.  The Court denied Defendants' Motion to strike the declaration of

19 Meekins because "Rule 26(a) only requires a party to disclose the identity of

20 persons 'the disclosing party may use to support its claims or defenses,'"  May 27

21 Order at 7 (citing Fed. R. Civ. P. 26(a)(1)(A)(i)). The Court held:

22      The Meekins Declaration is offered solely to rebut
       Defendants' challenge to Plaintiff's standing to bring this
23      lawsuit, by establishing Lt. Col. Doe's membership in
       Plaintiff's organization at the time the action commenced.
24      Mr. Meekins does not offer any testimony relating to the
       merits of Plaintiff's claims for relief.  Accordingly,
25      disclosure of Mr. Meekins' identity was not required by
       Rule 26(a). Defendants have pointed to no written
26      discovery request they propounded upon Plaintiff that
       would have called for identification of Mr. Meekins.
27      Plaintiff thus was not obligated to disclose Mr. Meekins'
       identity during discovery.

28

- 11 -

1   May 27 Order at 7-8.

2          While Defendants did not seek to strike the Ensley Declaration also filed in

3   support of Log Cabin's opposition, and thus the Court had no opportunity to rule on

4   whether Ensley's identity should have been disclosed, the same reasoning applies to

5   Ensley's testimony.  Log Cabin will offer Ensley's testimony "solely to rebut

6   Defendants' challenge to Plaintiff's standing to bring this lawsuit."  Id.  Because

7   Ensley will not offer any testimony relating the merits of Log Cabin's claims,

8   disclosure of his identity was not required under Rule 26(a).

9          **B.     Any Delay in Disclosure of Lay Witnesses Was Substantially**
              **Justified and Harmless**
10

11         Even if Log Cabin had failed to identify the Former Servicemembers in

12  violation of Rule 26, and it did not, exclusion of the witnesses is not appropriate.

13  Under Rule 37(c)(1), the Court may (but is not required to) exclude testimony of

14  witnesses that a party failed to identify in accordance with Rule 26(a) and (e),

15  unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1),

16  adv. comm. nn. (2000) ("Even if the failure [to comply with Rule 26(e)(2)] was not

17  substantially justified, a party should be allowed to use the material that was not

18  disclosed if the lack of earlier notice was harmless.");  Yeti by Molly Ltd. v.

19  Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  The district court has

20  "particularly wide latitude" in its "decision to issue sanctions under Rule 37(c)(1)."

21  Hoffman v. Construction Protective Services, Inc., 541 F.3d 1175, 1178 (9th Cir.

22  2008).

23         In determining if delayed disclosure is "substantially justified" or "harmless,"

24  the Court may consider: (1) prejudice or surprise to the party against whom the

25  evidence would be offered; (2) the ability of that party to cure the surprise; (3) the

26  extent to which allowing the evidence would disrupt the trial; (4) the importance of

27  the evidence; and (5) the non-disclosing party's explanation for its failure to

28  disclose the evidence.   Dey, L.P. v. Ivax Pharmaceuticals, Inc., 233 F.R.D. 567,

- 12 -

571 (C.D. Cal. 2005); <u>Burrows v. Orchid Island TRS, LLC</u>, 2010 WL 217908, at *1 (S.D. Cal. 2010).

### 1. The Former Servicemembers

To the extent Log Cabin's disclosure of the Former Servicemembers was late, the late disclosure was both substantially justified and harmless. First, there is no prejudice or surprise to Defendants. Defendants have known that Log Cabin was considering introducing testimony of former servicemembers since it filed its initial disclosures and served its discovery responses, and it has known the specific identity of such witnesses for over a month now. <u>Kreidler v. Pixler</u>, 2010 WL 1537058, at *1 (W.D. Wash. 2010) (finding that defendant's failure to disclose bankruptcy-related witnesses was harmless because plaintiff was "aware of the bankruptcy proceedings and related issues since the inception of this lawsuit"); <u>Castaneda v. Burger King Corp.</u>, 264 F.R.D. 557, 566 (N.D. Cal. 2009) (finding no harm in plaintiffs' late disclosure of fact witnesses where plaintiffs were not late in disclosing the substance of the potential witnesses' testimony, only their contact information). <u>Cf</u>. <u>Hoffman</u>, 541 F.3d at 1178 (finding plaintiff's failure to disclose its damages computation was not harmless because disclosure would have likely required the court to create a new briefing schedule and re-open discovery).

Moreover, all of these witnesses are former employees of the government, each of them has been involved publicly in the debate on DADT, and their positions and stories are well known to Defendants. Indeed, Kopfstein and Almy have both testified before the Senate Armed Service Committee regarding DADT. Rocha sent a public letter to the President on May 3, 2010, telling his story and urging repeal of DADT. He also published an article in the Washington Post in October 2009 detailing the abuse he suffered during deployment in Bahrain as a result of DADT. Congress is acutely familiar with Rocha's background, as Rep. Joe Sestak himself asked the Navy to look into what happened in Bahrain.

Likewise, Loverde sent a public letter to the President on May 4, 2010

- 13 -

PLAINTIFF'S OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE LAY WITNESS TESTIMONY

1   concerning DADT and published an article in the Washington Post on February 7,

2   2010 concerning his experiences under DADT.  Vossler is an active advocate

3   associated with Voices of Honor, the Human Rights Campaign's movement to

4   speak out against DADT.  He has spoken publically concerning his experiences

5   with the policy, and his story has been sent to Congress through the HRC.  In

6   addition, Vossler was the subject of a documentary concerning DADT and

7   numerous newspapers and journals throughout the country have published his story.

8       In other words, all five witnesses are active players in the debate on DADT

9   and their trial testimony should not be a surprise to Defendants.  See El Ranchito,

10  Inc. v. City of Harvey, 207 F. Supp. 2d 814, 818 (N.D. Ill. 2002) – (finding,

11  although nondisclosure of fact witnesses "was careless," it was not harmless

12  because the witnesses were not "surprise witnesses" since they were known to

13  defendants and available and obvious subjects for depositions).

14      Second, even if the inclusion of the Former Servicemembers was surprising

15  to the government, such surprise is curable.  Indeed, Defendants will have the

16  opportunity to cross examine each witness at trail.  Moreover, in an email on May

17  20, Log Cabin's counsel stated it had no objection to depositions of the fact

18  witnesses.  Motion, Attchmt. 3.  Rather than accepting Log Cabin's offer and taking

19  the witnesses' depositions, Defendants filed this motion in limine seeking to

20  exclude their testimony.  Defendants now claim they "should not be pressed into

21  taking six depositions while attempting to prepare for trial," ignoring that Log

22  Cabin gave them at least two months to take the depositions.  Defendants cannot

23  seriously argue that the Department of Justice is not capable of taking five

24  depositions in two months.  Indeed, Defendants had seven lawyers present to

25  defend the 30(b)(6) depositions.

26      Defendants' gambled by not taking advantage of offered discovery and their

27  choice is not grounds for excluding important testimony.  Even absent a deposition,

28  Defendants will have the benefit of declarations from each of Former

- 14 -

Servicemember filed on June 23, 2010, in support of Log Cabin's supplemental briefing on the <u>Witt</u> standard, as well as summaries of the witnesses' experiences presented in the Findings of Fact and Conclusions of Law.  Defendants also have in their possession each of the witness's service records.

Third, the Former Servicemembers' testimony will not disrupt the bench trial.  The Court is capable of determining the relative admissibility and relevance of each witness's testimony.  Further, at least one court has found that "late disclosure of fact witness testimony" has less "possibility of harm" than violation of the Rule 26 expert witness disclosure.  <u>Castaneda</u>, 264 F.R.D. at 566.

Fourth, the Former Servicemembers will provide important firsthand testimony concerning the practical effects of DADT on servicemembers and the military.  Each witness will provide firsthand evidence of his or her own unique experience in the military to show that DADT does not further its stated purpose of preserving unit cohesion and troop morale.

Fifth, Log Cabin was substantially justified in not disclosing the names of the Former Servicemembers to the government until May 17, 2010.  As explained above, Log Cabin did not know the specific identity of these witnesses until soon before it disclosed such information to Defendants.  Any delay in disclosing the names of the Former Servicemembers was not prejudicial to Defendants.  <u>See</u> <u>Burrows</u>, 2010 WL 2179108, at * 1 (holding that "[b]ased on the very short delay in disclosing these documents . . . the Court finds little if any prejudice or surprise to Plaintiff, no disruption in the trial, and no bad faith or willfulness involved).

Each factor indicates that any perceived delay in disclosing the names of the Former Servicemembers was substantially justified and, in any event, harmless.

### 2.    The LCR Representatives

The Court has already established that "substantial justification exists for Plaintiff's failure to disclose Mr. Meekins identity during discovery."  May 27 Order at 8.  The Court found that while Defendants had the Doe Declaration in their

- 15 -

possession since June 11, 2007, and knew that Log Cabin sought to use Lt. Col. Doe's membership to establish standing, they never challenged the timing of his membership in Log Cabin.  Id.  Based on Defendants' silence, Log Cabin reasonably believed that the timing of Lt. Col. Doe's membership was not in dispute.  Id.  "Plaintiff thus would have had no reason to seek out additional evidence of the date on which Lt. Col. Doe joined Plaintiff organization, let alone disclose such evidence."  Id.

This same reasoning applies to the testimony of Engle, which Log Cabin recognized was necessary only when the timing of Nicholson's membership in Log Cabin became an issue.  Thus, because Log Cabin had no reason to seek out, let alone disclose, evidence concerning the date on which Lt. Col. Doe and Nicholson joined Log Cabin until the issue arose, Log Cabin was substantially justified in not disclosing Meekins' and Engle's identity during discovery.

III.   **<u>Defendants' Request to Exclude All Contemplated Testimony Is Procedurally and Substantively Improper</u>**

As with Defendants' other motions in limine, Defendants claim that all contemplated lay witness testimony on the merits should be excluded in this facial challenge, regardless of the standard of review.  Id. at 8.  Log Cabin has briefed this issue numerous times now in its opposition to Defendants' motion for summary judgment, supplemental briefing on the applicability of the Witt standard, memorandum of contentions of law and fact, findings of fact and conclusions of law, as well as the oppositions to the other motions in limine.

Defendants claim that evidence concerning the circumstances surrounding the discharges of the Former Servicemembers is specifically inappropriate because testimony "regarding how a statute has been ***applied*** is patently irrelevant and inappropriate in ***facial*** challenge."  Motion at 11.  Importantly, the Former Servicemembers are not testifying here to challenge their individual discharges under DADT.  Rather, their testimony will show that in their experience, DADT did

- 16 -

1   not further unit cohesion and troop morale and, in fact, harmed both.

2       The Former Servicemembers' testimony will provide evidence of the

3   practical impact of DADT, evidence which the Supreme Court has found relevant

4   in a facial challenge.  For example, in Lawrence, the Court examined the evolution

5   of sodomy laws throughout the United States and the pattern of practical and actual

6   enforcement of such laws since the Bowers decision.  Lawrence v. Texas, 539 U.S.

7   558, 570-73, 576-77, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003)  Likewise, in

8   Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 886-888, 112 S.

9   Ct. 2791, 120 L.Ed.2d 674 (1992), the Court considered, among other things, the

10  practical effect of an abortion law requiring a 24-hour waiting period, including the

11  distances many women would have to travel, the exposure of women to harassment,

12  and the effect on low-income women.

13      The cases cited by Defendants do not prohibit the Court from considering the

14  practical impact of a law.  Those cases involved a pre-enforcement challenge where

15  no evidence of a law's impact could be introduced because the law had not yet been

16  enforced.  See Gonzales v. Carhart, 550 U.S. 124, 126, 127 S.Ct. 1610, 167 L.Ed.2d

17  480 (2007) (finding respondents' arguments concerning arbitrary enforcement

18  speculative because there was not yet evidence to indicate whether the act would be

19  enforced in a discriminatory manner).

20      In Washington State Grange v. Washington State Republican Party, 552 U.S.

21  442, 444, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008), plaintiffs sought to strike down

22  an initiative regarding the identification of candidates' parties on ballots.  Because

23  plaintiffs brought their suit before the initiative was implemented, the Court "had

24  no evidentiary record against which to assess [plaintiffs'] assertions that voters will

25  be confused" and had no ballots to consider.  Id. at 455.  The Court discussed

26  "hypothetical" ballots that would not be confusing and ways the state could educate

27  voters.  Id. at 456.  Further, it relied on evidence that 90% of voters vote by mail.

28  Id. at n.8.  Here, DADT has been in effect since 1993, and the Court need not

- 17 -

1    speculate about "hypothetical" or "imaginary" cases.  Rather, the Court has the

2    advantage of nearly seventeen years of evidence of DADT's practical impact.

3         Finally, Defendants' argument that Log Cabin's desire to offer lay witness

4    testimony indicates a lack of associational standing is a red herring and an improper

5    attempt to misconstrue the law.  The case relied on by Defendants, <u>Hunt v.</u>

6    <u>Washington State</u>, 432 U.S. 333, 343, 97 S.Ct. 2435, 53 L.Ed.2d 383 (1977), states

7    only that an organization seeking associational standing must demonstrate that its

8    claims and relief requested do not require the participation of individual members

9    of the organization.  Nothing in that case, or any other case cited by Defendants,

10   states that a party with associational standing cannot rely on its members or other

11   lay witnesses to provide relevant testimony in support of its claims.

12   IV.   **Log Cabin Is Entitled to Present Testimony of Six Out of the Thousands**

13   **of Unique Individuals Discharged Under, or Impacted by, DADT**

14        Log Cabin intends to introduce the testimony of six Former Servicemembers,

15   each of which served in different branches of the military in different capacities and

16   in different units.  Each Former Servicemember has a unique story concerning his

17   or her personal experiences in the military and the way in which DADT impacted

18   the member and his or her unit.  Each Former Servicemember's testimony will

19   show that, in his or her individual case, DADT did not further its stated purpose.

20        Disregarding the unique experiences of each person impacted by DADT,

21   Defendants argue "there is no conceivable reason why the Court would need to hear

22   the stories of six discharged service members" and "such a parade of

23   servicemembers would be a paradigm of the 'needless presentation of cumulative

24   evidence.'"  Motion at 12-13.  Defendants claim that, to the extent the Court allows

25   any of the lay witnesses to testify, one witness's testimony is sufficient.  <u>Id.</u> at 13.

26        Importantly, Defendants do not explain why the testimony of the Former

27   Servicemembers will be cumulative.[5]  Apparently Defendants' only basis for

28   _____

[5] Indeed, the cases cited by Defendants support a finding that the testimony of the

- 18 -

PLAINTIFF'S OPPOSITION TO MOTION *IN LIMINE*
TO EXCLUDE LAY WITNESS TESTIMONY

1   making such a claim is that five of the six former servicemembers are homosexual

2   and were separated from or left the military because of DADT.  Defendants'

3   position reflects the problems with DADT in the first place.  It assumes that all

4   homosexuals are the same and that all servicemembers are impacted by DADT

5   equally.  But the evidence indicates this is untrue.

6          Indeed, the testimony of the six Former Servicemembers will show each

7   member's sexuality was known to his or her unit at varying degrees and each

8   witness received different feedback regarding the member's homosexuality.  For

9   example, Loverde's unit knew he was homosexual throughout his service, and

10  Kopfstein served openly through two deployments.  Almy's and Kopfstein's

11  superiors recommended promotions even after learning that they were homosexual.

12  Rocha experienced severe abuse in the military as a result of his hidden sexuality.

13  Nicholson made the decision to admit his sexuality only to avoid investigation of

14  his personal life and a less-than-honorable discharge.  Vossler experienced firsthand

15  that knowledge of a member's homosexuality did not impact cohesion or morale.

16         These Former Servicemembers represent just a few of the 14,000 individuals

17  that lost their military careers as a result of DADT and the thousands more that

18  have witnessed the damaging effects of the policy.  It is not "inconceivable" that

19  these six out of thousands of servicemembers will have beneficial testimony

20  relevant to Log Cabin's case.

21  V.     **The Testimony of the 30(b)(6) Witnesses Is Relevant and Admissible**

22         A.     **The Designated Testimony Is Admissible**

23         Defendants argue that testimony of the 30(b)(6) Witnesses is inadmissible to

24

25  Former Servicemembers will not be cumulative.  In United States v. Ives, 609 F.2d
    930, 933 (9th Cir. 979), the Ninth Circuit held that the admission of multiple
26  medical records was appropriate because "[c]onsiderations of delay do not
    substantially outweigh the probative value of the excluded evidence."  In United
27  States v. Hooton, 662 F.2d 628, 635-36 (9th Cir. 1981) the Court affirmed the
    district court's exclusion of certain testimony regarding the nature of gun collecting
28  where "defense counsel did elicit extensive testimony from approximately twenty
    prosecution and defense witnesses concerning the activity of gun collectors."

PLAINTIFF'S OPPOSITION TO MOTION *IN LIMINE*
TO EXCLUDE LAY WITNESS TESTIMONY

1  the extent it concerns issues outside the scope of those topics designated in the

2  deposition notice, and thus represents the personal view of the witnesses.  Motion at

3  13-15.  Defendants again misconstrue the law.

4      As an initial matter, a motion in limine is not the proper means to resolve

5  objections to deposition testimony evidence.  In accordance with Local Rule 16-2.7,

6  the parties must lodge with the Court the original transcript identifying in brackets

7  the testimony each party intends to offer, objections to the proffered evidence in the

8  margins, and an index of the portions of the deposition offered, objections, and

9  grounds for the objections.  Local Rule 16-2.7.  Per the Court's Civil Trial Order,

10  the parties should be prepared to discuss "any evidentiary issues, including

11  anticipated objections under Rule 403, and objections to exhibits" at the pretrial

12  conference.  Nothing in the Local Rules or the Civil Trial Order states that

13  objections to designated testimony should be resolved by a motion in limine.

14      Even if Defendants' Motion was the proper forum for resolving disputes

15  concerning whether testimony exceeds the scope of the designated deposition

16  topics, it would be difficult, if not impossible, for the Court to make such a

17  determination from the Motion and attachments.  The Motion lists only two

18  examples of testimony which Defendants claim is outside the scope of the

19  designated topics.  One of these examples – a question directed to Lt. Col. Brady

20  concerning the number of women officers discharged under DADT – plainly falls

21  within the first designated topic, "The application of the Policy to women service

22  members, including . . .(3) the number of women service members discharged

23  under the Policy as a percentage of the total number of discharges."  See Scott

24  Decl., ¶ 7, Ex. A.

25      Indeed, much of the testimony marked by Defendants as being "Personal

26  Testimony" clearly fits within a topic designated in the Log Cabin's deposition

27  notice.  For example, Defendants object to testimony by Drago regarding the

28  number of convicted felons admitted into the armed forces, whether convicted

- 20 -

1    felons can become an officer, and the extent to which the military conducted any

2    studies concerning the effect of convicted felons on unit cohesion.  Motion,

3    Attchmt. 8, at 17-21, 25, 27-29, 41-45.  However, these inquiries fall squarely

4    within the designated topic "The history, consideration, development, creation,

5    authorization, reasons for authorization, adoption, and implementation of each

6    branch of the United States Armed Forces' respective policy regarding moral

7    waivers of prior felony convictions . . . ."  See Scott Decl., ¶ 7, Ex. A.

8        In addition, testimony by Gade concerning reports on foreign militaries and

9    whether such reports support the existence of DADT  (Motion, Attchmt. 9 at 30-31,

10   41-42, 76-77) falls within the designated topic "Reports, studies or analyses

11   conducted by or on behalf of Defendants relating to the experience of the armed

12   forces of nations other than the United States with military service by individuals

13   with a homosexual orientation or by individuals who engage in homosexual

14   conduct, including the consideration or evaluation of such service by foreign stated

15   or their armed forces."  See Scott Decl., ¶ 7, Ex. A.

16       In any event, even if testimony falls outside the scope of the deposition

17   notice, the relevant testimony of the 30(b)(6) witnesses is admissible.  Rule

18   30(b)(6) cannot be used to limit what is asked of a designated witness at a

19   deposition.  Detoy v. City & County of San Francisco, 196 F.R.D. 362, 367 (N.D.

20   Cal. 2000).  The description of the scope of the deposition in a Rule 30(b)(6) notice

21   constitutes "the minimum about which the witnesses must be prepared to testify,

22   not the maximum."  Id. at 366 (citing King v. Pratt & Whitney, 161 F.R.D. 475,

23   476 (S.D. Fla. 1995)).  "Once the witness satisfies the minimum standard, the scope

24   of the deposition is determined solely by relevance under Rule 26, that is, that the

25   evidence sought may lead to the discovery of admissible evidence."  Id. at 367;

26   Overseas Private Inv. Corp. v. Mandelbaum, 185 F.R.D. 67, 68 (D.D.C. 1999)

27   (finding once a corporate defendant produces a witness capable of responding to

28   questions in a 30(b)(6) notice, the scope of inquiry is limited only by Rule

- 21 -

26(b)(1)).

To the extent a question asked during a 30(b)(6) witness exceeds the scope of the designation, the witness's answers are not considered the answers of, and do not bind, the designating party.  <u>Detoy</u>, 196 F.R.D. at 367.  However, relevant testimony of 30(b)(6) witnesses as individuals is admissible, even if it does not bind Defendants.[6]

**B.     The Specific Areas of Inquiry Are Relevant**

1.     <u>Post-Enactment Evidence</u>

Defendants argue that post-enactment research or developments are not admissible because "rational basis review of the statute turns on conditions that existed when the law was enacted."  Motion at 16.  First, Defendants' assumption that traditional rational basis scrutiny applies here is contrary to the May 27 Order wherein the Court stated it "is inclined apply the standard of review set forth in <u>Witt v. Dep't of the Air Force</u>, 527 F.3d 806, 819 (9th Cir. 2008)," under which "the government must advance <u>an important government interest, the intrusion must significantly further that interest, and the intrusion must be necessary to further that interest</u>."  May 27 Order at 26 (emphasis added).  Thus, Defendants' presumption that rational basis review applies here is unfounded.

Moreover, as discussed above, regardless of the standard of review, post-enactment evidence is admissible in a constitutional challenge to show the practical impact of the law and the manner of its enforcement.  Indeed, Defendants motion cites law that "the relevant government interested is determined by . . . the <u>effect</u> of

---

[6] Indeed, Brady's testimony concerning his experiences in shower facilities, which Defendants label his "personal opinion," is probative.  When asked whether serving with homosexual officers from a foreign military would have mattered to him, Brady, the person Defendants designated as most knowledgeable on the majority of the deposition topics and the Assistant Director of Separations, stated, "I would have been just aware of issues, such as if we were going to the showers together or something like that."  Motion, Attchmt. 7 at 251-258.  Brady admitted that he used private shower stalls while in Iraq but stated he would be concerned walking around naked in common dressing areas.  <u>Id</u>.  Thus, from the perspective of the Secretary of Defense employee responsible for separations under DADT, the policy exists so that he does not have to wear a towel when he walks around the locker room.

1    the statute . . . and the record of proceedings." Motion at 16 (citing <u>City of Las</u>

2    <u>Vegas v. Foley</u>, 747 F.2d 1294, 1297 (9th Cir. 1984))[7].

3         Evidence of post-enactment research and developments is necessary to show

4    the effect of DADT.  For example, Brady's testimony will show that, in practice,

5    the policy discharges women servicemembers at a higher rate than their male

6    counterparts.  Motion, Attchmt. 7 at 22-29.  It will also show that DADT has

7    resulted in the discharge of non-combat personnel, such as lawyers, doctors, and

8    chaplains, for which the government's stated unit cohesion rationale bears no

9    relation.  <u>Id</u>. at 57-61.   Moreover, it will show that the military knowingly deploys

10   members under investigation for homosexual conduct, thus undermining any

11   argument that the military believes the presence of homosexual servicemembers

12   weakens military effectiveness.  <u>Id</u>. at 138-152.

13                      2.      <u>Enlistment Waivers for Felons</u>

14        Defendants incorrectly presume that Log Cabin intends to argue that "the

15   government should allow gays and lesbians to remain in the military if it allows

16   some convicted felons to enlist."  Motion at 17-18.  This is not Log Cabin's

17   purpose for introducing evidence of the Defendants' moral waiver policies.

18        Rather, Drago's testimony, as well as documentary evidence concerning 10

19   U.S.C. § 504, indicates the military commonly issues moral waivers to allow

20   individuals convicted of felonies, including "major misconducts" such as murder,

21   rape, arson, and robbery to serve in the military.  Motion, Attchmt. 8 at 16-17, 23-

22   24.  Drago admitted that, while allowing convicted felons to serve, the military has

23

---

24   [7] Neither of Defendants' other cited cases require the Court to consider only the
     conditions that existed at the time of enactment.  In <u>Equity Lifestyles Props, Inc. v.</u>
25   <u>County of San Luis Obispo</u>, 548 F.3d 1184, 1193 (9th Cir. 2008), the Court,
     deciding whether a rent-control ordinance constituted a government taking, held
26   that the actual taking is measured at the time the law is enacted.  That issue is not
     relevant here.  In <u>United States v. Jackson</u>, 84 F.3d 1154, 1161 (9th Cir. 1996), the
27   Court considered "post-enactment developments" in deciding the constitutionality
     of a sentencing law that the Sentencing Commission had recently recommended be
28   eliminated.  The Court considered the arguments of the Commission members that
     opposed elimination in finding that Congress's initial decision was rational.  <u>Id</u>.

- 23 -

conducted no studies concerning whether admitting convicted criminals will impact unit cohesion.  Id. at 29-30.  Drago also admitted that, in considering applications for waivers, the military looks at the "whole person" in deciding whether to allow the individual to enlist.  Id. at 34-39.

This evidence illustrates inconsistency in the military's concerns about unit cohesion.  It is not rational for the military to be concerned about a high-regarded, respected homosexual officer's impact on unit cohesion, while discounting the effect of a convicted murderer's service.  Nor is it rational for the military to be willing to consider a convicted murder's "whole person," while discharging a homosexual based solely on the fact that he or she identifies as being a homosexual.

### 3.    Experiences of Foreign Militaries

While Defendants claim that "no evidence presented to this Court" on the subject of foreign militaries is relevant to this action, Defendants' own 30(b)(6) witness disagrees.  Motion at 19.  According to Gade, the most useful current information on homosexuals and military service comes from the experience of other Western nations.  Motion, Attchmt. 9 at 66-67.

Defendants argue that the only relevant foreign military evidence is that which Congress considered in 1993.  However, among other things, Gade's testimony explains the specific evidence which Congress could have considered in 1993, regardless of what it actually did consider on the record.  Gade's testimony shows that, prior to DADT, the government had it its possession studies showing that several Western nations has allowed homosexuals to serve openly and had encountered no problems in the functioning of military units.  Id at 25-33.  This testimony directly contradicts a Senate Armed Service Committee report on the DADT legislation stating that foreign nations had little experience with open homosexual service.  Id. at 112-14.  This evidence illustrates that, even at the time of enactment, Congress had in its possession evidence from foreign militaries showing the unit cohesion rationale was not legitimate.

- 24 -

1

VI.     **A Motion in Limine Is the Improper Means for Objecting to Designated Deposition Testimony**

2

3       Defendants seek an order excluding certain testimony "for other reasons

4   specific to the given question or answer."  As discussed above, a motion in limine

5   is not the proper means to resolve Defendants' objections to deposition testimony

6   evidence.  Local Rule 16-2.7 provides the appropriate procedure for Defendants to

7   object to designated testimony.

8                                  **CONCLUSION**

9       For the foregoing reasons, the Court should deny Defendants' Motion to

10  exclude Log Cabin's lay witnesses.  Each lay witness's testimony is admissible and

11  relevant to Log Cabin's claims or necessary to rebut Defendants' challenge to Log

12  Cabin's standing.

13

14  Dated:    June 22, 2010                    WHITE & CASE LLP

15

16                                             By: _____

17                                                 Dan Woods
                                                   Attorneys for Plaintiff
18

19

20

21

22

23

24

25

26

27

28

- 25 -

PLAINTIFF'S OPPOSITION TO MOTION *IN LIMINE*
TO EXCLUDE LAY WITNESS TESTIMONY