1  DAN WOODS (SBN 78638)
   FERNANDO L. AENLLE-ROCHA (SBN 129515)
2  PATRICK HAGAN (SBN 266237)
   WHITE & CASE LLP
3  633 W. Fifth Street, Suite 1900
   Los Angeles, CA 90071-2007
4  Telephone: (213) 620-7700
   Facsimile: (213) 452-2329
5  Email: dwoods@whitecase.com
   Email: faenlle-rocha@whitecase.com
6  Email: phagan@whitecase.com

7  Attorneys for Plaintiff
   Log Cabin Republicans

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

   LOG CABIN REPUBLICANS, a non-      Case No. CV 04-8425-VAP (Ex)
12 profit corporation,
                                      **DECLARATION OF PATRICK**
13              Plaintiff,            **HAGAN IN SUPPORT OF**
                                      **PLAINTIFF'S OPPOSITION TO**
14       v.                           **DEFENDANTS' MOTION *IN***
                                      ***LIMINE* REGARDING**
15 UNITED STATES OF AMERICA and       **PLAINTIFF'S EXPERT**
   ROBERT M. GATES, SECRETARY         **WITNESSES**
16 OF DEFENSE, in his official capacity,
                                      Date: June 28, 2010
17              Defendants.           Time: 2:30 p.m.
                                      Judge: Hon. Virginia A. Phillips
18

19

20

21

22

23

24

25

26

27

28

LOSANGELES 870500
(2K)

DECLARATION OF PATRICK HAGAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE REGARDING PLAINTIFF'S EXPERT WITNESSES

1          I, Patrick Hagan, hereby declare and state as follows:

2          I am an attorney admitted to practice in the State of California.  I am

3     associated with White & Case LLP, counsel of record for plaintiff Log Cabin

4     Republicans ("Log Cabin"), in the action styled <u>Log Cabin Republicans v. United

5     States</u>, No. CV 04-8425-VAP (Ex) (the "instant action").  I submit this declaration

6     in support of Log Cabin's Opposition to Defendants' Motion in Limine Regarding

7     Plaintiff's Expert Witnesses.  I have personal knowledge of the facts stated herein

8     or know of such facts from my review of the file in this case, and, if called upon to

9     do so, could competently testify as follows:

10         1.     Attached hereto as Exhibit A is a true and correct copy of a

11    Memorandum regarding the research of Dr. Nathaniel Frank from an undisclosed

12    sender to an undisclosed recipient within the Office of the Secretary of Defense,

13    Bates-stamped OSD P&R 058910-058911 and produced by Defendants in response

14    to Log Cabin's first request for production of documents.

15         2.     Attached hereto as Exhibit B is a true and correct copy of a letter sent

16    from Paul Freeborne at the U.S. Department of Justice to Patrick Hunnius on May

17    18, 2010.

18         I declare under penalty of perjury under the laws of the United States of

19    America that the foregoing is true and correct.

20         Executed this 22nd day of June 2010, in Los Angeles, California.

21

22

23                                              Patrick Hagan

24

25

26

27

28

- 2 -

DECLARATION OF PATRICK HAGAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE REGARDING PLAINTIFF'S EXPERT WITNESSES

# EXHIBIT A

MEMORANDUM FOR

FROM:

SUBJECT:  Gays and Lesbians at War:  Military Service in Iraq and Afghanistan
          Under "Don't Ask Don't Tell"


        You asked me to review and comment on the attached study, conducted by Dr.
Nathaniel Frank, Senior Research Fellow at the Center for the Study of Sexual Minorities
in the Military at the University of California, Santa Barbara.

        This is a field study of 30 gay and lesbian service members who are currently or
have been deployed to service in OIF or OEF.  They either self-identified as a result of
advertisements through advocacy publications or internet sites, or were referred by
friends.  Dr. Frank acknowledges the limitations of this "non-random" sample on the
ability to generalize findings, and thus supplements the findings with related research,
surveys, or sources of information.

        It is a thoughtful study, which offers a unique view of the experiences of gay and
lesbian service members.  Some interesting observations:

- The policy interferes with their bonding and social cohesion, particularly in a
  deployed environment where the unit becomes family.  They were unable to talk
  about their lives and loved ones even when queried.  When not deployed, they felt
  unable to participate in normal unit social events.  Some described having to
  change their personalities and become hard and aloof to avoid uncomfortable
  questioning.  They believe this inhibits the formation of trust so important to a
  deployed unit.
- The interviewees reported restricted access to support service normally there for
  deployed members (such as family support groups).  In preparing for deployment
  they were uncomfortable naming their partners as beneficiaries or using their
  names for Next of Kin notification.  When a partner gets sick or needs surgery,
  they do not feel free to ask for leave to support them.
- There is a long discussion of privacy and showers.  For the most part, the
  interviewees did not encounter group showers, even under primitive conditions.
- Some of the interviewees admitted their orientation to friends or leaders with no
  adverse consequences.  Many had positive experiences doing this.  In some cases
  leadership did not enforce the Homosexual Conduct Policy when members
  admitted being gay.  They found the policy described as "don't ask, don't tell"
  ambiguous – what if someone asks if you are married?
- The study points out that living under the policy gets more difficult as you rise in
  rank and get older – when you are expected to have a spouse and family.
- The interviewees did not indicate that their behavior would radically change if the
  policy were reversed.  The study states, page 31:

" Indeed, most respondents said that, while some or most of their peers knew they were gay, they did not wish to announce the fact publicly, and they had no intention of doing so if the policy were changed to allow it. Rather, such a policy change would reduce their stress, remove impediments to productive work and allow them to stop taking proactive steps to misrepresent and isolate themselves."

- This quote, from the conclusion on page 44, is also of interest:

  "Evidence from this study suggests that the "don't ask, don't tell" policy increases gay troops' stress levels, lowers their morale, impairs their ability to forma trusting bonds with their peers, restricts their access to medical care, psychological services and religious consultations, and limits their ability to advance professionally and their willingness to join and remain the services. The detrimental effects of the policy on gay service are heightened during deployment for Operation Enduring Freedom and Operation Iraqi-Freedom, when alternative sources of support are less available than when stateside, and when military effectiveness is at its most critical."

- Overall, I believe it is a thoughtful look at this subject that demonstrates some of the difficulties that service members encounter with this policy. It is, however, limited by the number of interviewees, the method of selection, and the fact that responses were not available from the heterosexual service members as well.

OSD P&R Plans 058911

# EXHIBIT B



**U.S. Department of Justice**

Civil Division

---

*Washington, D.C. 20530*

May 18, 2010

**VIA ELECTRONIC MAIL &
REGULAR MAIL**

Patrick O. Hunnius
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071-2007
Tel. (213) 620-7714

> Re:    <u>Log Cabin Republicans v. United States of America, et al.</u>
>        **Case No. 04-CV-8425 (C.D. Cal.)**

Dear Mr. Hunnius:

    This letter follows-up on our email correspondence of yesterday regarding the Rule 16 conference.

**Date for Pretrial Conference**

    You questioned why this conference cannot be deferred until later this week. As I explained in my email yesterday, the parties have both proposed that the pretrial conference be held on June 28, 2010. If that date is adopted by the Court, all motions *in limine* must be filed no later than May 28, 2010 so that such motions can be noticed for argument at the pretrial conference. Local Rule 7-3 requires that the meet and confer be held no later than 10 days before the date of filing, which is today (May 18th). You are correct that we suggested May 19th as the date for the meeting in the proposed order submitted to the Court, but you will also note that we requested that the Court enter an **order** granting an exception to the 10-day meet and confer rule. Absent an order from the Court granting such an exception to L.R. 7-3, therefore, the parties must otherwise comply with the local rules that govern this case.

    We also acknowledge that the Court has not yet entered any schedule for the remaining pretrial activities. However, should the Court enter the parties' agreed-to pretrial conference date after today, plaintiff runs the risk of non-compliance to the extent it has failed to meet its obligations under the Federal Rules of Civil Procedure and the local rules (particularly L.R. 16).

-2-

## Plaintiff Has Failed to Cooperate In The Conference

The Rule 16 conference thus must occur today. We understand that you and Mr. Woods are unavailable to meet today during the normal business hours of counsel for the parties. Accordingly, we are left with no choice other than to meet our obligation to confer through the submission of this letter.

In response to our request, you provided certain information regarding witnesses and exhibits last night. But the information you provided is wholly deficient.

First, plaintiff has failed to properly serve signed disclosures pursuant to the FRCP 26(a)(4).

Second, with respect to exhibits, FRCP 26(a)(3)(A)(iii) requires plaintiff to identify each document that plaintiff intends to offer and each document that plaintiff may offer if the need arises. Plaintiff's stated intention to introduce as exhibits all the documents included in the appendix to plaintiff's opposition to defendants' motion for summary judgment and "other documents defendants produced" is insufficient under the rules. The failure to comply with the rules makes it difficult to understand precisely what documents will be offered at trial and thus lodge all appropriate objections under the time frame prescribed by the rules. Indeed, plaintiff states that it intends to introduce documents from defendants' production. Defendants produced over 50,000 documents and defendants are not required to guess as to which of those documents plaintiff plans to introduce.

Third, plaintiff has failed to properly disclose witnesses in accordance with FRCP 26 and L.R. 16-2.4. Specifically, plaintiff has failed to identify, prior to last night, of its proposed witnesses (many of whom had never previously been disclosed) and still has not disclosed the subjects upon which these late-identified witnesses will testify. *See* Fed. R. Civ. P. 26(a)(1)(A)(i); 26(e); & 26(a)(3)(A)(i).

Fourth, plaintiff's deposition designations are procedurally deficient in at least two respects. As to the four deponents from whom plaintiff intends to designate deposition testimony, it is insufficient at this point in the case to say merely that plaintiff "intend[s] to designate testimony from four transcripts (Dr. MacCoun and the 3 30(b)(6) witnesses)." A party "intending to present any evidence by way of deposition testimony" shall, in connection with the meeting of counsel, "[i]dentify on the original transcript the testimony the party intends to offer by bracketing the questions and answers in the margins." *See* L.R. 6-2.7(a). This is necessary, for among other reasons, to allow the defendants to make their counter-designations. Moreover, as to the purported designation of Dr. MacCoun, plaintiff has not explained the basis for presenting his testimony by deposition rather than in person. FRCP 32 does not seem to apply, as it speaks of using a deposition "against a party" on certain conditions. As you know, the courts generally prefer live testimony at trial over deposition testimony and, unlike fact

-3-

witnesses, a party chooses its own experts and is generally responsible for bringing them to trial. Thus, a party bears the burden of demonstrating that its expert is unavailable for trial, and cannot satisfy that burden simply by showing that the expert does not reside within 100 miles of the courthouse. *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164-65 (3d Cir. 1995).

## Defendants' Contemplated Motions *in Limine*

Notwithstanding plaintiff's refusal to participate in today's conference as required and plaintiff's failure to otherwise comply with its obligations under the rules (to the extent the Court adopts the date the parties proposed for the pretrial conference), we intend to file at least four motions *in limine* to preclude the (1) introduction of plaintiff's exhibits; (2) testimony of plaintiff's experts; (3) introduction of the deposition testimony plaintiff seeks to designate; and (4) testimony of fact witnesses that plaintiff intends to call at trial who were not properly disclosed pursuant to FRCP 26 or otherwise made known in discovery and whose testimony is irrelevant and immaterial to plaintiff's facial challenge. Below are the grounds for each motion.

### A.    Motion *in Limine* Regarding Plaintiff's Exhibits

Defendants plan to move *in limine* to exclude many of plaintiff's proposed exhibits. Our motion will include several grounds for exclusion. Because plaintiff's challenge is subject to rational basis review, its proposed exhibits are not relevant to the issue before the Court. Documents that post-date enactment of the "Don't Ask, Don't Tell" (DADT) statute are particularly irrelevant under rational basis review. As set forth in defendants' response to the exhibits plaintiff submitted in opposition to defendants' motion for summary judgment, moreover, many of plaintiff's proposed exhibits contain inadmissible hearsay and are not subject to any of the hearsay exceptions. Based upon the witnesses identified by plaintiff, it appears that plaintiff will be unable to lay a proper foundation for or authenticate many of these documents.

### B.    Motion *in Limine* Regarding Plaintiff's Experts

Defendants also intend to move *in limine* to exclude the introduction of testimony from plaintiff's seven expert witnesses on a number of grounds. As with the other extrinsic evidence plaintiff seeks to admit in this case, expert testimony is inappropriate in a facial due process challenge subject to rational-basis review. The proposed testimony from plaintiff's seven experts is not helpful to the Court and, accordingly, is inadmissible under Federal Rules of Evidence 702 and 402. These opinions include those challenging the motivations of individual legislators who enacted DADT (Drs. Frank, Hillman & Korb); opinions regarding issues previously presented to Congress, such as those concerning unit cohesion (Belkin, MacCoun, Embser-Herbert, Korb, Hillman & Frank); the experience of foreign militaries (Okros, Korb, MacCoun, Belkin & Frank); Dr. Korb's legal opinion regarding the constitutionality of DADT; and opinions regarding the purported lack of empirical evidence in support of DADT (Drs. Hillman, Frank, Korb & Belkin).

-4-

Plaintiff has no basis to offer expert testimony regarding the alleged disparate treatment of lesbians under DADT because it has failed to identify any female member who could have brought such a challenge in her own right.  Even if plaintiff could overcome this threshold bar, opinion testimony regarding this issue is not helpful to the Court in light of the fact that plaintiff's equal protection claim has been dismissed.

Plaintiff's experts' proposed testimony concerning the "continuing rationality" of DADT is inadmissible under Rule 702 and 402, as it is not helpful to the trier of fact in resolving the sole issue under a facial challenge subject to rational-basis review.

Many of plaintiff's experts' opinions are unreliable under Rule 702, as they lack any discernable methodology; this includes the opinions of Drs. Korb, Hillman, Embser-Herbert and Belkin.  In addition, Dr. Belkin's "revised" report, in which he opines upon the privacy rationale underlying DADT, is inadmissible because it is untimely under Rule 26, and also because it lacks any identification of facts or data relied upon, in violation of Rule 702.

Finally, the opinions of plaintiff's experts are needlessly cumulative under Rule 403.  For example, LCR seeks to introduce testimony from *six* of its experts on the issue of unit cohesion (Belkin, MacCoun, Embser-Herbert, Korb, Hillman and Frank); *five* of its experts on the issue of foreign military experiences regarding the service of openly homosexual servicemembers (Belkin, MacCoun, Korb, Okros, and Frank); *four* of its experts regarding the claim that DADT was enacted out of animus towards homosexuals (Frank, Hillman, and Korb); *three* of its experts on the claim that DADT lacks "empirical" support (Hillman, Frank, and Korb); *two* of its experts on the issue of the current polling of civilians and servicemembers regarding their attitudes towards the service of open homosexuals in the military (Frank and Korb); and *two* of its experts on the purported disparate impact of DADT on lesbian servicemembers (Hillman and Embser-Herbert).  To the extent the Court determines that these opinions are otherwise admissible under FRE 702 and 402, it should limit plaintiff to one expert witness per topic.

## C.   Motion *in Limine* Regarding Designation of Deposition Testimony

Defendants also intend to move to exclude plaintiff's contemplated designations of deposition testimony.  As with the live testimony of plaintiff's experts and exhibits, no evidence outside the statute and legislative history is appropriate in adjudicating a facial constitutional challenge subject to rational basis review.  To the extent that the designated testimony relates to (a) any question answered during the deposition that expressly states the personal views of the witness, or (b) any question that was outside the scope of the areas that the Court permitted plaintiff to explore in its 30(b)(6) depositions, moreoer, such designated testimony is objectionable.  And there is no basis for accepting the deposition testimony of plaintiff's own expert witness, Dr. MacCoun, rather than hearing Dr. MacCoun's live testimony at trial (to the extent the Court concludes his testimony is otherwise admissible in the first instance).

-5-

**D.     Motion *in Limine* Regarding Undisclosed Fact Witnesses**

Of the fact witnesses plaintiff now advises it apparently intends to call at trial, all but
Messrs. Hamilton and Nicholson were not properly disclosed under FRCP 26 or otherwise made
known during discovery.  Defendants will move to exclude those witnesses who were not
properly disclosed in plaintiff's disclosures and/or discovery.  Where a party fails to provide
information or identify a witness under Rules 26(a) or (e) or otherwise in discovery, as here, that
party is prohibited from using that witness at trial.  *See* FRCP 37(c)(1).  To the extent these
individuals will be called to testify as to the merits, moreover, none appear to have testimony
relevant to plaintiff's facial challenge.

Sincerely,

Paul G. Freeborne
Federal Programs Branch
Civil Division