1  DAN WOODS (State Bar No. 78638)
   EARLE MILLER (State Bar No. 116864)
2  AARON A. KAHN (State Bar No. 238505)
   WHITE & CASE LLP
3  633 W. Fifth Street, Suite 1900
   Los Angeles, CA  90071-2007
4  Telephone:  (213) 620-7700
   Facsimile:   (213) 452-2329
5  E-mail:  dwoods@whitecase.com
   E-mail:  emiller@whitecase.com
6  E-mail:  aakahn@whitecase.com

7  Attorneys for Plaintiff
   LOG CABIN REPUBLICANS
8

9             UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11

12  LOG CABIN REPUBLICANS, a non-        Case No.  CV 04-8425 VAP (Ex)
    profit corporation,
13                                       **PLAINTIFF LOG CABIN
                   Plaintiff,            REPUBLICANS' SUPPLEMENTAL
14                                       BRIEF ON APPLICATION OF
         v.                              WITT STANDARD OF REVIEW**
15
    UNITED STATES OF AMERICA            Trial Date:    July 13, 2010
16  and                                 Time:          9:00 a.m.
    ROBERT M. GATES (substituted for     Ctrm:          2
17  Donald H. Rumsfeld pursuant to FRCP  Judge:         Hon. Virginia A. Phillips
    25(d)), SECRETARY OF DEFENSE,
18  in his official capacity,            Motion for Summary Judgment
                                         Hearing Date:  April 26, 2010
19                 Defendants.
                                         Pre-Trial Conference:  June 28, 2010
20
                                         Complaint Filed:  October 12, 2004
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................................. 1

II.   THE WITT STANDARD APPLIES TO  LOG CABIN'S
      SUBSTANTIVE DUE PROCESS CLAIM .................................... 1

      A.    The Question of the Standard of Review Is Independent of
            Whether the Challenge Is Facial or As-Applied .................................... 3

      B.    DADT Fails Witt's Intermediate Scrutiny Standard ............................ 4

      C.    Beller Does Not Control This Case ....................................................... 5

      D.    Evidence Is Not Restricted to the Legislative History........................... 6

      E.    A Facial Challenge to DADT Does Not Automatically Entitle
            Defendants to Summary Judgment ....................................................... 10

III.  A STAY IS INAPPROPRIATE BECAUSE  RECENT LEGISLATIVE
      EVENTS DO NOT PROMISE REPEAL ..................................... 12

IV.   CONCLUSION ............................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

Annex Books, Inc. v. City of Indianapolis,
  581 F.3d 460 (7th Cir. 2009) ................................................................ 7

Beller v. Middendorf,
  632 F.2d 788 (9th Cir. 1980) .......................................................... 5, 6

Blue Cross v. Unity Outpatient Surgery Center,
  490 F.3d 718 (9th Cir. 2007) .............................................................. 14

City of Cleburne v. Cleburne Living Center,
  473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ........................ 7

Craig v. Boren,
  429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) ........................... 3

Dependable Highway Express, Inc. v. Navigators Ins. Co.,
  498 F.3d 1059 (9th Cir. 2007) ............................................................ 14

FCC v. Beach Comm., Inc.,
  508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ...................... 8

Goldman v. Weinberger,
  475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) ....................... 9

Hamdan v. Rumsfeld,
  548 U.S. 557, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) ............... 9, 10

Hamdi v. Rumsfeld,
  542 U.S. 507, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) ............... 9, 10

Kremens v. Bartley,
  431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) ........................ 14

Lawrence v. Texas,
  539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) .............. *passim*

Leyva v. Certified Grocers of Cal., Ltd.,
  593 F.2d 857 (9th Cir. 1979) .............................................................. 14

Planned Parenthood of Southeastern Pa. v. Casey,
  505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ............ 3, 8, 11

Rostker v. Goldberg,
  453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) .................. 10, 14

Sell v. United States,
  539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003) ...................... 5

Spector Motor Serv. Inc. v. McLaughlin,
  323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944) ............................. 14

- ii -

United States v. Salerno,
    481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ................................ 10, 11

United States v. Vilches-Navarrete,
    523 F.3d 1 (1st Cir. 2008) ................................................................................ 14

Washington State Grange v. Washington State Republican Party,
    552 U.S. 442, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) ......................... 4, 11, 12

Witt v. Air Force,
    527 F.3d 806 (9th Cir. 2008) .................................................................... *passim*

Young v. INS,
    208 F.3d 1116 (9th Cir. 2000) ........................................................................ 14

## **DOCKETED CASES**

Witt v. Dep't of Air Force,
    Case No. 3:06-cv-5195 (W.D. Wash.) ............................................................ 15

## **FEDERAL STATUTES**

10 U.S.C. § 654................................................................................................ 4, 11

PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON
APPLICATION OF WITT STANDARD OF REVIEW

LOSANGELES 869697 (2K)

1

## I.

2

## INTRODUCTION

3      On May 27, 2010, the Court asked the parties to file supplemental briefs "for

4  the sole purpose of discussing application of the <u>Witt</u> standard to Plaintiff's

5  substantive due process claim."  Defendants' Supplemental Brief ignores the

6  Court's directive; reiterates arguments and positions that have already been briefed

7  and needed no further exposition; continues to cite bad law such as <u>Beller v.</u>

8  <u>Middendorf</u>, <u>Cook v. Gates</u>, and <u>Philips v. Perry</u>, none of which control in this

9  Circuit today; and fails to answer the central, sole question that the Court posed:

10 does the DADT Policy survive constitutional scrutiny under the <u>Witt</u> standard?

11     The answer is no.  <u>Witt</u> applies and DADT fails that standard.  The Court

12 should deny the motion for summary judgment.  The parasitical procedural

13 requests, for a stay and for bifurcation, that the government tacks on to its brief

14 should also be denied.

15

## II.

16

## THE WITT STANDARD APPLIES TO

17

## LOG CABIN'S SUBSTANTIVE DUE PROCESS CLAIM

18     In its opposition to the motion for summary judgment, Log Cabin argued that

19 some heightened level of scrutiny, greater than rational-basis review, is required to

20 determine the constitutionality of DADT.  (Doc. 140, pp. 9-12.)  While Log Cabin

21 did not specifically request application of the <u>Witt</u> standard, the Ninth Circuit

22 announced that standard specifically in the context of a constitutional challenge to

23 DADT and it is appropriate to apply it.  The Court's inclination stated in its May

24 27, 2010 Order is therefore correct:  the <u>Witt</u> standard of review applies in this case.

25     <u>Witt</u> requires that "when the government attempts to intrude upon the

26 personal and private lives of homosexuals, in a manner that implicates the rights

27 identified in <u>Lawrence</u>, the government must advance an important governmental

28 interest, the intrusion must significantly further that interest, and the intrusion must

- 1 -

1    be necessary to further that interest.  In other words, for the third factor, a less

2    intrusive means must be unlikely to achieve substantially the government's

3    interest."  Witt v. Air Force, 527 F.3d 806, 819 (9th Cir. 2008).  Given that sexual

4    intimacy is recognized as important in U.S. society and is a protected liberty

5    interest under Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508

6    (2003), and given that servicemembers are not expected to remain forever celibate,

7    DADT intrudes upon the personal and private lives of homosexual servicemembers

8    in a manner that implicates the rights identified in Lawrence.  The Witt level of

9    intermediate scrutiny is therefore appropriate here.  That Log Cabin's challenge to

10   DADT is facial rather than as-applied does not affect this conclusion.  As shown

11   below, the extensive evidence that Log Cabin submitted in its opposition to the

12   summary judgment motion shows that DADT does not "significantly further" the

13   asserted governmental interests, and mandates far greater intrusions than are

14   necessary to further those interests.  DADT therefore fails the Witt standard.

15          Instead of addressing the Court's query regarding application of the Witt

16   standard, and whether DADT survives constitutional scrutiny when that standard is

17   applied, defendants' Supplemental Brief continues to argue that traditional rational

18   basis scrutiny, the most deferential standard of constitutional review, applies.  They

19   did so in their pretrial filings as well (Docs. 186, 188-1).  But nowhere do they

20   respond to the Court's direction as to what their brief should address.

21          Defendants also ignored the Court's invitation to submit further evidence in

22   support of their position.  Log Cabin, however, is submitting with this brief

23   important additional evidence that further bolsters its challenge:  five declarations

24   from servicemembers discharged under or impacted by DADT.  Those witnesses

25   come from different branches of the military and were impacted by DADT in

26   different ways.  They represent examples – five among many that could be adduced

27   – of how DADT actually undermines the goals of unit cohesion, morale, good order

28   and discipline, and military readiness, and demonstrate how DADT therefore fails

- 2 -

1   to meet the due process standards of <u>Witt</u>.[1]

2        **A.**    **The Question of the Standard of Review Is Independent of**
3                   **Whether the Challenge Is Facial or As-Applied**

4   At the outset, it is critical to note that defendants' Supplemental Brief

5   confuses two independent issues:  whether a constitutional challenge to a statute is

6   facial or as-applied; and the level of scrutiny to be applied to that constitutional

7   challenge.  It is not the case, as defendants appear to claim (Supp. Bf. at 8-9), that a

8   facial challenge demands rational-basis review.

9   <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 505 U.S. 833, 112 S.Ct.

10   2791, 120 L.Ed.2d 674 (1992), on which <u>Lawrence</u> relied to affirm the substantive

11   due process right at issue here, demonstrates that intermediate scrutiny is

12   appropriate in connection with a facial challenge.  The plaintiffs in <u>Casey</u> brought a

13   facial substantive due process challenge to a Pennsylvania abortion statute and

14   sought declaratory and injunctive relief – the same relief Log Cabin requests here.

15   505 U.S. at 845.  The Court nevertheless analyzed the statute under an undue

16   burden standard of scrutiny – a variety of intermediate scrutiny.[2]  <u>See</u> <u>id.</u> at 877-78.

17   Indeed, <u>Witt</u> itself demonstrates the error in defendants' logic.  <u>Witt</u>

18   acknowledged that the intermediate scrutiny standard it derived from <u>Sell v. United</u>

19   <u>States</u> is similar to the intermediate scrutiny test in equal protection cases such as

20   <u>Craig v. Boren</u>, 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).  <u>See</u> <u>Witt</u>,

21   527 F.3d at 818, n.7.  <u>Craig v. Boren</u> was, like <u>Casey</u> and like this case, a facial

22   challenge in which the plaintiffs sought declaratory and injunctive relief.  <u>Craig</u>,

23   429 U.S. at 192.  <u>Casey</u>, <u>Craig</u>, and <u>Witt</u> make clear that this Court may employ

24   intermediate scrutiny to analyze a facial challenge.

25      [1] <u>See</u> Declarations of Joseph Christopher Rocha, Jenny L. Kopfstein, Michael D.
26   Almy, Anthony Loverde, and Stephen J. Vossler, filed concurrently herewith.
   [2] While Justice O'Connor did not expressly identify the undue burden standard as
27   intermediate scrutiny, she made clear that it required more than rational basis.
After all, the dissent would have applied only the "rational relationship test."  <u>Id.</u> at
28   845.  Log Cabin similarly presents a facial challenge that requires something more
than rational basis.  <u>See</u> Opposition to Summary Judgment (Doc. 140) at 9-12.

1    Defendants rely on <u>Washington State Grange v. Washington State</u>

2    <u>Republican Party</u>, 552 U.S. 442, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008), but that

3    case does not support their position.  <u>Washington State Grange</u> was a facial

4    challenge to the state's blanket primary system.  The Supreme Court rejected the

5    facial challenge as premature and reiterated a preference for as-applied challenges,

6    but it nonetheless recognized that strict scrutiny might apply, even in a facial

7    challenge, if the statute severely burdened associational rights.  552 U.S. at 451.

8          **B.      DADT Fails <u>Witt</u>'s Intermediate Scrutiny Standard**

9          While purportedly addressed to the important governmental interests of

10   military "morale, good order and discipline, and unit cohesion that are the essence

11   of military capability" (10 U.S.C. § 654(a)(15)), DADT does not significantly

12   further those interests, nor is it necessary to further those interests, nor is it the least

13   intrusive means to achieve those interests.  DADT, therefore, violates substantive

14   due process.  Log Cabin's opposition to the motion for summary judgment detailed

15   the voluminous evidence as to how the enactment and implementation of DADT

16   violates substantive due process.  Every item of evidence that is before the Court on

17   this motion illustrates how DADT fails to satisfy the <u>Witt</u> factors.[3]  When measured

18   _____

[3] All that evidence need not be repeated here, but to recap some of the most
19   egregious ways in which DADT violates the required due process standard of
     scrutiny:  (1) no objective studies, reports, or data, either pre- or post-enactment,
20   support DADT's congruence to Congress's stated objectives, and in fact such
     studies are to the contrary; (2) the enactment of DADT was motivated by animus
21   and prejudice; (3) the military itself recognizes that sexual orientation is not
     germane to military service, inasmuch as DADT is applied more frequently in time
22   of peace than in time of war, and the military knowingly deploys openly
     homosexual servicemembers to foreign theaters of combat when they are needed;
23   (4) DADT has a disproportionate impact on women, and several of its underlying
     rationales do not apply to female servicemembers; (5) the experience of comparable
24   foreign militaries, and the experience of the thousands of U.S. troops who fight
     side-by-side with, and in some instances are commanded by, openly homosexual
25   members of the armed forces of foreign militaries without any impact on unit
     cohesion, belie the rationale enunciated for DADT; (6) the discharge of
26   servicemembers in non-combat but critical occupations actually undermines
     national security; (7) the actual undermining of military effectiveness, military
27   readiness, unit cohesion, and troop morale, and the impairment of recruitment and
     retention; (8) the military's resort to "moral waivers" and enlistment of over 4000
28   felons to make up for the personnel shortfall caused in part by DADT; and (9) the
     violation of servicemembers' First Amendment rights of speech and association.

PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON
APPLICATION OF WITT STANDARD OF REVIEW

1   against the constitutional scrutiny required by Witt, DADT does not survive.

2          Additionally, for summary judgment purposes, DADT fails the Witt standard

3   of due process scrutiny – and indeed all constitutional scrutiny – because

4   Defendants have submitted no evidence demonstrating DADT's relationship to its

5   stated purposes, while Log Cabin has shown that DADT actually impairs those

6   interests.  Witt recognized that the Supreme Court in Sell v. United States, 539 U.S.

7   166, 178, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), and in Lawrence, 539 U.S. at

8   578, required the state to justify its intrusion into an individual's recognized liberty

9   interest.  Witt, 527 F.3d at 818.  Thus, as with active rational basis, application of

10  the Witt standard places the burden on the government to demonstrate that each

11  element of the test is satisfied.  It has not met that burden.

12         **C.    Beller Does Not Control This Case**

13         The government continues to argue that if a heightened scrutiny standard

14  applies, Beller v. Middendorf, 632 F.2d 788 (9th Cir. 1980), governs this case

15  despite Witt's statement that "Beller's heightened scrutiny analysis and holding …

16  have been effectively overruled by intervening Supreme Court authority."  Witt,

17  527 F.3d at 820.  In fact, at least three aspects of Beller are no longer good law.

18  Witt overruled Beller's refusal to apply an as-applied analysis to DADT's

19  predecessor policy.  Witt, 527 F.3d at 820.  Witt recognized that Palmore v. Sidoti

20  and City of Cleburne, cases that post-date Beller, would have changed at least a

21  portion of Beller's heightened scrutiny analysis.  Witt, 527 F.3d at 820 n.10

22  (Palmore and Cleburne would today preclude as a justification for DADT the need

23  to avoid sexual tension between known homosexuals and others who despise

24  homosexuals).  And, as plainly as can be, Witt itself states, "our holding in Beller

25  … that a predecessor policy to DADT survived heightened scrutiny under the Due

26  Process Clause, is no longer good law."  Witt, 527 F.3d at 819 (citations omitted).

27         Defendants ignore all this completely.  Instead, they seize on the fact that

28  Witt was an as-applied challenge and make the illogical leap to argue that Beller's

- 5 -

analysis still governs a facial challenge to DADT. Witt forecloses that argument.[4]

**D. Evidence Is Not Restricted to the Legislative History**

When applying the heightened scrutiny requirement of Witt, evidence must be brought to bear on the analysis. Defendants argue that, regardless of the level of scrutiny applicable, DADT's constitutionality should be analyzed "without reference to evidence adduced through discovery," and maintain that only the Congressional record is relevant. Defendants are incorrect. Neither the facial nature of Log Cabin's challenge, nor principles of deference to the military, limits the evidence Log Cabin may introduce at trial.

First, in its July 24, 2009 Order, this Court has already rejected the same arguments defendants present here, in ruling that Log Cabin "is entitled to conduct discovery in this case to develop the basis for its facial challenge," even if only rational basis review applied. (Doc. 91 at 3). That discovery has resulted in substantial evidence demonstrating the irrationality of DADT, and showing, as Witt requires, that DADT neither significantly furthers the governmental interests identified in the statute, nor is the least intrusive means necessary to do so. Consistent with its July 24, 2009 Order, the Court should now rule that the evidence Log Cabin has developed through discovery is admissible.

Defendants also recycle their argument that only evidence existing at the time of a statute's enactment may be considered in a rational basis review. This is incorrect even if rational basis review applied, as Log Cabin showed in its Opposition. In any case, where a higher level of scrutiny applies, such as that

[4] Beller could not govern how DADT is analyzed under a heightened scrutiny test even if it remained good law. DADT differs from its predecessor policy by recognizing that homosexuals may and do serve in the Armed Forces. Thus, justifications that may have supported the old policy are no longer applicable. To cite just one example, in support of the policy at issue in Beller the Navy claimed that there "would be an adverse impact on recruiting should parents become concerned with their children associating with individuals who are incapable of maintaining high moral standards." Beller, 632 F.2d at 811, n.22. This rationale is inapplicable now since homosexuals – purportedly incapable of high moral standards – serve in significant numbers.

1   required by Witt, it is defendants' burden to prove, through evidence, a tight fit

2   between the statute and its stated goals.

3       Annex Books, Inc. v. City of Indianapolis, 581 F.3d 460 (7th Cir. 2009), is

4   instructive.  Annex Books held that when a legislative body (there a municipality)

5   promulgates a regulation subject to intermediate scrutiny, it must marshal evidence

6   supporting the need for the policy.  Id. at 462, 464.  It is not enough to simply

7   "belittle plaintiffs' evidence."  Id. at 464.

8       Annex Books arose out of a first amendment challenge to a municipal

9   ordinance regulating adult book and video stores.  Applying intermediate scrutiny,

10  the court rejected the city's argument that "any empirical study of morals offenses

11  near any kind of adult establishment in any city justifies every possible kind of

12  legal restriction in every city."  Under a heightened scrutiny analysis, "the public

13  benefits of the restrictions must be established by evidence, and not just asserted."

14  And it was the city's burden to adduce that evidence.  Id. at 463 (citations omitted).

15  The case was remanded for an *evidentiary* hearing.  Id. at 467.

16      Furthermore, even if the standard is "active rational basis," City of Cleburne

17  v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985),

18  teaches that evidence outside the legislative record is relevant.  In Cleburne, the

19  Court examined evidence of the many other uses to which the subject property

20  could be put without the special use permit required by the city council to house

21  mentally retarded individuals, id. at 449-50, and confirmed that when some

22  heightened scrutiny applies – as it did in Cleburne and as it does here – "judgment

23  [must be] suspended until the facts are in and the evidence [is] considered."  473

24  U.S. at 471-72 (Stevens, J., concurring).

25      In addition, Lawrence itself demonstrates that evidence beyond the

26  Congressional record is relevant even in a facial challenge.  As in Cleburne, the

27  Court in Lawrence analyzed the factual context behind Texas' enactment – far more

28  than it did the legislative history.  539 U.S. at 572, 576-77.  In the context of a

- 7 -

1 | facial challenge, <u>Lawrence</u> examined, *inter alia*, foreign treatment of sodomy laws,

2 | evolution of sodomy laws throughout the United States, and the pattern of actual

3 | enforcement of such laws since the <u>Bowers</u> decision.  <u>Id.</u> at 570-73.

4 |      But most importantly, <u>Lawrence</u> recognized that the judiciary's duty often is

5 | to subject a statute once viewed as constitutionally sound to deeper examination:

6 |      Those who drew and ratified the Due Process Clauses … knew

7 |      times can blind us to certain truths and later generations can see

8 |      that laws once thought necessary and proper in fact serve only to

9 |      oppress.  As the Constitution endures, persons in every generation

10 |      can invoke its principles in their own search for greater freedom.

11 | 539 U.S. at 578-79.  Limiting evidence to the frozen-in-time Congressional record

12 | would forever shield enactments from exposure to such truths.[5]

13 |      Nor do defendants' authorities support their arguments here.  <u>FCC v. Beach</u>

14 | <u>Comm., Inc.</u>, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), was a

15 | traditional rational basis case arising out of a challenge to economic legislation.

16 | Congress exempted certain private institutions from a regulatory scheme and

17 | simply defined the private facilities that would qualify for the exemption.  The

18 | cable television statute at issue was not entitled to any form of heightened scrutiny.

19 | <u>See</u> 508 U.S. at 314-15.  It is therefore inapplicable.  <u>Beach</u> is simply a case about

20 | Congressional line-drawing and judicial resistance, when rational basis applies, to

21 | second-guessing where Congress draws such lines.  <u>Id.</u> at 315-16.  DADT, by

22 | contrast, is not an instance of Congressional line drawing.  It is a statute that

23 | prevents all homosexual Americans from serving their country if they engage in

24 | constitutionally protected conduct and speech.

---

25 | [5] <u>Casey</u> also exposes the error in defendants' evidentiary argument.  In deciding

26 | whether various aspects of Pennsylvania's abortion statute passed the undue burden intermediate scrutiny standard, the Supreme Court had several occasions to consult evidence beyond legislative history – evidence developed *at trial*.  <u>See</u>, <u>e.g.</u>, 505

27 | U.S. at 845, 884-86 (considering, for example, practical effect of 24-hour waiting period, including distances many women would have to travel, exposure of women

28 | to harassment, and the effect on low-income women).

LOSANGELES 869697 (2K)

1         Neither is <u>Goldman v. Weinberger</u>, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d

2    478 (1986), applicable here.  <u>Goldman</u> involved a military regulation – a dress code

3    – that, by its terms, applied to servicemembers only "while performing their

4    military duties."  475 U.S. at 508.  Expert testimony was offered to demonstrate

5    that religious exceptions to the dress code are "desirable and will increase morale

6    by making the Air Force a more humane place."  <u>Id.</u> at 509.  In other words, the

7    experts in <u>Goldman</u> did not contend that the regulation undermined the military

8    interest at issue – discipline.  They sought to prove only that changing the

9    regulation would be better.  The expert evidence Log Cabin will present at trial,

10   however, will not simply demonstrate that an end to DADT would better fit the

11   military's stated objectives.  Log Cabin's proffered experts – historians, social

12   scientists, and psychologists – will demonstrate that DADT does nothing to further

13   the military's goals and actually undermines those goals, revealing DADT as a

14   policy born solely of animus.  <u>Goldman</u> involved no allegation that the religious

15   headwear ban arose from animus.  Moreover, <u>Goldman</u> permitted expression in a

16   private setting.  It was far less invasive of constitutional rights than is DADT.

17   DADT regulates servicemembers' private consensual intimate conduct – the very

18   conduct protected by <u>Lawrence</u>.[6]

19        <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004),

20   and <u>Hamdan v. Rumsfeld</u>, 548 U.S. 557, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006),

21   affirmed the courts' traditional role to protect individual rights, even when military

22   affairs are at issue.  While "accord[ing] the greatest respect and consideration to the

23   judgments of military authorities in matters relating to the actual prosecution of a

24   war," the Court held that "it does not infringe on the core role of the military for the

25   courts to exercise their own time-honored and constitutionally mandated roles of

---

26   [6] <u>Goldman</u>'s dress code regulation might be analogous to DADT if DADT only
27   governed servicemembers' conduct while performing military duties – for example, if the military prohibited homosexual conduct while on duty.  But DADT of course
28   has no such limitation.

LOSANGELES 869697 (2K)

1   reviewing and resolving claims." <u>Hamdi</u>, 542 U.S. at 535.  The Court rejected the

2   Executive's attempt to subject enemy combatant incarcerations to a low "some

3   evidence standard," mandating instead that detainees are entitled to a fact-finding

4   process.  <u>Id.</u> at 537-39.  And <u>Hamdan</u> reaffirmed the duty of the courts, "in time of

5   war as well as in time of peace, to preserve unimpaired the constitutional

6   safeguards of civil liberty."  548 U.S. at 588.[7]  If the military cannot deprive enemy

7   combatants of constitutional rights, it certainly cannot do so to its own

8   servicemembers.

9       Finally, the evidence in this case cannot be limited to DADT's 1993

10  legislative history because Log Cabin's challenge arises out of the due process

11  rights that the Supreme Court first recognized in <u>Lawrence</u>.  Until 2003, and indeed

12  in 1993, <u>Bowers v. Hardwick</u> was the law.  Congress would have had no occasion

13  to deliberate the impact of DADT upon individual rights, because <u>Bowers</u> had

14  affirmatively held that no such individual rights existed under the due process

15  clause.  Congress could not have fully considered the issues presented in this case.[8]

16  For this Court to fully analyze the impact of DADT on the constitutional rights

17  recognized in <u>Lawrence</u>, evidence outside of Congressional deliberations is critical.

18      **E.      A Facial Challenge to DADT Does Not Automatically Entitle**

19              **Defendants to Summary Judgment**

20      As they have done repeatedly before, defendants again fall back on <u>United

21  States v. Salerno</u>, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), to argue

22  that Log Cabin must prove that "no set of circumstances exists" under which

23  DADT would be valid.  But defendants make too much of <u>Salerno</u> and ignore the

24  more applicable precedent, <u>Planned Parenthood v. Casey</u>.

25  _____

    [7] Notably, the Court in <u>Hamdan</u> looked to several sources of evidence beyond
26  legislative history, including foreign laws and the total lack of evidence supporting
    the Executive's assertion that application of court-martial rules would be
27  impracticable.  <u>Id.</u> at 610, 623.
    [8] <u>Cf.</u> <u>Rostker</u>, <u>infra</u>, 453 U.S. at 71 (upholding gender-based statute only because
28  Congress fully considered the constitutional issues it raised).

LOSANGELES 869697 (2K)

1    Decided five years after <u>Salerno</u>, <u>Casey</u> involved a substantive due process

2 facial challenge governed by the undue burden variety of intermediate scrutiny.

3 The Supreme Court did not deem itself bound by <u>Salerno</u> to examine whether the

4 abortion restrictions presented a substantial obstacle to <u>all</u> women to whom they

5 applied.  Rather, the Court held that the offending restrictions violated substantive

6 due process because they would have amounted to an undue burden in "a large

7 fraction of the cases in which [they were] relevant."  <u>Casey</u>, 505 U.S. at 895.  At

8 trial, Log Cabin will present evidence demonstrating that DADT violates

9 substantive due process in much more than just "a large fraction of the cases,"

10 through the testimony of its expert witnesses, its member Alex Nicholson, and the

11 other servicemembers whose declarations are filed herewith.

12    <u>Salerno</u> is additionally distinguishable in that the statute at issue (the Bail

13 Reform Act of 1984 which, for community safety purposes, allowed for federal

14 detention without bail of arrestees pending trial), unlike DADT, built in many

15 discretionary factors as constraints on its implementation.  "[E]xtensive

16 safeguards," such as the right to present evidence and cross-examine witnesses, the

17 burden upon the government to present clear and convincing evidence, the

18 requirement that the court issue written findings, the right of immediate appellate

19 review, "suffice[d] to repel" a facial challenge.  <u>Salerno</u>, 481 U.S. at 751-52.  By

20 contrast, DADT is essentially mandatory.  A servicemember exercising the privacy

21 right recognized in <u>Lawrence</u> will, if discovered, result in discharge:  "A member of

22 the armed forces **shall be separated** … if one or more of the following findings is

23 made and approved …:"  10 U.S.C. § 654(b) (emphasis added).

24    Defendants also claim that <u>Washington State Grange</u>, <u>supra</u>, stands for the

25 proposition that facial challenges are disfavored and contrary to principles of

26 judicial restraint.  Supp. Bf. at 8-9.  But defendants again omit the context of that

27 proposition.  The Supreme Court's denial of the plaintiffs' facial challenge in

28 <u>Washington State Grange</u> was based completely on the fact that the challenge was

- 11 -

1    premature, *and lacked an evidentiary record*:  the challenge was brought

2    immediately after enactment of the election statute at issue and before Washington

3    held any elections under it.  Id. at 448, 455, 458 ("Respondents ask this Court to

4    invalidate a popularly enacted election process that has never been carried out").

5    The Court declined to grant the facial challenge because it would have to speculate

6    regarding the actual implementation of the law, and would have to conjure

7    "hypothetical" or "imaginary" scenarios.  Id. at 450, 454-55.

8         The reasoning of Washington State Grange is inapplicable here.

9    Constitutional scrutiny of DADT is hardly premature, or based on sheer

10   speculation.  DADT has an established history of implementation:  the statute has

11   been in place for 17 years.  Log Cabin's voluminous evidence will demonstrate that

12   the actual implementation of DADT exposes its unconstitutionality.[9]

13                                          **III.**

14                        **A STAY IS INAPPROPRIATE BECAUSE**

15            **RECENT LEGISLATIVE EVENTS DO NOT PROMISE REPEAL**

16        The government's supplemental brief again asks the Court to "defer ruling" –

17   i.e., stay the trial – because the political branches have supposedly taken steps "to

18   facilitate" repeal of DADT.  This Court has already denied two prior requests for

19   stay by the government, on November 24, 2009, and March 4, 2010, and should do

20   so again, for several reasons.

21        First, the Court should deny the request because the government has not

22   formally moved for a stay; its request for a stay is in the middle of a brief on the

23   standard of review applicable to the trial of the merits.  If the Court does consider

24   this backhanded and procedurally improper procedure to seek a stay, it should deny

25   the stay because the pending legislation may never pass, provides in any event only

26   ───────────────
     [9] In this way, Log Cabin's suit again more resembles Lawrence.  The Lawrence
27   Court showed no resistance to the facial challenge presented because the sodomy
     statute at issue had been applied against the criminal defendants there and countless
28   others.  There was no need to speculate about or imagine the effect of its
     enforcement.

                                          - 12 -
LOSANGELES 869697 (2K)

for conditional repeal, and repeal would be far from immediate.

Legislation to repeal DADT has been pending in Congress for many years. That the House of Representatives recently passed a bill calling for repeal is a positive step, but repeal is not certain.  The government does not provide any information as to when the Senate may vote on possible repeal.  No date is scheduled for a vote and various news reports speculate that the Senate may not take up the issue until the fall.  When it does, there is no assurance that the Senate will pass the legislation; various Senators have already voiced their opposition to the bill and some have even threatened a filibuster.

Even if the proposed legislation, a copy of which is attached to the government's brief, passes the Senate, repeal would not be immediate.  The Senate version of the legislation may differ from the bill passed by the House and the two versions of the bill would then require reconciliation.  If the Senate and House bills are reconciled, and if the President signs the legislation, repeal of DADT is still conditional and is not immediate.  Under the proposed legislation, repeal of DADT is conditional on (1)  the Secretary of Defense receiving the report of the "Comprehensive Review" currently being undertaken by the Military Working Group; and (2)  the President's transmission to Congress of a written certification, signed by the President, the Secretary of Defense, and the Chairman of the Joint Chiefs of Staff, confirming that they have considered the report's recommendations and its proposed plan of action, that the Defense Department has prepared necessary policies and regulations, and that the implementation of those policies and regulations is consistent with the standards of military readiness, military effectiveness, unit cohesion, and recruiting and retention of the Armed Forces.  All that is no small task, and repeal would not take place until 60 days after the last of all those events occurs; and the pending legislation also specifically provides that DADT "shall remain in effect" until these requirements and certifications are met and, if they are not met, DADT "shall remain in effect."

- 13 -

1    The government offers no timetable as to whether or when any of these

2    events may occur.  The report of the study is not expected until December 2010 at

3    the earliest; its recommendations will not be known until then and it is not certain

4    that the study will recommend repeal.  Following the delivery of the report,

5    assuming it recommends outright repeal rather than some partial measure, it must

6    be considered; the Department of Defense must prepare policies and procedures for

7    implementing the repeal; and the various certifications must be obtained.  There is

8    no way to know whether or when all of these events may occur.

9    The cases cited by the government do not support the government's position

10   that a stay is appropriate under these circumstances.[10]  The government refers to

11   separate "judicial, administrative, or arbitral" proceedings as prudential grounds for

12   a stay of litigation, but cites no case where any court has stayed the imminent trial

13   of the constitutionality of a statute because *legislation for repeal* of the statute was

14   only *pending* in Congress.  There is no such case.  To the contrary, the Ninth

15   Circuit has reversed trial court stay orders of infinite duration.[11]  Because the

16   government seeks a stay of indefinite duration, the controlling authorities compel

17   the Court to deny the government's request.

18   Finally, in the Witt case, on remand, the district court on June 14, 2010

---

19   [10] Spector Motor Serv. Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed.

20   101, (1944), concerned the constitutionality of unresolved state law in a situation
     where state law provided an alternative remedy.  United States v. Vilches-

21   Navarrete, 523 F.3d 1 (1st Cir. 2008), involved a situation where the court did not
     need to decide the constitutionality of a criminal statute because the defendant did

22   not violate the statute.  Kremens v. Bartley, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.
     2d 184 (1977), involved a constitutional challenge to a statute that had already been

23   repealed, effective immediately.  Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d
     857 (9th Cir. 1979), involved a stay pending the completion of related arbitration

24   proceedings.  Blue Cross v. Unity Outpatient Surgery Center, 490 F.3d 718 (9th
     Cir. 2007), involved a stay of civil proceedings pending the resolution of related

25   criminal proceedings.  And Rostker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646, 69
     L.Ed. 2d 478 (1981), a due process challenge to the exclusion of women from the

26   military draft, involved neither a stay nor judicial abstention; the Court reached and
     decided the constitutional challenge.

27   [11] E.g., Dependable Highway Express, Inc. v. Navigators Ins. Co., 498 F.3d 1059,
     1066-67 (9th Cir. 2007).  See also Young v. INS, 208 F.3d 1116, 1119 (9th Cir.

28   2000); Leyva, 593 F.2d at 864.

- 14 -

PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON
APPLICATION OF WITT STANDARD OF REVIEW

1   declined to reschedule the pending trial date.  Minute Entry, <u>Witt v. Dep't of Air</u>

2   <u>Force</u>, Case No. 3:06-cv-5195 (W.D. Wash.) (Dkt. No. 95) (copy attached as

3   Exhibit 1) ("The shifting political climate surrounding "Don't Ask, Don't Tell"

4   begs the question of whether trial should be rescheduled to a later date.  (Currently

5   the trial is scheduled for 9/13/2010); the Court declines to reset the trial date at this

6   time").[12]

7                                  **IV.**

8                             **<u>CONCLUSION</u>**

9           The <u>Witt</u> standard applies to this case.  Evidence of the circumstances of the

10  enactment and implementation of DADT is relevant to the Court's analysis under

11  that standard, and that evidence shows that DADT fails the <u>Witt</u> standard and

12  violates substantive due process.  The Court should therefore deny the

13  government's motion for summary judgment.  Moreover, once the Court

14  determines that <u>Witt</u> applies, the Court would actually be able to award summary

15  judgment to Log Cabin, <u>sua</u> <u>sponte</u>, because the government has submitted no

16  evidence in response to the Court's invitation and the evidence Log Cabin

17  submitted shows that DADT violates the U.S. Constitution.  At a minimum, the

18  Court should let the case proceed to a trial, which DADT will not survive.

19  Dated:    June 23, 2010                    WHITE & CASE LLP

20

21                                            By:  /s/ Dan Woods
                                                   _____
22                                                 Dan Woods
                                                   Attorneys for Plaintiff
                                                   LOG CABIN REPUBLICANS

23  _____

24  [12] In footnote 6 at the end of its Supplemental Brief, the government requests that
    the trial be bifurcated, limited to the issue of Log Cabin's standing.  Log Cabin
25  objects to this procedurally improper request.  Bifurcating or limiting the trial to the
    standing issue is unnecessary, since the evidence on that issue can readily be
    presented as part of the overall case, and would prejudicially interfere with Log
26  Cabin's presentation of its case since its experts, who are academics and prominent
    public figures, cannot readily rearrange their schedules to accommodate the delay
27  and uncertainty that such bifurcation would entail.  In any event, the government
    has already raised that request in its pretrial Memorandum of Contentions of Fact
28  and Law (Doc. 186), and the issue should be dealt with at the pretrial conference.