1  DAN WOODS (State Bar No. 78638)
   EARLE MILLER (State Bar No. 116864)
2  AARON KAHN (State Bar No. 238505)
   WHITE & CASE LLP
3  633 W. Fifth Street, Suite 1900
   Los Angeles, CA  90071-2007
4  Telephone:  (213) 620-7700
   Facsimile:   (213) 452-2329
5  Email:       dwoods@whitecase.com
   Email:       emiller@whitecase.com
6  Email:       aakahn@whitecase.com

7  Attorneys for Plaintiff
   Log Cabin Republicans

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOG CABIN REPUBLICANS, a non-profit corporation,<br><br>             Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA and ROBERT M. GATES (substituted for Donald H. Rumsfeld pursuant to FRCP 25(d)), SECRETARY OF DEFENSE, in his official capacity,<br><br>             Defendants. | Case No.  CV 04-8425 VAP (Ex)<br><br>**DECLARATION OF JOSEPH CHRISTOPHER ROCHA IN SUPPORT OF PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON APPLICATION OF WITT STANDARD OF REVIEW**<br><br>Judge:    Hon. Virginia A. Phillips<br><br>Complaint filed:  October 12, 2004<br>Trial:             July 13, 2010 |

**DECLARATION OF JOSEPH CHRISTOPHER ROCHA**

I, Joseph Christopher Rocha, declare as follows:

1.    I am over 18 years old and, if called as a witness, I would be able to testify competently, of my own personal knowledge, to the truth of the matters contained in this declaration.

LOSANGELES 869676 v3 (2K)

DECLARATION OF JOSEPH CHRISTOPHER ROCHA IN SUPPORT OF PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON APPLICATION OF WITT STANDARD OF REVIEW

2. I am a U.S. Navy veteran who served twenty-eight months in the Middle East as an explosive detection dog handler. My job was to train and utilize dogs to keep explosives, narcotics, and insurgents out of Iraq and Afghanistan.

3. I enlisted in the United States Navy on April 27, 2004. I started basic training at Naval Station Great Lakes in Chicago, Illinois on September 15, 2004.

4. After basic training, I went to Lackland Air Force Base in San Antonio, Texas where I began training as a master at arms in November 2004.

5. Masters at arms are Navy security specialists who perform antiterrorism, force protection, physical security, and law enforcement duties on land and at sea. Masters at arms are the Navy's security and force protection professionals. A master at arms may operate a force protection watercraft, direct an investigation, control a base access point, or supervise a K-9 asset.

6. After I completed my master at arms training at Lackland Air Force Base, which lasted approximately three months, I reported to the Naval Support Activity Bahrain, which is a U.S. Navy base situated in the Kingdom of Bahrain and is home to the U.S. Naval Forces Central Command and the U.S. Fifth Fleet. It is the primary base in the region for the naval and marine activities in support of Operation Enduring Freedom and Operation Iraqi Freedom.

7. During my first month in Bahrain, I served as a master at arms. Thereafter, I started shadowing dog handlers full time to see if I was a good candidate to attend the military working dog school. I was deemed a good candidate.

8. I returned from Bahrain to Lackland Air Force Base in San Antonio, Texas in September 2005 to attend the military working dog school. I completed my military dog school training at the end of 2005 approximately. I was then sent back to the Naval Support Activity Bahrain as a dog handler in an elite and small community of K-9 handlers.

- 2 -
DECLARATION OF JOSEPH CHRISTOPHER ROCHA IN SUPPORT OF PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON APPLICATION OF WITT STANDARD OF REVIEW

LOSANGELES 869676 v3 (2K)

9. In total, including the initial time I served as a master at arms, I was assigned to the Middle East for twenty-eight months.

10. Approximately one month into my time in the Middle East, my Kennel Master and other servicemembers began to continually harass me. They would repeatedly ask me if I was homosexual, and I refused countless times to answer any of them with a "yes" or a "no." My refusal to answer was deemed to be a "yes" answer.

11. With the exception of the first month, I was harassed for the entire duration of my time in the Middle East. My Kennel Master and other servicemembers would repeatedly make graphic homophobic remarks and comments that were clearly directed to me. Their remarks made me incredibly uncomfortable and were very hurtful.

12. The harassment I endured was horrifying. For example, one day in the Middle East, I was ordered by my Kennel Master to get down on my hands and knees and simulate oral sex on a person working in the kennel. We were supposed to pretend that we were on a sofa and that the dogs were catching us in the act. Over and over, with each of the dogs in our unit, I was forced to endure this scenario, much of which was captured on video.

13. In other instances, the following occurred: (a) I was hosed down in full uniform, (b) I was tied to a chair, fed dog food and left in a kennel with feces, (c) I was spanked for my birthday, (d) homosexual pornography was saved on my computer as the screensaver, and (e) a standing rule was established that I was supposed to kneel before dogs and tell them I was not worthy.

14. Despite the constant harassment I endured, I proved my worth by excelling at my job performance. My written evaluations described me as a model servicemember, and I ultimately earned a Navy Marine Corp Achievement Medal for my time as a handler.

- 3 -
DECLARATION OF JOSEPH CHRISTOPHER ROCHA IN SUPPORT OF PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON APPLICATION OF WITT STANDARD OF REVIEW

LOSANGELES 869676 v3 (2K)

15. After I completed my assignment in the Middle East, I was selected to attend the United States Naval Academy Preparatory School in Newport, Rhode Island ("NAPS"), which was a tremendous honor. I had always dreamed of attending the U.S. Naval Academy, and graduation from NAPS' one-year program would guarantee me admission into the U.S. Naval Academy.

16. I only remained at NAPS for approximately five months. After reflecting on all the abuse I endured as a product of my adherence to Don't Ask, Don't Tell, I realized that Don't Ask, Don't Tell had endangered my life in the past and would probably continue to do so in the future, as it would not allow me to declare my homosexuality and stand up for myself if, and when, I was abused in the Naval Academy. Additionally, I realized that a career of service under Don't Ask, Don't Tell would be a forfeiture of my basic human rights. It would be a forfeiture of basic job security, peace of mind, and meaningful relationships, particularly with my fellow straight servicemembers whom I was forced to deceive and betray by hiding my homosexuality.

17. After completing a six-week officer candidate boot camp at NAPS, my commanders said they wanted to offer me a leadership role. Instead, I asked to be removed from NAPS in a statement I addressed to the NAPS legal officer dated September 18, 2007, a copy of which is attached hereto as "Exhibit A."

18. After my statement was received by NAPS, I was encouraged by a commanding officer at NAPS, apparently at the direction of the U.S. Naval Academy, to withdraw my statement. Additionally, I was told that if I withdrew my statement, my admission into the Naval Academy would not be affected (despite me having given the Navy an official statement disclosing that I am homosexual). I declined.

- 4 -
DECLARATION OF JOSEPH CHRISTOPHER ROCHA IN SUPPORT OF PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON APPLICATION OF WITT STANDARD OF REVIEW

LOSANGELES 869676 v3 (2K)

19. I forfeited my dream of graduating from the Naval Academy when I declared I am homosexual. This disclosure ended my military career as I was honorably discharged under Don't Ask, Don't Tell on October 15, 2007.

20. After my discharge, the U.S. Department of Veterans Affairs diagnosed me with post-traumatic stress syndrome based entirely on the abuse I endured in the Middle East.

21. If Don't Ask, Don't Tell is overturned, I would rejoin the United States Armed Forces.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _23_ day of June 2010, at _TIJUANA, MEXICO_

_____
Joseph Christopher Rocha

- 5 -
DECLARATION OF JOSEPH CHRISTOPHER ROCHA IN SUPPORT OF
PLAINTIFF LOG CABIN REPUBLICANS' SUPPLEMENTAL BRIEF ON
APPLICATION OF WITT STANDARD OF REVIEW

LOSANGELES 869676 v3 (2K)

# EXHIBIT A

| DEPARTMENT OF THE NAVY | 1. PLACE NAPS / NEWPORT, RI. |
|---|---|
| **VOLUNTARY STATEMENT** | 2. DATE 2007 09 18 |

I, JOSEPH CHRISTOPHER ROCHA, make the following free and voluntary statement to LT. CARR, whom I know to be NAPS LEGAL OFFICER. I make this statement of my own free will and without any threats or promises extended to me. I fully understand that this statement is given concerning my knowledge of

From: MA3 Rocha, J.C. USN
To:   Commanding Officer, Naval Academy Preparatory School

SUBJ: Voluntary Statement

Ref: (a) MILPERSMAN 1910-148

1. Sir, this statement is provided on the advice of counsel and in accordance with reference (a).

2. On 06SEP07 I advised you that I am homosexual, I deeply regret that my personal feelings are not compatible with naval regulations or policy. I am proud of my service and had hoped I would be able to serve the Navy and the Country for my entire career. However, the principals of honor, courage and commitment mean I must be honest with myself, courageous in my beliefs and committed in my course of action.

3. I understand that this statement will be used to end my Naval career.

Very respectfully,

*[signature]*

Joseph Christopher Rocha

OPNAV 5527/2 (12-82)        S/N 0107-LF-055-2710        Designed Using FormFlow 2.15, HQMC/ARAE, May 98