1

2

3                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   LOG CABIN REPUBLICANS, a)    Case No. CV 04-08425-VAP
     non-profit corporation,  )   (Ex)
12                            )
                Plaintiff,    )   **[Motion filed on March 29,**
13                            )   **2010]**
          v.                  )
14                            )   **ORDER DENYING DEFENDANTS'**
     UNITED STATES OF AMERICA )   **MOTION FOR SUMMARY JUDGMENT**
15   and ROBERT M. GATES,     )
     SECRETARY OF DEFENSE, in )
16   his official capacity,   )
                              )
17              Defendants.   )
     _____ )
18

19        Log Cabin Republicans ("Plaintiff" or "LCR"), a non-

20   profit corporation whose membership includes current,

21   retired, and former members of the U.S. armed forces who

22   are homosexual, challenges as "restrictive, punitive, . .

23   . discriminatory," and unconstitutional the "Don't Ask

24   Don't Tell" policy ("DADT Policy") of Defendants United

25   States of America and Robert M. Gates ("Defendants"),

26   including both the statute codified at 10 U.S.C. section

27   654 and the implementing instructions appearing at

28   Department of Defense Instructions ("DoDI"

1

2   or "implementing instructions") 1332.14, 1332.30, and

3   1304.26.  Defendants now move for entry of summary

4   judgment.

5

6                        **I.  BACKGROUND**

7       The Court's May 27, 2010 Order recites the statutory

8   and regulatory scheme comprising the DADT Policy, as well

9   as the procedural history of this Motion.

10

11      Defendants' Motion for Summary Judgment ("Motion"),

12  filed March 29, 2010, challenged Plaintiff's standing to

13  bring this action and also attacked the merits of

14  Plaintiff's claims.  After a timely Opposition and Reply

15  were filed,[1] each side filed supplemental briefing

16  addressing the question of Plaintiff's standing.

17

18      On May 27, 2010, the Court issued its Order Denying

19  in Part Defendants' Motion to the extent it challenged

20  Plaintiff's standing to bring this action.  The Court

21  granted the parties "leave to file supplemental briefs

22  for the sole purpose of discussing application of the

23

24

25  _____

26      [1] Defendants also filed objections to the evidence
    submitted by Plaintiff in opposition to the Motion.  For
27  the reasons set forth below, the Court does not rely on
    this evidence in deciding the Motion, and thus need not
28  address Defendants' objections.

1   <u>Witt</u>[2] standard to Plaintiff's substantive due process

2   claim."  (Docket No. 170 at 26:26-27:2.)  Each side's

3   Supplemental Brief was filed timely.  Having denied

4   Defendants' Motion to the extent it was based on

5   Plaintiff's standing, the Court now addresses the merits

6   of Defendants' Motion.

7

8                    **II. LEGAL STANDARD**

9        A motion for summary judgment shall be granted when

10  there is no genuine issue as to any material fact and the

11  moving party is entitled to judgment as a matter of law.

12  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>,

13  477 U.S. 242, 247-48 (1986).  The moving party must show

14  that "under the governing law, there can be but one

15  reasonable conclusion as to the verdict." <u>Anderson</u>, 477

16  U.S. at 250.

17

18       Generally, the burden is on the moving party to

19  demonstrate that it is entitled to summary judgment.

20  <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);

21  <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707

22  F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears

23  the initial burden of identifying the elements of the

24  claim or defense and evidence that it believes

25

26

27  _____

         [2] <u>Witt v. Dep't of Air Force</u>, 527 F.3d 806 (9th Cir.

28  2008).

                              3

demonstrates the absence of an issue of material fact.
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial,
however, the moving party need not produce evidence
negating or disproving every essential element of the
non-moving party's case.  <u>Id.</u> at 325.  Instead, the
moving party's burden is met by pointing out that there
is an absence of evidence supporting the non-moving
party's case.  <u>Id.</u>  The burden then shifts to the non-
moving party to show that there is a genuine issue of
material fact that must be resolved at trial.  Fed. R.
Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477
U.S. at 256.  The non-moving party must make an
affirmative showing on all matters placed in issue by the
motion as to which it has the burden of proof at trial.
<u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252.  <u>See
also</u> William W. Schwarzer, A. Wallace Tashima & James M.
Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144
(2010).  A defendant has the burden of proof at trial
with respect to any affirmative defense.  <u>Payan v.
Aramark Mgmt. Servs. Ltd. P'ship</u>, 495 F.3d 1119, 1122
(9th Cir. 2007).

A genuine issue of material fact will exist "if the
evidence is such that a reasonable jury could return a
verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at

4

1  248.  In ruling on a motion for summary judgment, the
2  Court construes the evidence in the light most favorable
3  to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d
4  1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac.</u>
5  <u>Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir.
6  1987).

7

8                          **III. DISCUSSION**

9      In its June 9, 2009 Order Granting in Part and
10 Denying in Part Defendants' Motion to Dismiss Case
11 ("Motion to Dismiss Order" or "June 9, 2009 Order"), the
12 Court denied Defendants' motion to dismiss as to
13 Plaintiff's substantive due process claim and its First
14 Amendment claim to the extent it is based on Defendants'
15 use of service members' statements for purposes other
16 than admissions of propensity to engage in homosexual
17 acts, and granted Defendants' motion to dismiss as to
18 Plaintiff's equal protection claim and its First
19 Amendment claim to the extent it is based on Defendants'
20 use of statements as admissions.  Thus, Plaintiff's
21 remaining claims allege violation of substantive due
22 process and of the First Amendment.  Defendants argue
23 they are entitled to summary judgment on each of these
24 claims.  The Court addresses each separately.

25

26

27

28

**A.    Substantive Due Process**

    **1.    Standard of Review**

    Before reaching the merits of Defendants' Motion, the Court must first resolve the standard of review applicable to the DADT Policy, which the parties dispute. Plaintiff maintains the applicable standard of review is that announced by the Ninth Circuit in Witt, i.e., in order for the DADT Policy to survive constitutional scrutiny, Defendants "must advance an important governmental interest, the intrusion must significantly further that interest, and the intrusion must be necessary to further that interest."  Id. at 819.

    Defendants argue the DADT Policy need only survive rational basis review, i.e., it is "rationally related to a legitimate governmental purpose." Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 458 (1988); Matsuda v. City & County of Honolulu, 512 F.3d 1148, 1156 (9th Cir. 2008). For the reasons discussed below, the Court concludes that the Witt standard of review applies to Plaintiff's challenge to the DADT Policy.

    Generally, courts apply rational basis review to state actions which "neither utilize[] a suspect classification nor draw[] distinctions among individuals that implicate fundamental rights." Matsuda, 512 F.3d at 1156 (quoting United States v. Salerno, 481 U.S. 739, 746

1   (1987)).   Conversely, courts employ a heightened standard
2   of review where state actions implicate fundamental
3   rights.

4

5        In _Witt_, the Ninth Circuit recognized that the DADT
6   Policy implicates the fundamental rights recognized by
7   the Supreme Court in _Lawrence v. Texas_, 539 U.S. 558
8   (2003).   _See_ _Witt_, 527 F.3d at 819.   While declining to
9   place its standard of review within the traditional
10  framework of rational basis review, intermediate
11  scrutiny, and strict scrutiny, and expressly declining to
12  apply strict scrutiny, the Ninth Circuit held the DADT
13  Policy constitutes an intrusion "upon the personal and
14  private lives of homosexuals, in a manner that implicates
15  the rights identified in _Lawrence_," and is subject to
16  heightened scrutiny.   _Id._

17

18       Defendants attempt to avoid application of a
19  heightened scrutiny standard by arguing that the _Witt_
20  court limited application of its standard to as-applied
21  challenges.   (Defs.' Supp. Br. at 7:16-9:6.)   Although
22  the _Witt_ court stated that "this heightened scrutiny
23  analysis is as-applied rather than facial," _see_ _Witt_, 527
24  F.3d at 819, it did not address what standard of review
25  would apply to a facial challenge to the DADT Policy.

26

27

28

7

1    Defendants further rely on authority reflecting the

2    "disfavored" status of facial challenges, including

3    Washington State Grange v. Washington State Republican

4    Party, 552 U.S. 442, 450 (2008).  This authority,

5    however, does not establish that the standard of review

6    depends on the nature of the challenge.[3]

7

8    To the contrary, the level of scrutiny the Court

9    applies depends not on the nature of the legal challenge,

10   but rather on the nature of the right implicated.  See,

11   e.g., Reno v. Flores, 507 U.S. 292, 302 (1993)

12   (substantive due process "forbids the government to

13   infringe certain 'fundamental' liberty interests at all .

14   . . unless the infringement is narrowly tailored to serve

15   a compelling state interest.") (emphasis in original);

16   P.O.P.S. v. Gardner, 998 F.2d 764, 767-68 (9th Cir. 1993)

17   (strict scrutiny triggered by impairment of fundamental

18   rights).  Where state action implicates a fundamental

19   right, that action is subject to heightened scrutiny

20   regardless of whether the nature of the challenge is

21   facial or as-applied.  The Supreme Court has applied

22   heightened scrutiny to facial challenges where

23

24   _____

         [3] Indeed, the consequence of the "disfavored" status
25   of facial challenges is not a varying standard of review,
     but rather the requirement that the challenger prove that
26   no circumstances exist under which the statute could be
     constitutionally applied.  See Salerno, 481 U.S. at 745;
27   Wash. State Grange, 552 U.S. at 457;; S.D. Myers, Inc. v.
     City & County of San Francisco, 253 F.3d 461, 467 (9th
28   Cir. 2001).

8

fundamental rights were implicated.   See Planned
Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 845, 877-78
(1992) (applying intermediate scrutiny to facial
challenge).

     In Witt, the Ninth Circuit recognized that the DADT
Policy implicates fundamental rights protected by
Lawrence.   See Witt, 527 F.3d at 819.   Although it noted
the as-applied nature of the plaintiff's challenge, the
Witt court did not expressly limit its holding to as-
applied cases.   Given the centrality of its recognition
of the fundamental rights implicated by the DADT Policy,
Witt's heightened standard of review applies in this
action challenging the Policy on a facial basis.   To the
extent the June 9, 2009 Order on Defendants' motion to
dismiss Plaintiff's First Amended Complaint indicated
otherwise, the Court, having allowed the parties to
submit additional briefing on the issue, now finds the
standard announced by the Ninth Circuit in Witt governs
here.

     **2.   Defendants Fail to Show They Are Entitled to
          Summary Judgment under the Witt Standard**

     Despite the order granting leave to file a
supplemental brief addressing why they are entitled to
summary judgment under the Witt standard, Defendants have
failed to offer any argument why the DADT Policy survives

1   under a heightened level of scrutiny.  Instead,

2   Defendants again have sought a stay of this action,[4]

3   (Defs.' Supp. Br. at 3-6), argued that rational basis is

4   the appropriate standard of review, (Defs.' Supp. Br. at

5   6-9), argued in the alternative that the standard of

6   review set forth in <u>Beller v. Middendorf</u>, 632 F.2d 788

7   (9th Cir. 1980) applies,[5] (Defs.' Supp. Br. at 9-12),

8   argued that Plaintiff's facial challenge cannot survive,[6]

9   (Defs.' Supp. Br. at 12), and argued that Plaintiff is

10  not entitled to rely on evidence outside of the DADT

11  Policy itself and the relevant legislative history in

12  challenging the DADT Policy.[7]  (Defs.' Supp. Br. 13-15).

13  ───────────────

14      [4] The Court addresses Defendants' request for a stay
    separately. (<u>See</u> <u>infra</u>, Section III.C.)

15
16      [5] This argument fails, as it ignores the <u>Witt</u> court's
    express disavowal of <u>Beller</u>'s holding.  <u>Witt</u>, 527 F.3d at
    819 ("We also conclude that our holding in <u>Beller</u>, 632
17  F.2d 788, that a predecessor policy to DADT survived
    heightened scrutiny under the Due Process Clause, is no
18  longer good law."), 820 ("<u>Beller</u>'s heightened scrutiny
    analysis and holding therefore have been effectively
19  overruled by intervening Supreme Court authority.").

20      [6] Defendants maintain that Plaintiff has failed to
    meet its burden of showing there are no circumstances in
21  which the DADT Policy could be constitutionally applied.
    Although Plaintiff ultimately may bear the burden of
22  proof on this issue, at the summary judgment stage the
    burden is on Defendants.  Defendants have failed to
23  identify any instance in which the DADT Policy could
    constitutionally be applied, and thus fail to meet their
24  burden of showing they are entitled to summary judgment
    on this basis.

25
26      [7] This argument also fails.  The only authorities
    Defendants rely on in support of this proposition are <u>FCC</u>
    <u>v. Beach Commc'n, Inc.</u>, 508 U.S. 307 (1993) and <u>Goldman</u>
27  <u>v. Weinberger</u>, 475 U.S. 503 (1986).  <u>Beach</u>, however,
    involved rational basis review, not heightened scrutiny.
28                                              (continued...)

1   As the moving party, Defendants bear the burden of

2   showing they are entitled to summary judgment.  As they

3   failed to address why they are entitled to summary

4   judgment under the <u>Witt</u> standard of review, Defendants do

5   not meet their burden of showing they are entitled to

6   summary judgment.

7

8   **B.   First Amendment**

9        Defendants argue Plaintiff's First Amendment

10  challenge fails because "the DADT Policy and testimony

11  establish that service members are not and have not been

12  discharged for statements other than to show a propensity

13  or intent to engage in homosexual acts."  (Mot. at 22.)

14  Specifically, Defendants argue Plaintiff cannot sustain

15  its First Amendment claim because: (1) John Alexander

16  Nicholson was discharged on the basis of his statement

17  that he is "gay," which was used as evidence of his

18  propensity to engage in homosexual acts and which he

19  chose not to rebut; and (2) Lt. Col. Doe has not been

20  discharged from the military and accordingly "no

21  statement has been used as the basis to discharge Doe

22

23

24  ───────────────

        [7](...continued)

25  <u>Goldman</u> related to a military regulation, not an act of
    Congress.  Furthermore, the regulation at issue applied

26  only to the dress codes of on-duty service members.  The
    DADT Policy is far broader in its reach and affects

27  wholly different substantive rights; thus it is not
    entitled to the same degree of deference as a uniform

28  dress regulation.

1   under the challenged statute or otherwise."[8]  (Mot. at
2   24.)

3

4        Defendants' argument regarding the use of statements
5   as admissions under the DADT Policy is unnecessary
6   because the Court already addressed that issue in its
7   June 9, 2009 Order.  The Court dismissed Plaintiff's
8   First Amendment claim to the extent it related to use of
9   a service member's statement regarding homosexuality as
10  evidence of his or her propensity to engage in homosexual
11  acts.  (June 9, 2009 Order at 21-22.)  The Court based
12  its conclusion on the Ninth Circuit's holding in Holmes
13  v. California Army National Guard, 124 F.3d 1126 (9th
14  Cir. 1997) that use of a service member's statement under
15  the DADT Policy as an admission of conduct does not
16  violate the First Amendment.  See id. at 1136.  The
17  Court, however, denied Defendants' motion to dismiss
18  Plaintiff's First Amendment claim insofar as it related
19  to speech not used as an admission of a propensity to
20  engage in homosexual acts.  (See June 9, 2009 Order at
21  23-24.)

22

23

24

25  _____

26       [8] Defendants appear to read the Court's June 9, 2009
    Order as limiting Plaintiff's First Amendment claim to
27  statements related to discharge.  (See Mot. at 22-23.)
    The Court's June 9, 2009 Order, however, contains no such
28  limitation.

Defendants argue discovery has revealed that
Nicholson was discharged because of his statement that he
is "gay," which created a rebuttable presumption of his
likelihood to engage in "homosexual acts."  (Mot. at 23.)
Nicholson, Defendants argue, was discharged because his
failure to rebut this presumption constituted an
admission.  (Id.)

According to Plaintiff, the DADT policy is "circular"
because it "[p]rovides that sexual orientation is
considered a personal and private matter," yet "defines
'conduct' to include a statement by a member that
demonstrates a propensity or intent to engage in
homosexual acts."  (Opp'n at 21 (internal citations
omitted) (emphasis in original).)  "In other words, the
fact of one's status as a homosexual is supposedly not a
basis for discharge but the statement of that permissible
status is."  (Opp'n at 22 (emphasis in original).)  "Not
surprisingly, given this framework, the vast majority of
discharges under DADT are for 'statements,' not conduct."
(Id. (emphasis in original).)

The Ninth Circuit considered and rejected this very
reasoning in Holmes, which remains binding precedent on
this issue.  See Holmes, 124 F.3d at 1134-36; Hensala v.
Dep't of Air Force, 343 F.3d 951, 957-59 (9th Cir. 2003)

1   (endorsing Holmes' First Amendment analysis of the DADT
2   Policy).

3

4       In Holmes, two service members were discharged after
5   they made statements about their homosexuality and failed
6   to present evidence to rebut the presumption they engaged
7   in or intended to engage in homosexual acts.  124 F.3d at
8   1129-32.  Though the plaintiffs presented evidence of
9   their excellent service records, and one denied engaging
10  in homosexual acts with fellow service members, or with
11  any person at all during the performance of military
12  duty, the court determined the plaintiffs failed to rebut
13  the presumption of a propensity or intent to engage in
14  homosexual acts:

15      [U]nder the statements prong of the "don't
16      ask/don't tell" policy, service members are not
        discharged for having a homosexual "status."  The
        discharges result because of actual conduct or a
17      propensity for conduct that is prohibited.  [The
        plaintiffs'] respective declarations of homosexual
18      orientation did not automatically lead to their
        discharge; rather, their declaration was coupled
19      with their tacit acceptance of the link between
        their orientation and their conduct, as evidenced
20      by their failure to show that they did not engage
        in, attempt to engage in, have a propensity to
21      engage in, or intend to engage in homosexual acts.

22
    Id. at 1135.
23

24

25      As noted above, the Court already dismissed
    Plaintiff's claim to the extent it sought to challenge
26
    the use of statements as evidence of a propensity to
27
    engage in conduct.  (June 9, 2009 Order at 23.)  In other
28

                                14

1    words, Plaintiff's First Amendment claim fails to the

2    extent it is premised upon service members' discharges

3    for making statements about their homosexuality and

4    failing to present evidence to rebut the presumption that

5    they engaged in or intended to engage in homosexual acts.

6    See Holmes, 124 F.3d at 1129.

7

8        Next, Defendants argue Plaintiff's First Amendment

9    claim fails because Lt. Col. Doe is still serving in the

10   military and has not been discharged on the basis of

11   speech.  While Lt. Col. Doe indeed has not been

12   discharged under the DADT Policy, Plaintiff alleges the

13   DADT Policy prevents Doe and other LCR members from

14   "communicating the core of [their] emotions and identity

15   to others", (see Opp'n at 23; Doe Decl. ¶ 7), and chills

16   "public, off-base" speech such as participating in

17   political rallies for gay rights and denouncing "biased

18   comments about homosexuals." (Opp'n at 24.)  Plaintiff

19   also contends the DADT Policy chills service members'

20   First Amendment right to petition the government for a

21   redress of grievances because members like Doe are unable

22   to identify themselves publicly as members of LCR or to

23   testify at trial for fear they will be discharged. (Id.

24   at 23.)  Thus, according to Plaintiff, the DADT Policy

25   chills the constitutionally protected speech of service

26   members who have not been discharged.

27

28

1    Plaintiff may succeed in its facial challenge (<u>see</u>
2    Opp'n at 1, 24) in one of two different methods: by
3    showing the law (1) "is unconstitutional in every
4    conceivable application,"[9] or (2) "seeks to prohibit such
5    a broad range of protected conduct that it is
6    unconstitutionally 'overbroad.'"  <u>Members of the City</u>
7    <u>Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S.
8    789, 796 (1984).  The Ninth Circuit has held that "a law
9    is void on its face if it sweeps within its ambit not
10   solely activity that is subject to governmental control,
11   but also includes within its prohibition the practice of
12   a protected constitutional right."  <u>Clark v. City of Los</u>
13   <u>Angeles</u>, 650 F.2d 1033, 1039 (9th Cir. 1981) ("The
14   overbreadth doctrine has been applied almost exclusively
15   in the areas of [F]irst [A]mendment expressive or
16   associational rights.") (citing <u>Broadrick v. Oklahoma</u>,
17   413 U.S. 601, 612 (1973); <u>Dombrowski v. Pfister</u>, 380 U.S.
18   479, 486 (1965)).

19

20   Under the "overbreadth" doctrine, a plaintiff may
21   challenge an overly broad statute, facially, by showing
22   that it may inhibit the First Amendment rights of
23   individuals who are not before the court.  <u>See, e.g.</u>,
24   <u>Vincent</u>, 466 U.S. at 798-99; <u>Village of Schaumburg v.</u>

25

26   _____
27   [9] Plaintiff does not make this argument, which would
     be foreclosed in light of the Court's June 9, 2009 Order,
     holding the use of service members' statements as
28   admissions constitutional under <u>Holmes</u>.

1    <u>Citizens for a Better Env't</u>, 444 U.S. 620, 634 (1980).

2    That is, a plaintiff may challenge a statute on the

3    ground that it is unconstitutional as applied to someone

4    else, even if her own conduct is not protected under the

5    First Amendment.  See <u>Foti v. City of Menlo Park</u>, 146

6    F.3d 629, 635 (9th Cir. 1998) (citing <u>Vincent</u>, 466 U.S.

7    at 797); <u>Forsyth County v. Nationalist Movement</u>, 505 U.S.

8    123, 129 (1992) (overbreadth doctrine is based on the

9    observation that "the very existence of some broadly

10   written laws has the potential to chill the expressive

11   activity of others not before the court"); <u>see also</u> <u>Lind</u>

12   <u>v. Grimmer</u>, 30 F.3d 1115, 1122 (9th Cir. 1994)

13   (overbreadth doctrine is designed to avert a potential

14   chilling effect on speech).  Of course, a plaintiff whose

15   conduct is protected may also bring a facial challenge to

16   a statute that she contends is unconstitutional, without

17   having to employ the overbreadth doctrine, by arguing

18   that the statute could never be applied in a valid manner

19   and would chill the speech of others.  See <u>Foti</u>, 146 F.3d

20   at 635; <u>Nunez v. City of San Diego</u>, 114 F.3d 935, 949

21   (9th Cir. 1997); <u>Tucker v. State of California Dep't of</u>

22   <u>Educ.</u>, 97 F.3d 1204, 1217 n.10 (9th Cir. 1996).

23

24        Defendants' argument that they are entitled to

25   summary judgment on the basis of facts related to

26   Nicholson and Doe fails, because Plaintiff is not limited

27   to pursuing its members' individual claims.  Rather,

28

                                17

1   Plaintiff may challenge the DADT Policy by showing that
2   it has the potential to chill the expressive activity of
3   others not before the court.   See Vincent, 466 U.S. at
4   796-97.

5

6       A litigant making a facial challenge to a statute on
7   First Amendment grounds bears a "heavy burden" and "must
8   demonstrate a substantial risk that the application of
9   the [statutory] provision will lead to the suppression of
10  speech."   Nat'l Endowment for the Arts v. Finley, 524
11  U.S. 569, 580 (1998) (citing Broadrick, 413 U.S. at 615).
12  Here, as Plaintiff bears the burden at trial, Defendants
13  need not produce evidence negating or disproving every
14  essential element of Plaintiff's claim, but must point
15  out that there is an absence of evidence supporting
16  Plaintiff's claim.   See Celotex, 477 U.S. at 325.
17  Defendants fail to address Plaintiff's overbreadth claim
18  whatsoever, and consequently have not met their burden of
19  showing they are entitled to summary judgment on
20  Plaintiff's First Amendment claim.

21

22  **C.   A Stay of This Action Is Not Warranted**

23      In their Supplemental Brief, Defendants again seek a
24  stay of this action.[10]   Defendants appear to advance three

25  _____

26      [10] Defendants use the vehicle of their Supplemental
    Brief to seek a stay of this action despite having leave
27  to file this brief "for the sole purpose of discussing
    application of the Witt standard to Plaintiff's
28                                          (continued...)

arguments in support of this request: (1) a stay would be
in the interests of all parties as it may moot the need
for a trial; (2) a stay would permit the Court to avoid
reaching constitutional issues; and (3) the Court should
defer to the other branches of government on questions
involving the military.  For the reasons set forth below,
the Court finds none of these arguments persuasive, and
declines to stay this action.

### 1.   A Stay Is Unlikely to Moot This Action

Defendants argue that a stay is appropriate because a
measure to repeal the DADT Policy currently is pending in
both houses of Congress.  Defendants contend that "the
Court should defer ruling on LCR's facial constitutional
challenge to allow the political branches to properly
consider whether the implementation of a repeal would be
consistent with the standards of military readiness,
military effectiveness, and unit cohesion."  (Defs.'
Supp. Br. at 6:17-20.)

A stay of this action on the basis of this pending
legislation would be unjustified for at least two
reasons.  First, at this time it is speculative to assert
that the measures in question, section 591 of Senate Bill

---

[10](...continued)
substantive due process claim."  (Docket No. 170 at
26:26-27:2.)  The Court nevertheless considers the merits
of Defendants' request.

3454, and section 536 of H.R. 5136, will ultimately be
included as part of the final defense authorization bill
that emerges from Congress.

    Second, even if these measures were to become law,
they still would not repeal the DADT Policy immediately.
As Defendants concede, ultimate repeal depends on several
contingencies.  First, the Secretary of Defense must
complete a "Comprehensive Review on the Implementation of
a Repeal of 10 U.S.C. 654" (the "Review") initiated on
March 2, 2010.  The currently contemplated repeal
measures provide no deadline for completion of the
Review; thus there is no means for the Court to determine
when this first condition precedent may occur, if ever.
Second, once the Review has been completed, the President
must transmit a certification signed by himself, the
Secretary of Defense, and the Chairman of the Joint
Chiefs of Staff stating that they have: (1) considered
the recommendations and proposals of the Review; (2)
prepared necessary policies and regulations for repeal of
the DADT Policy; and (3) determined that implementation
of those policies and regulations is "consistent with the
standards of military readiness, military effectiveness,
unit cohesion, and recruiting and retention of the Armed
Forces."  S. 3454, 111th Cong. § 591(b)(2)(C) (2010);
H.R. 5136, 111th Cong. § 536(b)(2)(C) (2010).  Again, the
measure provides no deadline for the President to

1  transmit such a certification, and effectively vests him
2  with discretion to decline to do so.
3
4      In other words, the currently contemplated
5  legislation, were it to become law, would not result in
6  imminent repeal of the DADT Policy.  Given the many
7  contingencies involved — including the threshold
8  contingency of Congressional approval — and the lack of
9  clear timelines, any ultimate repeal that may result from
10 this legislation is at this point remote, if not wholly
11 speculative.
12
13     **2.   The Court Is Not Obligated to Stay This Action**
14         **to Avoid Constitutional Questions**
15     Defendants cite the well-established principle that
16 "courts should not decide constitutional issues if they
17 can reasonably avoid doing so."  (Defs.' Supp. Br. at
18 4:8-9.)  This is a canon of construction, however.  <u>See</u>
19 <u>Spector Motor Serv. v. McLaughlin</u>, 323 U.S. 101, 105-06
20 (1944) (applying doctrine of avoidance to require courts
21 to await determinations on local law issues before
22 reaching questions of constitutionality).  Whether or not
23 to stay a case is a separate matter, one within the
24 Court's discretion.  <u>See Mediterranean Enter., Inc. v.</u>
25 <u>Ssangyong Corp.</u>, 708 F.2d 1458, 1465 (9th Cir. 1983) ("A
26 trial court may, with propriety, find it is efficient for
27 its own docket and the fairest course for the parties to
28

1    enter a stay of an action before it, pending resolution

2    of independent proceedings which bear upon the case.")

3    (quoting <u>Leyva v. Certified Grocers of California</u>, 593

4    F.2d 857, 863-64 (9th Cir. 1979).   Here, for the reasons

5    discussed above, the possibility that action by the

6    legislative and executive branches will moot this case is

7    sufficiently remote that a stay of this action is

8    inappropriate.

9

10       **3.   The Court Is Not Obligated to Defer to the**

11            **Judgment of the Legislative and Executive**

12            **Branches**

13       Defendants' argument that "Congress, rather than the

14   courts, [should] make decisions regarding the military,"

15   (Defs.' Supp. Br. at 6:9-10), also lacks merit.   It is

16   true, as the Supreme Court has recognized, that the

17   military is entitled to a certain degree of deference.

18   <u>See, e.g.</u>, <u>North Dakota v. United States</u>, 495 U.S. 423,

19   443 (1990) ("When the Court is confronted with questions

20   relating to military discipline and military operations,

21   we properly defer to the judgment of those who must lead

22   our Armed Forces in battle.").   That deference, however,

23   is not unlimited, and must be balanced against the

24   courts' "time-honored and constitutionally mandated roles

25   of reviewing and resolving claims." <u>Hamdi v. Rumsfeld</u>,

26   542 U.S. 507, 535 (2004).   This role "does not infringe

27   on the core role of the military." <u>Id.</u>  Defendants have

28

                              22

1  identified no authority requiring the Court to stay this

2  action on this basis or to refrain from reaching the

3  constitutional questions presented.  Accordingly, the

4  Court declines to enter a stay.

5

6                      **IV. CONCLUSION**

7       For the reasons set forth above, the Court DENIES

8  Defendants' Motion.

9

10

11 Dated: July 6, 2010

12                              VIRGINIA A. PHILLIPS
                            United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28