DAN WOODS (SBN: 78638)
EARLE MILLER (SBN: 116864)
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA  90071-2007
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329
Email:       dwoods@whitecase.com
Email:       emiller@whitecase.com

Attorneys for Plaintiff
Log Cabin Republicans

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOG CABIN REPUBLICANS, a nonprofit corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA and LEON E. PANETTA, SECRETARY OF DEFENSE, in his official capacity,<br><br>     Defendants. | Case No.  CV 04-8425 VAP (Ex)<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES PURSUANT TO (1) THE EQUAL ACCESS TO JUSTICE ACT (28 U.S.C. § 2412) AND (2) FED. R. CIV. P. 37; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[DECLARATIONS OF DAN WOODS AND R. CLARKE COOPER FILED CONCURRENTLY HEREWITH]**<br><br>Judge:  Hon. Virginia A. Phillips<br><br>Date:   February 27, 2012<br>Time:   2:00 p.m.<br>Ctrm:   2 |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that on February 27, 2012, at 2:00 p.m., or as soon

3    thereafter as this matter can be heard, before the Hon. Virginia A. Phillips of the

4    United States District Court for the Central District of California, 3470 Twelfth

5    Street, Riverside, California 92501, Log Cabin Republicans ("Log Cabin") will and

6    hereby does move for an award of attorneys' fees and expenses, in the amount of

7    $2,090,614.13 in attorneys' fees and $35,353.90 in expenses, for a total award of

8    **$2,125,968.03** or according to proof, pursuant to the Equal Access To Justice Act,

9    28 U.S.C. § 2412 (the "EAJA").

10       PLEASE TAKE FURTHER NOTICE that at the same time and place, Log

11   Cabin will and hereby does move for a separate award of attorneys' fees and

12   expenses, in the amount of $2,235,656.00 in attorneys' fees and $47,583.64 in

13   expenses, for a total award of **$2,283,239.64** or according to proof, pursuant to Fed.

14   R. Civ. P. 37(c).

15       To the extent that any portion of an award the Court makes pursuant to Fed.

16   R. Civ. P. 37(c) duplicates an award the Court may make pursuant to EAJA, Log

17   Cabin disclaims such portion of the EAJA award as would constitute a duplicate

18   recovery.  In the event the Court awards Log Cabin attorneys' fees and expenses

19   under both EAJA and Fed. R. Civ. P. 37(c), Log Cabin would seek a total net award

20   of **$3,550,358.03**, or according to proof.

21       This motion is and will be made on the grounds that Log Cabin is the

22   prevailing party on the merits following this Court's judgment entered after trial;

23   that the position of the United States was not substantially justified; and that the

24   government failed to admit, with no reasonable grounds to believe it might prevail,

25   matters of substantial importance to the case which Log Cabin later proved to be

26   true.

27       This motion is and will be based on this Notice of Motion; the Application

28   for Fees and Other Expenses (Form AO 291), Memorandum of Points and

- 1 -

1  Authorities, and Declarations of Dan Woods and R. Clarke Cooper filed herewith;

2  the pleadings, papers, and records on file herein, and such other and further oral and

3  documentary evidence as may be presented at the hearing.

4      This motion is made following the conference of counsel pursuant to L.R. 7-

5  3 which took place on December 30, 2011; and pursuant to the stipulation of the

6  parties and order thereon (Docs. 323 and 325) regarding the procedure for hearing

7  of this motion, filed on January 6, 2012, under which the determination of this

8  motion will be made in two stages, the Court first determining whether Log Cabin

9  is entitled to an award of attorneys' fees and expenses under EAJA, Fed. R. Civ. P.

10 37, or both, and thereafter, if it determines that question in the affirmative, setting a

11 schedule for further proceedings regarding the amount of fees and expenses that

12 may be appropriate.

13

14 Dated:    January 12, 2012              WHITE & CASE LLP

15

16                                        By:   _/s/ Dan Woods_____

17                                              Dan Woods
                                                Attorneys for Plaintiff
18                                              Log Cabin Republicans

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................... 1

II.    STATEMENT OF FACTS ............................................. 2

III.    LOG CABIN IS ENTITLED TO AN AWARD OF FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT ......... 6

     A.    Log Cabin Is a Prevailing Party and Eligible to Receive an Award of Fees and Expenses ......................................... 7

         1.    Log Cabin prevailed in its mission to prevent investigations and discharges pursuant to DADT. ..................................... 7

         2.    Log Cabin retains its prevailing party status despite mootness because it obtained relief that is now permanent and its victory was not undone by a later ruling on the merits ................................................. 10

     B.    The Government's Position Was Not Substantially Justified ........ 12

IV.    LOG CABIN IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES UNDER FED. R. CIV. P. 37(C) ....................... 13

     A.    The Requests for Admission and the Government's Responses .... 14

     B.    The Government's Denial of the RFAs was Unreasonable ........... 16

         1.    The government relied solely on 1993 legislative history, which was contradicted by 2009 statements by military and civilian officials ................................................. 17

         2.    The government failed to independently examine whether DADT actually furthered national security ........................... 19

     C.    Log Cabin Is Entitled to Recover All Expenses Incurred from the Time the Government Failed to Admit the RFAs, Through Trial ................................................. 20

V.    SUMMARY STATEMENT OF AMOUNTS CLAIMED ....................... 21

VI.    CONCLUSION ................................................. 23

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

<u>Barry v. Bowen</u>,
   825 F.2d 1324 (9th Cir. 1987) ........................................................................ 12

<u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human
Res.</u>,
   532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ................................ 7, 8

<u>Californians for Alts. To Toxics v. U.S. Forest Serv.</u>,
   2007 WL 2993132 (E.D. Cal. Oct. 11, 2007) ................................................... 10

<u>Carbonell v. INS</u>,
   429 F.3d 894 (9th Cir. 2005) ...................................................................... 7, 8, 9

<u>Diamond State Ins. Co. v. Deardorff</u>,
   No. 1:10-CV-00004, 2011 WL 2414391 (E.D. Cal. June 8, 2011) ............ 17, 18

<u>Flores v. Shalala</u>,
   49 F.3d 562 (9th Cir. 1995) ............................................................................. 6

<u>Foster Poultry Farms, Inc. v. SunTrust Bank</u>,
   377 F.App'x 665 (9th Cir. 2010) ..................................................................... 19

<u>Herrington v. County of Sonoma</u>,
   883 F.2d 739 (9th Cir. 1989) ............................................................................ 9

<u>Holmgren v. State Farm Mut. Auto Ins. Co.</u>,
   976 F.2d 573 (9th Cir. 1992) .......................................................................... 20

<u>Lawrence v. Texas</u>,
   539 U.S. 558 (2003) ......................................................................................... 2

<u>Log Cabin Republicans v. United States</u>,
   658 F.3d 1162 (9th Cir. 2011) ............................................................... 5, 12, 21

<u>Love v. Reilly</u>,
   924 F.2d 1492 (9th Cir. 1991) .......................................................................... 6

- ii -

Marchand v. Mercy Med. Ctr.,
   22 F.3d 933 (9th Cir. 1994) ................................................................ 13, 17, 20

Meinhold v. U.S. Dep't of Def.,
   123 F.3d 1275, amended by 131 F.3d 842 (9th Cir. 1997) ..................... 6, 12

Oregon Natural Desert Association v. Lohn,
   522 F. Supp. 2d 1295 (D. Or. 2007) ................................................... 10, 11

Oregon Natural Res. Council v. Madigan,
   980 F.2d 1330 (9th Cir. 1992) ................................................................... 6

Pierce v. Underwood,
   487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ......................... 12

Richard S. v. Dep't of Developmental Servs.,
   317 F.3d 1080 (9th Cir. 2003) ................................................................. 11

Sampson v. Chater,
   103 F.3d 918 (9th Cir. 1996) ................................................................... 12

Scarborough v. Principi,
   541 U.S. 401, 124 S.Ct 1856, 158 L.Ed.2d 674 (2004) ........................... 6

Shalala v. Schaefer,
   509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) ......................... 7

U.S. v. Marolf,
   277 F.3d 1156 (9th Cir. 2002) ................................................................. 13

U.S. v. Real Prop. at 2659 Roundhill Dr., Alamo, Cal.,
   283 F.3d 1146 (9th Cir. 2002) ................................................................... 7

United States v. 313.34 Acres of Land,
   897 F.2d 1473 (9th Cir. 1989) ................................................................. 12

Watson v. County of Riverside,
   300 F.3d 1092 (9th Cir. 2002) ............................................................... 9, 11

Witt v. Dep't of the Air Force,
   527 F.3d 806 (9th Cir. 2008) ................................................................... 18

- iii -

1

# CONSTITUTION

2   First Amendment ........................................................................ 2, 13, 16

3   Fifth Amendment ............................................................................. 2, 13

4

5

# STATUTES

6   10 U.S.C. § 654 ................................................................................... 2, 4

7   10 U.S.C. § 654(a)(15) ........................................................................... 2

8   10 U.S.C. § 654(b) .................................................................................. 2

9   28 U.S.C. § 2412 ............................................................................ passim

10  28 U.S.C. § 2412(d)(1)(A) .................................................................. 6, 12

11  28 U.S.C § 2412(d)(2)(D) ....................................................................... 7

12  42 U.S.C. § 1988 ............................................................................... 9, 11

13  Don't Ask, Don't Tell Repeal Act of 2010,
        Pub. L. No. 111-321, 124 Stat. 3515 (2010) ...................................... 3
14

15

16

# RULES

17  Fed. R. Civ. P. 36 ............................................................................ 13, 14

18  Fed. R. Civ. P. 37 ............................................................................ 20, 22

19  Fed. R. Civ. P. 37(c) .......................................................................... 1, 13

20  Fed. R. Civ. P. 37(c)(2) ................................................................... passim

21

22

23

24

25

26

27

28

# I.

## **INTRODUCTION**

On October 12, 2010, this Court entered judgment in favor of Log Cabin Republicans ("Log Cabin") finding that former 10 U.S.C. section 654 and its implementing regulations ("Don't Ask, Don't Tell" or "DADT") violated United States servicemembers' substantive due process rights under the Fifth Amendment to the United States Constitution and their rights to freedom of speech and to petition the government for redress of grievances guaranteed by the First Amendment.  The Court also entered a permanent injunction barring the government from enforcing DADT against any person subject to its jurisdiction or command.

During the lengthy litigation that led up to the Court's judgment, the government steadfastly maintained that DADT was constitutional based solely on the legislative history of its adoption in 1993.  The government's position in the litigation was without substantial justification because reliance on legislative history alone is insufficient to justify the constitutionality of DADT in view of significant intervening legal and factual developments.  Notwithstanding those tectonic shifts in the constitutional and practical landscape, the government refused to present any evidence at trial other than the statute's legislative history.

The government also unjustifiably refused to admit three Requests for Admission that called on it to admit the truth of public statements by the President of the United States.  The government's obstructionist position denying those Requests for Admission obliged Log Cabin to devote substantial time before and at trial to present extensive evidence to prove that the President was correct and that DADT undermined our national security.

Log Cabin now moves for an award of attorneys' fees and expenses on two separate grounds:  pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (the "EAJA"); and pursuant to Federal Rule of Civil Procedure 37(c).

## II.

## <u>STATEMENT OF FACTS</u>

The Court is well-acquainted with the facts of this case, and Log Cabin will not repeat them here in great detail. However, a brief summary of the case will help place Log Cabin's request for an award of fees and expenses in context.

In 1993, Congress enacted the statute and policy known as Don't Ask, Don't Tell, codified at 10 U.S.C. § 654 and its implementing regulations. The statute declared that "the presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability," 10 U.S.C. § 654(a)(15) (former), and directed the separation from the armed forces of a servicemember who had engaged in homosexual acts, stated that he or she was a homosexual or bisexual, or married or attempted to marry a person of the same sex. 10 U.S.C. § 654(b) (former). The effect of DADT was to prohibit open service by homosexuals in the military.

In 2004, following the Supreme Court's decision in <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003), Log Cabin filed this facial constitutional challenge to DADT. As tried, the essence of Log Cabin's showing was that DADT did **not** promote morale, good order and discipline, and unit cohesion, and in fact **undermined** military capability and endangered our national security.

After six years of litigation and a contested two-week bench trial, at which seven expert witnesses in various disciplines and six former servicemembers affected by DADT testified, this Court declared DADT unconstitutional and enjoined its further enforcement. Specifically, this Court found that DADT violated both the Fifth Amendment due process rights of United States servicemembers and their First Amendment rights to freedom of speech and to petition for redress of grievances. It entered judgment in favor of Log Cabin on its claims for declaratory and injunctive relief.

1    The injunction was entered on October 12, 2010.  The government filed a

2    Notice of Appeal on October 14, 2010.  For eight days the United States

3    government was prohibited from enforcing and applying DADT, and was ordered

4    to suspend and discontinue any investigation or discharge proceeding that had been

5    commenced under DADT.  It did so:  on October 15, 2010 the Undersecretary of

6    Defense issued a Memorandum to the Secretaries of the Military Departments

7    directing that unless the injunction was stayed on appeal, "the Department of

8    Defense will abide by the terms of the injunction."  The Ninth Circuit then stayed

9    the injunction temporarily on October 20, 2010 and on November 1, 2010 pending

10    resolution of the government's appeal.

11    Congress thereafter enacted the Don't Ask, Don't Tell Repeal Act of 2010,

12    Pub. L. No. 111-321, 124 Stat. 3515 (2010) ("Repeal Act"), which the President

13    signed on December 22, 2010.  Congress, in passing the Repeal Act, and the

14    government, in this litigation, have acknowledged that this case, and this Court's

15    judgment and injunction invalidating DADT, spurred the passage of the Repeal Act

16    after all previous efforts at repeal had failed.  See Government's Corrected

17    Emergency Motion for Reconsideration of Order Lifting Stay, Log Cabin

18    Republicans v. United States, No. 10-56634 (9th Cir. July 15, 2011, Dkt. 115-1), at

19    8-9 and n.2 (citing legislative history).

20    The Repeal Act provided that DADT would be repealed 60 days after: (1) the

21    Secretary of Defense received a report determining the impact of repealing DADT

22    and recommending any necessary changes to military policy; and (2) the President,

23    Secretary of Defense, and Chairman of the Joint Chiefs of Staff certified that they

24    had considered the report's recommendations and were prepared to implement the

25    repeal consistent with military readiness, military effectiveness, and unit cohesion.

26    Repeal Act § 2(b).  The Repeal Act left DADT in full force and effect until 60 days

27    after the prerequisites to repeal were satisfied.  Id. § 2(c).

28    In May 2011, after the appellate briefing was complete, Log Cabin moved in

1   the Ninth Circuit to lift the stay of injunction, on the basis that the government did

2   not defend the constitutionality of DADT in its briefs on appeal and therefore could

3   not show a likelihood of success on the merits.  On July 6, 2011 the Ninth Circuit

4   granted Log Cabin's motion and lifted the stay of injunction.  Once again, the

5   government was prohibited from enforcing and applying DADT, and pending

6   DADT investigations and discharge proceedings were discontinued.  The

7   government filed an emergency motion for reconsideration.

8           On July 15, 2011 the Ninth Circuit temporarily reinstated the stay, but with a

9   large exception that swallowed the rule:  the Ninth Circuit ordered that this Court's

10   judgment would continue in effect "insofar as it enjoins [the government] from

11   investigating, penalizing, or discharging anyone from the military pursuant to the

12   Don't Ask, Don't Tell policy."  Following full briefing on the motion for

13   reconsideration, the Ninth Circuit on July 22, 2011 granted the motion, but with the

14   same large exception.  Thus, from July 6, 2011 on, the government was prohibited,

15   by the orders of two courts, from enforcing DADT.  Presumably, it complied; and

16   after July 6, 2011 no investigations or discharges under DADT took place.

17           On July 22, 2011, the President, the Secretary of Defense, and the Chairman

18   of the Joint Chiefs of Staff certified that "the congressionally mandated

19   prerequisites to repeal of 10 U.S.C. § 654 have been satisfied," and the certification

20   document was transmitted to Congress.  Government's Letter Pursuant to FRAP

21   28(j), Log Cabin Republicans v. United States, No. 10-56634 (9th Cir. July 22,

22   2011, Dkt. 123-1).  The certification took place quite literally as the government

23   was in the process of filing its reply brief on the motion for reconsideration – the

24   government stated in that brief that certification was imminent – and less than four

25   hours later the Ninth Circuit issued its order granting the motion for reconsideration

26   while leaving the injunction in effect.

27           Certification had originally been projected to take "some number of months"

28   from the enactment of the Repeal Act, with "months of planning" necessary to

- 4 -

1  "implement the orderly elimination of DADT."  <u>See</u> Declaration of Clifford L.

2  Stanley dated October 14, 2010 (Doc. 253-2), ¶¶ 19-20.  It surely was no

3  coincidence that certification instead came a swift two weeks after the Ninth Circuit

4  lifted the stay of this Court's injunction, while the government's motion for

5  reconsideration of that order was pending, and in time for the government to be able

6  to state, at oral argument on the appeal, that the 60-day period following

7  certification was running and about to pass, rendering the Repeal Act effective.[1]

8      The Ninth Circuit heard oral argument on the appeal on September 1, 2011.

9  The repeal of DADT became effective on September 20, 2011.  On that day, the

10  government filed a motion in the Ninth Circuit suggesting that the case was moot,

11  and moving to vacate this Court's judgment and injunction.  On September 29,

12  2011, the Ninth Circuit issued its opinion, <u>Log Cabin Republicans v. United States</u>,

13  658 F.3d 1162 (9th Cir. 2011), holding that the case was moot, vacating the

14  judgment of this Court, and remanding the case to this Court with directions to

15  dismiss the complaint.

16      The Ninth Circuit did not decide the appeal on the merits.  Its decision does

17  not change the fact that this Court issued judgment in favor of Log Cabin and that

18  for eight days in 2010 and two and a half months in 2011, its injunction prevented

19  the government from investigating, penalizing, or discharging servicemembers

20  pursuant to DADT.  For the reasons shown below, this Court should award Log

21  Cabin attorneys' fees and expenses for its successful efforts to prevent the

22  government from enforcing an unconstitutional statute.

23

24

25  [1] Indeed, barely a week before the certification date, on July 14, 2011, the
    government was projecting that certification was still weeks away from even being

26  presented to the President, the Secretary of Defense, and the Chairman of the Joint
    Chiefs of Staff, and would not occur until "the end of July or early in August."

27  Declaration of Major General Steven A. Hummer, <u>Log Cabin Republicans v.</u>

28  <u>United States</u>, No. 10-56634 (9th Cir. July 14, 2011, Dkt. 113-2), ¶ 11.

- 5 -

## III.

### LOG CABIN IS ENTITLED TO AN AWARD OF FEES AND EXPENSES
### UNDER THE EQUAL ACCESS TO JUSTICE ACT

The EAJA, 28 U.S.C. § 2412, provides for an award of attorneys' fees to the prevailing party in any action brought against the United States.  In relevant part, it provides:

> Except as otherwise specifically provided by statute, a court **shall award** to a prevailing party other than the United States fees and other expenses . . . . incurred by that party in any civil action . . . ., including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).[2]

Thus, under section 2412(d), the award of attorneys' fees to the prevailing party is mandatory unless the United States shows that its position was "substantially justified."  "The EAJA creates a presumption that fees will be awarded to prevailing parties."  Flores v. Shalala, 49 F.3d 562, 567 (9th Cir. 1995). The government thus bears the burden of proving that its position was substantially justified.  Scarborough v. Principi, 541 U.S. 401, 414, 416, 124 S.Ct 1856, 1866-67, 158 L.Ed.2d 674 (2004); Meinhold v. U.S. Dep't of Def., 123 F.3d 1275, 1277 (9th Cir. 1997), amended by 131 F.3d 842; Oregon Natural Res. Council v. Madigan,

---

[2] Log Cabin qualifies for an award of attorneys' fees and expenses pursuant to EAJA because it is an organization whose net worth did not exceed $7 million, and which had fewer than 500 employees, at the time this civil action was filed.  28 U.S.C. § 2412(d)(2)(B); Declaration of R. Clarke Cooper, ¶ 3; Love v. Reilly, 924 F.2d 1492, 1494 (9th Cir. 1991).

- 6 -

1   980 F.2d 1330, 1331 (9th Cir. 1992).  The government's position includes both its

2   conduct in litigation and the underlying act giving rise to the suit.  28 U.S.C §

3   2412(d)(2)(D).

4   **A.      Log Cabin Is a Prevailing Party and Eligible to Receive an Award**

5   **of Fees and Expenses**

6   The EAJA applies to any civil suit (aside from an action sounding in tort)

7   against the government, and expressly includes "proceedings for judicial review of

8   agency action."  Log Cabin's action, which was for declaratory and injunctive relief

9   against the enforcement of DADT, is therefore within the scope of the Act.

10   There are two requirements to qualify as a prevailing party under the EAJA:

11   (1) there must be a material alteration of the legal relationship of the parties; and (2)

12   the alteration must be judicially sanctioned.  Buckhannon Bd. & Care Home, Inc. v.

13   W. Va. Dept. of Health & Human Res., 532 U.S. 598, 621, 121 S.Ct. 1835, 1849,

14   149 L.Ed.2d 855 (2001); Carbonell v. INS, 429 F.3d 894, 898 (9th Cir. 2005).  "A

15   party need not succeed on every claim in order to prevail."  Carbonell, 429 F.3d at

16   900 n.5.  Rather, a party is considered the prevailing party if it succeeds "on any

17   significant issue in litigation which achieve[d] some of the benefit … sought in

18   bringing the suit."  Shalala v. Schaefer, 509 U.S. 292, 302, 113 S.Ct. 2625, 2632,

19   125 L.Ed.2d 239 (1993); U.S. v. Real Prop. at 2659 Roundhill Dr., Alamo, Cal.,

20   283 F.3d 1146, 1150-51 (9th Cir. 2002).  Thus, fees can be appropriately awarded

21   for interim relief.  Buckhannon, 532 U.S. at 603-04.  As this Court recognized

22   when it granted Log Cabin's request to apply for attorneys' fees pursuant to EAJA

23   (Doc. 252, ¶ 4), Log Cabin qualifies for an award of attorneys' fees and expenses as

24   a "prevailing party" under EAJA.

25   **1.      Log Cabin prevailed in its mission to prevent investigations**

26   **and discharges pursuant to DADT.**

27   Log Cabin is a prevailing party because on October 12, 2010, this Court

28   entered judgment in its favor, affording it the complete relief it had sought.

1   Specifically, this Court issued judgment in favor of Log Cabin on its claims for

2   declaratory and injunctive relief.  The permanent injunction prohibited the

3   government from enforcing DADT for nearly three months until the Repeal Act

4   took effect on September 20, 2011.  Investigations and discharge proceedings

5   pending when the injunction was entered, or when it was reinstated by the Ninth

6   Circuit in July 2011, were stopped in their tracks.  This Court-ordered relief creates

7   the "material alteration of the legal relationship of the parties necessary to permit an

8   award of attorney's fees."  Buckhannon, 532 U.S. at 604 (internal quotations and

9   citations omitted).

10          In Carbonell, supra, an alien applied for asylum with the aid of an attorney.

11  429 F.3d at 896.  He was later informed of an order of deportation and subsequently

12  hired a new attorney and filed a motion to reopen based on a claim of ineffective

13  assistance of counsel.  The motion was denied and he appealed to the Board of

14  Immigration Appeals ("BIA").  The BIA affirmed the denial of the motion to

15  reopen and plaintiff then filed a motion to reconsider and a request for a stay of

16  deportation with the BIA.  The INS and plaintiff then stipulated to a stay of

17  deportation until the BIA ruled on his motion to reconsider.  Id. at 897.  The Ninth

18  Circuit held that the plaintiff satisfied the first prong of the prevailing party test,

19  having shown a material alteration in the legal relationship between the parties as a

20  result of the parties' stipulation to a stay of deportation.  Id. at 900.  Because the

21  stay was enforced, the plaintiff obtained the desired relief.

22          Before the district court issued its order which incorporated the

23          stay of deportation, the INS had the authority to deport Carbonell

24          immediately.  Had the INS done so prior to the BIA's deciding

25          his motion to reopen his case, the BIA would have dismissed his

26          case and Carbonell would have had no further recourse.... The

27          stipulation for the stay of deportation thus materially altered the

28          legal relationship between the parties, because the defendants

1             were required to do something directly benefiting the plaintiff[ ]

2             that they otherwise would not have had to do.

3   Id. at 899-900 (internal quotations and citation omitted).  Thus the plaintiff was a

4   prevailing party because he received a court-ordered stay of deportation until the

5   BIA reconsidered his claim of ineffective assistance of counsel.

6        In Watson v. County of Riverside, 300 F.3d 1092, 1093 (9th Cir. 2002),

7   discussed in more detail infra, a case decided under the analogous attorneys' fee

8   provision of 42 U.S.C. § 1988, the Ninth Circuit affirmed that a plaintiff who

9   obtains a preliminary injunction can be a prevailing party, even if the plaintiff

10   recovers no other relief sought in the lawsuit.  The Ninth Circuit did note that not

11   all cases where the plaintiff wins an early victory of a preliminary injunction will

12   result in the plaintiff being a prevailing party.  Id. at 1096.  However, in Watson,

13   plaintiff's injunctive relief "satisifie[d] the prevailing party test" because the

14   plaintiff "achieved some of the benefit [he] sought in bringing the suit" and because

15   "the injunction altered the legal relationship between the parties."  Id. at 1094-95.

16        Here, this Court granted a **permanent** injunction that materially altered the

17   legal relationship between the parties for a significant amount of time.  The

18   Government was prohibited from enforcing DADT until the Repeal Act took effect

19   on September 20, 2011.  And, as noted above, this lawsuit and this Court's

20   injunction were the impetus for the very enactment of the Repeal Act and its

21   accelerated certification.  In the analogous context of a Section 1988 fee award, a

22   party is considered the prevailing party, even if it does not prevail on all issues, if it

23   shows "a sufficient causal relationship between the lawsuit and the practical

24   outcome realized by the suit."  Herrington v. County of Sonoma, 883 F.2d 739, 744

25   (9th Cir. 1989).

26        Accordingly, by obtaining a permanent injunction, Log Cabin achieved the

27   benefit it sought in the lawsuit.  This is sufficient to confer prevailing party status

28   on Log Cabin.

**2.    Log Cabin retains its prevailing party status despite mootness because it obtained relief that is now permanent and its victory was not undone by a later ruling on the merits**

Plaintiffs who obtain the relief sought in district court remain prevailing parties for the purpose of EAJA attorneys' fees for that court even if an intervening event rendered the case moot on appeal.  <u>Californians for Alts. To Toxics v. U.S. Forest Serv.</u>, 2007 WL 2993132, at *3 (E.D. Cal. Oct. 11, 2007).  The determination whether a plaintiff retains its prevailing party status turns on whether a later ruling is on the merits.

In <u>Californians for Alternatives To Toxics</u>, plaintiffs who obtained an injunction that was not later "undone" were prevailing parties entitled to EAJA attorneys' fees.  Plaintiffs sought declaratory and injunctive relief barring defendants from implementing a project described in a Record of Decision.  2007 WL 2993132, at *1.  During the course of litigation, new requirements were created and the challenged Record of Decision did not comply with them.  The court issued a preliminary injunction prohibiting the implementation of the challenged Record of Decision.  Defendants then withdrew the challenged Record of Decision and the parties filed a joint status report stating that the withdrawal had rendered the case moot.  Plaintiffs achieved the results they sought in obtaining a preliminary injunction and, as in this case, "this victory was not undone by a later adverse ruling *on the merits*."  <u>Id.</u> at *3. (emphasis added).  The subsequent mooting of plaintiff's claims did not nullify the plaintiffs' victory.  Furthermore, the order enjoining defendants from implementing the contested Record of Decision sufficed to give a judicial imprimatur of the changed legal relationship.  <u>Id.</u> at *4.

Similarly, in <u>Oregon Natural Desert Association v. Lohn</u>, 522 F. Supp. 2d 1295, 1299 (D. Or. 2007), plaintiffs who obtained a judgment on the merits in their favor that was not vacated "for lack of entitlement" were prevailing parties.  The district court issued a judgment declaring certain administrative opinions to be in

- 10 -

1  violation of the Endangered Species Act.  Id. at 1297.  Soon thereafter, the

2  government issued new, superseding documents, rendering the case moot.  The

3  court ordered the case dismissed on mootness grounds and vacated the judgment.

4  Nevertheless, plaintiffs remained prevailing parties entitled to fees pursuant to the

5  EAJA because they had obtained a judgment on the merits in their favor, which was

6  not vacated "for lack of entitlement," and rendered moot "after the judgment had

7  done its job."  Id. at 1299.

8       In Watson v. County of Riverside, supra, the court held that plaintiff who

9  obtained a preliminary injunction that was not dissolved for "lack of entitlement"

10  was a prevailing party entitled to attorneys' fees pursuant to 42 U.S.C. §1988.  300

11  F.3d at 1096.  The trial court issued a preliminary injunction prohibiting the

12  defendant from introducing a particular document at plaintiff's termination hearing.

13  Plaintiff's "claim for a permanent injunction was rendered moot when his

14  employment termination hearing was over, after the preliminary injunction had

15  done its job."  Id. at 1094.  But because plaintiff's claim for permanent injunctive

16  relief was not decided on the merits, which distinguished the case from other

17  situations where a "plaintiff scores an early victory by securing a preliminary

18  injunction, then loses on the merits and judgment is entered against him," id. at

19  1096, plaintiff retained his prevailing party status and recovered attorneys' fees

20  under Section 1988.  See also Richard S. v. Dep't of Developmental Servs., 317

21  F.3d 1080, 1088 (9th Cir. 2003) (where plaintiffs obtained a preliminary injunction

22  and then entered into a legally enforceable settlement agreement, achieving much

23  but not all the relief sought in the injunction, plaintiffs were deemed entitled to

24  prevailing party status).

25       Here, as a result of this litigation, this Court enjoined the enforcement of

26  DADT, and after the Ninth Circuit reinstated that injunction on July 6, 2011, the

27  injunction remained in place until DADT was formally repealed.  This Court's

28  decision was never reversed or vacated on the merits; rather, after Congress passed

1    the Repeal Act, the Ninth Circuit simply found the case to have become moot by

2    virtue of the passage of that Act and its entry into effect.  Log Cabin, 658 F.3d at

3    1166.  The appellate court's decision did not even reach the merits of Log Cabin's

4    case, much less reverse this Court's judgment on the merits.  Therefore, Log Cabin

5    retains its prevailing party status.

6              **B.     The Government's Position Was Not Substantially Justified**

7              As discussed above, under the EAJA, a prevailing party is presumed to be

8    entitled to an award of reasonable attorneys' fees unless the position of the United

9    States was substantially justified or special circumstances make an award unjust.

10   28 U.S.C. § 2412(d)(1)(A); United States v. 313.34 Acres of Land, 897 F.2d 1473,

11   1477 (9th Cir. 1989) ("The 'shall…unless' language of the EAJA creates the

12   presumption of a fee award").

13             In order to show that its position was substantially justified, the Government

14   must show that its case "had a reasonable basis in both law and fact."  Pierce v.

15   Underwood, 487 U.S. 552, 564, 108 S.Ct. 2541, 2543, 101 L.Ed.2d 490 (1988).  In

16   evaluating the government's position to determine whether it was substantially

17   justified, the Court must look to the record of both the underlying government

18   conduct and the totality of circumstances present before and during the litigation.

19   Sampson v. Chater, 103 F.3d 918, 921 (9th Cir. 1996).  This means that the court

20   looks not only to the underlying governmental action being defended in the

21   litigation, but also to the positions taken by the government *in the litigation itself*.

22   Barry v. Bowen, 825 F.2d 1324, 1331 (9th Cir. 1987), rev'd on other grounds 884

23   F.2d 442 (9th Cir. 1989)

24             If the government's position violates the Constitution, it is an abuse of

25   discretion to find that the position was substantially justified.  Meinhold, 123 F.3d

26   at 1278 (affirming award of EAJA fees in successful challenge to predecessor

27   regulations to DADT).  As the Ninth Circuit put it in another case, "If a due process

28   violation is not enough to trigger a finding that the government was not

- 12 -

1   'substantially justified' under the EAJA, the EAJA would amount to nothing but a

2   hollow statutory shell offering little of substance to prevailing parties." <u>U.S. v.</u>

3   <u>Marolf</u>, 277 F.3d 1156, 1162 (9th Cir. 2002) (citations and quotations omitted).

4   　　　In its detailed Order Granting Permanent Injunction, Memorandum Opinion,

5   and Findings of Fact and Conclusions of Law, Docs. 249, 250, and 251

6   respectively, this Court determined that DADT violated United States

7   servicemembers' Fifth Amendment substantive due process rights and their First

8   Amendment rights of free speech and petition.  The government's position in this

9   litigation, therefore, was without substantial justification.

10   **IV.**

11   **LOG CABIN IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES**

12   **AND EXPENSES UNDER FED. R. CIV. P. 37(C)**

13   　　　Fed. R. Civ. P. 37(c)(2) sets forth the consequences if a party fails to admit

14   matters requested for admission under Rule 36 and the requesting party thereafter

15   proves the matter to be true.  The Rule provides that

16   　　　　　If a party fails to admit what is requested under Rule 36 and if

17   　　　　　the requesting party later proves … the matter true, the

18   　　　　　requesting party may move that the party who failed to admit

19   　　　　　pay the reasonable expenses, including attorney's fees, incurred

20   　　　　　in making that proof.  **The court must so order unless**:

21   　　　　　(A) the request was held objectionable under Rule 36(a);

22   　　　　　(B) the admission sought was of no substantial importance;

23   　　　　　(C) the party failing to admit had a reasonable ground to believe

24   　　　　　that it might prevail on the matter; or

25   　　　　　(D) there was other good reason for the failure to admit.

26   Fed. R. Civ. P. 37(c)(2) (emphasis added).  Unless the government proves that one

27   of the exceptions applies, an award of expenses is mandatory.  <u>Marchand v. Mercy</u>

28

1    Med. Ctr., 22 F.3d 933, 936 (9th Cir. 1994).

2         Before trial, the government denied three significant requests for admission

3    (RFAs) that Log Cabin served pursuant to Rule 36, which went to the heart of Log

4    Cabin's case and which (with the exception of the issue of standing, which

5    consumed at most one-half day of trial time) the entire trial was devoted to proving.

6    Log Cabin is entitled to recover its expenses incurred in making that proof, at fee

7    rates that are not limited by EAJA's statutory hourly fee cap.

8         **A.    The Requests for Admission and the Government's Responses**

9         Log Cabin served its first set of RFAs on the government on December 10,

10   2009.  This set included RFAs 3, 4, and 5, as follows:

11        ▪  3.  Admit that DADT does not contribute to our national security;

12        ▪  4.  Admit that DADT weakens our national security; and

13        ▪  5.  Admit that discharging members pursuant to DADT weakens our

14             national security.

15   Each of these requested admissions was directly based on a statement of President

16   Obama on June 29, 2009 in a speech to a White House audience.

17        On January 28, 2010, the government served its Objections and Responses to

18   the RFAs.  Its response to each of the three requests in question was essentially

19   identical:

20             Defendants object to this request, as it does not call for facts, the

21             application of law to fact, or an opinion about facts or the

22             application of law to fact. See Fed. R. Civ. P. 36(a)(1)(A).

23             Defendants further object to this request because the terms

24             "weakens" and "national security" as used in this context are

25             vague and ambiguous. To the extent a further response is

26             required, Defendants note the responses to requests for

27             admission 1 and 2 supra, but deny this request because it was

28             rational for Congress to have concluded at the time the statute

- 14 -

1    was enacted in 1993 that DADT was necessary "in the unique

2    circumstances of military service," 10 U.S.C. § 654(a)(13).

3        Log Cabin filed an *ex parte* application requesting that the RFAs be deemed

4    admitted, or in the alternative ordering the government to serve amended responses

5    to the RFAs.  On March 16, 2010, Magistrate Judge Eick overruled the

6    government's objections to the RFAs and ordered the government to unqualifiedly

7    admit or deny the requests.  The government filed a motion for review by this Court

8    of the Magistrate Judge's ruling.  The Court denied that motion on April 6, 2010.

9    On April 12, the government responded to the RFAs; its response to each, though

10   prefaced by over two pages of purported explanation and justification, was a

11   straight denial.[3]

12       The government's denial of the RFAs forced Log Cabin to prove at trial that

13   DADT did not contribute to, and in fact weakened, our country's national security.

14   At the trial of this matter, Log Cabin presented evidence of the truth of each of the

15   matters in those three requests for admission.  Apart from the testimony and

16   documentary evidence related to Log Cabin's standing to sue, all of the trial

17   testimony of both the expert and lay witnesses, and every piece of written evidence

18   introduced, went to prove the truth of the facts that DADT does not contribute to

19   the national security of the United States, that it weakens national security, and that

20   discharge of servicemembers pursuant to DADT weakens national security.  These

21   facts were the core of Log Cabin's proof that Don't Ask, Don't Tell violated the

22   Fifth and First Amendments, and each of those facts was material to the Court's

23   decision in Log Cabin's favor.

24       The testimony of each of the expert and lay witnesses, and the documents

25   Log Cabin introduced in evidence, established that DADT did not contribute to, or

26

27

28

---

[3] Copies of the pertinent portions of the government's original Objections and Responses to Plaintiff's First Set of Requests for Admission, and of its Supplemental Responses to Requests 3, 4, and 5, are attached as Exhibits 1 and 2, respectively, to the Woods Declaration.

- 15 -

1   weakened, national security, and that the discharge of servicemembers under

2   DADT weakened national security.  In particular, the Court found, in its Findings

3   of Fact and Conclusions of Law (Doc. 251), among other things:  that DADT did

4   not significantly advance the Government's interests in military readiness or unit

5   cohesion (Finding of Fact 135); that DADT resulted in the discharge of qualified

6   servicemembers despite troop shortages (Findings of Fact 136-139); that DADT

7   resulted in the discharge of servicemembers with critically needed skills and

8   training (Findings of Fact 140-141); that DADT resulted in the admission to the

9   armed services of lesser qualified enlistees, including felons and individuals with

10  lower levels of education and physical fitness (Findings of Fact 147-149); that

11  DADT had a significant negative impact on military recruiting, both in volume and

12  in cost (Findings of Fact 142-146); that DADT was not necessary to protect unit

13  cohesion, privacy, and military readiness (Findings of Fact 159-176); and that

14  DADT had a chilling effect on the First Amendment rights of servicemembers and

15  restricted their speech more than reasonably necessary to protect the Government's

16  interests (Findings of Fact 178-187).

17       Accordingly, Log Cabin is entitled to recover its expenses, including

18  attorneys' fees, incurred in making that proof.

19       **B.    The Government's Denial of the RFAs Was Unreasonable**

20       Of the four exceptions to a mandatory fee award under Rule 37(c)(2), only

21  the third can possibly apply here.  Exception (A) does not apply because both the

22  Magistrate Judge and the District Judge specifically overruled the government's

23  objections.  Exception (B) does not apply because the admissions sought were not

24  only of substantial importance, they were matters that went to the very beating heart

25  of this case, namely, whether DADT in practice furthered the legislative goals it

26  purported to advance.  And exception (D) does not apply because it is not "good

27  reason" to fail to admit the requests that doing so might cause the prospect of

28  embarrassment to the government, or to the executive branch, resulting from a

denial that the President's public statements were true.[4]  Therefore, the ultimate test under Rule 37(c)(2) is whether the government acted reasonably in believing it might prevail on the matter for which admissions were sought.  See Marchand, supra, 22 F.3d at 937.  It did not.

>    **1.    The government relied solely on 1993 legislative history, which was contradicted by 2009 statements by military and civilian officials**

In Marchand, a medical malpractice case, the plaintiff served an RFA on the defendant physician, asking him to admit that the medical treatment he provided did not comply with the applicable standard of care.  The defendant denied the RFA.  After the plaintiff prevailed at trial, the district court awarded the plaintiff expenses, including attorneys' fees, under Rule 37(c)(2).  The Ninth Circuit affirmed.  It held that because the defendant relied entirely on a single piece of uncorroborated evidence – the testimony of an expert witness who testified that the applicable standard of care was satisfied – the defendant's denial of the RFA was unreasonable.  The court also relied on the fact that the expert witness' testimony at trial contradicted his own deposition statement.

In Diamond State Ins. Co. v. Deardorff, No. 1:10-CV-00004, 2011 WL 2414391 (E.D. Cal. June 8, 2011), a subrogation case in which insurance company plaintiffs sought to recover money paid out to their insureds, the plaintiffs denied an RFA asking them to admit that their livestock was killed while being boarded by

---

[4] The fact that the prospect of such embarrassment was a concern to the government is inferable from the fact that then-Solicitor General Kagan *personally* participated in a meeting with the White House to determine how to respond to discovery in this case, presumably these RFAs.  See Response to Question 29e of Senator Jeff Sessions, Questions for the Record, in "Responses [of Elena Kagan] to Supplemental Questions from Senators Jeff Sessions et al.," available at http://www.judiciary.senate.gov/nominations/SupremeCourt/upload/ElenaKagan-QFRs.pdf, pp. 28-29.  The personal involvement of the Solicitor General in determining how the United States should respond to discovery in the trial court is certainly a rare, if not unprecedented, phenomenon.

1  the defendant, an admission that would bar the plaintiffs' claims under the

2  applicable statute of limitations.  Id. at *3-4.  The plaintiffs denied the RFA based

3  solely on an invoice that described the service provided as "transportation" rather

4  than "boarding."  Further, the plaintiff insurance companies were bound by

5  statements of their insureds that transportation of animals was part of the overall

6  boarding relationship.  The district court analogized to Marchand, holding that the

7  plaintiffs' denial of the RFA was unreasonable under the circumstances and

8  therefore entitled the defendant to recover expenses under Rule 37(c)(2).  Id. at *5.

9      Here, as in Marchand and Deardorff, the government relied on what

10  amounted to a single piece of evidence – the Act itself and its legislative history –

11  to deny that DADT does not further and in fact weakens national security.

12  Although the legislative history of DADT introduced at trial was thick, the

13  government did not offer any other evidence of DADT's effects in the 17 years that

14  had passed since enactment to counter the copious evidence Log Cabin presented

15  that DADT did not, in fact, further the government's stated interest.  See Witt v.

16  Dep't of the Air Force, 527 F.3d 806, 819 (9th Cir. 2008).

17      Furthermore, just as in Marchand and Deardorff, the government's only

18  evidence was directly contradicted by its own admissions.  Less than nine months

19  before the government denied the RFAs, as this Court found at trial, President

20  Obama stated that "Don't Ask, Don't Tell doesn't contribute to our national

21  security… preventing patriotic Americans from serving their country weakens our

22  national security… [R]eversing this policy [is] the right thing to do [and] is

23  essential for our national security."  Doc. 250 at 65; Doc. 251 at ¶ 156.

24      At the time it denied the RFAs, the government also knew of Admiral

25  Michael Mullen's statement that "allowing homosexuals to serve openly is the right

26  thing to do."  Doc. 250 at 66; Doc. 251 at ¶ 158.  Based on the evidence available to

27  it at the time it denied the RFAs, and what it actually produced at trial, the

28  government could not reasonably believe that it would be able to prove that DADT

1    furthered national security.

2              **2.     The government failed to independently examine whether**
3                      **DADT actually furthered national security**

4         A party responding to an RFA has an independent duty to at least attempt to

5    determine the truth of the matter for which admissions are requested.  Foster

6    Poultry Farms, Inc. v. SunTrust Bank, 377 F.App'x 665, 672 (9th Cir. 2010).  In

7    Foster, the plaintiff served RFAs on the defendant SunTrust Bank asking it to admit

8    that it was not the holder of certain promissory notes at issue in the case.  SunTrust

9    denied the request, relying on its former counsel's opinion that SunTrust held the

10   notes.  At trial, SunTrust ultimately conceded that it never became the holder of the

11   notes.  The district court denied plaintiffs' motion for expense-shifting sanctions

12   based on the failure to admit.

13        The Ninth Circuit reversed, holding that SunTrust failed to satisfy its

14   independent duty to determine whether it actually held the notes when Foster

15   served the RFAs.  The court added that because two and a half years had passed

16   since SunTrust's counsel provided the opinion, the defendant could have

17   determined during that time that its lawyer lacked a reasonable basis for his

18   opinion.

19        Here, the government made no attempt to independently assess the impact of

20   DADT on national security.  In fact, it admitted that it did not conduct even a single

21   study evaluating the impact of DADT since the policy was enacted.  Gade Dep.

22   59:18-22; 88:16-90:9, Apr. 16, 2010 (received in evidence at trial, see Docs. 214 at

23   p. 6, 215 at p. 2).  Instead, the government based its denial of the RFAs on a single

24   Congressional finding from 1993 that "DADT was necessary in the unique

25   circumstances of military service."  At trial, the government offered no support for

26   this conclusion other than the Act's own legislative history from 17 years earlier.

27   Doc. 250 at 48.

28        Like the defendant in Foster, the government failed to make any effort to

- 19 -

1   evaluate whether the basis for its denial had any connection to reality.  It turned a

2   blind eye to admissions made by President Obama and Admiral Mullen.  Instead, it

3   chose to rely on 17-year-old Congressional findings because the government had

4   failed to assess the impact of DADT since then.  The government's denial of the

5   RFAs was unreasonable because it made no attempt, either in responding to the

6   RFAs or at trial, to determine whether DADT actually furthered national security.

7   **C.      Log Cabin Is Entitled to Recover All Expenses Incurred from the**

8   **Time the Government Failed to Admit the RFAs, Through Trial**

9        When a party unreasonably fails to admit an RFA, the propounding party

10  may recover all reasonable expenses incurred in proving the matter.  Marchand v.

11  Mercy Med. Ctr., supra, 22 F.3d at 939.  This includes any failure to admit, not

12  simply a denial.  Id. at 938; see also Advis. Comm. Notes to Fed. R. Civ. P. 37.

13      Here, the government served its responses and objections to the RFAs on

14  January 28, 2010.  In those responses it failed to admit that DADT did not further

15  national security, that DADT weakened national security, or that the enforcement of

16  DADT weakened national security.  Thus, Log Cabin is entitled to recover its

17  expenses incurred in proving these matters after service of the government's

18  original objections and responses on January 28, 2010.  Holmgren v. State Farm

19  Mut. Auto Ins. Co., 976 F.2d 573, 581 (9th Cir. 1992).

20      The government's failure to admit the RFAs caused Log Cabin to incur

21  substantial expenses in proving the matters at trial.  Log Cabin introduced expert

22  and lay witness testimony, as well as numerous documents, proving that DADT

23  weakened national security and therefore did not substantially advance the

24  government's interests in military readiness and unit cohesion.  Doc. 251, ¶ 153 and

25  elsewhere as shown supra, p. 16.  Under Rule 37(c)(2), the Court should award Log

26  Cabin all expenses incurred after January 28, 2010 through the conclusion of trial in

27  connection with its having successfully proven DADT's negative effect on the

28

1   United States' national security.[5]

2   　　　The government may contend that the Ninth Circuit's vacatur of this Court's

3   "judgment, injunction, opinions, orders, and factual findings," <u>Log Cabin</u>, <u>supra</u>,

4   658 F.3d at 1168, means that Log Cabin did not prove that DADT, and the

5   discharge of servicemembers thereunder, did not contribute to our national security

6   and weakened our national security.  Such a contention would misread both the

7   purpose and the effect of the vacatur order.  The Ninth Circuit expressly stated that

8   it was vacating this Court's rulings only "to clear the path completely for any future

9   litigation," such that those rulings could not be used collaterally in offense by other

10   litigants.  In this motion, Log Cabin does not seek to use those rulings collaterally,

11   but rather to show that it did, in fact, prove the matters that the government had

12   refused to admit.  No vacatur order can erase the trial proceedings, or turn back

13   time to create an alternate reality in which Log Cabin was unsuccessful in proving

14   its case.  The Ninth Circuit's vacatur order can only remove the precedential effect

15   of this Court's rulings insofar as they might apply to other litigation; within the

16   context of this litigation itself, and as against the other party to it, those rulings are a

17   simple matter of record.

18   **V.**

19   **<u>SUMMARY STATEMENT OF AMOUNTS CLAIMED</u>**

20   　　　Pursuant to the stipulation of counsel regarding the procedure for the hearing

21   of this motion, and the Court's order thereon, Log Cabin is not at this time

22   submitting to the Court its attorneys' detailed billing records or detailed

23   documentation regarding the claimed expenses, though those records and

24   documentation are available to the Court and the government if required.  Rather,

25   Log Cabin is submitting with this motion a summary statement of its claim, setting

26

---

27   [5] In this motion, Log Cabin claims its attorneys' fees and expenses under Rule 37(c)
    only through the end of trial; it does not claim any amount on the basis of that Rule

28   for its fees and expenses incurred in any post-trial or appellate proceedings.

- 21 -

1  forth the total hours and fees incurred for each phase of the case, both at EAJA rates

2  and at its attorneys' standard hourly rates for those phases claimed under Fed. R.

3  Civ. P. 37, as well as a summary total of its expenses claim.  That information

4  appears in the accompanying Declaration of Dan Woods, at ¶¶ 19 and 27-29.

5          In total, as set forth in that Declaration, Log Cabin seeks an award of the

6  following amounts:

7          ▪  Attorneys' fees for the case, inception to date, a total of 12,211.7 hours

8             calculated at EAJA statutory fee cap:  $2,090,614.13;

9          ▪  Attorneys' fees for discovery, expert and lay witness preparation, pre-

10            trial filings, trial preparation, and trial for the time period January 28,

11            2010, when the government first failed to admit the three RFAs,

12            through the conclusion of trial on July 23, 2010, a total of 4708.5

13            hours calculated at White & Case LLP's standard hourly rates:

14            $2,235,656.00;[6]

15         ▪  Expert witness fees for deposition and trial testimony:  $30,175.00;

16         ▪  Other expenses (travel, hotel, etc.):  $5,178.90 on the EAJA claim, or

17            $17,408.64 on the Rule 37 claim.

18         Log Cabin provides only this summary at this time pursuant to the agreement

19  of the parties, for the Court's information.  If the Court determines at the hearing of

20  this motion that Log Cabin is entitled to recovery under either or both provisions of

21  law, Log Cabin requests that further proceedings be set to determine the actual

22  amount to be awarded, in which proceedings Log Cabin will furnish a detailed

23  statement of its attorneys' billing records and expense documentation which the

24  government will have an opportunity to review and respond to.

25

26  ────────────────
[6] If the Court awards attorneys' fees on this basis, the claim for EAJA fees for these

27  activities would of course be withdrawn.  The fees for these activities calculated at
    EAJA rates total $823,495.74.  Woods Declaration, ¶ 27.  That amount would be

28  deducted from the $2,090,614.13 specified in the previous entry.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VI.

## CONCLUSION

For the reasons stated above, the Court should determine that Log Cabin is entitled to an award of attorneys' fees and expenses.  In further proceedings, the Court should award Log Cabin those attorneys' fees and expenses pursuant to the Equal Access to Justice Act in the amount of $2,125,968.03; or pursuant to Fed. R. Civ. P. 37(c) in the amount of $2,283,239.64; or pursuant to both provisions of law in the net amount, after eliminating duplicate recovery, of $3,550,358.03.


Dated:  January 12, 2012                         WHITE & CASE LLP


                                                          By:   /s/ Dan Woods
                                                                 Dan Woods
                                                          Attorneys for Plaintiff
                                                          Log Cabin Republicans

LOSANGELES 932731 (2K)                  PLAINTIFF LOG CABIN REPUBLICANS' MOTION FOR ATTORNEYS' FEES