DAN WOODS (SBN: 78638)
EARLE MILLER (SBN: 116864)
WHITE & CASE LLP
633 W. Fifth Street, Suite 1900
Los Angeles, CA 90071-2007
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: dwoods@whitecase.com
Email: emiller@whitecase.com

Attorneys for Plaintiff
Log Cabin Republicans

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOG CABIN REPUBLICANS, a nonprofit corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA and LEON E. PANETTA, SECRETARY OF DEFENSE, in his official capacity,<br><br>　　　　　Defendants. | Case No. CV 04-8425 VAP (Ex)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES PURSUANT TO (1) THE EQUAL ACCESS TO JUSTICE ACT (28 U.S.C. § 2412) AND (2) FED. R. CIV. P. 37**<br><br>Judge: Hon. Virginia A. Phillips<br><br>Date: February 27, 2012<br>Time: 2:00 p.m.<br>Ctrm: 2 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .......................................................................... 1

II.  LOG CABIN IS ENTITLED TO AN AWARD OF ATTORNEYS'
     FEES  AND EXPENSES UNDER EAJA ...................................... 1

    A.   Log Cabin Prevailed by Obtaining a Judgment and
          Permanent Injunction That Materially Altered the Parties'
          Legal Relationship and Were Never Reversed on the Merits .......... 2

        1.  Log Cabin is the prevailing party under EAJA .......................... 2

        2.  This motion for fees is not an attempt to use this Court's
              judgment for collateral purposes ................................................. 5

    B.   The Government's Position Was Not Substantially Justified .......... 7

        1.  Standing and scope of injunction ................................................ 7

        2.  The merits ...................................................................................... 8

III. LOG CABIN IS ENTITLED TO AN AWARD OF ATTORNEYS'
     FEES AND EXPENSES UNDER FED. R. CIV. P. 37(C) ........................ 12

    A.   Log Cabin Proved the Matters Sought in the Requests
          for Admission .................................................................................. 12

    B.   The Government Fails to Show that Its Denial of the
          RFAs Was Reasonable ...................................................................... 14

    C.   The Ninth Circuit's Vacatur Order Does Not Foreclose
          the Court from Granting the Motion ................................................ 16

    D.   No Other Good Reason Exists to Deny the Motion ........................ 16

IV.  CONCLUSION .......................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

### <u>CASES</u>

5

<u>Barry v. Bowen</u>,

6

    825 F.2d 1324 (9th Cir. 1987) ........................................................................ 9, 17

7

<u>Bresgal v. Brock</u>,

8

    843 F.2d 1163 (9th Cir. 1987) ............................................................................... 8

9

<u>Buckhannon Bd. & Care Home v. W. Va. Dept. of Health & Human Res.</u>,

10

    532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ................................... 4, 5

11

<u>Californians for Alts. To Toxics v. U.S. Forest Serv.</u>,

    <u>2007</u> WL 2993132 (E.D. Cal. Oct. 11, 2007) ...................................................... 3

12

<u>Cook v. Gates</u>,

13

    528 F.3d 42 (1st Cir. 2008) ............................................................................ 9, 15

14

<u>Diamond State Ins. Co. v. Deardorff</u>,

15

    No. 1:10-CV-00004, 2001 WL 2414391 (E.D. Cal. June 8, 2011) .................. 15

16

<u>FCC v. League of Women Voters</u>,

17

    468 U.S. <u>364</u>, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) .................................... 6, 7

18

<u>Flores v. Shalala</u>,

19

    49 F.3d <u>562</u> (9th Cir. 1995) .................................................................................. 1

20

<u>Golinski v. US Office of Pers. Mgmt.</u>,

    No. C 3:10-00257 (N.D. Cal.) ........................................................................... 10

21

<u>Hewitt v. Helms</u>,

22

    482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) .................................... 3, 4

23

<u>Lawrence v. Texas</u>,

24

    539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) ...................................... 9

25

<u>League of Women Voters of California v. FCC</u>,

26

    798 F.2d 1255 (9th Cir. 1986) .......................................................................... 7, 8

27

<u>Log Cabin Republicans v. United States</u>,

28

    658 F.3d 1162 (9th Cir. 2011) .......................................................................... 5, 6

- ii -

REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

<u>Log Cabin Republicans v. United States</u>,
   716 F. Supp. 2d 884 (2010) ................................................................ 13, 14

<u>Marchand v. Mercy Med. Ctr.</u>,
   22 F.3d <u>933</u> (9th Cir. 1994) ................................................................... 15

<u>Mattingly v. United States</u>,
   939 F.2d <u>816</u> (9th Cir. 1991) .................................................................. 17

<u>Meinhold v. U.S. Dep't of Def.</u>,
   123 F.3d 1275 (9th Cir. 1997) ................................................................ 11

<u>Oregon Natural Resources Council v. Madigan</u>,
   980 F.2d 1330 (9th Cir. 1992) ................................................................ 11

<u>Pierce v. Underwood</u>,
   487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ................................ 7, 10

<u>Rhodes v. Stewart</u>,
   488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) ........................................ 3, 4

<u>Sampson v. Chater</u>,
   103 F.3d <u>918</u> (9th Cir. 1996) .................................................................... 9

<u>Scarborough v. Principi</u>,
   541 U.S. <u>401</u>, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) ...................................... 1

<u>Sole v. Wyner</u>,
   551 U.S. 74, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007) ...................................... 3

<u>U.S. v. $12,248 U.S. Currency</u>,
   957 F.2d 1513 (9th Cir. 1992) ................................................................ 11

<u>U.S. v. Marolf</u>,
   277 F.3d <u>1156</u> (9th Cir. 2002) ................................................................ 11

<u>United States v. Menominee Tribal Enter.</u>,
   No. 1:07-<u>CV</u>-00316, 2010 WL 2465505 (E.D. Wis. June 15, 2010)................. 13

<u>United States v. Nat'l Medical Enters., Inc.</u>,
   792 F.2d <u>906</u> (9th Cir. 1986) .................................................................. 17

<u>United States v. Nordic Village, Inc.</u>,
   503 U.S. 30 (1992) ................................................................................ 17

- iii -

White v. New Hampshire Dept. of Employment Sec.,
 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) ........................ 6

Witt v. Dep't of the Air Force,
 527 F.3d 806 (9th Cir. 2008) ................................................. 9, 14, 16

## STATUTES

1 U.S.C. § 7 ........................................................................... 10

10 U.S.C. § 654 (former) ........................................................ 1

10 U.S.C. § 654(a)(14) (former) ............................................. 9

EAJA, 28 U.S.C. § 2412 ................................................. Passim

42 U.S.C. § 1988 .................................................................. 4

## FEDERAL RULES

Fed. R. Civ. P. 11 ................................................................ 17

Fed. R. Civ. P. 36 ................................................................ 12

Fed. R. Civ. P. 37 ................................................................ 16

Fed. R. Civ. P. 37(b) ............................................................ 17

Fed. R. Civ. P. 37(c)(2) ............................................ 1, 12, 13, 17

Fed. R. Civ. P. 37(c)(2)(C) .................................................. 15

Fed. R. Civ. P. 37(c)(2)(D) .................................................. 17

Fed. R. Civ. P. 59(e) ............................................................ 6

## OTHER

H.R. Rep. No. 1418, 96th Cong., 2d Sess.10, reprinted in 1980
 U.S. Code Cong. & Ad. News 4984 ...................................... 7

7 Moore's Federal Practice, § 37.74 ...................................... 17

# I.

## **INTRODUCTION**

Log Cabin Republicans successfully obtained a declaratory judgment and permanent injunction invalidating former 10 U.S.C. § 654 and its implementing regulations ("Don't Ask, Don't Tell" or "DADT") and prohibiting the government from conducting investigations or discharges of servicemembers under DADT until that statute was ultimately repealed.  It is entitled to an award of attorneys' fees and expenses on two separate grounds:  pursuant to the Equal Access to Justice Act; and pursuant to Fed. R. Civ. P. 37(c)(2) for the government's unreasonable failure to admit matters of substantial importance that Log Cabin successfully proved at trial.  Under both provisions, an award of fees and expenses is mandatory unless the government establishes that its position falls within an exception to the mandatory fee-shifting rule.  The government's opposition fails to sustain its burden.  The Court should award Log Cabin its attorneys' fees and expenses on both grounds.

# II.

## **LOG CABIN IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES UNDER EAJA**

Under the Equal Access to Justice Act, 28 U.S.C. § 2412 (the "EAJA"), an award of attorneys' fees and expenses is mandatory to a prevailing party unless the government proves that its position was "substantially justified."  <u>Scarborough v. Principi</u>, 541 U.S. 401, 414, 416, 124  S.Ct. 1856, 158 L.Ed.2d 674 (2004); <u>Flores v. Shalala</u>, 49 F.3d 562, 567 (9th Cir. 1995).  The government does not dispute that this is the governing test.  It also cannot reasonably contest that Log Cabin was the prevailing party on the merits in this litigation; that point was set forth at length in the moving papers and the government's opposition does not rebut Log Cabin's showing.  Nor, as discussed below, can the government show that its position was "substantially justified" as the EAJA requires.  Log Cabin is entitled to an award of attorneys' fees and expenses under EAJA.

**A.** **Log Cabin Prevailed by Obtaining a Judgment and Permanent Injunction That Materially Altered the Parties' Legal Relationship and Were Never Reversed on the Merits**

**1.** **Log Cabin is the prevailing party under EAJA**

This Court's judgment and injunction of October 12, 2010 altered the legal relationship of the parties by declaring DADT unconstitutional and enjoining the government from enforcing it against all persons subject to its jurisdiction and command. Though the Ninth Circuit stayed the injunction shortly after the government filed its notice of appeal, that stay was lifted on July 6, 2011 and then replaced with a partial stay that, critically, left the heart of the injunction intact and binding on the government: this Court's injunction continued in effect "insofar as it enjoins [the government] from investigating, penalizing, or discharging anyone from the military pursuant to the Don't Ask, Don't Tell policy."

*For eight days in October 2010, and then again from July 6, 2011 on, the government was forbidden from initiating or pursuing any investigations or discharges under DADT.* Since July 6, 2011 that prohibition has never been lifted. The repeal of DADT that took effect on September 20, 2011 only removed any legal basis for further investigations or discharges, but the pending proceedings that this Court's injunction had stopped in their tracks remained stopped. The servicemembers whose investigation or discharge proceedings were halted – or never initiated – due to this Court's injunction, and who now may continue in their military service free of the specter of future investigations, unquestionably "benefitted in a real world sense from the judgment entered by this Court" (Opp. 11:9-10), and it is ludicrous for the government to contend otherwise.

As the moving papers showed, the judicial relief that Log Cabin obtained here suffices to establish it as the prevailing party notwithstanding a later determination of mootness attributable to intervening events. Numerous cases establish that even a mere preliminary injunction that, for whatever reason, did not

- 2 -

1  become embodied in a permanent injunction suffices to confer prevailing party
2  status on the successful plaintiff, so long as the preliminary injunction is not
3  "undone by a later adverse ruling on the merits." E.g., Californians for Alts. To
4  Toxics v. U.S. Forest Serv., 2007 WL 2993132, at *3 (E.D. Cal. Oct. 11, 2007).
5  The conclusion is on even firmer ground here where Log Cabin obtained a
6  permanent injunction following a full trial, and the most significant restriction
7  imposed by that injunction was never undone or reversed on the merits.

8        The cases the government cites in its opposition are not to the contrary.  It
9  cites Sole v. Wyner, 551 U.S. 74, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007), for the
10  proposition that prevailing party status "does not attend achievement of a
11  preliminary injunction that is reversed, dissolved, or otherwise undone by the final
12  decision in the same case."  551 U.S. at 83.  But the government omits to quote the
13  consideration that was of "controlling importance" to the Supreme Court's decision,
14  namely, that "the eventual ruling on the merits for defendants … superseded the
15  preliminary ruling.  [The plaintiff's] temporary success rested on a premise the
16  District Court ultimately rejected." Id. at 84-85.  That is not what happened here.
17  This Court's injunction was not an interim preliminary injunction but a permanent
18  injunction after trial, and no eventual ruling on the merits ever superseded that
19  permanent injunction.

20        The government's reliance on other cases suffers from the same logical flaw.
21  In Hewitt v. Helms, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), the
22  Supreme Court held that a prisoner was not a prevailing party on his civil rights
23  claim when "[t]he most that he obtained was an interlocutory ruling that his
24  complaint should not have been dismissed for failure to state a constitutional
25  claim," 482 U.S. at 760; Log Cabin obtained substantially greater and more
26  substantive relief here.  Similarly, in Rhodes v. Stewart, 488 U.S. 1, 109 S.Ct. 202,
27  102 L.Ed.2d 1 (1988), another prisoner civil rights case, where one plaintiff died
28  and the other was released before the district court even entered its judgment, "[t]he

REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   case was moot before judgment issued, and the judgment therefore afforded the

2   plaintiffs no relief whatsoever."  488 U.S. at 4.  This case, by contrast, was not

3   moot before this Court's judgment issued and Log Cabin, its members, and every

4   United States servicemember obtained relief through this Court's injunction.

5        Sole, Hewitt, and Rhodes were all decided under the fee-shifting provisions

6   of 42 U.S.C. § 1988, not EAJA.  Nevertheless, both statutes use the term

7   "prevailing party" and, as the government acknowledges by its reliance on these

8   and other section 1988 cases, the analysis in one context can usefully inform the

9   analysis in the other.  As Hewitt teaches in the section 1988 context, an award of

10  attorneys' fees may be justified even in the absence of final judicial relief:

11               [R]elief need not be judicially decreed in order to justify a fee

12               award under § 1988.  A lawsuit sometimes produces voluntary

13               action by the defendant that affords the plaintiff all or some of

14               the relief he sought through a judgment – e.g., … a change in

15               conduct that redresses the plaintiff's grievances. … [I]f the

16               defendant, under pressure of the lawsuit, alters his conduct (or

17               threatened conduct) towards the plaintiff that was the basis for

18               the suit, the plaintiff will have prevailed.

19  Hewitt, 482 U.S. at 760-61.

20        As noted in the moving papers, in addition to its direct effect altering the

21  government's actions by halting ongoing DADT investigations and discharges and

22  prohibiting new ones, this Court's historic judgment and injunction was also a

23  significant motivating factor for Congress's enactment of the Don't Ask, Don't Tell

24  Repeal Act.  The government admits this.  When a judicial decision engenders such

25  a change in the law, that is a permissible factor to take into account in determining a

26  plaintiff's prevailing party status.

27        The government erroneously cites Buckhannon Bd. & Care Home v. W. Va.

28  Dept. of Health & Human Res., 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d

- 4 -

855 (2001), for the proposition that a prevailing party may never recover attorneys' fees under a "catalyst theory." <u>Buckhannon</u> only held that a catalyzed change in conduct that lacks judicial "imprimatur" will not support an award of fees, and that an award of attorneys' fees is not authorized to a plaintiff who "has reached the 'sought-after destination' without obtaining *any* judicial relief." 532 U.S. at 605-06 (emphasis added). That is not the case here, where the judicial relief entered by this Court was, by Congress's and the government's own admissions, a major impetus for the passage of the Don't Ask, Don't Tell Repeal Act. Log Cabin therefore does not here rely on a pure catalyst theory to show that it is the prevailing party, and its arguments in this regard are not foreclosed by <u>Buckhannon</u>.

### 2. This motion for fees is not an attempt to use this Court's judgment for collateral purposes

It is apparent under the governing standard that Log Cabin is the prevailing party in this litigation because the judgment in its favor was never reversed on the merits. Faced with that reality, the government resorts to an out-of-context reading of the term "collateral" in two cases to attempt to bring this motion within the ambit of the Ninth Circuit's prohibition on using this Court's judgment "collaterally," <u>see</u> <u>Log Cabin Republicans v. United States</u>, 658 F.3d 1162, 1168 (9th Cir. 2011). But what the Ninth Circuit opinion forbade was not what this motion is about.

In the proceedings on appeal in this case, both at oral argument and in response to the government's "Suggestion of Mootness and Motion to Vacate," Log Cabin urged the court of appeals not to vacate this Court's judgment because servicemembers who had been discharged under DADT continued to suffer ongoing collateral consequences from their discharge, and may wish to assert claims for back pay, reimbursement, or other relief. Log Cabin argued that those individuals should not have to "start again from square one" and relitigate the constitutionality of DADT which had been resolved in this Court after seven years of litigation and a full trial, but should be allowed to assert this Court's judgment

1   and findings in proceedings they might bring.  See Response of Appellee Log

2   Cabin Republicans to Suggestion of Mootness and Motion to Vacate the District

3   Court Judgment, Log Cabin Republicans v. United States, No. 10-56634 (9th Cir.

4   Sept. 28, 2011, Dkt. 129), at 11-14.  It was to prevent that potential use of this

5   Court's orders that the Ninth Circuit vacated this Court's judgment, injunction, and

6   other rulings:  "Because Log Cabin has stated its intention to use the district court's

7   judgment collaterally, we will be clear:  It may not.  Nor may its members or

8   anyone else.  We vacate the district court's … past rulings *to clear the path*

9   *completely for any future litigation*."  658 F.3d at 1168 (emphasis added).

10        This motion for an award of attorneys' fees and expenses is not such a

11   "collateral" use of this Court's judgment in "future litigation."  The government

12   cites two cases where motions for attorneys' fees were characterized as "collateral,"

13   but both cases use that term in a different sense.  The issue in both cases involved

14   the application of Fed. R. Civ. P. 59(e), the rule governing motions to alter or

15   amend a judgment, to motions requesting or attacking a post-judgment award of

16   attorneys' fees.  In White v. New Hampshire Dept. of Employment Sec., 455 U.S.

17   445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), the Supreme Court held that a post-

18   judgment request for attorneys' fees "raises legal issues collateral to the main cause

19   of action," 455 U.S. at 451, and therefore is not subject to the 10-day deadline for

20   filing a motion to alter or amend the judgment that was then provided by Rule

21   59(e).  FCC v. League of Women Voters, 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d

22   278 (1984), followed White and held that a post-judgment award of attorneys' fees

23   was a "wholly collateral issue" to the judgment on the merits, so that a challenge to

24   that award was not a motion to alter or amend the judgment governed by Rule 59(e)

25   and did not suspend the finality of the original judgment for purposes of calculating

26   the time for filing a notice of appeal.  468 U.S. at 373 n.10.

27        Neither of those cases supports the proposition that this motion for an award

28   of attorneys' fees and expenses is a collateral *use* of this Court's judgment which

the Ninth Circuit barred, and the government cites no other.  This Court should reject the government's attempt to deflect this motion on that basis.

## B.   The Government's Position Was Not Substantially Justified

The opposition states that the test for substantial justification under EAJA is "reasonableness," citing cases that trace back to the statute's legislative history which uses the formulation that the government must "show that its case had a reasonable basis both in law and fact."  See, e.g., League of Women Voters of California v. FCC, 798 F.2d 1255, 1257 (9th Cir. 1986), quoting H.R. Rep. No. 1418, 96th Cong., 2d Sess. 10, reprinted in 1980 U.S. Code Cong. & Ad. News 4984, 4989.  However, "reasonableness" means more than simply the minimal status of a colorable argument – "more than merely undeserving of sanctions for frivolousness."  Pierce v. Underwood, 487 U.S. 552, 566, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).  The government's case here fails that test.

### 1.   Standing and scope of injunction

The government's perfunctory attempts to justify its litigation position based on its rejected arguments regarding Log Cabin's purported lack of standing and the scope of the injunction need not detain us long.  The government argues again, as it has without success throughout this litigation, that Log Cabin's standing was entirely derivative of and limited to the standing of two of its members, John Nicholson and Lt. Col. John Doe.  Opp. 15-16.  Log Cabin showed, and this Court found, that its associational standing was not so limited, and the government has failed to show that its argument had a reasonable basis both in law and in fact.[1]

---

[1] The opposition does nothing more than repeat the same arguments that the government has made on standing throughout the pretrial, trial, and appellate proceedings in this case, which have never been accepted by any court.  The government even continues to rely (Opp. 16:17-20) on this Court's unentered tentative ruling on the government's summary judgment motion.  All that need be said about that weakest of reeds is that if a tentative ruling, which the Court never adopted and in fact specifically rejected, suffices to show substantial justification, then a permanent injunction entered after trial, never reversed but only vacated as moot, certainly suffices to establish prevailing party status.

REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    As for the government's argument that the injunction was overly broad and

2    "amounted to classwide relief," Opp. 19:19-20:3, this argument too has been

3    repeatedly rejected:  both by this Court in entering the injunction in the first place

4    pursuant to Bresgal v. Brock, 843 F.2d 1163 (9th Cir. 1987) and numerous other

5    cases; and by the Ninth Circuit which never narrowed the geographic scope of the

6    injunction even as it considered and decided the parties' several respective motions

7    to lift or maintain the stay.

8    Both of these issues were thoroughly addressed in Log Cabin's brief on

9    appeal.  See Brief for Appellee/Cross-Appellant Log Cabin Republicans, Log Cabin

10   Republicans v. United States, No. 10-56634 (9th Cir. March 28, 2011, Dkt. 79), at

11   20-42 and 55-59.  The government cannot establish substantial justification based

12   on either its standing or scope arguments.

13                    **2.     The merits**

14   The government argues that "reasonableness" for the substantial justification

15   analysis, or the "reasonable basis both in law and fact" that is required, amounts to

16   nothing more than a determination whether "reasonable minds could differ" on the

17   subject of the constitutionality of DADT.  That characterization stems from a

18   passing reference in League of Women Voters, 798 F.2d at 1260, and was not the

19   basis for the holding in that case.  If nothing more than a difference of opinion

20   among reasonable minds were sufficient to show that the government was

21   substantially justified in defending the constitutionality of a statute or the

22   legitimacy of an agency action, no litigant would ever be awarded fees and

23   expenses under EAJA.  After all, Congress passes every statute whose

24   constitutionality is ever called into question, and presumably there were reasonable

25   minds in Congress that considered the statute here constitutional.

26   Rather, the question is whether the government has carried its burden to

27   show that its defense had a reasonable basis in law and fact, looking to the record

28   not only of the underlying government conduct, but also of the totality of

- 8 -

1 circumstances before and during the litigation, and the positions taken by the

2 government in the litigation itself.  Sampson v. Chater, 103 F.3d 918, 921 (9th Cir.

3 1996); Barry v. Bowen, 825 F.2d 1324, 1331 (9th Cir. 1987), rev'd on other

4 grounds 884 F.2d 442 (9th Cir. 1989).  Here, the government has not carried and

5 cannot carry that burden.

6      First, as the Court is well aware, the government presented no evidence at

7 trial to show that, in the 17 years since its enactment, DADT furthered its stated

8 purposes of securing the "high standards of morale, good order and discipline, and

9 unit cohesion that are the essence of military capability," 10 U.S.C. § 654(a)(14)

10 (former), and thereby advancing national security.  The government relied

11 exclusively on the text of the statute and its legislative history, and offered no

12 evidence whatsoever bearing on the implementation or consequences of DADT.  In

13 particular, the government made no showing whatever that DADT satisfied the

14 constitutionally-demanded heightened scrutiny enunciated in Lawrence v. Texas,

15 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), and Witt v. Dep't of the Air

16 Force, 527 F.3d 806 (9th Cir. 2008).[2]

17      The government's failure to present any evidence to support its contention of

18 the constitutionality of DADT is fatal to its argument that its litigation position was

19 "reasonable" or evidenced a position on which "reasonable minds could differ."

20 For reasonable people to differ on a disputed issue, and thus for one party's position

21 on that issue to be "substantially justified," there must be a "genuine dispute" over

22 the facts.  See Pierce v. Underwood, supra, 487 U.S. at 565.  The government

23 presented no such genuine dispute here and therefore cannot establish that its

24 position was substantially justified.

25      Second, the government ignores the fact that, as the Ninth Circuit recognized

26

27 [2] Just as it did at pretrial and trial, and even on appeal, the government continues to rely in its opposition on court decisions upholding DADT that predate Lawrence or, in the case of Cook v. Gates, 528 F.3d 42 (1st Cir. 2008), arose in another Circuit where Witt is not the governing legal standard.  Opp. 18:2-8.

28

REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1    while this case was on appeal, it abandoned its defense of the constitutionality of

2    DADT and instead argued only that the Don't Ask, Don't Tell Repeal Act was

3    constitutional.  See Order, Log Cabin Republicans v. United States, No. 10-56634

4    (9th Cir. July 11, 2011, Dkt. 112 at 1-2).  The government's decision not to defend

5    the constitutionality of the statute on appeal weighs heavily in the balance in

6    determining whether it was substantially justified in its previous litigation activity.

7         Finally, the government has now repudiated its earlier position that the Witt

8    standard does not apply and that classifications based on sexual orientation are

9    subject only to rational basis review.  Eric H. Holder, Jr., Letter from Attorney

10   General to Speaker of the House of Representatives (Feb. 23, 2011),

11   http://www.justice.gov/opa/pr/2011/February/11-ag-223.html.  The government

12   now advocates this new position in sexual orientation discrimination cases.  See

13   Golinski v. U.S. Office of Pers. Mgmt., No. C 3:10-00257 (N.D. Cal.) (Doc. 145,

14   July 1, 2011).  The official position taken by the Justice Department in these

15   communications to both Congress and to the courts in connection with the Defense

16   of Marriage Act (1 U.S.C. § 7) litigation is now that such classifications should be

17   subject to *heightened scrutiny* – exactly the opposite of the position that the

18   government vigorously asserted through seven years of litigation on this case.[3]

19        The government's failure to raise any facts conflicting with the extensive

20   evidence Log Cabin presented at trial, compounded by the reversal of its legal

21   position now evidenced by its statements in connection with the DOMA litigation,

22   makes manifest the absence of substantial justification for its litigation position.

23

---

24   [3] The government argued on appeal that its new position does not apply to military
     policy.  Government's Corrected Emergency Motion for Reconsideration of Order
25   Lifting Stay. at 15-16, Log Cabin Republicans v. United States, No. 10-56634 (9th
     Cir. July 14, 2011, Dkt. 115-1), at 15-16.  But the Attorney General's letter makes
26   no such distinction. Further, in the Golinski brief, the government quotes a
     statement made by President Obama when he signed the DADT Repeal Act of 2010
27   to support government's argument that "a person's sexual orientation bears no
     inherent relation to ability to perform or contribute."  Golinski brief, supra, at 17.
28

1        As the Ninth Circuit has recognized, "if the government's position violates

2    the Constitution … a finding that the government was substantially justified would

3    be an abuse of discretion." <u>Meinhold v. U.S. Dep't of Def.</u>, 123 F.3d 1275, 1278

4    (9th Cir. 1997), <u>citing</u> <u>Mendenhall v. Natl. Transportation Safety Board</u>, 92 F.3d

5    871, 874 (9th Cir. 1996) and <u>Oregon Natural Resources Council v. Madigan</u>, 980

6    F.2d 1330, 1332 (9th Cir. 1992). <u>Meinhold</u> involved a challenge to the Navy's

7    discharge of a servicemember under the predecessor regulations to DADT, on the

8    basis that the Navy had misapplied its regulations; however, nothing in the case

9    suggests that, as the government argues, its analysis applies only to the construction

10   of agency regulations and would not apply to facial constitutional challenges to a

11   statute as well.  The particular context in which a constitutional violation arises

12   makes no difference to the analysis whether the government's position is

13   substantially justified; "if a *due process* violation is not enough to trigger a finding

14   that the government was not 'substantially justified' under the EAJA, the EAJA

15   would amount to nothing but a hollow statutory shell offering little of substance to

16   prevailing parties." <u>U.S. v. $12,248 U.S. Currency</u>, 957 F.2d 1513, 1517 n.5 (9th

17   Cir. 1992) (emphasis in original); <u>U.S. v. Marolf</u>, 277 F.3d 1156, 1162 (9th Cir.

18   2002) (same).

19       This Court found that DADT violates the Constitution.  That finding has

20   never been reversed and formed the basis of a judicial injunction that materially

21   altered the legal relationship of the parties and carried real-world benefits to United

22   States servicemembers.  The government has not carried its burden to show that its

23   position in this litigation was substantially justified such as to prevent an award to

24   Log Cabin of its attorneys' fees and expenses under EAJA.

25

26

27

28

### III.

### LOG CABIN IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES UNDER FED. R. CIV. P. 37(C)

Log Cabin's motion set forth the standard for recovery of attorneys' fees and expenses pursuant to Federal Rule of Civil Procedure 37(c)(2).  It showed that when a party fails to admit matters requested for admission under Rule 36, and the requesting party later proves the matter true, an award of attorneys' fees and expenses is mandatory unless the party that failed to admit can prove that an exception applies.  The government's opposition agrees with this governing legal standard.  Opp. 22:9-16.

**A.**    **Log Cabin Proved the Matters Sought in the Requests for Admission**

The motion showed that the government failed to admit RFAs 3, 4, and 5, which requested that the government:

> 3.     Admit that DADT does not contribute to our national security;
>
> 4.     Admit that DADT weakens our national security; and
>
> 5.     Admit that discharging members pursuant to DADT weakens our national security.

The motion also showed that the government's failure to admit these RFAs forced Log Cabin to present extensive evidence to prove the truth of these matters at trial, which Log Cabin ultimately did.

The government's opposition does not dispute the content of the RFAs.  It does not dispute that nearly all of the testimony and written evidence presented by Log Cabin at trial went to prove that DADT did not contribute to, and in fact weakened, our country's national security.  Instead, the opposition argues that because the Court did not use the specific words "national security" in finding that DADT does not further its stated goals, Log Cabin did not prove the truth of RFAs 3, 4, or 5.  In support of this argument, the government cites <u>United States v.</u>

1    <u>Menominee Tribal Enter.</u>, No. 1:07-CV-00316, 2010 WL 2465505 at *9 (E.D. Wis.

2    June 15, 2010).  <u>Menominee</u> does not support the government's position, however.

3        In <u>Menominee</u>, the defendant obtained a jury verdict in its favor.  <u>Id.</u> at *1.

4    Defendant then moved for attorneys' fees pursuant to Rule 37(c)(2).  <u>Id.</u> at *9.  The

5    court denied defendant's motion, reasoning that because the jury verdict did not

6    specify the grounds on which it based its verdict, the court could not determine

7    whether a matter denied in RFAs was actually proven true.  <u>Id.</u>

8        Here, unlike in <u>Menominee</u>, the Court issued detailed factual findings and

9    provided lengthy analysis outlining exactly why it entered judgment in favor of Log

10   Cabin.  Specifically, this Court found that DADT did not significantly advance the

11   government's interests in military readiness or unit cohesion.  <u>Log Cabin</u>

12   <u>Republicans v. United States</u>, 716 F. Supp. 2d 884, 922 (2010); Finding of Fact No.

13   135 (Doc. No. 251).  This Court went on to find that DADT resulted in the

14   discharge of qualified servicemembers despite troop shortages (Findings of Fact

15   136-139); that DADT resulted in the discharge of servicemembers with critically

16   needed skills and training (Findings of Fact 140-141); that DADT resulted in the

17   admission to the armed services of lesser qualified enlistees, including felons and

18   individuals with lower levels of education and physical fitness (Findings of Fact

19   147-149); that DADT had a significant negative impact on military recruiting, both

20   in volume and in cost (Findings of Fact 142-146); that DADT was not necessary to

21   protect unit cohesion, privacy, and military readiness (Findings of Fact 159-176);

22   and that DADT had a chilling effect on the First Amendment rights of

23   servicemembers and restricted their speech more than reasonably necessary to

24   protect the Government's interests (Findings of Fact 178-187).

25       The opposition's semantic hair-splitting should not dissuade the Court from

26   granting this motion.  There is no meaningful difference between advancing

27   "military readiness" and advancing "national security."  The opposition itself elides

28   any possible distinction between the terms when it notes that the military's

- 13 -

1    effectiveness as a fighting force ensures national security.  Opp. 24:22-26.

2         The trial testimony of one expert witness in particular illustrates this point.

3    The Court admitted the testimony of Dr. Lawrence Korb as an expert in military

4    preparedness and national security.  <u>Log Cabin Republicans</u>, 716 F. Supp. 2d at

5    951.  Dr. Korb testified that DADT had a significant negative impact on military

6    recruiting.  The Court cited his testimony in support of Findings of Fact Nos. 142-

7    146.  <u>Id.</u> at 951.

8         Indeed, all of the evidence presented at trial, other than the evidence related

9    to Log Cabin's standing, was offered to meet the governing test under <u>Witt</u> that

10   DADT did not significantly further, and was not necessary to advance, the

11   government's stated interests in a strong military.  <u>Witt v. Dep't of the Air Force</u>,

12   527 F.3d 806, 819 (9th Cir. 2008).  Had the government admitted the RFAs, no trial

13   would have been necessary.  Instead, after a two-week bench trial, the Court held

14   that DADT harmed the government's interests in military readiness and unit

15   cohesion.  <u>Log Cabin Republicans</u>, 716 F. Supp. 2d at 923.  It would defy logic for

16   the Court to find that DADT harmed military readiness and not find that it harmed

17   national security.  The conclusion flows naturally from the premise.

18        Finally, Log Cabin did present evidence at trial, in the form of admissions by

19   President Obama, that DADT "weakens our national security."  Trial Exs. 85, 305.

20   This Court's Opinion and Findings of Fact relied on this evidence as support for its

21   holding that DADT is not necessary to achieve the government's interests.  <u>Log</u>

22   <u>Cabin Republicans</u>, 716 F. Supp. 2d at 919.

23        **B.    The Government Fails to Show that Its Denial of the RFAs Was**

24             **Reasonable**

25        The motion showed that the test under Rule 37(c)(2)(C) is whether the

26   government acted reasonably in believing it might prevail on the matter for which

27   admissions were sought.  The opposition does not dispute this governing legal

28   standard.  Opp. 24:11-14.

- 14 -

1  The motion showed that because the government based its denial of the

2 RFAs solely on DADT's legislative history which was contradicted by its own

3 admissions, the government's denial was unreasonable.  The motion cited two cases

4 illustrating that denials of RFAs under similar circumstances were unreasonable:

5 Marchand v. Mercy Med. Ctr., 22 F.3d 933 (9th Cir. 1994); Diamond State Ins. Co.

6 v. Deardorff, No. 1:10-CV-00004, 2001 WL 2414391 (E.D. Cal. June 8, 2011).

7 The opposition cites Marchand only to recite the applicable legal standard.  Opp.

8 24:10-14.  It does not address the argument made in the motion or attempt to

9 distinguish the case.  The government does not even mention, much less attempt to

10 distinguish, Deardorff.  Further, the government cites no authority to support its

11 position that its denials were reasonable.

12  The motion also showed that the government unreasonably denied the RFAs

13 because it failed to independently examine whether DADT furthered national

14 security, citing Foster Poultry Farms v. SunTrust Bank, 377 F.App'x 665, 672 (9th

15 Cir. 2010).  Again, the opposition does not dispute this requirement and fails to

16 address this argument at all.  The government does not even attempt to claim that it

17 performed any independent examination of whether DADT furthered national

18 security.  Instead, the opposition argues that its reliance on DADT's 17-year-old

19 legislative history in denying the RFAs was reasonable because the First Circuit

20 relied on that evidence in upholding DADT against a facial attack.  Cook v. Gates,

21 supra, 528 F.3d at 60.  This argument lacks merit for two reasons.

22  First, as this Court repeatedly emphasized throughout the litigation, Witt, not

23 Cook, is the governing law of the Ninth Circuit.  Under Witt, the government was

24 required to prove that DADT significantly furthered an important government

25 interest.  Witt, 527 F.3d at 819.  Here, unlike in Cook, which addressed the issues in

26 the context of a motion of dismiss, the government knew that it would have to

27 prove at trial that DADT furthered this important government interest.  And unlike

28 in Cook, the government also knew of President Obama's and Admiral Mullen's

- 15 -

1    statements when it denied the RFAs.  Finally, the government knew (or at least

2    should have known) that not a single piece of evidence outside of the Act's

3    legislative history supported the position that DADT contributed to national

4    security.  As a result, the government's denial of the RFAs was unreasonable.

5         Second, as discussed above at p. 10, since this Court issued its Opinion, the

6    government has repudiated the position that it took on the governing standard of

7    review of DADT in this case, and now states that classifications based on sexual

8    orientation should be subject to heightened scrutiny, not rational basis review.  The

9    government's abrupt reversal of position belies its argument that its exclusive

10   reliance on DADT's legislative history was reasonable.

11        **C.    The Ninth Circuit's Vacatur Order Does Not Foreclose the Court**

12              **from Granting the Motion**

13        As with its argument on the EAJA claim, the government asserts in its

14   opposition that Log Cabin may not rely on this Court's factual findings to support

15   its request for fees and expenses under Rule 37 because the Ninth Circuit vacated

16   those findings.  The argument fails for the same reasons discussed in Part II(A)2

17   above.  The Ninth Circuit vacated this Court's factual findings for a specific

18   purpose, namely to preclude their collateral use for offensive purposes in a future

19   lawsuit, which is distinct from the use for which Log Cabin cited to those findings

20   in this motion and is not precluded by the vacatur order.

21        **D.    No Other Good Reason Exists to Deny the Motion**

22        The opposition briefly argues that its denial of the RFAs falls within the

23   exception contained in Rule 37(c)(2)(D).  Opp. 25:9-13.  It contends that the

24   disagreement between the executive and legislative branches regarding the efficacy

25   of DADT constituted "other good reason" to deny the RFAs.  Id.

26        As noted above, when a party proves a matter denied in an RFA, an award of

27   fees is mandatory unless the Court finds that an exception to Rule 37(c)(2) applies.

28   The government therefore has the burden to show that the exception applies.  Yet

- 16 -

the government cites no cases and provides no evidence in support of its argument that 37(c)(2)(D) applies here.  A single conclusory statement, not supported by any authority, should not persuade this Court to apply this "rarely invoked" exception. 7 Moore's Federal Practice, § 37.74 (Matthew Bender 3d ed.).

Finally, the opposition appears to argue that the government is immune from discovery sanctions.  Opp. 25, n.6.  But the case it cites in support, United States v. Nordic Village, Inc., 503 U.S. 30 (1992), is inapposite.  Nordic Village decided only the narrow issue of whether the government waived sovereign immunity under Bankruptcy Code § 106(c).  Id. at 31.  This holding does not change the fact that the Federal Rules of Civil Procedure apply to the government just as they would to any other civil litigant. Mattingly v. United States, 939 F.2d 816, 818 (9th Cir. 1991) (finding a waiver of sovereign immunity and imposing sanctions against the government under Fed. R. Civ. P. 11); Barry v. Bowen, 884 F.2d 442, 444 (9th Cir. 1989) (upholding discovery sanctions imposed under Fed. R. Civ. P. 37(b)); United States v. Nat'l Medical Enters., Inc., 792 F.2d 906, 910-11 (9th Cir. 1986) (same).

## IV.

## CONCLUSION

For the reasons stated above as well as in the moving papers, the Court should find that Log Cabin is entitled to an award of its attorneys' fees and expenses pursuant to EAJA and Fed. R. Civ. P. 37, and should set a briefing and hearing schedule for the determination of the amount to be awarded.

Dated:  February 13, 2012                WHITE & CASE LLP


                                         By:   /s/ Dan Woods
                                              Dan Woods
                                              Attorneys for Plaintiff
                                              Log Cabin Republicans

- 17 -